UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-CV-00504-FDW-DSC

| | |
|---|---|
| CPI SECURITY SYSTEMS, INC.<br><br>         Plaintiff,<br><br>    v.<br><br>VIVINT SMART HOME, INC.<br>f/k/a MOSAIC ACQUISITION CORP.;<br>LEGACY VIVINT SMART HOME, INC.<br>f/k/a VIVINT SMART HOME, INC.<br><br>         Defendants. | **MEMORANDUM IN SUPPORT<br>OF DEFENDANTS' MOTION TO<br>DISMISS THE COMPLAINT** |

Defendants Vivint Smart Home, Inc. and Legacy Vivint Smart Home, Inc. (together, "Vivint") respectfully submit this memorandum in support of their motion to dismiss the complaint.

## INTRODUCTION

Vivint and CPI are competitors. Both companies provide home security and smart home equipment and monitoring services, and they compete with each other.

In this lawsuit, CPI contends that Vivint's competition with CPI has been unfair. The crux of CPI's contention is that Vivint's sales representatives have confused and induced CPI customers to switch from CPI to Vivint—a contention that is difficult to accept given that CPI does not identify which of its customers were confused, which Vivint sales representatives allegedly caused this confusion, or even where or when it supposedly happened.

Most relevant for this motion, however, is that each of CPI's claims suffers from defects that warrant dismissal. Those defects include the following:

- CPI's Lanham Act claim (Count 1) fails to distinguish between a false association and false advertising theory, and, in any event, fails to allege the elements of a false advertising claim.

- CPI's common law unfair competition claim (Count 2) fails for the same reasons that its Lanham Act claim fails, because the analysis of these two claims is essentially the same.

- CPI's claim under North Carolina's Unfair and Deceptive Trade Practices Act (Count 3) fails because the complaint does not sufficiently allege proximate cause or actual injury.

- CPI's claim for trade slander/commercial disparagement (Count 4) fails to allege the time or location of the alleged slander, and it also fails to sufficiently allege special damages.

- CPI's claim for tortious interference with business relationships (Count 5) fails because Vivint is a business competitor, and because CPI cannot sufficiently allege actual damages to support this claim.

For these reasons, the complaint should be dismissed in its entirety.

## GOVERNING STANDARDS

The Court is familiar with the Rule 12(b)(6) standard. Although "plausible factual allegations" in the complaint are treated as true, the Court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Jones v. Vector Fleet Mgmt., LLC*, No. 19-cv-600-FDW-DSC, 2020 WL 2512982, at *3 (W.D.N.C. May 15, 2020) (quoting *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd.*, 213 F.3d 175, 180 (4th Cir. 2000)).

## ARGUMENT

I. **The complaint fails to state a claim under the Lanham Act (Count 1).**

   A. **CPI's Lanham Act claim fails to distinguish between a false association and false advertising theory—a failure that warrants dismissal.**

"[T]here is no specific Federal cause of action for unfair competition. Instead unfair competition under the Lanham Act "is a category of claims consisting primarily of causes of action for false designation of origin and false advertising." *Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 272 (E.D.N.Y. 2014). Specifically, 15 U.S.C. § 1125(a) "creates *two* distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014) (citing *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1108 (9th Cir. 1992)) (emphasis added).

"Subsection A, which creates liability for statements as to '*affiliation, connection, or association*' of goods, describes the cause of action known as 'false association.'" *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 706 (4th Cir. 2016) (quoting § 1125(a)(1)(A)) (emphasis added). By contrast, a "false advertising" claim is intended to prevent confusion, mistake, or deception regarding the *characteristics or qualities* of goods or services. *See id.* at 706 ("Subsection B, which creates liability for 'misrepresent[ing] the nature, characteristics, qualities, or geographic origin' of goods, defines the cause of action for 'false advertising.'") (quoting § 1125(a)(1)(B)).

In view of these "two distinct claims"—unfair competition under subsection 1125(a)(1)(A) and false advertising under subsection 1125(a)(1)(B)—dismissal is

warranted where it is "not clear from [the complaint] which type of claim [the plaintiffs] seek to bring." *Synergy Real Estate of SW Fl., Inc. v. Premier Prop. Mgmt. of SW Florida, LLC*, 578 F. App'x 959, 961–62 (11th Cir. 2014) (affirming dismissal of Lanham Act claim that did not "make clear the type of unfair trade practices claim they were seeking to bring").

Here, the complaint suffers from this fatal flaw. CPI does not make clear which claim or claims it intends to pursue under the Lanham Act. Instead, Count 1 of the complaint generally alleges "unfair competition" under "15 U.S.C. § 1125(a)." Compl. at ¶¶ 51–59. CPI does not say whether it is proceeding under subsection (A), subsection (B), or both.

This lack of clarity is critical, because the two subsections diverge significantly, and, at a minimum, Vivint is entitled to notice of which subsection CPI seeks to litigate.

For this reason alone, CPI's Lanham Act claim should be dismissed.

### B. The complaint fails to state a false advertising claim.

As described above, it is unclear whether CPI intends to assert a false advertising claim. If CPI does intend to do so, however, it has failed to plead an essential element of the claim: that the alleged misrepresentations occurred "in commercial advertising or promotion." § 1125(a)(1)(B).

"A communication may be advertising or promotion [as defined in subsection (B)] only if it is part of an organized campaign to penetrate the relevant market." *Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 700 F. App'x 251,

4
Case 3:20-cv-00504-FDW-DSC   Document 26   Filed 10/28/20   Page 4 of 20

262 (4th Cir. 2017) (internal quotations and citations omitted). Proof of widespread dissemination within the relevant industry is a normal concomitant of meeting this requirement.[1] Thus, businesses harmed by "isolated disparaging statements" cannot seek redress under the Lanham Act. *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002).

In *Cavalier Telephone, LLC v. Verizon Virginia, Inc.*, 208 F. Supp. 2d 608 (E.D. Va. 2002), for example, the court dismissed a Lanham Act claim against a competitor in the telecommunications market. *Id.* at 610. Similar to CPI here, the plaintiff Cavalier alleged that "[Defendant] Verizon employees misrepresented to potential Cavalier customers the cost and availability of certain Cavalier services and attempted to convince these consumers not to purchase services from Cavalier." *Id.* at 617. The court observed that whether misleading statements constitute commercial speech "depends on the number of alleged contacts or misrepresentations made in relation to the total market." *Id.* at 617–18 (internal citation omitted).

Thus, the court held, Cavalier's false advertising claim was deficient because it alleged an "unspecified number of alleged contacts with Cavalier customers," which must be "placed in the context of a total market of at least several million Virginia telecommunications consumers." *Id.* at 618. "In such an expansive market, an unspecified number of isolated contacts cannot meet the standard of commercial

---

[1] In *Handsome Brook Farm*, the Fourth Circuit noted that widespread dissemination may not be necessary under narrow circumstances, such as where a "promotion [is] aimed at a subset of customers, such as a 'friends and family' sale or an advertisement shown to consumers based on their Internet history." *Id.* at 262. Those circumstances are not present here.

advertising or promotion." *Id.*; *see also Sussman-Automatic Corp.*, 15 F. Supp. 3d at 272 (dismissing false advertising claim that failed to state the "relevant market" in which the conduct occurred).

Here, CPI's allegations compel the same result. CPI does not allege that statements by Vivint representatives were part of an organized commercial advertising or promotion campaign. Nor could it. The complaint alleges that CPI "is the largest privately-led security provider in the Southeast" and that Vivint also operates in "most states." Compl. at ¶¶ 11, 25.

Thus, as in *Cavalier*, where the court dismissed the plaintiff's claims in the context of an "expansive market" consisting of "at least several million Virginia telecommunications consumers," *Cavalier*, 208 F. Supp. 2d at 618, the complaint here reveals that the "relevant market" consists of the "alarm and security services market" (Compl. at ¶ 6)—a massive, nationwide market. Yet in this context, the complaint does not identify a single CPI customer, date, location, or Vivint sales representative in support of its claim. At most, CPI alleges just two "encounters" that omit any identifying information about the participants, location, date, or context. Compl. at ¶ 6. The second "encounter" does not even allege a false or misleading statement; it merely alleges that "a Vivint representative came to [a CPI customer's] home and unhooked all of the wires connecting the CPI system." Compl. at ¶ 6.

In sum, even if CPI was permitted to allege false statements on unidentified dates and at unidentified locations (an impermissible tactic), CPI still does not allege

6

Case 3:20-cv-00504-FDW-DSC   Document 26   Filed 10/28/20   Page 6 of 20

anything more than isolated encounters within a massive relevant market.[2] These isolated encounters cannot rise to the level of "commercial advertising" or "promotion" necessary to state a Lanham Act claim.

Thus, any attempt by CPI to allege a false advertising claim must fail.

## II. The complaint fails to state a common law unfair competition claim (Count 2).

Common law unfair competition claims are co-extensive with Lanham Act claims, such that the Court's analysis of these claims is "essentially the same." *See, e.g.*, *Grayson O Co. v. Agadir Int'l LLC*, No. 13-cv-00687, 2015 WL 7149935, at *2 (W.D.N.C. Nov. 13, 2015), *aff'd*, 856 F.3d 307 (4th Cir. 2017); *Ga. Pac. Consumer Prods., LP v. Von Drehle Corp.*, 618 F.3d 441, 449 (4th Cir. 2010); *Fleet Feet, Inc. v. Nike Inc.*, 419 F. Supp. 3d 919, 920 n.1 (M.D.N.C. 2019); *see also Fl. Int'l Univ. Bd. of Trs. v. Fl. Nat'l Univ., Inc.*, 830 F.3d 1242, 1267 (11th Cir. 2016) (holding that common law unfair competition claims "rise or fall" with federal unfair competition claims).

Thus, for the same reasons described above that CPI's Lanham Act claim fails, its common law unfair competition claim fails as well.

---

[2] CPI's conclusory allegation that these two "encounters are not atypical of the countless other complaints CPI has received from its customers about Vivint since Vivint's conduct began" (Compl. at ¶ 6) falls well short of sufficiently pleading widespread dissemination in the alarm and security services market.

### III. The complaint fails to state a claim for violation of North Carolina's Unfair and Deceptive Trade Practices Act (Count 3).

#### A. CPI fails to allege the proximate cause required for a section 75-1.1 claim.

Proximate cause is an essential element of a section 75-1.1 claim. *Drouillard v. Keister Williams Newspaper Sers., Inc.*, 108 N.C. App. 169, 172, 423 S.E.2d 324, 326 (1992). For misrepresentation-based claims under section 75-1.1, like the one that CPI attempts here, a plaintiff must also establish actual and reasonable reliance on the alleged misrepresentation. *See Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013) (holding that "[a] claim under [section 75-1.1] stemming from an alleged misrepresentation does indeed require a plaintiff to demonstrate reliance on the misrepresentation in order to show the necessary proximate cause," and that this "has been the law of this state for quite some time"); *see also Caper Corp. v. Wells Fargo Bank, N.A.*, 578 F. App'x 276, 287 (4th Cir. 2014) ("If the claim arises from the defendant's alleged misrepresentation, the plaintiff must also plausibly allege that it 'reasonabl[y] reli[ed]' on that misrepresentation.") (quoting *Bumpers*, 367 N.C. at 88, 747 S.E.2d at 226).

Furthermore, if the misrepresentation was allegedly made to a third party, the reliance element cannot be met because "actual reliance requires that *the plaintiff* have affirmatively incorporated the alleged misrepresentation into [their] decision-making process." *DC Custom Freight, LLC v. Tammy A. Ross & Assocs., Inc.*, No. COA 19-1059, 2020 WL 5159972, at *6 (N.C. Ct. App. Sept. 1, 2020). In other words, the "[p]laintiff cannot base a theory of causation on the reliance of another party." *Id.* at *9 (holding that where the alleged misrepresentation "was communicated only to

[a] third party," rather than the plaintiff, "[i]t is clear . . . that *only the direct reliance of the plaintiff* is sufficient to support a [section 75-1.1] claim based on misrepresentation") (emphasis added).

Here, CPI alleges that Vivint has violated section 75-1.1 by allegedly making misrepresentations to third parties: CPI customers. Compl. at ¶¶ 72, 74. CPI has not (and could not) allege that Vivint made any misrepresentations to CPI.

In short, because CPI cannot satisfy the reliance element of a section 75-1.1 claim by substituting in its customers for itself, this claim fails.

### B. CPI fails to sufficiently allege actual injury.

A section 75-1.1 claim requires "actual injury"—that is, actual damages. *See Sw. Life Ins. Grp. v. Morehead*, 245 F. App'x 304, 307 (4th Cir. 2007). In turn, actual damages are categorized as either general damages or special damages. "[G]eneral damages are such as might accrue to any person similarly injured, while special damages are such as did in fact accrue to the particular individual by reason of the particular circumstances of the case." *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 671, 464 S.E.2d 47, 62 (1995) (internal quotation and citation omitted).

Here, CPI makes only a formulaic recitation that it "has been aggrieved," and "is entitled to its actual damages suffered as a result of [the alleged section 75-1.1] violations" (Compl. at ¶ 76), and then proceeds to allege special damages in the form of lost profits and royalties, loss of control of the use of its brand in the market, damage to goodwill and reputation, and a contention that it will have to "police"

Vivint's alleged conduct and expend time and resources to reinstall CPI systems in customers' homes. Compl. at ¶¶ 77–78. None of these categories of damages flow from Vivint's alleged conduct without reference to some special character, condition, or circumstance of CPI, and, therefore, must be pleaded with specificity. *See* Fed. R. Civ. P. 9(g) ("Special Damages. If an item of special damage is claimed, it must be specifically stated.").

Yet CPI never alleges a time frame of the alleged conduct, the number of alleged customer reports it intends to rely upon, nor the number of alleged customers in connection with whom CPI seeks damages, much less the pecuniary scope of any alleged damage. Accordingly, CPI's attempt at a section 75-1.1 claim fails to plead "actual damages," and, therefore, warrants dismissal.

### C. CPI fails to allege a violation of unfair and deceptive trade practices statutes of "various states."

As an attempted alternative to CPI's section 75-1.1 claim, it also asserts unidentified violations of "corresponding unfair and deceptive trade practices statutes of the various states in which the [alleged deceptive] sales occurred." Compl. at ¶ 79. The only statute that CPI actually references by name, however, is section 75-1.1. No other "various states" are identified by name, much less their respective unfair competition statutes identified. Yet each of those "various states" necessarily have statutes that will differ in standing, conduct, and damages requirements.

Accordingly, CPI's reference to "various [unidentified] states" and their laws cannot salvage its section 75-1.1 claim.

10
Case 3:20-cv-00504-FDW-DSC   Document 26   Filed 10/28/20   Page 10 of 20

### IV. The complaint fails to state a claim for trade slander/commercial disparagement (Count 4).

CPI's claim for trade slander/commercial disparagement is based on allegedly "false and misleading statements" made to CPI customers. Compl. at ¶ 81.

Vivint assumes that CPI asserts this claim under North Carolina law. Assuming it does, this claim fails because it does not meet the pleading standards for slander, and because it fails to plead special damages.

#### A. The complaint fails to allege time or location.

Slander claims require a plaintiff to allege the time and place that an allegedly false and defamatory statement was made to a third party. *See, e.g., Horne v. Cumberland Cnty. Hosp. Sys., Inc.*, 228 N.C. App. 142, 150, 746 S.E.2d 13, 20 (2013) ("Plaintiff's complaint fails to identify the allegedly defamatory remarks made by [the defendant] or to specify when they were made. This lack of specificity is, by itself, a sufficient basis to support the dismissal of plaintiff's defamation claim."); *Wynn v. Tyrrell Cnty. Bd. of Educ.*, No. COA 16-1130, 2017 WL 2118713, at *2 (N.C. Ct. App. May 16, 2017) (unpublished) ("[A]llegations of time and place are material for the purpose of testing the sufficiency of any pleading . . . and such allegations should be pleaded with particularity in a defamation complaint."); *see generally* 5A Charles Alan Wright, Arthur R. Miller & A. Benjamin Spencer, Federal Practice and Procedure § 1309, at 197 (4th ed. 2018) ("[I]n libel and slander suits courts require the time and place of the publication of the alleged defamatory matter to be specifically stated in the complaint.").

Here, the complaint is silent on when or where any of the alleged defamatory statements were made.³ Instead, it offers only a vague reference to "reports" that CPI claims it received from "across the Southeast" (Compl. at ¶ 1) and "throughout North Carolina, South Carolina and elsewhere." Compl. at ¶ 6.

CPI's failure to allege the date or time of any alleged defamation compels dismissal.

### B. CPI has failed to plead special damages.

North Carolina law distinguishes between two classes of oral defamation: slander *per se* and slander *per quod*. Slander *per se* involves defamatory statements that "[1] charge plaintiff with a crime or offense involving moral turpitude, [2] impeach his trade or profession, or [3] impute to [the plaintiff] a loathsome disease." *Donovan v. Fiumara*, 114 N.C. App. 524, 527, 442 S.E.2d 572, 574 (1994). "Slander *per quod* involves a spoken statement of which the harmful character does not appear on its face as a matter of general acceptance, but rather becomes clear 'only in consequence of extrinsic, explanatory facts showing its injurious effect[.]'" *Id.* (quoting *Badame v. Lampke*, 242 N.C. 755, 757, 89 S.E.2d 466, 467–68 (1955)).

CPI's allegations here would support only slander *per quod* because the alleged false statements belie any notion that the words on their face are injurious. The core of CPI's allegations is that statements by Vivint salespeople "confused" customers

---

³ This failure also leaves Vivint unable to ascertain the sufficiency of the complaint for a statute of limitations defense. This is particularly important given that the statute of limitations for defamation is one year from when the words were spoken. *See* N.C. Gen. Stat. § 1-54(3).

into believing that Vivint and CPI are "affiliated" in order to "freeride on CPI's goodwill." Compl. at ¶¶ 28, 33, 46. The alleged statements include "(1) that Vivint has purchased or is purchasing CPI; (2) that Vivint is purchasing or 'taking over' CPI customer accounts; (3) that Vivint manufactures CPI's equipment and is present at customers' homes simply to upgrade CPI's system; and (4) that Vivint was sent, or is acting on behalf of, CPI." Compl. at ¶ 2. These alleged "sales tactics" that CPI relies on to support the complaint, on their face, require additional explanation by way of "extrinsic, explanatory facts" to show their falsity and that they caused "injurious effect." *Donovan*, 114 N.C. App. at 527, 442 S.E.2d at 574–75.

"In such cases, the injurious character of the words and some special damage must be pleaded and proved." *Id.* (internal quotations and citation omitted). "[S]pecial damages, those which do not necessarily result from the wrong, must be pleaded, and the facts giving rise to the special damages must be alleged so as to fairly inform the defendant of the scope of plaintiff's demand." *Griffin v. Holden*, 180 N.C. App. 129, 138, 636 S.E.2d 298, 305 (2006) (internal quotation and citation omitted).

CPI was therefore required to plead facts with particularity to support special damages. *See* Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated.").

The complaint overlooks this pleading requirement. CPI vaguely alleges that "[t]he statements are injurious and damage CPI in its industry and marketplace by causing CPI to lose sales and goodwill, and to suffer injury to its reputation" (Compl.

13

at ¶ 85), an allegation that is insufficient for pleading special damages for a slander *per quod* claim. *Compare Skinner v. Reynolds*, 237 N.C. App. 150, 157, 764 S.E.2d 652, 658 (2014) (affirming dismissal of defamation claim because plaintiff "fail[ed] to state any facts indicating the circumstances of the alleged 'special damages' or the amount claimed" where the complaint contained only "[t]he conclusory allegation that he suffered unspecified 'lost wages' and 'expenses'" as a result of the defamation), *with Diagnostic Devices, Inc. v. Dr. Diabetic Supply, Inc.*, 2010 WL 143094, at *3 (W.D.N.C. Jan. 11, 2010) (holding special damages allegations sufficient where plaintiff calculated specific dollar amount and alleged that the defendant's statements caused its customers to no longer order and purchase from plaintiff).

CPI appears to recognize this failing, because it alternatively seeks to classify Vivint's alleged statements as "defamatory *per se* in that the statements suggest conduct incompatible with the lawful exercise of business." Compl. at ¶ 84. But that approach fares no better, because the statements here do not fall within any of the three categories of slander *per se* described above. *See supra* at 12.

For these reasons, the alleged statements at issue are not slander of any kind. This claim should be dismissed.

### V. The complaint fails to state a claim for tortious interference with business relationships (Count 5).

Tortious-interference claims require allegations that the plaintiff suffered "actual damages" as a result of the defendant "intentionally" and "without justification" inducing a third party's nonperformance of a contract. *Childress v.*

*Abeles*, 240 N.C. 667, 674, 84 S.E.2d 176, 181–82 (1954); *see also MLC Auto., LLC v. Town of S. Pines*, 207 N.C. App. 555, 571, 702 S.E.2d 68, 79 (2010).

Here, CPI alleges that Vivint engaged in tortious interference by offering to "buy out" the remaining term of a CPI customer's contract to win their business. As set forth below, this alleged conduct does not constitute an unjustified method, and regardless, it could not result in actual damage to CPI.

### A. The complaint fails to allege unjustified interference.

North Carolina recognizes what is, in essence, a competitor defense to tortious-interference claims: that "interference with contract is justified if it is motivated by a legitimate business purpose, [such] as when the plaintiff and the defendant, an outsider, are competitors." *Mkt. Choice, Inc. v. New England Coffee Co.*, No. 08-cv-90, 2009 WL 2590651, at *7 (W.D.N.C. Aug. 18, 2009); *see also, e.g.*, *Cameron v. New Hanover Mem'l Hosp., Inc.*, 58 N.C. App. 414, 439, 293 S.E.2d 901, 916 (1982); *Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, 976 F. Supp. 2d 706, 717 (M.D.N.C. 2013). Thus, when the complaint reveals that a tortious-interference claim is against a competitor motivated by competition, the claim should be dismissed at the Rule 12 stage. *See, e.g.*, *Champion Pro Consulting*, 976 F. Supp. 2d at 717.

Here, CPI affirmatively alleges that Vivint's alleged conduct was motivated by competition. Compl. at ¶ 26 ("Vivint and CPI are direct competitors in the security systems, automation and smart home market[.]"); Compl. at ¶ 48 (alleging that Vivint offers to "buy out" CPI customers' contracts "because it is profitable"). And CPI's

tortious interference claim is limited to its allegations that Vivint offered to "buy out" the remaining term of a prospective customer's CPI contract "by paying to the customer an amount equal to the remaining obligation on their CPI contract"—in other words, that Vivint was competing against CPI in the relevant market. Compl. at ¶ 90.

Accordingly, CPI's tortious-interference claim must fail. By alleging nothing more than a competition method in which a customer is given the freedom to make an informed decision that Vivint is a better business opportunity *and* satisfy their remaining monetary obligation to CPI, Vivint has not acted "without justification." To the contrary, CPI is seeking to suppress competition.

### B. CPI cannot allege sufficient actual damages to support its tortious-interference claim.

Under North Carolina law, speculative future loss of business is insufficient to sustain a cause of action for tortious interference. *See Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 368 N.C. 693, 701, 784 S.E.2d 457, 463 (2016) ("[A] plaintiff's mere expectation of a continuing business relationship is insufficient to establish such a claim [for tortious interference of prospective business relationship].").

Here, CPI's claimed damage is its speculative hope that a customer might continue to renew their contract beyond the existing term—something that CPI claims "is not uncommon." Compl. at ¶ 92. The allegation that it is "not uncommon" for CPI to secure future business from the customer is far too speculative to support a tortious-interference claim. *See Associated Beverage Repair*, 368 N.C. at 701, 784

16

S.E.2d at 463 ("[P]laintiff appears to rely on the expectation that [the] former customers would continue to do business with plaintiff, an expectation insufficient to support a claim for [ ] tortious interference [claims].")

That leaves only CPI's suggestion that "[t]he customer does not always remit [such buyout payment] to CPI that Vivint provides to the customer." Compl. at ¶ 93. But even accepting this generalized and speculative allegation, CPI does not allege any damage actually caused by *Vivint*; rather, it relies on the intervening actions of the customer failing to remit the funds provided for that purpose—a "breach" of the customer's CPI contract that does not occur unless and until the customer fails to pay off their existing CPI contract. In those instances, the alleged intervening failure of unspecified customers to remit funds provided by Vivint to satisfy their remaining contract is the cause of the resulting "damage" claimed by CPI, not Vivint. And presumably if this occurred, CPI has contractual remedies against its former customers—again, a situation that does not directly involve Vivint.

For this reason, CPI cannot allege any actual damage to support its tortious-interference claim. This claim, like the others, should be dismissed.

## CONCLUSION

The complaint should be dismissed.

Respectfully submitted the 28th day of October, 2020.

| **GREENBERG TRAURIG, LLP** | **CLYDE SNOW & SESSIONS, P.C.** |
|---|---|
| | |

*Gregory W. Herbert
Florida Bar No. 111510
herbertg@gtlaw.com
450 S. Orange Avenue, Suite 650
Orlando, FL 32801
Telephone: (407) 420-1000

*Michael N. Kreitzer
Florida Bar No. 705561
kreitzerm@gtlaw.com
*Jared R. Kessler
Florida Bar No. 96020
kesslerj@gtlaw.com
333 S.E. 2nd Avenue, Suite 4400
Miami, FL 33131
Telephone: (305) 579-0500

**Counsel for Defendants**

**Applications for pro hac
vice admission pending*

*Matthew A. Steward
Utah Bar No. 7637
mas@clydesnow.com
*Shannon K. Zollinger
Utah Bar No. 12724
skz@clydesnow.com
One Utah Center, 13th Floor
201 South Main Street
Salt Lake City, UT 84111-2216
Telephone: (801) 322-2516

**Counsel for Defendants**

*Applications for pro hac
 vice admission pending*

**POYNER SPRUILL LLP**

By: s/ Andrew H. Erteschik
Steven B. Epstein
N.C. State Bar No. 17396
sepstein@poynerspruill.com
Andrew H. Erteschik
N.C. State Bar No. 35269
aerteschik@poynerspruill.com
John M. Durnovich
jdurnovich@poynerspruill.com
N.C. State Bar No. 47715
N. Cosmo Zinkow
nzinkow@poynerspruill.com
N.C. State Bar No. 53778
P.O. Box 1801
Raleigh, NC 27602-1801
Telephone: (919) 783-2895

**Local Counsel for Defendants**

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing memorandum of law complies with the word limitation set forth in section 3(b)(iv) of the Court's Initial Scheduling Order as reported by the undersigned's word-processing software.

This the 28th day of October, 2020.

s/ Andrew H. Erteschik
Andrew H. Erteschik

## CERTIFICATE OF SERVICE

  I certify that I have electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of filing to all counsel and parties of record.

  This the 28th day of October, 2020.

                s/ Andrew H. Erteschik
                Andrew H. Erteschik