EXHIBIT
3

1          UNITED STATES DISTRICT COURT
2      FOR THE WESTERN DISTRICT OF NORTH CAROLINA
3               CHARLOTTE DIVISION
4       CIVIL ACTION NO. 3:20-CV-00504-FDW-DSC
5
6
CPI SECURITY SYSTEMS, INC.,    )
7                              )
        Plaintiff,             )
8                              )
vs.                            )
9                              )
VIVINT SMART HOME, INC. f/k/a  )
10  Mosaic Acquisitions         )
Corporation; and LEGACY        )
11  VIVINT SMART HOME, INC. f/k/a )
Vivint Smart Home, Inc.,       )
12                             )
        Defendants and         )
13  Counterclaimants.           )
14  _____
15
16
17
18          DEPOSITION OF GINGER GARREN
19             (TAKEN BY PLAINTIFF)
20              TAKEN VIA ZOOM
21          Thursday, August 19, 2021
22
23
24

25          Reported in Stenotype by
                 Erin Ramsey
     Transcript produced by computer-aide transcription

1    APPEARANCES
2  ON BEHALF OF PLAINTIFF:
3        DANIEL ROHNER, ESQUIRE
         Shook, Hardy & Bacon, LLP
4        1660 17th Street
         Suite 450
5        Denver, Colorado 80202
         (303) 285-5300
6        Drohner@shb.com
7
   ON BEHALF OF DEFENDANT:
8
         MATTHEW STEWARD, ESQUIRE
9        Clyde Snow
         201 S. Main Street
10       Suite 1300
         Salt Lake City, Utah 84111
11       (801) 322-2516
         Mas@clydesnow.com
12
13
14
15
16
17  Job No. CS4749790
18
19
20
21       DEPOSITION OF GINGER GARREN, a witness called
22  on behalf Plaintiff, before Erin Ramsey, Notary
23  Public, in and for the State of North Carolina, taken
24  via Zoom on Thursday, August 19, 2021, commencing at
25  10:04 a.m.

1           INDEX OF EXAMINATIONS
2  BY MR. ROHNER.............................. PAGE 4
3  BY MR. STEWARD.............................. PAGE 17
4  BY MR. ROHNER.............................. PAGE 23
5  BY MR. STEWARD.............................. PAGE 24
6
7
8           INDEX OF EXHIBITS
9  NUMBER       EXHIBIT              MARKED
10  Exhibit 1   CPI Contract.........................10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1        THE VIDEOGRAPHER:  This is the beginning
2  of the videotape deposition of Ginger Garren in the
3  matter of CPI Security Systems, Incorporated, versus
4  Vivint Smart Home, Incorporated, et al.  Today's date
5  is August 19th, 2021, and the time is 10:04 a.m.
6        Counsel, please introduce yourselves after
7  which our court reporter will swear in the witness.
8        MR. ROHNER:  This is Dan Rohner, with
9  Shook, Hardy & Bacon, LLP, on behalf of the
10  plaintiffs, CPI Security Systems, Incorporated.
11        MR. STEWARD:  Good morning everyone.  This
12  is Matt Steward with Clyde Snow on behalf of the
13  defendants.
14        GINGER GARREN,
15  called as a witness by the Plaintiff, was first duly
16  sworn, as hereinafter certified, examined, and
17  testified as follows:
18        EXAMINATION
19  BY MR. ROHNER:
20    Q.  Good morning, Ms. Garren.  Am I pronouncing
21  that right?
22    A.  Yes.
23    Q.  Garren.  My name is Dan Rohner as I just
24  mentioned and I'm an attorney and I represent the
25  plaintiff in this case, CPI Security Systems.

1        Have you ever been deposed before?
2    A.  Have I been what?
3    Q.  Have you been been a witness in a deposition
4  before?
5    A.  No, I've never been in a courtroom or nothing
6  before so I don't know what to expect.
7    Q.  Right.  Let me just go over a couple of sort of
8  ground rules and things that will help you going
9  forward.  I'm going to be asking you some questions
10  and you're going to be giving answers.  There's -- you
11  heard Ms. Ramsey speaking before, she's a court
12  reporter, and she's going to be taking down everything
13  you say and everything I say as well as potentially
14  objections from one of the lawyers.  So it's going to
15  be one important thing especially over Zoom like this
16  is that we all take some time to make sure that we're
17  each finished with -- for me that I'm finished with my
18  question before you answer, and also I'll try and wait
19  for your answer to be done before I ask the next
20  question.  And that will make it a lot easier for the
21  court reporter to write down everything that we both
22  say.
23        Does that make sense?
24    A.  Yes.
25    Q.  And so a second kind of ground rule is because

1 she's writing down everything we say when we give an
2 answer that's a yes or a no it's important that it be
3 an audible -- we use those words yes or no. The court
4 reporter can't mark down people shaking their head or
5 yes or no with gestures.
6     In addition, a lot of times witnesses will say
7 things like uh-huh or uh-uh and it may seem -- in a
8 normal conversation that works fine, when you're doing
9 a deposition it can be difficult to understand what
10 the purpose or what the meaning of that phrase was.
11 So again, if I ask you question and the answer is yes
12 it's important that you say yes, and if it's no it's
13 important that you say the word no.
14     Does that make sense?
15 A. Yes.
16 Q. Great. Perfect. Good job. And so -- next,
17 this is not -- I don't anticipate this is going to be
18 a very long deposition but if at some point you need a
19 break just let me know and we'll take a break if you
20 need to use the restroom or anything like that. Okay?
21 A. Yes.
22 Q. And lastly, again, they'll be times when a
23 lawyer may make an objection to a question that's
24 asked by the other lawyer, and so when that does
25 happen I do -- I ask that you pause and wait for the

1 objection and then I'm going to ask you -- say if it's
2 an objection on one of my questions I'm still going to
3 ask you to answer the question. Okay?
4 A. Okay.
5 Q. And lastly, if I ask a question and you don't
6 understand it, please tell me. I'm happy to rephrase
7 my question. The goal here is to ensure that -- that
8 you're answering questions that you understand and so
9 that we can have a clear record. So at any time you
10 need me to rephrase something just let me know and
11 I'll be happy to do that.
12 A. Okay.
13 Q. But if I do ask a question and you answer it
14 I'm going to assume, and the record is going to
15 assume, that you understood what the question meant.
16 Understood?
17 A. Yes.
18 Q. Okay. And so I'll get started here. Believe
19 you said your name when you were sworn in is Ginger
20 Garren. Where do you live?
21 A. I live in Fletcher, North Carolina.
22 Q. And what's your address?
23 A. 314 Cardwell Lane, Fletcher, North Carolina
24 28732.
25 Q. And how long have you lived there?

1 A. It will be two years at the end of September.
2 Q. And if you don't mind my asking, how old are
3 you, Ms. Garren?
4 A. I am 52.
5 Q. And are you employed?
6 A. Yes.
7 Q. What do you do?
8 A. I am a teacher at Sugarloaf Elementary with
9 Henderson County Public Schools.
10 Q. And what grade do you teach?
11 A. Second grade.
12 Q. I surmise that from the background.
13 A. Yes.
14 Q. It looked like a school. Now, at your
15 residence do you have a security system?
16 A. Yes.
17 Q. And who is your current provider of security
18 services?
19 A. CPI.
20 Q. And how long have you been a CPI customer?
21 A. Since 2017.
22 Q. At any point -- you mentioned that you were in
23 your current residence only for two years, were you a
24 CPI customer before you moved to your current home?
25 A. Yes.

1 Q. Okay. I'm going to -- and this is my first
2 time doing this round of Veritext depositions so I'm
3 it's -- things have changed a little bit since the
4 last case I did and so I'm going to be showing you a
5 document and I don't know -- are you use I phone right
6 now?
7 A. Yes.
8 Q. Let's see if I can get this to work here. So
9 hold on one second.
10     MR. ROHNER: Could we go off the record
11 real quick?
12     THE VIDEOGRAPHER: Sure. The time is
13 10:12 a.m., we are off the record.
14     (An off-the-record discussion was held.)
15     THE VIDEOGRAPHER: Time is 10:14 a.m.,
16 we're back on the record.
17 BY MR. ROHNER:
18 Q. Ms. Garren, I am -- on your screen you should
19 see a document and it's got an exhibit sticker on it.
20 It's marked as Plaintiff's Exhibit 1, you'll see a
21 little yellow sticker on the bottom. And you see at
22 the top of the document it says CPI Security
23 Installation and Monitoring Agreement-Residential and
24 then for customer name it has your name; do you see
25 that?

3 (Pages 6 - 9)

1      (Plaintiff's Exhibit 1 was marked for
2      identification.)
3   A.  Yes.
4   Q.  Do you recognize this document?  And if you
5   need me to scroll through it I'm happy to do that
6   slowly if it's helpful.  Well, not that fast.
7   A.  I have a document from them.
8   Q.  Okay.  Does -- so at the bottom of the first
9   page you'll see a date -- let me pull this up for you.
10  Scan it.  You'll see that there's an electronic
11  signature there with your name and it's dated
12  10/4/2019; do you see that?
13  A.  Yes.
14  Q.  Okay.  Is this the contract that you signed
15  with CPI for the monitoring of your new -- the house
16  that you moved in to two years ago?
17  A.  Yes.
18  Q.  And is this -- to the best of your knowledge is
19  this the contract that's still in place for you --
20  A.  Yes.
21  Q.  -- with CPI?
22  A.  Yes.
23  Q.  Okay.  And between October of 2019 and today
24  that contract is still in place?
25  A.  Yes.

1   Q.  Since -- since you executed that agreement with
2   CPI have you been solicited by any other security
3   companies?
4   A.  Yes.
5   Q.  And do you know the names of those security
6   companies you've been solicited by?
7   A.  Vivint.
8   Q.  I believe it's pronounced Vivint.
9   A.  Vivint.
10  Q.  Yes.  Okay.  And when were you solicited by
11  Vivint?
12  A.  I do not recall the exact date.
13  Q.  Give me your best estimate as to time period
14  when this happened?
15  A.  It would have been late 2019 maybe.  Or not '19
16  I'm sorry.  Yes, '19.  Am I mixed up on my years
17  because I moved twice in two years.
18  Q.  So it was not long after you signed this
19  contract?
20  A.  I don't think so.
21  Q.  And how -- describe to me how that came about,
22  this solicitation by Vivint.
23  A.  My doorbell rang and when I answered it it was
24  a representative.
25  Q.  Let me ask you, were you expecting anyone?

1   A.  No.
2   Q.  Did you have prior knowledge that someone was
3   going to be coming to your door that day?
4   A.  No.
5   Q.  So your doorbell rang, you opened the door?
6   A.  Yes.
7   Q.  And tell me what happened next.
8   A.  The man proceeded to tell me he was in the
9   neighborhood and one of my neighbors had told him to
10  come to me or something.  Anyway, he said that he was
11  selling security, said he wanted to talk to me about a
12  security system and I told him I did not need a
13  security system, that I already had CPI, and he said
14  well we're a part of CPI we just have additional
15  options than what you have.  And then I still told him
16  I didn't want any more and then he kept asking about
17  my security system and wanted to see it and I told him
18  no and I did not allow him in my house.
19      And he did finally leave.  He was persistent
20  but I didn't talk to him any more than that, just told
21  him that I was not interested.
22  Q.  Let me -- I want to back up a little bit and
23  just go over a couple of those points.  You said this
24  conversation took place, he was outside you were still
25  inside your house?

1   A.  I was standing at the door.
2   Q.  And you said that when you told him that you
3   were already a customer of CPI he said something -- he
4   said well, we're a part of CPI; is that right?
5   A.  Yeah -- yes.  He said we're a part CPI or
6   we're with CPI, one of those.
7   Q.  When he said either we're a part of CPI or
8   we're with CPI, what did you understand him to mean?
9       MR. STEWARD:  Objection, form.
10  A.  I thought it was -- I thought it was an
11  extension of CPI but it didn't make sense to me.
12  Q.  Okay.
13  A.  He had a badge and it had an orange symbol and
14  so I just -- I've been taken by scams before so I just
15  did not engage any further.
16  Q.  So when he said that his company was a part of
17  CPI or with CPI did you believe him?
18  A.  I wasn't sure.  I just knew in my thinking it
19  was just strange that a totally different -- the
20  orange and all that instead of the red CPI that why
21  would it be, like, a separate look to it.  And he was
22  saying that they had additional options to add to it
23  and it was, like, the outside monitoring.
24  Q.  When you say additional options to add to it,
25  add to what?  To your security system?

1    A.  Yes.
2    Q.  Okay.  Did he say anything else about the
3  relationship between CPI and Vivint?
4    A.  No.
5    Q.  Did you ask any more questions about the
6  relationship between CPI and Vivint?
7    A.  No.
8    Q.  What else do you remember about your
9  conversation with the salesperson?
10    A.  I just remember he, like, was questioning me
11  about my CPI system, which one I had, and I'm, like,
12  didn't -- I told him I didn't know.  He wanted to come
13  in and look and I said no, you're not coming into my
14  home.  And then he said well, we can add to it and I
15  told him no, I was not interested in any more security
16  that I had what I needed.
17    Q.  Anything else before the conversation ended?
18    A.  No.  He just said if I knew of anyone else in
19  the neighborhood needing a security system that --
20    Q.  Did you give him --
21    A.  I didn't even keep his contact information.  I
22  think he just give me a card and I just threw it away.
23    Q.  Do you know what his name was?
24    A.  No.
25    Q.  Could you describe him for me to the best of

1  your memory.
2    A.  Maybe 20s, maybe early 30s.  He had a hat on.
3  I don't know and it was at night.  It was dark outside
4  I have a street light but it wasn't a lot.
5    Q.  Do you recall approximately what time it was
6  that he came to your door?
7    A.  It was a little after 7:00 p.m.
8    Q.  After -- when the conversation -- how did the
9  conversation with him end?
10    A.  I just firmly told him I did not want any more
11  security system options set up, that I was not
12  interested.
13    Q.  And did you see -- where did he go after he
14  left your house, did you see?
15    A.  He just went around -- I don't know.  I'm kind
16  of in a curb.  So there's still a lot of construction,
17  it's a fairly new development and so there wasn't any
18  more houses on the other side of me.  I was the last
19  house in the phase one and so he went around the road
20  but there was nothing back there so I don't know where
21  he went.
22    Q.  And have you seen him since then?
23    A.  No.
24    Q.  Did anything about your interaction with this
25  sales representative concern you after he had left?

1    A.  Could you repeat the question.
2    Q.  Did anything about your interaction cause you
3  any concern?
4    A.  The reason I have security is because I am
5  single and just him trying to -- wanting to come into
6  my home and I did not want to allow that.  That was
7  the only thing.  I had an e-mail at some point from
8  CPI about Vivint trying to take their customers or
9  something, that's when I called and reported that that
10  had happened to me as far as him trying to represent
11  himself as far as CPI.
12    Q.  So at some point you reached out to CPI and
13  described this interaction you had with this Vivint
14  representative?
15    A.  Yes, when I saw thE e-mail warning customers
16  about it.
17    Q.  If you know, have you had any communications
18  with any neighbors that had similar experiences?
19    A.  No.
20    Q.  And have you had any further communication or
21  interactions with anyone from Vivint since you had
22  this interaction with the sales member?
23    A.  No.
24        MR. ROHNER:  I don't have any further
25  questions.

1        EXAMINATION
2  BY MR. STEWARD:
3    Q.  Good morning, Ms. Garren.  My name is Matt
4  Steward, I'm an attorney who works for Vivint and I
5  just have some questions for you.  Are you doing okay
6  on time?  Do you have a deadline we're working against
7  or anything like that?
8    A.  This was our first week back to school so it's
9  all professional development teacher workdays and I'm
10  in the trainings today, mental health trainings.  So
11  I'm okay.
12    Q.  You don't have a class of second graders who
13  are watching this deposition right now?
14    A.  No.  They start school Monday.  We do have meet
15  the teacher this afternoon.
16    Q.  Okay.  My son started school on Monday so I
17  know all the different schools start at different
18  times.  Well, thank you for being here with us this
19  morning.  I just have a knew questions, not a lot.
20        Sounds like you don't remember when this
21  interaction with Vivint sales representative took
22  place?
23    A.  No.
24    Q.  Was it -- you don't recall the year?
25    A.  It wasn't a long time after I moved in there.

1 It was a new construction and, like I say, I closed on
2 it on September 26th of 2019 and it was -- I don't
3 know how long after that. It wasn't too far but I
4 know it was, like, late fall or early winter. I'm
5 thinking it was in 2019 or early --
6 Q. And this was a -- it sounds like a young man;
7 is that right?
8 A. Yes.
9 Q. And it sounds like he clearly identified
10 himself as being a representative of Vivint; is that
11 right?
12 A. He did say that he was with Vivint.
13 Q. Do you recall if he had a shirt with the Vivint
14 logo on?
15 A. Yes.
16 Q. Okay. Did he have a hat that also identified
17 him as being with Vivint?
18 A. Yes.
19 Q. Do you recall if he had a badge?
20 A. Yes, he was wearing a badge.
21 Q. Okay. And at some point CPI actually made, I
22 think, four attempts to reach you via telephone to
23 discuss this interaction, do you recall that? CPI
24 produced some audio recordings, four of those audio
25 recordings, where CPI customer service representatives

1 leaving you voice messages on your phone; do you
2 recall that?
3 A. I was getting messages but I told you, I've
4 been taken by scams and I just don't answer the phone
5 if I don't recognize it and I have a lot of things
6 going on I did not return those calls.
7 Q. Yep, I totally understand. And the fifth audio
8 recording was a CPI representative by the name of
9 Mike, I didn't -- I wasn't sure of his last, it
10 sounded like Sarantan (phonetic). Do you recall
11 having a conversation with a CPI customer service
12 representative by the name of Mike?
13 A. When I called I had a conversation with a man.
14 I don't recall the name that was --
15 Q. Okay. I'll represent to you that it was
16 actually CPI that called you on this instance as
17 opposed to you calling CPI. Is that inconsistent with
18 your recollection?
19         MR. ROHNER: Object to form.
20 A. I reached out to CPI after getting I think it
21 was an e-mail and it may be that I e-mailed and they
22 called me.
23 Q. Yeah. I'm sorry. Go ahead.
24 A. I just -- I know that I reached out that that
25 had happened as far as the representative saying it

1 was part of CPI.
2 Q. Right. Let me focus on that. You don't recall
3 when this took place which I totally understand. But
4 as you sit here today do you actually have a precise
5 recollection of the words that the Vivint sales
6 representative used?
7 A. He said that either they were part of CPI or
8 with CPI, I don't remember which one of those words.
9 But I know that it was just a red flag to me as far as
10 when he said that piece and I never heard of Vivint.
11 Q. Right. Okay. Do you recall when you called
12 or -- I'm sorry, when CPI called you and discussed
13 this did the CPI customer service representative,
14 Mike, asked you did he say that he was a partner with
15 CPI; do you recall that?
16 A. A part, a partner.
17 Q. Partner. Partner.
18 A. Partner.
19 Q. Yeah.
20 A. It could have been that.
21 Q. Well, when you say it could have been that my
22 question was do you recall the CPI representative
23 suggesting to you that the Vivint sales representative
24 told you he was a partner with CPI?
25 A. I do not recall the exact wording, but that's

1 what made me -- they were a part of CPI.
2 Q. A part of -- see, my recollection of your
3 conversation which I listened to you conversation
4 with CPI is the Vivint representative told you there
5 are some additional options that Vivint has that they
6 wanted to offer you and your response was I'm with
7 CPI, I'm happy with CPI, I don't need any additional
8 security; do you recall that?
9 A. Yes.
10 Q. Okay. And that you didn't tell the CPI
11 representative that the Vivint representative said he
12 was a partner or a part of CPI that he was there to
13 provide additional options; do you recall that?
14 A. He said -- I mean, before he said that he was
15 there to provide -- to have -- they had additional
16 options he said he was a part of or with CPI. I can't
17 remember the exact wording there.
18 Q. And how -- I mean, you don't recall when this
19 took place. Are you confident in your recollection
20 that he said he was part of CPI?
21 A. It was a wording like that but at the time I
22 did not, like, write it down or, like, anything like
23 that.
24 Q. Okay. So as you sit here today you don't have
25 a precise recollection of what the Vivint sales

1 representative said exactly; is that right?

2 A. No, just the meaning that I took them to mean

3 they were part of or with CPI.

4 Q. Okay. And sounds like you've been a CPI

5 customer since 2017. Prior to becoming a CPI customer

6 did you have a security system in your home?

7 A. No.

8 Q. And how did you become a CPI customer? Did you

9 reach out to CPI, did they reach out to you? How did

10 that take place?

11 A. They reached out to me.

12 Q. Okay. And how did they reach out to you?

13 A. It was a representative.

14 Q. Did that representative come to your door?

15 A. Yes.

16 Q. So he was an engaged in the same to direct home

17 marketing that the Vivint sales representative was

18 engaged in; is that right?

19 A. Yes. I just knew who this one was.

20 Q. No. Yeah, I understand. It looks like as part

21 of your CPI contract that you agreed to a financing

22 arrangement for the equipment CPI provided; is that

23 correct?

24 A. Yes.

25 Q. So part of your monthly payment, part of that

1 is for the monitoring and part of that is to pay for

2 the equipment that CPI financed; is that right?

3 A. Yes.

4 Q. Have you had any problems with the

5 functionality of your CPI system?

6 A. No.

7 MR. STEWARD: Those are all the questions

8 I have. Thank you so much for youR time this morning.

9 MR. ROHNER: I just have one quick follow

10 up.

11 RE-EXAMINATION

12 BY MR. ROHNER:

13 Q. Ms. Garren, you were just asked some questions

14 about your memory of the exact language used by the

15 representative. You recall those questions from

16 Mr. Steward?

17 A. Yes.

18 Q. As to whether you remember exactly what he

19 said. And do you remember exactly what he said?

20 A. No.

21 Q. But do you remember what you understood the

22 meaning of his statement whether it be a part of CPI

23 or with CPI; do you have any doubt as to your

24 understanding and your memory of the meaning of what

25 the representative said?

1 MR. STEWARD: Objection as to form.

2 Q. You can answer.

3 A. Okay. No. That was the total meaning that I

4 understood him saying. He was trying to get he on

5 board because they were connected to CPI.

6 Q. And sitting here today do you have any doubts

7 about your memory that he said words to meaning to you

8 that you were -- that there was a connection of some

9 sort between CPI and Vivint?

10 MR. STEWARD: Object as to form.

11 Q. You can answer.

12 A. No, I don't have any doubts about the meaning.

13 MR. ROHNER: Okay. That's all I have.

14 RE-EXAMINATION

15 BY MR. STEWARD:

16 Q. Just a couple follow ups. Apologies, Ms.

17 Garren. So I guess why -- the confusion I have is you

18 understood him to be saying he was part of CPI but you

19 told him you were happy with CPI, right?

20 A. Yes, I didn't need any additional options.

21 Q. Right. So you obviously understood he was with

22 a different company, correct?

23 A. Yeah. I just thought the two were -- I guess I

24 just thought it was all connected.

25 Q. Well, if you thought it was all connected why

1 would you tell him that you didn't want any Vivint

2 options, you were happy with your current provider,

3 CPI?

4 A. Well, for one thing I couldn't afford any more

5 security than I already paid. I was newly divorced

6 and I never been on my own before 'cause I'd been

7 married for so long so I just didn't want any more

8 cost and that I didn't need the extra options.

9 Q. Right. Do you recall -- you said you received

10 an e-mail from CPI; do you recall what that e-mail

11 said?

12 A. No. Just that they had had reports of Vivint

13 representatives passing themselves off as connected to

14 CPI.

15 Q. And did that e-mail, do you believe, influenced

16 your belief that this sales representative was doing

17 the conduct that CPI was warning you about?

18 A. Well, because he had made that connection to

19 CPI when I told him I had CPI.

20 Q. Right. Did he -- did this sales representative

21 have any anything on his -- in his uniform or on his

22 badge that had the words CPI on it?

23 A. No.

24 Q. Okay. And you told him -- you told the Vivint

25 sales rep that you were with CPI, right?

1  A. Yes.
2  Q. Okay. He didn't tell you oh, I know you're
3  with CPI, correct?
4  A. No.
5  Q. You're the one that told him you were a CPI
6  customer; is that right?
7  A. Yes.
8  Q. Prior to this deposition did anybody on behalf
9  of CPI, a lawyer or somebody else, reach out to you
10  about this deposition?
11  A. I had voicemail.
12  Q. From whom?
13  A. Pardon me?
14  Q. Someone left you a voicemail; is that right?
15  A. Yes.
16  Q. And who left you a voicemail?
17  A. I don't know.
18  Q. Okay. Well, I guess what I'm trying to
19  understand is what arrangements were made for you to
20  appear for this deposition today? Who made those
21  arrangements?
22  A. I -- well, there was the voicemail that I
23  didn't know if it was legit or not but then it was
24  when they showed up at my house with the papers for
25  the deposition last week I think --

1  Q. Okay. And who showed up --
2  A. -- that I realized this is real.
3  Q. And who showed up that your house?
4  A. I don't know, somebody delivering the papers.
5  Q. Okay. And was that a subpoena, if you know,
6  for this deposition?
7  A. Yes, it was a subpoena.
8  Q. Okay. Other than receiving the subpoena, did
9  you have any conversations with anybody about the
10  deposition here today? Did anybody interview you or
11  talk to you about the deposition?
12  A. No.
13  MR. STEWARD: Okay. Those are all my
14  questions. Thank you very much.
15  MR. ROHNER: I have nothing further.
16  Thank you so much for your time.
17  THE WITNESS: Thank you.
18  MR. STEWARD: Have a good day.
19  THE VIDEOGRAPHER: The time is 10:43 a.m.,
20  we're off the record.
21  (Off the record at 10:43 a.m.)
22  (Signature was waived.)
23
24
25

1  STATE OF NORTH CAROLINA
   COUNTY OF GUILFORD
2
3        REPORTER'S CERTIFICATE
4     I, Erin Ramsey, a Notary Public in and for the
5  State of North Carolina, do hereby certify that there
6  came before me on Thursday, the 19th day of August,
7  2021, the person hereinbefore name, in Henderson
8  County, who was by me duly sworn to testify to the
9  truth and nothing but the truth of his knowledge
10  concerning the matters in controversy in this cause;
11  that the witness was thereupon examined under oath,
12  the examination reduced to typewriting under my
13  direction, and the deposition is a true record of the
14  testimony given by the witness.
15     I further certify that I am neither attorney or
16  counsel for, nor related to or employed by, any
17  attorney or counsel employed by the parties hereto or
18  financially interested in the action.
19     IN WITNESS WHEREOF, I have hereto set my hand,
20  this the 27th day of August, 2021, according to the
21  emergency video notarization requirements contained in
22  G.S. 10B-25.
23
24
25  Erin Ramsey, Notary Public
   Notary Number: 201814200166

| & | 3 | allow  12:18 16:6 | becoming  22:5 |
|---|---|---|---|

**&**

**&**  2:3 4:9

**0**

**00504**  1:4

**1**

**1**  3:10 9:20 10:1
**10**  3:10
**10/4/2019**  10:12
**10:04**  2:25 4:5
**10:12**  9:13
**10:14**  9:15
**10:43**  27:19,21
**10b**  28:22
**1300**  2:10
**1660**  2:4
**17**  3:3
**17th**  2:4
**19**  1:21 2:24 11:15
  11:16
**19th**  4:5 28:6

**2**

**201**  2:9
**2017**  8:21 22:5
**201814200166**
  28:25
**2019**  10:23 11:15
  18:2,5
**2021**  1:21 2:24 4:5
  28:7,20
**20s**  15:2
**21602**  28:24
**23**  3:4
**24**  3:5
**25**  28:22
**26th**  18:2
**27th**  28:20
**285-5300**  2:5
**28732**  7:24

**3**

**303**  2:5
**30s**  15:2
**314**  7:23
**322-2516**  2:11
**3:20**  1:4

**4**

**4**  3:2
**450**  2:4

**5**

**52**  8:4

**7**

**7:00**  15:7

**8**

**801**  2:11
**80202**  2:5
**84111**  2:10

**a**

**a.m.**  2:25 4:5 9:13
  9:15 27:19,21
**acquisitions**  1:10
**action**  1:4 28:18
**add**  13:22,24,25
  14:14
**addition**  6:6
**additional**  12:14
  13:22,24 21:5,7,13
  21:15 24:20
**address**  7:22
**afford**  25:4
**afternoon**  17:15
**ago**  10:16
**agreed**  22:21
**agreement**  9:23
  11:1
**ahead**  19:23
**aide**  1:25
**al**  4:4

**allow**  12:18 16:6
**answer**  5:18,19
  6:2,11 7:3,13 19:4
  24:2,11
**answered**  11:23
**answering**  7:8
**answers**  5:10
**anticipate**  6:17
**anybody**  26:8 27:9
  27:10
**anyway**  12:10
**apologies**  24:16
**appear**  26:20
**appearances**  2:1
**approximately**
  15:5
**arrangement**
  22:22
**arrangements**
  26:19,21
**asked**  6:24 20:14
  23:13
**asking**  5:9 8:2
  12:16
**assume**  7:14,15
**attempts**  18:22
**attorney**  4:24 17:4
  28:15,17
**audible**  6:3
**audio**  18:24,24
  19:7
**august**  1:21 2:24
  4:5 28:6,20

**b**

**back**  9:16 12:22
  15:20 17:8
**background**  8:12
**bacon**  2:3 4:9
**badge**  13:13 18:19
  18:20 25:22

**becoming**  22:5
**beginning**  4:1
**behalf**  2:2,7,22 4:9
  4:12 26:8
**belief**  25:16
**believe**  7:18 11:8
  13:17 25:15
**best**  10:18 11:13
  14:25
**bit**  9:3 12:22
**board**  24:5
**bottom**  9:21 10:8
**break**  6:19,19

**c**

**called**  2:21 4:15
  16:9 19:13,16,22
  20:11,12
**calling**  19:17
**calls**  19:6
**card**  14:22
**cardwell**  7:23
**carolina**  1:2 2:23
  7:21,23 28:1,5
**case**  4:25 9:4
**cause**  16:2 25:6
  28:10
**certificate**  28:3
**certified**  4:16
**certify**  28:5,15
**changed**  9:3
**charlotte**  1:3
**city**  2:10
**civil**  1:4
**class**  17:12
**clear**  7:9
**clearly**  18:9
**closed**  18:1
**clyde**  2:9 4:12
**clydesnow.com**
  2:11

**colorado** 2:5
**come** 12:10 14:12
  16:5 22:14
**coming** 12:3 14:13
**commencing** 2:24
**communication**
  16:20
**communications**
  16:17
**companies** 11:3,6
**company** 13:16
  24:22
**computer** 1:25
**concern** 15:25
  16:3
**concerning** 28:10
**conduct** 25:17
**confident** 21:19
**confusion** 24:17
**connected** 24:5,24
  24:25 25:13
**connection** 24:8
  25:18
**construction**
  15:16 18:1
**contact** 14:21
**contained** 28:21
**contract** 3:10
  10:14,19,24 11:19
  22:21
**controversy** 28:10
**conversation** 6:8
  12:24 14:9,17
  15:8,9 19:11,13
  21:3,3
**conversations**
  27:9
**corporation** 1:10
**correct** 22:23
  24:22 26:3

**cost** 25:8
**counsel** 4:6 28:16
  28:17
**counterclaimants**
  1:13
**county** 8:9 28:1,8
**couple** 5:7 12:23
  24:16
**court** 1:1 4:7 5:11
  5:21 6:3
**courtroom** 5:5
**cpi** 1:6 3:10 4:3,10
  4:25 8:19,20,24
  9:22 10:15,21
  11:2 12:13,14
  13:3,4,5,6,7,8,11
  13:17,17,20 14:3,6
  14:11 16:8,11,12
  18:21,23,25 19:8
  19:11,16,17,20
  20:1,7,8,12,13,15
  20:22,24 21:1,4,7
  21:7,10,12,16,20
  22:3,4,5,8,9,21,22
  23:2,5,22,23 24:5
  24:9,18,19 25:3,10
  25:14,17,19,19,22
  25:25 26:3,5,9
**cs4749790** 2:17
**curb** 15:16
**current** 8:17,23,24
  25:2
**customer** 8:20,24
  9:24 13:3 18:25
  19:11 20:13 22:5
  22:5,8 26:6
**customers** 16:8,15
**cv** 1:4

**d**

**dan** 4:8,23
**daniel** 2:3
**dark** 15:3
**date** 4:4 10:9
  11:12
**dated** 10:11
**day** 12:3 27:18
  28:6,20
**deadline** 17:6
**defendant** 2:7
**defendants** 1:12
  4:13
**delivering** 27:4
**denver** 2:5
**deposed** 5:1
**deposition** 1:18
  2:21 4:2 5:3 6:9
  6:18 17:13 26:8
  26:10,20,25 27:6
  27:10,11 28:13
**depositions** 9:2
**describe** 11:21
  14:25
**described** 16:13
**development**
  15:17 17:9
**different** 13:19
  17:17,17 24:22
**difficult** 6:9
**direct** 22:16
**direction** 28:13
**discuss** 18:23
**discussed** 20:12
**discussion** 9:14
**district** 1:1,2
**division** 1:3
**divorced** 25:5
**document** 9:5,19
  9:22 10:4,7

**doing** 6:8 9:2 17:5
  25:16
**door** 12:3,5 13:1
  15:6 22:14
**doorbell** 11:23
  12:5
**doubt** 23:23
**doubts** 24:6,12
**drohner** 2:6
**dsc** 1:4
**duly** 4:15 28:8

**e**

**e** 16:7,15 19:21,21
  25:10,10,15
**early** 15:2 18:4,5
**easier** 5:20
**either** 13:7 20:7
**electronic** 10:10
**elementary** 8:8
**emergency** 28:21
**employed** 8:5
  28:16,17
**ended** 14:17
**engage** 13:15
**engaged** 22:16,18
**ensure** 7:7
**equipment** 22:22
  23:2
**erin** 1:25 2:22 28:4
  28:25
**especially** 5:15
**esquire** 2:3,8
**estimate** 11:13
**et** 4:4
**exact** 11:12 20:25
  21:17 23:14
**exactly** 22:1 23:18
  23:19
**examination** 4:18
  17:1 23:11 24:14
  28:12

**examinations** 3:1
**examined** 4:16
  28:11
**executed** 11:1
**exhibit** 3:9,10 9:19
  9:20 10:1
**exhibits** 3:8
**expect** 5:6
**expecting** 11:25
**experiences** 16:18
**extension** 13:11
**extra** 25:8

**f**

**f** 1:9,11
**fairly** 15:17
**fall** 18:4
**far** 16:10,11 18:3
  19:25 20:9
**fast** 10:6
**fdw** 1:4
**fifth** 19:7
**finally** 12:19
**financed** 23:2
**financially** 28:18
**financing** 22:21
**fine** 6:8
**finished** 5:17,17
**firmly** 15:10
**first** 4:15 9:1 10:8
  17:8
**flag** 20:9
**fletcher** 7:21,23
**focus** 20:2
**follow** 23:9 24:16
**follows** 4:17
**form** 13:9 19:19
  24:1,10
**forward** 5:9
**four** 18:22,24
**functionality** 23:5

**further** 13:15
  16:20,24 27:15
  28:15

**g**

**g.s.** 28:22
**garren** 1:18 2:21
  4:2,14,20,23 7:20
  8:3 9:18 17:3
  23:13 24:17
**gestures** 6:5
**getting** 19:3,20
**ginger** 1:18 2:21
  4:2,14 7:19
**give** 6:1 11:13
  14:20,22
**given** 28:14
**giving** 5:10
**go** 5:7 9:10 12:23
  15:13 19:23
**goal** 7:7
**going** 5:8,9,10,12
  5:14 6:17 7:1,2,14
  7:14 9:1,4 12:3
  19:6
**good** 4:11,20 6:16
  17:3 27:18
**grade** 8:10,11
**graders** 17:12
**great** 6:16
**ground** 5:8,25
**guess** 24:17,23
  26:18
**guilford** 28:1

**h**

**hand** 28:19
**happen** 6:25
**happened** 11:14
  12:7 16:10 19:25
**happy** 7:6,11 10:5
  21:7 24:19 25:2

**hardy** 2:3 4:9
**hat** 15:2 18:16
**head** 6:4
**health** 17:10
**heard** 5:11 20:10
**held** 9:14
**help** 5:8
**helpful** 10:6
**henderson** 8:9
  28:7
**hereinafter** 4:16
**hereinbefore** 28:7
**hereto** 28:17,19
**hold** 9:9
**home** 1:9,11,11
  4:4 8:24 14:14
  16:6 22:6,16
**house** 10:15 12:18
  12:25 15:14,19
  26:24 27:3
**houses** 15:18
**huh** 6:7

**i**

**identification** 10:2
**identified** 18:9,16
**important** 5:15
  6:2,12,13
**inconsistent** 19:17
**incorporated** 4:3
  4:4,10
**index** 3:1,8
**influenced** 25:15
**information** 14:21
**inside** 12:25
**installation** 9:23
**instance** 19:16
**interaction** 15:24
  16:2,13,22 17:21
  18:23
**interactions** 16:21

**interested** 12:21
  14:15 15:12 28:18
**interview** 27:10
**introduce** 4:6

**j**

**job** 2:17 6:16

**k**

**k** 1:9,11
**keep** 14:21
**kept** 12:16
**kind** 5:25 15:15
**knew** 13:18 14:18
  17:19 22:19
**know** 5:6 6:19
  7:10 9:5 11:5
  14:12,23 15:3,15
  15:20 16:17 17:17
  18:3,4 19:24 20:9
  26:2,17,23 27:4,5
**knowledge** 10:18
  12:2 28:9

**l**

**lake** 2:10
**lane** 7:23
**language** 23:14
**lastly** 6:22 7:5
**late** 11:15 18:4
**lawyer** 6:23,24
  26:9
**lawyers** 5:14
**leave** 12:19
**leaving** 19:1
**left** 15:14,25 26:14
  26:16
**legacy** 1:10
**legit** 26:23
**light** 15:4
**listened** 21:3
**little** 9:3,21 12:22
  15:7

live  7:20,21
lived  7:25
llp  2:3 4:9
logo  18:14
long  6:18 7:25
    8:20 11:18 17:25
    18:3 25:7
look  13:21 14:13
looked  8:14
looks  22:20
lot  5:20 6:6 15:4
    15:16 17:19 19:5

**m**

mail  16:7,15 19:21
    25:10,10,15
mailed  19:21
main  2:9
man  12:8 18:6
    19:13
mark  6:4
marked  3:9 9:20
    10:1
marketing  22:17
married  25:7
mas  2:11
matt  4:12 17:3
matter  4:3
matters  28:10
matthew  2:8
mean  13:8 21:14
    21:18 22:2
meaning  6:10 22:2
    23:22,24 24:3,7,12
meant  7:15
meet  17:14
member  16:22
memory  15:1
    23:14,24 24:7
mental  17:10
mentioned  4:24
    8:22

messages  19:1,3
mike  19:9,12
    20:14
mind  8:2
mixed  11:16
monday  17:14,16
monitoring  9:23
    10:15 13:23 23:1
monthly  22:25
morning  4:11,20
    17:3,19 23:8
mosaic  1:10
moved  8:24 10:16
    11:17 17:25

**n**

name  4:23 7:19
    9:24,24 10:11
    14:23 17:3 19:8
    19:12,14 28:7
names  11:5
need  6:18,20 7:10
    10:5 12:12 21:7
    24:20 25:8
needed  14:16
needing  14:19
neighborhood
    12:9 14:19
neighbors  12:9
    16:18
neither  28:15
never  5:5 20:10
    25:6
new  10:15 15:17
    18:1
newly  25:5
night  15:3
normal  6:8
north  1:2 2:23
    7:21,23 28:1,5
notarization  28:21

notary  2:22 28:4
    28:25,25
number  3:9 28:25

**o**

oath  28:11
object  19:19 24:10
objection  6:23 7:1
    7:2 13:9 24:1
objections  5:14
obviously  24:21
october  10:23
offer  21:6
oh  26:2
okay  6:20 7:3,4,12
    7:18 9:1 10:8,14
    10:23 11:10 13:12
    14:2 17:5,11,16
    18:16,21 19:15
    20:11 21:10,24
    22:4,12 24:3,13
    25:24 26:2,18
    27:1,5,8,13
old  8:2
opened  12:5
opposed  19:17
options  12:15
    13:22,24 15:11
    21:5,13,16 24:20
    25:2,8
orange  13:13,20
outside  12:24
    13:23 15:3

**p**

p.m.  15:7
page  3:2,3,4,5 10:9
paid  25:5
papers  26:24 27:4
pardon  26:13
part  12:14 13:4,5
    13:7,16 20:1,7,16

21:1,2,12,16,20
    22:3,20,25,25 23:1
    23:22 24:18
parties  28:17
partner  20:14,16
    20:17,17,18,24
    21:12
passing  25:13
pause  6:25
pay  23:1
payment  22:25
people  6:4
perfect  6:16
period  11:13
persistent  12:19
person  28:7
phase  15:19
phone  9:5 19:1,4
phonetic  19:10
phrase  6:10
piece  20:10
place  10:19,24
    12:24 17:22 20:3
    21:19 22:10
plaintiff  1:7,19 2:2
    2:22 4:15,25
plaintiff's  9:20
    10:1
plaintiffs  4:10
please  4:6 7:6
point  6:18 8:22
    16:7,12 18:21
points  12:23
potentially  5:13
precise  20:4 21:25
prior  12:2 22:5
    26:8
problems  23:4
proceeded  12:8
produced  1:25
    18:24

professional 17:9
pronounced 11:8
pronouncing 4:20
provide 21:13,15
provided 22:22
provider 8:17 25:2
public 2:23 8:9
28:4,25
pull 10:9
purpose 6:10

**q**

question 5:18,20
6:11,23 7:3,5,7,13
7:15 16:1 20:22
questioning 14:10
questions 5:9 7:2,8
14:5 16:25 17:5
17:19 23:7,13,15
27:14
quick 9:11 23:9

**r**

ramsey 1:25 2:22
5:11 28:4,25
rang 11:23 12:5
reach 18:22 22:9,9
22:12 26:9
reached 16:12
19:20,24 22:11
real 9:11 27:2
realized 27:2
reason 16:4
recall 11:12 15:5
17:24 18:13,19,23
19:2,10,14 20:2,11
20:15,22,25 21:8
21:13,18 23:15
25:9,10
received 25:9
receiving 27:8

recognize 10:4
19:5
recollection 19:18
20:5 21:2,19,25
record 7:9,14 9:10
9:13,14,16 27:20
27:21 28:13
recording 19:8
recordings 18:24
18:25
red 13:20 20:9
reduced 28:12
related 28:16
relationship 14:3
14:6
remember 14:8,10
17:20 20:8 21:17
23:18,19,21
rep 25:25
repeat 16:1
rephrase 7:6,10
reported 1:24 16:9
reporter 4:7 5:12
5:21 6:4
reporter's 28:3
reports 25:12
represent 4:24
16:10 19:15
representative
11:24 15:25 16:14
17:21 18:10 19:8
19:12,25 20:6,13
20:22,23 21:4,11
21:11 22:1,13,14
22:17 23:15,25
25:16,20
representatives
18:25 25:13
requirements
28:21

residence 8:15,23
residential 9:23
response 21:6
restroom 6:20
return 19:6
right 4:21 5:7 9:5
13:4 17:13 18:7
18:11 20:2,11
22:1,18 23:2
24:19,21 25:9,20
25:25 26:6,14
road 15:19
rohner 2:3 3:2,4
4:8,8,19,23 9:10
9:17 16:24 19:19
23:9,12 24:13
27:15
round 9:2
rule 5:25
rules 5:8

**s**

s 2:9
sales 15:25 16:22
17:21 20:5,23
21:25 22:17 25:16
25:20,25
salesperson 14:9
salt 2:10
sarantan 19:10
saw 16:15
saying 13:22 19:25
24:4,18
says 9:22
scams 13:14 19:4
scan 10:10
school 8:14 17:8
17:14,16
schools 8:9 17:17
screen 9:18
scroll 10:5

second 5:25 8:11
9:9 17:12
security 1:6 4:3,10
4:25 8:15,17 9:22
11:2,5 12:11,12,13
12:17 13:25 14:15
14:19 15:11 16:4
21:8 22:6 25:5
see 9:8,19,20,21,24
10:9,10,12 12:17
15:13,14 21:2
seen 15:22
selling 12:11
sense 5:23 6:14
13:11
separate 13:21
september 8:1
18:2
service 18:25
19:11 20:13
services 8:18
set 15:11 28:19
shaking 6:4
shb.com 2:6
shirt 18:13
shook 2:3 4:9
showed 26:24 27:1
27:3
showing 9:4
side 15:18
signature 10:11
27:22 28:24
signed 10:14 11:18
similar 16:18
single 16:5
sit 20:4 21:24
sitting 24:6
slowly 10:6
smart 1:9,11,11
4:4

**snow** 2:9 4:12
**solicitation** 11:22
**solicited** 11:2,6,10
**somebody** 26:9
  27:4
**son** 17:16
**sorry** 11:16 19:23
  20:12
**sort** 5:7 24:9
**sounded** 19:10
**sounds** 17:20 18:6
  18:9 22:4
**speaking** 5:11
**standing** 13:1
**start** 17:14,17
**started** 7:18 17:16
**state** 2:23 28:1,5
**statement** 23:22
**states** 1:1
**stenotype** 1:24
**steward** 2:8 3:3,5
  4:11,12 13:9 17:2
  17:4 23:7,16 24:1
  24:10,15 27:13,18
**sticker** 9:19,21
**strange** 13:19
**street** 2:4,9 15:4
**subpoena** 27:5,7,8
**sugarloaf** 8:8
**suggesting** 20:23
**suite** 2:4,10
**sure** 5:16 9:12
  13:18 19:9
**surmise** 8:12
**swear** 4:7
**sworn** 4:16 7:19
  28:8
**symbol** 13:13
**system** 8:15 12:12
  12:13,17 13:25
  14:11,19 15:11

22:6 23:5
**systems** 1:6 4:3,10
  4:25

## t

**take** 5:16 6:19
  16:8 22:10
**taken** 1:19,20 2:23
  13:14 19:4
**talk** 12:11,20
  27:11
**teach** 8:10
**teacher** 8:8 17:9
  17:15
**telephone** 18:22
**tell** 7:6 12:7,8
  21:10 25:1 26:2
**testified** 4:17
**testify** 28:8
**testimony** 28:14
**thank** 17:18 23:8
  27:14,16,17
**thing** 5:15 16:7
  25:4
**things** 5:8 6:7 9:3
  19:5
**think** 11:20 14:22
  18:22 19:20 26:25
**thinking** 13:18
  18:5
**thought** 13:10,10
  24:23,24,25
**threw** 14:22
**thursday** 1:21
  2:24 28:6
**time** 4:5 5:16 7:9
  9:2,12,15 11:13
  15:5 17:6,25
  21:21 23:8 27:16
  27:19
**times** 6:6,22 17:18

**today** 10:23 17:10
  20:4 21:24 24:6
  26:20 27:10
**today's** 4:4
**told** 12:9,12,15,17
  12:20 13:2 14:12
  14:15 15:10 19:3
  20:24 21:4 24:19
  25:19,24,24 26:5
**top** 9:22
**total** 24:3
**totally** 13:19 19:7
  20:3
**trainings** 17:10,10
**transcript** 1:25
**transcription** 1:25
**true** 28:13
**truth** 28:9,9
**try** 5:18
**trying** 16:5,8,10
  24:4 26:18
**twice** 11:17
**two** 8:1,23 10:16
  11:17 24:23
**typewriting** 28:12

## u

**uh** 6:7,7,7
**understand** 6:9
  7:6,8 13:8 19:7
  20:3 22:20 26:19
**understanding**
  23:24
**understood** 7:15
  7:16 23:21 24:4
  24:18,21
**uniform** 25:21
**united** 1:1
**ups** 24:16
**use** 6:3,20 9:5
**utah** 2:10

## v

**veritext** 9:2
**versus** 4:3
**video** 28:21
**videographer** 4:1
  9:12,15 27:19
**videotape** 4:2
**vivint** 1:9,11,11
  4:4 11:7,8,9,11,22
  14:3,6 16:8,13,21
  17:4,21 18:10,12
  18:13,17 20:5,10
  20:23 21:4,5,11,25
  22:17 24:9 25:1
  25:12,24
**voice** 19:1
**voicemail** 26:11
  26:14,16,22
**vs** 1:8

## w

**wait** 5:18 6:25
**waived** 27:22
**want** 12:16,22
  15:10 16:6 25:1,7
**wanted** 12:11,17
  14:12 21:6
**wanting** 16:5
**warning** 16:15
  25:17
**watching** 17:13
**wearing** 18:20
**week** 17:8 26:25
**went** 15:15,19,21
**western** 1:2
**whereof** 28:19
**winter** 18:4
**witness** 2:21 4:7
  4:15 5:3 27:17
  28:11,14,19

**witnesses** 6:6
**word** 6:13
**wording** 20:25
  21:17,21
**words** 6:3 20:5,8
  24:7 25:22
**work** 9:8
**workdays** 17:9
**working** 17:6
**works** 6:8 17:4
**write** 5:21 21:22
**writing** 6:1

**y**

**yeah** 13:5 19:23
  20:19 22:20 24:23
**year** 17:24
**years** 8:1,23 10:16
  11:16,17
**yellow** 9:21
**yep** 19:7
**young** 18:6

**z**

**zoom** 1:20 2:24
  5:15

# Federal Rules of Civil Procedure

## Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.