UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-CV-00504-FDW-DSC

| | |
|---|---|
| CPI SECURITY SYSTEMS, INC., <br><br> Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> VIVINT SMART HOME, INC., <br> f/k/a MOSAIC ACQUISITION CORP.; <br> LEGACY VIVINT SMART HOME, INC. <br> f/k/a VIVINT SMART HOME, INC., <br><br> Defendants and Counterclaimants. | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, Defendants Vivint Smart Home, Inc. and Legacy Vivint Smart Home, Inc. (together, "Vivint") move for summary judgment on Plaintiff CPI Security Systems, Inc.'s claim under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA").

Summary judgment on this claim is warranted because a misrepresentation-based UDTPA claim, such as the one CPI is asserting here, requires detrimental reliance by *the plaintiff*. Here, CPI's claim is premised on detrimental reliance by *third parties* (a handful of its customers). As the Fourth Circuit, the North Carolina Supreme Court, the North Carolina Court of Appeals, and the North Carolina Business Court have all made clear, only a *plaintiff's* reliance can support a misrepresentation-based UDTPA claim. A *third party's* reliance, by contrast, cannot.

For this reason, summary judgment on this claim (Count 3) is warranted.

## INTRODUCTION

This motion seeks narrow, targeted relief as to one claim, but the potential exposure of treble damages and attorneys' fees on this claim means that much is at stake for the parties, and the outcome of this motion could substantially narrow the issues for trial.

CPI's claim under the UDTPA is premised on alleged misrepresentations by Vivint to CPI's customers. As described more fully below, the UDTPA allows for misrepresentation-based claims, but only in carefully circumscribed instances: where plaintiffs *themselves* detrimentally rely on misrepresentations. For plaintiffs whose theory is that misrepresentations were made to *third parties*, no such claim is available.

Yet that is precisely the claim that CPI hopes to present to a jury here. CPI's UDTPA claim is based on alleged misrepresentations by Vivint sales representatives on the "doorsteps" of third-party CPI customers during door-to-door sales. That theory is necessarily a third-party reliance theory. After all, CPI does not contend— nor would there be any evidence to support the notion—that CPI *itself* relied to its detriment on any alleged misrepresentations. Instead, CPI seeks to argue to a jury that Vivint made misrepresentations to CPI's customers, and then, contrary to the controlling precedent discussed below, CPI hopes the Court will allow it to step into the shoes of these third parties so that it can seek treble damages against Vivint under the UDTPA.

That tactic is one that North Carolina law does not allow. Therefore, summary judgment on CPI's misrepresentation-based UDTPA claim (Count 3) is warranted.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. CPI asserts four claims in this action.[1] One of those claims is a claim under the UDTPA. Doc. 29 ¶¶ 68–78.[2]

2. CPI's claim under the UDTPA is based on alleged misrepresentations by Vivint's sales representatives to CPI customers—as CPI describes them, "false pitches" to these customers. *Id.* ¶¶ 73, 71.

3. CPI claims these alleged "false sales pitches [were] likely to, and did, unfairly deceive CPI's customers into believing that they were continuing and 'upgrading' their CPI services, when in fact, the agents were obliging them to new contracts for new services with Vivint." *Id.* ¶ 73.

4. CPI also claims Vivint sales representatives made misrepresentations to CPI customers about offers to "buy out" the CPI customer's existing contract with CPI. *Id.* ¶ 74.

5. According to CPI, the crux of this lawsuit is the alleged occurrence of misrepresentations that misled CPI customers into signing new contracts with Vivint, which, in turn, has allegedly damaged CPI based on its customers' detrimental reliance. *Id.* ¶¶ 27–30. CPI's complaint alleges the following:

---

[1] CPI asserts three other claims that are not the subject of this motion: a claim for unfair competition under the Lanham Act (Doc. 29 ¶¶ 50–59); a common law unfair-competition claim, (*id.* ¶¶ 60–67); and a claim for tortious interference (*id.* ¶¶ 85–92). CPI voluntarily dismissed a claim for trade slander. Doc. 37.

[2] To be clear, Vivint is not suggesting that the *truth* of these allegations is undisputed; quite the opposite. For purposes of this motion only, Vivint is simply describing what CPI has alleged as the basis of its UDTPA claim.

¶ 27. Vivint's sales agents target CPI customers in various ways, often by seeking houses with the distinctive CPI yard sign that CPI's customers post on their premises to deter burglars and trespassers.

¶ 28. Vivint's sales agents solicit CPI's customers in unannounced "cold" door-to-door sales visits to the customers' homes. At the beginning of these visits, and often throughout the sales encounter, *the agents use deceptive sales pitches* **that are intended to mislead (and that do mislead) CPI's customers into believing** *that Vivint represents CPI, or that Vivint is affiliated with CPI, that they are visiting at CPI's direction, that they work for the companies that made the CPI's alarm equipment installed in the customers' homes, or that Vivint has purchased or is purchasing CPI.*

¶ 29. Vivint's agents *use these pitches to induce CPI customers to believe that they have an existing business relationship with the agents, to trust them, and to grant the agents entry into their homes.* Once inside, having won the customers' trust by this deception, the agents coerce customers to sign Vivint contracts and install Vivint alarm systems in the *often mistaken belief* that they are receiving new CPI equipment from CPI, a CPI affiliate, or a CPI successor, or that Vivint is assuming the CPI account, or that the customer has no choice but to permit the transaction to go forward if he or she wishes to continue to have operational alarm-monitoring services. In reality, Vivint is converting the CPI account into a new Vivint account.

¶ 30. Vivint's deceptive practices injure CPI *by causing CPI's customers to listen to their deceptive sales pitches, allow Vivint's agents entry to their homes under false pretenses, sign Vivint contracts, uninstall their CPI alarm systems, replace these systems with Vivint's equipment, and terminate the customers' CPI contracts.*

*Id.* ¶¶ 27–30 (emphasis added).

6. CPI claims to be "the largest privately-led security provider in the Southeast, licensed in North Carolina, South Carolina, Tennessee, Georgia, Virginia, Maryland, Alabama and Florida." *Id.* ¶ 11.

7. CPI also alleges that Vivint "operates in most states, including North Carolina." *Id.* ¶ 25.

8. CPI alleges that the alleged misrepresentations have been made to "significant numbers" of CPI customers "across the Southeast." *Id.* ¶ 1. After more than nine months of fact discovery, however, CPI has deposed only seven CPI customers to support its claim: (1) Laura Ward; (2) Shantell Cheek; (3) Ginger Garren; (4) Joyce Mariso; (5) Johgre Hinton; (6) Janet Newmark; and (7) Larry Kodack. *See* Doc. 58, Exhibits 1–7 (corresponding to the numbered customers above).

9. Each of these seven customers testified about alleged interactions that occurred at their doorsteps during door-to-door sales, with Vivint sales representatives seeking to win their business by asking whether they were interested in an alarm services agreement with Vivint. *See* Doc. 58, Exhibit 1 at 10:10–18 (L. Ward); Exhibit 2 at 11:5–8 (S. Cheek); Exhibit 3 at 11:21–24 (G. Garren); Exhibit 4 at 19:10–19 (J. Mariso); Exhibit 5 at 8:5–8; 9:1–5 (J. Hinton); Exhibit 6 at 8:7–23) (J. Newmark); Exhibit 7 at 28:1–2 (L. Kodack).[3]

10. Each of the seven customers testified to their belief[4] that a Vivint sales representative made some form of a misrepresentation to them as part of a sales pitch, primarily with respect to an affiliation or connection between Vivint and CPI.

---

[3] Only the cited portions of these seven transcripts pertain to this motion, but for the sake of completeness, and given their reasonably short length, the full transcripts have been provided as attachments to the motion.

[4] Defendants do not concede or agree that the substance of the customers' deposition testimony is undisputed, accurate, or reliable. That is undoubtedly a disputed issue of fact. For purposes of this motion, however, Defendants acknowledge only that these customers have alleged certain statements in their testimony in the nature described here. Defendants reserve the right to—and intend to—contest the admissibility of that testimony.

*See* Doc. 58, Exhibit 1 at 10:19–25, 11:1–8 (L. Ward); Exhibit 2 at 11:5–13 (S. Cheek); Exhibit 3 at 12:13–15 (G. Garren); Exhibit 4 at 21:25, 22:1–12 (J. Mariso); Exhibit 5 at 10:12–19 (J. Hinton); Exhibit 6 at 12:19–25, 13:1–9) (J. Newmark); Exhibit 7 at 35:5–17 (L. Kodack).

11.     Unlike CPI's other claims, which do not allow for treble damages, CPI seeks treble damages—as well as its attorneys' fees—against Vivint on its misrepresentation-based UDTPA claim. Doc. 29 ¶ 78.

## GOVERNING STANDARDS

Summary judgment is appropriate when there is no genuine issue of material fact and judgment for the moving party is warranted as a matter of law. Fed. R. Civ. P. 56(c). Vivint, as the movant, must initially establish that there is no genuine issue of material fact, but once Vivint has made this threshold showing, CPI, as the non-movant, may not rest on allegations averred in its pleadings to survive summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Rather, CPI must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.*

Under this standard, "the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion." *Green v. Dye*, No. 5:17-CV-103-FDW, 2019 WL 1332376, at *4 (W.D.N.C. Mar. 25, 2019), *appeal dismissed sub nom.*, *Green v. Wilcox*, 788 F. App'x 207 (4th Cir. 2019). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

## ARGUMENT

I. **CPI's misrepresentation-based UDPTA claim fails because it is premised on a "third-party reliance" theory that North Carolina law does not allow.**

To survive summary judgment on a UDPTA claim, a plaintiff must make a *prima facie* showing of proximate cause—in other words, that the allegedly deceptive act "proximately caused injury to the plaintiff." *Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013) (emphasis added); *Drouillard v. Keister Williams Newspaper Servs., Inc.*, 108 N.C. App. 169, 172, 423 S.E.2d 324, 326 (1992).

For UDTPA claims premised on alleged misrepresentations, this proximate cause element requires plaintiffs to establish that they *themselves* relied on the alleged misrepresentations. *Bumpers*, 367 N.C. at 89, 747 S.E.2d at 226 ("[A] claim under section 75-1.1 stemming from an alleged misrepresentation does indeed require a plaintiff to demonstrate reliance on the misrepresentation in order to show the necessary proximate cause."); *see also, e.g., Caper Corp. v. Wells Fargo Bank, N.A.*, 578 F. App'x 276, 287 (4th Cir. 2014) (per curiam) (same); *DC Custom Freight, LLC v. Tammy A. Ross & Assocs., Inc.*, 273 N.C. App. 220, 234, 848 S.E.2d 552, 563 (2020) (same); *Bite Busters, LLC v. Burris*, No. 20 CVS 899, 2021 WL 1161316, at *10 (N.C. Super. Mar. 25, 2021) (same). Thus, North Carolina law "precludes a UDTPA claim . . . in which a third party's reliance caused damage to the plaintiff"— that is, a "[p]laintiff cannot base a theory of causation on the reliance of another party." *DC Custom Freight*, 273 N.C. App. at 234, 848 S.E.2d at 563 (summarizing *Bumpers*, 367 N.C. at 90, 747 S.E.2d at 227); *see also Bite Busters*, 2021 WL 1161316, at *10 (same).

As the North Carolina Supreme Court explained in *Bumpers*, "[s]uch a requirement has been the law of this state for quite some time." 367 N.C. at 88–89, 747 S.E.2d at 226 (internal citation omitted). Accordingly, the Fourth Circuit has noted that "[i]f the claim arises from the defendant's alleged misrepresentation, the plaintiff must also plausibly allege that *it* 'reasonabl[y] reli[ed]' on that misrepresentation." *Caper Corp.*, 578 F. App'x at 287 (quoting *Bumpers*, 367 N.C. at 88, 747 S.E.2d at 226) (emphasis added).

A plaintiff's burden of establishing detrimental reliance for a misrepresentation-based UDTPA claim is akin to a plaintiff's burden of satisfying the "detrimental reliance requirement under a fraud claim." *Bumpers*, 367 N.C. at 89, 747 S.E.2d at 227. Thus, "[i]n making this inquiry [the courts] examine the mental state of *the plaintiff*," not some third party or parties. *Id.* (emphasis added).

This inquiry asks the Court to determine whether the plaintiff can satisfy the requirement of "actual reliance" as well as "reasonable reliance"—the "two key elements" needed to establish "detrimental reliance" for a misrepresentation-based UDTPA claim. There, as well, the Court's inquiry is focused on the plaintiff, not third parties. This is because "actual reliance requires that *the plaintiff* have affirmatively incorporated the alleged misrepresentation into *his or her* decision-making process," and "[r]eliance is not reasonable where *the plaintiff* could have discovered the truth of the matter through reasonable diligence." *Id.* at 90, 747 S.E.2d at 227 (emphasis added).

For these reasons, a plaintiff seeking to pursue a misrepresentation-based UDTPA claim cannot establish proximate cause by pointing to *someone else's* reliance on the alleged misrepresentations. *See, e.g.*, *DC Custom Freight*, 273 N.C. App. at 234, 848 S.E.2d at 563 (affirming summary judgment on UDTPA claim on these grounds); *Bite Busters*, 2021 WL 1161316, at *10 (dismissing UDTPA claim to the extent it was premised on such a theory). Instead, as the North Carolina Court of Appeals held last year, "[i]t is *clear* . . . that *only the direct reliance of the plaintiff* is sufficient to support a [section 75-1.1] claim based on misrepresentation." *DC Custom Freight*, 273 N.C. App. at 234, 848 S.E.2d at 563 (emphasis added).

As the Court explained, "*Bumpers* is unequivocal in its language: actual reliance requires that *the plaintiff* have affirmatively incorporated the alleged misrepresentation into his or her decision-making process," and, therefore, "[a] plaintiff must prove that *he or she* detrimentally relied on the defendant's misrepresentation." *Id.* (internal citations and quotations omitted, emphasis in original). Thus, a plaintiff cannot bring a misrepresentation-based UDTPA claim when the alleged misrepresentation "was communicated only to [a] third party," rather than the plaintiff. *Id.* at 233–34, 848 S.E.2d at 563 (explaining further that North Carolina law "precludes a UDTPA claim . . . in which a third party's reliance caused damage to the plaintiff," because a "[p]laintiff cannot base a theory of causation on the reliance of another party").

The North Carolina Business Court likewise reaffirmed this rule five months ago. Applying the precedent above, the Business Court reaffirmed that a plaintiff

9

cannot pursue a misrepresentation-based UDTPA claim by relying on "allegations that [the defendant] misrepresented to *customers* his right to start a competing business and thereby *induced those customers* to take actions that harmed the [c]ompany." *Bite Busters*, 2021 WL 1161316, at *10 (emphasis added). The Business Court held that this type of third-party reliance theory would violate the North Carolina Supreme Court's "direct reliance" requirement in *Bumpers*, because the plaintiff "failed to allege that *the [c]ompany* [the plaintiff] relied on [the defendant's] alleged misrepresentation." *Id.* (emphasis added) (dismissing UDTPA claim to the extent it was premised on third-party reliance).

In sum, as the North Carolina Supreme Court "unequivocally" held in *Bumpers*, and as the Fourth Circuit, North Carolina Court of Appeals, and Business Court have all recognized, there is simply no such thing as third-party reliance for misrepresentation-based UDTPA claims.

Yet that third-party reliance theory is exactly what CPI hopes to pursue here. Despite more than nine months of discovery and 19 depositions by CPI, the only testimonial evidence of CPI's misrepresentation-based UDPTA claim consists of alleged misrepresentations by Vivint sales representations to *third party customers*. *See supra* at 2–5 (Statement of Undisputed Material Facts). This is unsurprising, because from the inception of this litigation, CPI has premised its UDTPA claim on allegations of misrepresentations to third-party customers. Doc. 29 ¶¶ 71, 73, 74, 76.

Naturally, the specific content or statements made within the seven purported "false sales pitches" (*id.* ¶ 73) may vary depending on the facts and circumstances of

10
Case 3:20-cv-00504-FDW-DSC    Document 59    Filed 09/09/21    Page 10 of 14

each individual customer interaction, because no two customer interactions will ever be identical. Yet it cannot be disputed that each interaction amounts to purported misrepresentations to *third parties*, with zero reliance by CPI, the only plaintiff in this case. Indeed, CPI admits as much: It affirmatively alleges that the crux of its case is that Vivint's alleged "false sales pitches [were] likely to, and did, unfairly deceive *CPI's customers* into believing [the alleged misrepresentations]." *Id.* ¶ 73 (emphasis added). Nowhere has CPI alleged, nor would the evidence support, a theory that CPI somehow relied on alleged statements about its own affiliation with Vivint, let alone that Vivint representatives made any "false sales pitches" at CPI's doorstep.

In sum, CPI is seeking to get to a jury on a third-party reliance theory that North Carolina's courts have held—twice in the past year alone—is "clearly" and "unequivocally" prohibited. *See DC Custom Freight*, 273 N.C. App. at 234, 848 S.E.2d at 563 (reaffirming that the rule is "clear"); *Bite Busters,* 2021 WL 1161316, at *10 (noting that the rule is "unequivocal"). CPI's third-party reliance theory for its UDTPA claim simply has no basis in North Carolina law.

## CONCLUSION

Vivint respectfully requests that the Court grant summary judgment in its favor on CPI's UDTPA claim (Count 3).

Respectfully submitted the 9th day of September, 2021.

**GREENBERG TRAURIG, LLP**  **CLYDE SNOW & SESSIONS, P.C.**

By: s/ Gregory W. Herbert  By: s/ Matthew A. Steward
Florida Bar No. 111510  Utah Bar No. 7637
herbertg@gtlaw.com  mas@clydesnow.com
Joshua R. Brown  Shannon K. Zollinger
Florida Bar No. 0826391  Utah Bar No. 12724
brownjr@gtlaw.com  skz@clydesnow.com
450 S. Orange Avenue, Suite 650  One Utah Center, 13th Floor
Orlando, FL 32801  201 South Main Street
Telephone: (407) 420-1000  Salt Lake City, UT 84111-2216
Telephone: (801) 322-2516

**Counsel for Defendants**

**Counsel for Defendants**

**POYNER SPRUILL LLP**

By: s/ Andrew H. Erteschik
Andrew H. Erteschik
N.C. State Bar No. 35269
aerteschik@poynerspruill.com
P.O. Box 1801
Raleigh, NC 27602-1801
Telephone: (919) 783-2895

**Local Counsel for Defendants**

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document complies with the length requirements set forth in paragraph 3(c) of the Case Management Order (Doc. 35).

This the 9th day of September, 2021.

s/ Andrew H. Erteschik
Andrew H. Erteschik

## CERTIFICATE OF SERVICE

I certify that I have electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of filing to all counsel and parties of record.

This the 9th day of September, 2021.

s/ Andrew H. Erteschik
Andrew H. Erteschik