UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:20-CV-00504-FDW-DSC

| | |
|---|---|
| CPI SECURITY SYSTEMS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> VIVINT SMART HOME, INC. *et al.*, ) <br> ) <br> Defendants. ) <br> ) | ORDER |

THIS MATTER is before the Court on Defendants' Motion for Partial Summary Judgment filed on September 9, 2021 (Doc. No. 58), wherein Defendants seek the Court's resolution in Defendants' favor on Plaintiff's claim under North Carolina's Unfair and Deceptive Trade Practices Act (the "**UDTPA**") (Count III).[1] For the reasons stated herein, Defendants' Motion is GRANTED IN PART to the extent Plaintiff's UDTPA claim relies solely on Defendants' misrepresentations and DENIED IN PART to the extent Plaintiff's UDTPA claim is based on its claims for unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) (the "**Lanham Act**") (Count I) and tortious interference with business relationships (Count V).

### I.  BACKGROUND

The relevant material facts in this matter are undisputed. Plaintiff CPI Security Systems, Inc. ("**Plaintiff**" or "**CPI**") is the largest privately-held security provider in the Southeast. (Doc. No. 62, p. 2). CPI provides security, automation, and smart-home services and equipment to its customers,

---

[1] The parties appear to agree that North Carolina law governs this dispute. Under the Erie doctrine, a federal court sitting in diversity applies (1) the substantive law of the state in which it sits and (2) federal procedural law. See Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78–79 (1938).

1

including 24-hour monitoring and emergency response services that relays critical information to first responders on a real-time basis. Id. Defendants Vivint Smart Home, Inc. and Legacy Vivint Smart Home, Inc. (collectively, "**Defendants**" or "**Vivint**") are a competing security provider, id., that operates in most states, including North Carolina, id. at 8.

In its Amended Complaint, Plaintiff asserts four claims against Defendants in this action: (1) Unfair Competition in Violation of the Lanham Act; (2) Common Law Unfair Competition; (3) Violation of the UDTPA; and (4) Tortious Interference with Business Relationships. (Doc. No. 29). Particularly, with respect to its UDTPA claim, Plaintiff asserts "Vivint has intentionally engaged in systemic behavior that constitutes deceptive and unfair trade practices in violation of" the UDTPA. Id. at 17. Plaintiff's complaint alleges, in pertinent part, the following:

27. Vivint's sales agents target CPI customers in various ways, often by seeking houses with the distinctive CPI yard sign that CPI's customers post on their premises to deter burglars and trespassers.

28. Vivint's sales agents solicit CPI's customers in unannounced "cold" door-to-door sales visits to the customers' homes. At the beginning of these visits, and often throughout the sales encounter, the agents use deceptive sales pitches that are intended to mislead (and that do mislead) CPI's customers into believing that Vivint represents CPI, or that Vivint is affiliated with CPI, that they are visiting at CPI's direction, that they work for the companies that made the CPI's alarm equipment installed in the customers' homes, or that Vivint has purchased or is purchasing CPI.

29. Vivint's agents use these pitches to induce CPI customers to believe that they have an existing business relationship with the agents, to trust them, and to grant the agents entry into their homes. Once inside, having won the customers' trust by this deception, the agents coerce customers to sign Vivint contracts and install Vivint alarm systems in the often mistaken belief that they are receiving new CPI equipment from CPI, a CPI affiliate, or a CPI successor, or that Vivint is assuming the CPI account, or that the customer has no choice but to permit the transaction to go forward if he or she wishes to continue to have operational alarm-monitoring services. In reality, Vivint is converting the CPI account into a new Vivint account.

30. Vivint's deceptive practices injure CPI by causing CPI's customers to listen to their deceptive sales pitches, allow Vivint's agents entry to their homes under false pretenses, sign Vivint contracts, uninstall their CPI alarm systems, replace these systems with Vivint's equipment, and terminate the customers' CPI contracts.

Id. at pp. 7-8. Plaintiff has deposed seven of its customers to support its claims and each of the seven customers testified to their belief that a Vivint sales representative made some form of a misrepresentation to them as part of a sales pitch, primarily with respect to an affiliation or connection with Vivint and CPI. (Doc. No. 62, pp. 8-9).

## II. STANDARD OF REVIEW

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party has the burden to show the court it must prevail because there are no genuine issues of material fact, Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), and the non-moving party must then demonstrate the existence of "evidence from which a jury might return a verdict in his favor." Anderson, 477 U.S. at 257. In making its decision, the Court must view the facts and all inferences drawn from the facts in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

## III. ANALYSIS

Because the relevant material facts are undisputed here, the Court's analysis focuses on whether Defendants are entitled to judgment as a matter of law. The UDTPA is codified at Section 75-1.1 of North Carolina's General Statutes, which declares unlawful "unfair or deceptive acts or practices in or affecting commerce." N.C.G.S. § 75-1.1(a). "Section 75-16 allows any individual who has been 'injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of [the UDTPA]' to bring a civil action". Bumpers v. Cmty. Bank of N.

Va., 747 S.E.2d 220, 226 (N.C. 2013) (quoting N.C.G.S. § 75-16).  In order to establish a *prima facie* claim under the UDTPA, a plaintiff must show: (1) the defendant committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff.  Id. (quoting Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001) (citation omitted) (internal quotation marks omitted).  "Occurrence of the alleged conduct, damages, and proximate cause are fact questions for the jury, but whether the conduct was unfair or deceptive is a legal issue for the court."  Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146 (4th Cir. 2012) (quoting Gilbane Bldg. Co. v. Reserve Bank of Richmond, 80 F.3d 895, 902 (4th Cir. 1996).

In its Motion for Partial Summary Judgment, Defendants focus only on the third element of Plaintiff's UDTPA claim, asserting Plaintiff's "misrepresentation-based UDTPA claim… requires detrimental reliance by *the plaintiff*" to show proximate cause.  (Doc. No. 59, p. 1) (emphasis in original).  In support of this assertion, Defendants point to two recent cases, Bite Busters[2] and D C Custom Freight[3], which both rely heavily on the Supreme Court of North Carolina's analysis in Bumpers.  The Bumpers Court analyzed whether an action for *misrepresentation* under the UDTPA requires reliance by the plaintiff borrower who accused a lender of collecting a fee for a discounted loan when the borrow did not receive a discounted loan.  Bumpers, 747 S.E.2d 220.  Overruling both the trial and appellate courts, the Bumpers Court held that "a claim under section 75-1.1 stemming from an *alleged misrepresentation* does indeed require a plaintiff to demonstrate reliance on the misrepresentation in order to show the necessary proximate cause."  Id. at 226 (emphasis added).  Notably, in Bumpers, however, the Court discussed that the North Carolina legislature has created exceptions to this prevailing rule requiring reliance by the plaintiff, but that such exceptions were not applicable in that case.  Id. at 229.

---

[2] Bite Busters, LLC v. Burris, 2021 WL 1161316 (N.C. Super. Mar. 25, 2021).
[3] D C Custom Freight, LLC v. Tammy A. Ross & Assocs., Inc., 848 S.E.2d 552 (N.C. Ct. App. 2020).

In D C Custom Freight, the Court of Appeals of North Carolina expanded Bumpers and held that claims for *misrepresentations* and false advertising of policy contracts in the business of insurance pursuant to N.C.G.S. § 58-63-15 requires a showing of *plaintiff's* reliance on such misrepresentation. D C Custom Freight, 848 S.E.2d 552. The plaintiff's UDTPA claim in D C Custom Freight was based on a misrepresentation to a third-party by the defendant insurer regarding what was covered under the plaintiff's policy. Id. at 560. Under N.C.G.S. §58-63-15, "[m]isrepresenting the terms of an insurance policy is, as a matter of law, a deceptive act". However, because such claim is based on misrepresentation, North Carolina law requires that a plaintiff "show that it relied upon the misrepresentation in order to show causation—the third element of a UDTP claim under Section 75-1.1." Id. Reciting Bumpers, the Court later clarified "*Bumpers* is unequivocal in its language: 'actual reliance requires that *the plaintiff* have affirmatively incorporated the alleged misrepresentation into his or her decision-making process.'… 'A plaintiff must prove that *he or she* detrimentally relied on the defendant's misrepresentation.'" Id. at 563 (quoting Bumpers, 747 S.E.2d at 227) (emphasis in original). Of significance here, however, N.C.G.S. § "58-63-15 is a regulatory statue, enforced by the Commissioner of Insurance, and does not create a private cause of action". Id. at 559.

In Bite Busters, the North Carolina Business Court clarified Bumpers. In Bite Busters, a previous employee allegedly violated an Employee Confidentiality, Non-Compete, and Invention Assignment Agreement and unfairly competed against his previous employer, the plaintiff. See Bite Busters, 2021 WL 1161316. The plaintiff's UDTPA claim was "based on a variety of alleged misconduct, including that [the defendant] (i) misrepresented to customers that he had the right to start a competing business…, (ii) us[ed] the confidential trade secret information that belongs to [the plaintiff]…, and (iii) falsely represented to a [plaintiff] customer that [the plaintiff] used improper

5

applications that were dangerous to people and to pests… and chemicals that were harmful to animals and to plants…" Id. at *9 (citing Compl., Id.). As an initial matter, and of particular importance here, the Court noted that the plaintiff's claims for tortious interference, misappropriation of trade secrets, and breach of contract were dismissed for failure to state a claim. Accordingly, the Court found "the failure of those claims… [wa]s fatal to the [plaintiff's] claim under Chapter 75". Bite Busters, 2021 WL 1161316 at *9.

Thereafter, the Court analyzed the plaintiff's UDTPA claim to the extent it was based on defendant's misrepresentations to customers that he had a right to start a competing business. Citing Bumpers, the Court found North Carolina appellate courts had made clear that a misrepresentation-based UDTPA claim requires that plaintiff show reliance on the misrepresentation. Id. at 10 (citing Bumpers, 747 S.E.2d 220). Accordingly, the Court dismissed the plaintiff's UDTPA claim only to the extent it was based on the defendant's misrepresentation to the plaintiff's customers about his right to start a competing business. Id.

The Court then stated:

> The Court reaches a different conclusion, however, concerning [the plaintiff's] allegation that [the defendant] falsely stated to a customer that the [plaintiff's] chemicals and applications caused harm to plants, animals, and humans… Such alleged statements, if false, impeach the Company in its trade or business and can support a claim for slander *per se*… Our courts have recognized that slander *per se* may constitute an unfair trade practice under section 75-1.1…
>
> Accordingly, because the Court concludes that the [plaintiff] has pleaded sufficient facts which, if proven, would support a finding that [the defendant] engaged in an unfair or deceptive act or practice "in or affecting commerce" that proximately caused injury to the [plaintiff] by defaming the [plaintiff] in its trade or business, [the defendant's] motion to dismiss [the plaintiff's] UDTPA claim based on these allegations should be denied.

Id. Thus, the Bite Busters Court appears to have clarified that a viable, distinct cause of action that has been recognized as, or may constitute, an unfair or deceptive trade practice and is not solely reliant on a defendant's misrepresentations, such as tortious interference, misappropriation

6

of trade secrets, and breach of contract, may serve as the basis for a UDTPA claim without requiring the plaintiff show *plaintiff's* reliance on a misrepresentation to establish proximate cause.

Plaintiff asserts in its opposition brief that Plaintiff's "claims for common law trade slander and trademark infringement under the Lanham Act are each a viable and independent basis for a claim under the UDTPA." (Doc. No. 62, p. 2). Plaintiff appears to have forgotten that it voluntarily dismissed its Trade Slander/Commercial Disparagement claim (Count IV) on December 10, 2020. See Doc. No. 37. However, based on the foregoing, the Court agrees with Plaintiff that its claim for unfair competition under the Lanham Act (Count I) may serve as a viable and independent basis for a claim under the UDTPA. The Court also finds that Plaintiff's claim for tortious interference with business relationship (Count V) may serve as viable and independent basis for its UDTPA claim.

North Carolina courts have observed there is "[n]o precise definition of the term 'unfair methods of competition' as used in G.S. 75-1.1." Harrington Mfg. Co., Inc. v. Powell Mfg. Co., Inc., 248 S.E.2d 739, 746 (N.C. Ct. App. 1978). However, "[t]he 'passing off' of one's goods as those of a competitor has long been regarded as unfair competition," as such "passing off" amounts to misappropriation of benefits which flow from the quality of a competitor's product. Id.

In Belk, Inc. v. Meyer Corp. U.S., 679 F.2d 146 (4th Cir. 2012), the Fourth Circuit opined defendant engaged in unfair and deceptive trade practices as a matter of law where the jury found defendant distributed, marketed, and sold a private-label cookware line that was "deceptively similar" to plaintiff's cookware line after defendant received product information, as well as images and samples of plaintiff's line, and defendant purchased a cookware design from a third party that was "deceptively similar" to plaintiff's line, even after learning that the proposed designs sold by the third party were being sold by plaintiff. Belk, 679 F.2d 146 at 166; See also Intercollegiate Women's Lacrosse Coaches Assoc. v. Corrigan Sports Enterprises, Inc., 505 F. Supp. 3d 570, 590 (M.D.N.C.

2020) (quoting Camco Mfg., Inc. v. Jones Stephens Corp., 391 F. Supp. 3d 515, 528 (M.D.N.C. 2019) ("North Carolina's UDTPA prohibits the same type of activity that the Lanham Act prohibits because trademark infringement and false designation undercut the mark holder's goodwill and the consumers' ability to distinguish among products").

It is therefore well settled in North Carolina that unfair competition under the Lanham Act, as a misappropriation of benefits which flow from the quality of a competitor's product, may constitute unfair or deceptive practices under the UDTPA.[4] See Harrington, 248 S.E.2d 739. Accordingly, Defendants are not entitled to judgment as a matter of law as to Plaintiff's UDTPA claim to the extent Plaintiff basis its claim on Defendants' violations of the Lanham Act and common law unfair competition.

Further, in accordance with Bite Busters, Plaintiff's claim for tortious interference with business relationships (Count V) may serve as an independent basis for its UDTPA claim. See Bite Busters, 2021 WL 1161316 at *9. Thus, summary judgment in favor of Defendants as to Plaintiff's UDTPA claim is also not appropriate to the extent Plaintiff asserts that Defendants engaged in an unfair or deceptive act or practice in or affecting commerce that proximately caused injury to Plaintiff by tortiously interfering with its business relationships. See Id. at *10.

## IV. CONCLUSION

---

[4] The court notes Defendants assert that the Fourth Circuit Court of Appeals, in Variety Stores, Inc. v. Walmart Inc., 852 F. App'x 711 (4th Cir. 2021), rejected an argument that a Lanham Act violation is an automatic UDTPA violation. See Doc. No. 65, p. 4 (citing Variety Stores, 852 F. App'x at 726) (quoting Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 805 (4th Cir. 2001) ("[T]o read the [UDTPA] to create per se liability for violation of federal law would expand its scope beyond the apparent intent of the North Carolina legislature"). Defendants' reliance on Variety Stores is misplaced. Here, in contrast to the facts in Variety Stores, Plaintiff does not merely intend to rely on its claim under the Lanham Act to create per se liability under the UDTPA. Instead, Plaintiff merely argues, and the Court agrees, that Plaintiff's claim for unfair competition under the Lanham Act may satisfy the first element of its UDTPA claim, "the defendant committed an unfair or deceptive act or practice", such that it is not required to show Plaintiff's reliance on Defendants' misrepresentations to establish proximate cause. Bumpers, 747 S.E.2d at 226. In such event, both the second and third elements of Plaintiff's UDTPA claim must still be satisfied to establish liability under the UDTPA, which Plaintiff does not object to.

IT IS THEREFORE ORDERED that Defendants' Motion for Partial Summary Judgment (Doc. No. 59) is GRANTED IN PART to the extent Plaintiff's UDTPA claim relies solely on Defendants' misrepresentations and DENIED IN PART to the extent Plaintiff's UDTPA claim is based on its claims for unfair competition in violation of the Lanham Act (Count I) and tortious interference with business relationships (Count V).

IT IS SO ORDERED.

Signed: November 9, 2021

Frank D. Whitney
United States District Judge