UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-00504-FDW-DSC

CPI SECURITY SYSTEMS, INC.,

                                    Plaintiff,

        v.

VIVINT SMART HOME, INC. f/k/a
Mosaic Acquisition Corp.; and LEGACY
VIVINT SMART HOME, INC. f/k/a
Vivint Smart Home, Inc.,

                                    Defendants.

**DEFENDANTS' DEPOSITION
DESIGNATIONS**

Defendants Vivint Smart Home, Inc. and Legacy Vivint Smart Home, Inc.

(collectively, "Vivint") hereby designate the following deposition testimony for use in

Vivint's case in chief and/or rebuttal.

**Objections Key**

A:      authenticity
C:      confidential
F:      foundation
FM:     form (argumentative, asked and answered, compound, leading, hypothetical,
        narrative, vague, misstates testimony, calls for legal conclusion)
H:      hearsay
IA:     inadmissible
IC:     incomplete testimony
IR:     improper refreshing of recollection
MIL:  subject of motion in limine
R:      relevance
UP:     unduly prejudicial
NR:     nonresponsive
NAR:  narrative response
MTS:  subject of motion to strike
P:      privileged

1

NP:    not produced in discovery
S:      improper summary
CU:    cumulative/repetitive
DD:    *see* Deposition/Discovery Designation Objections (incorporated by reference)
PBA: prior bad acts/inadmissible character evidence
SD:    settlement discussions

## 1.    Alline Maxwell, 08/30/2021

CPI objects to the entirety of Ms. Maxwell's deposition as inadmissible hearsay. Ms. Maxwell resides at 1501 Grovewood Drive, Charlotte, NC 28208, which is less than seven miles from the courthouse for this trial. As such, Ms. Maxwell (a non-party) is not considered "unavailable" under FRCP 32(a)(4) and FRE 804(a). In addition, Ms. Maxwell was unable to appear by video at her deposition, rendering deposition testimony by phone even less desirable than live testimony because the witness's demeanor cannot be observed by the jury, the attorneys were not able to display exhibits for the witness to observe during her testimony, and the attorneys experienced numerous problems clearly communicating with the witness (who is elderly). Relatedly, as noted in objections below, certain exhibits referenced during questioning by Vivint's counsel were not accurately described over the phone such that any use of the designated testimony would be unfairly prejudicial when the witness could not even view the documents herself. Additionally, CPI objects to the entirety of the testimony of Ms. Maxwell as irrelevant. Vivint has dismissed its counterclaims against CPI. Therefore Ms. Maxwell's testimony is not probative of the issues still in dispute. CPI counter-designates the testimony below expressly subject to these objections in the event that they are overruled and the deposition testimony is permitted.

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 5:12-18 | Intro | | | |
| 6:15-24 | Intro-work experience | | | |
| 8:8-19 | Lives alone - current CPI customer | | | |
| 9:11-18 | Had a contract with Brinks when she signed one with CPI | R, UP | | |
| 10:2-16 | CPI rep came to her home and she let him know she had Brinks – signed contract with CPI anyway – October of 2019 | R, UP | | |

2

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 11:19-20:13 | Was not, and still is not, happy with CPI equipment-it does not work. Vivint rep came – did nothing to make her believe he was with CPI. Wanted to switch due to bad equipment and controversy-her neighbor told her about the controversy. She signed a Vivint contract and asked CPI to cancel her CPI contract – CPI did not.  CPI came to her home and told her she had no contract with Vivint because Vivint has no license to operate in NC and that she would have to pay 5k to cancel the CPI contract. CPI also said Vivint would not buy out her contract, it was too much.  She reiterated the equipment never worked; CPI still would not cancel.  She was happy with Vivint equipment and Vivint service and she had more equipment with Vivint, and it worked. She will not renew with CPI once her contract runs out | R, UP, H, MIL (comments by neighbor at 13:3-13) | | |
| 22:2-12 | Exhibit 2 | | | |

Case 3:20-cv-00504-FDW-DSC   Document 81-4   Filed 12/10/21   Page 3 of 47

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| | It was easy to cancel the Vivint contract | | | |
| 23:4-24:1 | Vivint came to remove the equipment, happy with their service. CPI reinstalled and the equipment does not work again. | | | |
| 24:8-15 | CPI equipment works only off and on | | | |
| | Intro of counsel | | 25:1-5 | |
| | Contact by Vivint's counsel with witness prior to testimony | | 26:9-16 | IC |
| | Same | | 27:10-20 | IC |
| | Changed from Brinks to CPI in October 2019 because she was interested in the newer technology that CPI offered | | 30:4-17 (omitting objection) | |
| | Date of Visit by Vivint rep | | 41:6 (starting at "I want to turn now...")-41:25 | R |
| 43:3-15 | When Vivint came, she was just waiting for anyone to come because she was not happy with CPI | | | |
| | She explained to the Vivint rep that she was in a contract with CPI when the rep came to her home. The Vivint rep told her that they could buy out her CPI contract. She believed they would send her $1,000 to pay off the | | 43:16-47:10 (omitting objections) | IC |

4

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| | contract, but she was not sure how much she still owed on her CPI contract. | | | |
| | Signed an electronic contract with Vivint | | 48:10-16 | |
| | Contract with Vivint was for $50 per month | | 48:23-49:3 | |
| | Stopped paying CPI after she signed a contract with Vivint. She knew that she still owed CPI on her contract with them. | | 49:11-50:14 | FM |
| 50:15-25 | Vivint installed the equipment the same day she signed the contract-techs were in the area working. | | | |
| 51:4-12 | Vivint equipment worked fine the entire time she had it | | | |
| | Got a bill from CPI after she stopped paying CPI. The amount of the bill was for the amount owed on her CPI contract. She called both Vivint and CPI because she was surprised she was getting billed by both companies. When she talked with Vivint about the situation, they told her that they couldn't pay off her CPI contract because it was too much money. | | 51:13-53:23 (omitting objections) | FM |

5

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| | She never received the $1,000 from Vivint that had been promised to her when she signed up with Vivint to buy out her CPI contract. | | 54:12-20 (omitting objections) | FM, IC |
| | She never received any money from Vivint as promised. Thus she never sent any money to CPI to cancel her contract. | | 55:13-56:12 | FM, IC |
| 56:13-25 | She only went back to CPI because they would charge her 5k to leave – equipment still does not work | | | |
| | After switching back to CPI, CPI sent out a technician to reinstall her equipment | | 57:1-19 | |
| | The only issue she's had with the CPI system is that the doorbell didn't work. CPI helped her fix that. The alarm itself works fine. She's had some problems with the video camera, but she also has had general issues with the internet at her home (like connecting to the deposition by Zoom) because she does not know how to work it. She has a smart phone and | | 59:3-62:25 (omitting objections) | FM, H |

6

Case 3:20-cv-00504-FDW-DSC Document 81-4 Filed 12/10/21 Page 6 of 47

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| | controls her CPI system from it. | | | |
| | She changed back to CPI because she didn't want to be paying two contracts for security. | | 64:12-17 (omitting objections) | IC |
| 67:15-23 | CPI charged her for equipment she does not, and never did, have | UP. The questioning is in reference to an exhibit the witness cannot see because she is connected by phone. The questions wrongly suggest that CPI charged Ms. Maxwell for something that she was not actually charged for. The exhibit being referenced shows that Ms. Maxwell was not charged for a garage door controller | | |
| 69:23-70:12 | Same | UP. Same objections as above. The | | |

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| | | questioning completely misstates what the document actually says | | |
| 71:1-74:20 | Exhibit 4 – CPI cancellation notice. CPI contacted here to come pick up the equipment – that was a lie, once they were inside, they told her she could not cancel unless she paid. They also said Vivint could not operate in NC and would not buy out her CPI contract. She felt lied to. | R, UP | | |
| 75:10-22 | She had to sign a second cancellation form for CPI | R, UP | | |
| | She never got the buyout that was promised from Vivint. | | 75:23-76:18 | IC |
| | Same. | | 77:3-19 | IC |
| 79:4-80:3 | She left CPI for Vivint because CPI's equipment did not work and because of the racial comment which made her upset | R, UP, MIL | | |
| 80:15-20 | Never had a problem with Vivint's equipment and liked it better then CPI's. | | | |
| | At the time she called Vivint to discuss being locked into two | | 82:6-17 (omitting objections) | FM, IC |

8

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| | different contracts, she had not received any money from Vivint for the buyout. She never did. | | | |

### 2. Eric Bryan Schachner, 09-24-2021

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 6:7-6:15 | With CPI 13.5 years; CFO for the past 7 years | | | |
| 9:24-10:3 | Understands he is designated as a CPI corporate rep. for this depo. | | | |
| 18:11-18:14 | CPI has never conducted an economic impact due to COVID | | | |
| 24:17-24:22 | CPI has never conducted an economic impact or loss to CPI based on categories it claims are reasons for customers' cancellations | | | |
| 25:23-26:2 | Not aware of any surveys examining the likelihood of confusion between CPI and Vivint. | | | |
| 27:10-27:15 | CPI gross revenues have increased every year over the past 4 years | | | |
| | | | | |

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 28:24-29:4 | From 2019-2020 operating income increased from 2.8MM to 9.9MM | | | |
| 29:11-29:17 | Net income increased from 2019-2020 by 10MM | | | |
| 44:18-45:7 | Covid-19 did not decrease inside sales nor CFL – but did lower outside sales | | | |
| 51:7-51:19 | CPI does not know the number of accounts lost as a result of alleged activity of Vivint. | [Objection at line 14 should be omitted] | | |
| 53:17-54:9 | CPI does not have a comprehensive system to track the Alleged Conduct nor DSP | | | |
| 55:17-56:3 | CPI has no reliable basis for identifying the total Cancelled Accounts. | | | |

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 56:13-57:7 | A detailed calculation of CPI's claimed losses/damages requires an expert | UP, FRE 106. The portion of the interrogatory response quoted by questioning counsel is not the entire response. The remainder of the response refers to CPI's initial disclosures. As such the questioning is confusing and misleading. *If 57:8-58:1 is also included, CPI withdraws its objection.* | | |
| | Witness clarifying answer to prior question | | 57:8-58:1 | |
| 66:1-66:12 | CPI has not, and can never, conduct a valuation of Canceled Accounts. | | | |

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 69:19-71:1 | CPI cannot identify the lost revenue of any of the Cancelled Accounts-need expert analysis. | | | |
| 72:19-73:20 | CPI has not undertaken any process to quantify the economic impact of:<br><br>• 2020 controversy<br>• Cancellations due to any competition<br>• Cancellations due to Vivint | | | |
| 73:25-74:14 (objection omitted) | CPI has not undertaken any process to quantify the economic impact of Vivint's alleged DSP. CPI has taken depositions in this case of some of its customers. | | | |
| 75:5-75:10<br><br>[omitting objection] | CPI deposed these customers for DSP reason. | | | |
| 76:10-77:8 | He is not familiar with the names of any of the customers deposed. | | | |

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 79:21-80:8 (objections omitted) | He cannot name even 1 customer that switched to Vivint as a result of DSP. | UP. Outside of the scope of the 30(b)(6) topics for this witness. The notice did not list "the identities of CPI customers who switched to Vivint." It is unfairly prejudicial to attempt to offer testimony on a topic that was not properly noticed by Vivint. | | |

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 82:21-83:8 | Corporate office of Bojangles cancelled its contracts with CPI due to BLM controversy. | F, H, R, UP, MIL. Again, this line of questioning is outside of the scope of the 30(b)(6) topics. The line of questioning is not relevant to any issue in dispute. CPI does not allege that Bojangles terminated its relationship because of any deceptive sales practice by Vivint. | | |
| 83:12-84:9 | Vivint is not responsible for losses from the Bojangles cancellations – no loss calculations have been made as to the economic impact of the Bojangles cancellations | Same as above | | |

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 84:23-85:11 | CPI is not claiming losses from the controversy nor is it claiming loses from any customer switching to ADT | Same | | |
| 89:7-11<br><br>89:17-89:24 | CPI did not run any analysis on the loses from the controversy | Same | | |
| 93:9-12 | CPI has taken no steps to increase diversity/inclusion/ etc. | R, UP, MIL. Steps taken by CPI to increase diversity, equity and inclusion have nothing to do with any issue in dispute. | | |

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 96:18-97:9 (objection omitted) | Many large companies cancelled contracts due to controversy | R, UP, MIL. Companies cancelling sponsorships with CPI for reasons other than Vivint's misconduct is not relevant to any issue in dispute. CPI does not allege that it lost sponsorships due to Vivint. | | |
| 100:3-100:23 (objection omitted) | He does not believe loss of these major companies hurt CPI's brand/goodwill. | UP. Outside of the scope of the 30(b)(6) topics for this witness. | | |
| 101:5-101:14 | CPI did not run any analysis based on loss of these large company cancellations. | UP. Outside of the scope of the 30(b)(6) topics for this witness. | | |
| 102:3-102:10 | No monetary quantification of CPI's brand has ever been done | | | |

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 103:7-103:16 (objection omitted) | ..including as a result of the actions at issue in this case | | | |
| 105:11-105:15<br><br>106:2-106:7 (objection omitted) | No document exists that quantifies the damage to CPI's brand based on the alleged conduct of Vivint. | | | |
| | [Answer to question designated by Vivint at 105:11-15.] CPI spends between $15 and $20 million a year on marketing, a large component of which is brand. | | 105:17-106:1 | R |

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 107:19-108:4 | CPI did not measure damage to its brand after the BLM controversy | R, UP, MIL. The BLM "controversy" is not at issue. Any damage to CPI's brand relating to that controversy is irrelevant; CPI does not allege that it suffered any losses due to Vivint's conduct in relation to that issue. It is not relevant to the damages actually asserted relating to Vivint's conduct actually at issue. | | |
| 109:12-110:6 (objection omitted) | BLM controversy did not damage brand – CPI lost 2300 to 2400 customers because of it | Same. | | |

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 111:3-111:15 | Losses from controversy were labeled as "social media" - no valuation done on these losses | Same | | |
| 112:21-113:9 (objection omitted) | Value of any account is 60 times the RMR multiple | | | |
| | RMR of $50 times 60 months (term of contract) is an industry standard valuation equating to $3,000 per account. | | 113:13-22 | |
| 115:5-115:23 (objections omitted)<br><br>116:20-23 | Total loss from social media would be 60 times 45 times 2300 | Same. | | |
| 119:8-119:15 (objection omitted) | CPI has never licensed out its trademark | | | |
| 121:17-122:2 | No valuation has ever been assigned to the CPI logo | | | |

20

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 124:3-125:5 (objections omitted) | No valuations done due to controversy for: (1) employee morale; (2) financial impact to hire/retain employees; nor (3) employees lost or attrition | R, UP, MIL. The impact on employee rationale of the BLM "controversy" has nothing to do with the issues in dispute. Also, this line of questioning is outside of the scope of the 30(b)(6) topics. | | |
| 126:15-126:23 (objection omitted) | No door-to-door campaign was done to address the impact of the controversy | Same. | | |
| 131:24-132:4 (objection omitted) | CPI does not know the number of customers that may have switched back to CPI after switching to Vivint | | | |
| 137:14-138: 2 (objection omitted) | Ex. 5 – CPI CFL Annual Cost | | | |

Case 3:20-cv-00504-FDW-DSC   Document 81-4   Filed 12/10/21   Page 21 of 47

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 150:22-151:15 (objection omitted) | Report that generates result of 150 customers was ran using "Vivint" in the job line but that does not specifically mean it was due to DSP | | | |
| 154:18-155:23 (objection omitted) | The same is true for the report of the 27 customers in 2019 | | | |
| 157:6-157:11 (objection omitted) | CPI does not know the number of customers that left for Vivint as a result of alleged DSP | | | |
| 157:21-158:2 | CPI does not know the number of customers that left CPI for Vivint and then returned to CPI | | | |
| 158:14-158:18 | CPI does not know the number of customers that left CPI for Vivint and then returned to CPI | | | |
| 159:11-159:25 (objection omitted) | CPI has no way to measure the number of customers that complained about false sales pitches | | | |

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 160:2-161:5 (objections omitted) | CFL department is tasked with diligently trying to keep a customer from cancelling – no number can be given for these customers that claimed DSP | | | |
| 161:15-162:3 | Customer may not always tell the truth – maybe embarrassed, may not want to be sold to stay | | | |
| 162:13-162:18 (objection omitted) | What a customer says may not be reliable | | | |

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| | Witness describes steps he took to "bounce" list of customers identified by Vivint to determine if they were CPI customers. | Counter-designated testimony provides context for other questions designated from this deposition by Vivint with respect to number of DSPs identified by CPI. Pursuant to F.R.E. 106, this testimony must also in fairness be considered. | 164:2-165:25 (omitting objections) | F, NR, NAR, H, S, IC |
| | Same | Same | 166:4-9; 166:18-167:13 | Same |
| | Same | Same | 168:6-19 (omitting objection) | Same |
| | Same | Same | 170:3-15 (omitting objection) | Same |

24

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| | Of the approximately 700 CPI customers identified through the process described, most of the customers cancelled CPI | Same | 172:3-18 | Same |
| | The same arithmetic the witness described before for valuating an account (60x RMR) would apply to trying to place a value on the ~700 customers. | Same | 173:15-174:4 (omitting objections) | Same |
| | CPI spends between $900,000 and $1.7M per year on its customer for life operations. | Counter-designated testimony provides context for later testimony designated below by Vivint with respect to breakdown of CPI CFL costs. Pursuant to F.R.E. 106, this testimony must also in fairness be considered | 175:7-176:7 | IC |

25

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 178:8-178:16 (objection omitted) | There is no breakdown of the cost associated with the CFL's operational costs due to alleged DSP | | | |
| 178:23-179:2 (objection omitted) | CPI never conducted any analysis to calculate that. | | | |
| 183:20-185:16 (objection omitted) | Bojangles loss was about 330 sites and the RMR for those was about $57 p/month – the loss is still the 60 multiplier | F, H, R, UP, MIL. Again, this line of questioning is outside of the scope of the 30(b)(6) topics. The questioning is also not relevant to any issue in dispute. CPI does not allege that Bojangles terminated its relationship because of any deceptive sales practice by Vivint. | | |

26

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 191:20 (last three words)- 192:7 (objection omitted) | No survey has been done to measure CPI's reputation nor to measure the damage to its reputation caused by Vivint | | | |

### 3. John Shocknesse, 09/23/2021

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 7:9-7:17 | Intro-current CPI employee | | | |
| 10:9-10:17 | Designated as corporate rep. | | | |
| 11:21-11:23 | VP of customer operations | | | |
| 18:19:18:22 | Customers may not be truthful about cancellation reasons | | | |
| 25:21-26:3 | He trained phone operators that received customer complaints. CPI tracks number of complaints. | | | |
| 26:22-28:7 | CPI did not track the number of complaints from the BLM controversy. Complaints did go up and cancellations went up. CPI tracked the cancellations initially, but then realized it was being used as an excuse to get out of a contract, so they stopped tracking. | R, UP, MIL | | |

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 29:23-30:24 | About 2,500 actual cancellations from June 2020 to present due to controversy. CPI did not track the number of customers calling to cancel because of the controversy, but ultimately did not cancel. | R, UP, MIL | | |
| 33:13-18 | About 2,500 actual cancellations from June 2020 to present due to controversy | R, UP, MIL | | |
| 36:12-36:17 | CPI did not quantify the monetary loss of these 2,500 accounts. | R, UP, MIL | | |
| 38:14-39:7 | Customers are not always truthful about cancellations – for a number of possible reasons. | | | |
| 46:9-46:14 | Part of his job is monitoring number of customers cancelling due to competition. | | | |
| 47:14-47:23 | CPI does not have an accurate number as to how many customers they were losing to which competitor – just a "directional" number. | | | |

29

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 50:14-51:4 | Directional number for losses to Vivint are generally in the Summer and Spring. Summer of 2020 was the largest directional loss to Vivint – a sharp increase over Summer, 2019. | | | |
| 51:18-53:6 | Some customers saying they were cancelling for social media reason in the Summer of 2020 went to Vivint. | R, UP, MIL | | |
| 54:11-54:16 | Some customers canceling for social media reasons were using that as an excuse to get out of their contracts. | R, UP, MIL | | |
| 56:4-56:11 | CPI did not track number of cancellations due to social media that went to ADT or any other competitor | R, UP, MIL | | |
| 62:15-63:17 | CPI tries to save every customer using phone calls, texts, emails and home visits – CPI tries hard to determine the reason for cancellation | | | |
| 64:14-64:23 | Customers may just want out of a contract and thus may not be truthful about why they want to cancel. | | | |

30

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 65:6-65:12 | There are many reasons that customers give for wanting to cancel – some are truthful, and some are not. | | | |
| 68:24-69:7 | Customer complaints come by phone and some are posted to the internet – internet complaints are answered "the best we can" | | | |
| 41"23-72:15 | 110-120 employees have the job of fielding complaints. They are in the customer service, tech. support and CFL departments. Number of calls coming into these 3 departments is tracked. | | | |
| 73:8-73:23 | The number of calls coming in after the controversy was tracked and increased by a large percentage. | R, UP, MIL | | |
| 76:25-77:20 | Due to COVID – CPI had historically fewer employees in the Summer of 2020 – in additional some employees quit after the controversy | R, UP, MIL | | |

31

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 80:25-81:18 | After the controversy, CPI tried to be more engaging with employees – that is part of why they hired Kerr Putney – former police chief | R, UP, MIL | | |
| 84:9-84:21 | Some customers would request that African-American CPI employees not be sent to their homes | R, UP, MIL | | |
| 85:13-85:21 | He is not aware that CPI agrees with these requests | R, UP, MIL | | |
| 87:10-88:2 | After the fact – he is aware of 3-4 times a request was made and honored (rather white, African-American or female) | R, UP, MIL | | |
| 88:16-89:5 (objection omitted) | There is no policy on this type of request – it goes to a manager or supervisor and is handled on a case-to-case basis | R, UP, MIL | | |
| 92:4-92:1 | Not aware of any quantification of lost revenue due to controversy | R, UP, MIL | | |
| 93:14-93:23 | Cannot give a number for the amount of loss due to cancellations because of competitors | | | |

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 94:13-94:22 | Does not know if there is any other department that quantifies loss due to cancellations – there is no separate category of cancellation due to DSP | | | |
| 95:9-95:13 | CPI does not track the amount of dollar loss for a DSP cancellation | | | |
| 98:8-98:21 | Aware of the news media story about 24 hour hold times during the controversy-says it was not 24 hours. | R, UP, MIL | | |
| 99:6-99:16 | Current hold time is 2-3 minutes which is higher than historical average - there was no analysis as to how long hold times were last summer-but much higher. | R, UP, MIL | | |
| 112:3-113:12 | Sometimes customers' reasons for cancellation are due to a misunderstanding of the terms of the contract - thus they may not be truthful about cancellation reasons – buyer's remorse. | | | |

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 113:25-114:15 | Best practice is to call and talk to a customer trying to cancel – each customer's reason is different | | | |
| 115:10-115:19 | Customers will say CPI misled them in a complaint as an excuse to ger out of a contract | | | |
| 116:4-116:9 | Once CPI talks to the customer trying to cancel, sometimes the customer agrees their complaint is unfounded | | | |
| 119:1-119:18 | Part of CPI training on customer retention is reminding the customer of their financial obligation left under the contract | | | |
| 127:2-127:24 | Most complaints about a CPI employee conducting DSP are actually the customer misunderstanding or misremembering and not actually DSP | | | |
| 128:10-128:25 | Sometimes when trying to cancel – a customer will indicate they were not told the terms of the contract | | | |

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 135:25-136:24 | Some customers that say they were cancelling over the controversy were really just going to a competitor. The controversy received media coverage, but some customers did not know about it. | R, UP, MIL | | |
| 137:24-139:2 (objection omitted) | Some customers did actually cancel and go with a competitor over the controversy. | R, UP, MIL | | |
| 141:3-142:7 (objection omitted) | Sometimes a customer calls to cancel because they want to go with a competitor and that is all there is to it – it is not DSP. If a customer truly wanted to cancel because of the controversy – that is not DSP. CPI made statements about the proceedings against Vivint to try to retain customers | R, UP, MIL | | |
| 143:2-143:9 | If you are providing objective, fair and truthful information about a competitor, there is nothing wrong with that | | | |

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 151:11-151:19 | To repair damage after the controversy, CPI called customers, Mr. Gill made a video that was sent to customers, and there were internal meetings. | R, UP, MIL | | |
| 152:16-153:6 | No door-to-door effort to repair controversy damage – any face-to-face was done by a sales rep or tech on a routine cancellation call or tech visit | R, UP, MIL | | |
| 160:20-161:19 | In the last 4 years, residential business is up every year as is revenue – not aware of any year it went down. | | | |
| 169:3-169:10 | In summer of 2020, Vivint was CPI's only competition in terms of door knocking in NC | | | |
| 170:11-170:13 | Exhibit 2 – Amended Complaint | R | | |
| 171:3-171:9 | Mr. Gill had final say on filing this lawsuit | R | | |
| 176:10-176:23 | If a CPI rep knowingly told a customer Vivint was not registered to do business in NC and that rep knew it was untrue, that is DSP | R, F, FM, UP | | |

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 178:22-179:8 | Cannot give a number of, nor any names of, customers that switched from CPI to Vivint in the last 4 years | R, FM, UP | | |
| 181:5-181:17 | CPI's name is its reputation and goodwill and it is seeking damages related to injury of same | | | |
| 183:11-183:19 | He would have a problem if CPI was suing Vivint for Vivint making 100% truthful and accurate statements about CPI and winning customers that way | R, IC | | |
| 184:13-184:24 | He believes it is improper, if taken out of context, for a Vivint rep to tell a CPI customer truthful facts about the controversy to try to get that customer's business – same as CPI using the lawsuit against Vivint to try to win customers | R, UP, MIL | | |
| 185:15-186:1 (objection omitted) | A Vivint sales rep can't make truthful comments about Mr. Gill's statement | R, UP, MIL | | |

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 188:20-189:9 | He does not believe it is truthful to show a customer Mr. Gill's email with no other context | R, UP, MIL | | |
| 189:14-189:22 (objection omitted) | Mr. Gill sent an email that sparked controversy and later published an apology for that email | R, UP, MIL | | |
| 190:17-190:22 | The controversy was difficult | R, UP, MIL | | |
| 192:3-192:10 | The controversy did cause damage to CPI | R, UP, MIL | | |
| 192:21-193:3 | The Amended Complaint alleges that the alleged conduct by Vivint that led customers to switch to Vivint from CPI and enter into a Vivint contract made it impossible for customers to cancel those contracts | R, IC | 193:4-194:7 | |
| 194:8-194:11 | He is aware that some customers that switched from CPI to Vivint went back to CPI | | | |
| 196:8-196:15 | He is not aware of any penalties or fees the customers may have been subjected to after signing Vivint contracts and going back to CPI | | | |

38

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 196:21-197:6 | Cannot give any examples or names for any CPI customer that switched to Vivint due to affiliation misrepresentation and then found it was impossible to switch back to CPI | FM, R | | |
| 199:6-199:10 | CPI has not done any survey to quantify its reputation among customers | FM, R | | |
| 199:15-200:6 | His customer retention department would not/has not conducted any surveys about CPI's reputation. He is not aware CPI has done any economic evaluation of its reputation and goodwill. | FM, R | | |
| 200:20-201:5 | He is not aware CPI has attempted to quantify the dollar amount of any alleged damage that Vivint caused to CPI's reputation and goodwill. | FM, R | | |
| 204:6-204:10 | He has no knowledge that Vivint had anything to do with the Bojangles cancellations | R, UP, MIL | | |

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 204:14-205:18 | He is aware that the Charlotte Hornets and Panthers cancelled and that those cancellations were made public. Both were a sponsorship relationship | R, UP, MIL | | |
| 206:13-206:24 | CPI's number of customers did increase from last year – not as much as they would like, partially because of the controversy and of COVID | R, UP, MIL | | |
| 209:18-209:25 | Not aware of any customer survey CPI did to determine the effects of the controversy on it | R, UP, MIL | | |
| 210:6-210:9 | Not aware of any focus group CPI has done to measure consumer perception of it | R, UP, MIL | | |
| 210:12-210:19 | Not aware of any marketing studies to measure CPI's brand awareness nor relating to the controversy | R, UP, MIL | | |
| 211:3-211:6 | Not aware of any analysis done regarding the impact of the controversy on CPI | R, UP, MIL | | |

40

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 213:2-213:13 | Not aware of any consumer opinion survey or any other document done/created to measure degree of confusion among consumers between Vivint and CPI | FM, R, F | | |
| 215:12-215:20 | CPI and Vivint market and sell substantially similar goods made by the same suppliers | | | |
| 223:24-224:18 | CPI has successfully gotten customers to switch back to CPI after they switched to a competitor | | | |
| 226:1-226:15 | In responding to online complaints about CPI's early termination fees, they find it often is that the customer did not review the contract before signing – a rep has to talk to a customer to determine this | R | | |

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 232:2-232:19 | Customer complaints – Stephanie C. – wanted to cancel after racist comments but could not get out of contract. Then she moved –so it is possible the complaint she made was not reliable – that she really wanted out of the contract because she was moving. | R, UP, MIL | | |
| 233:7-234:3 | To determine true reasons for cancellation, a rep could call and talk to the customer – a rep can also review any trends in the area, specifically trends about a specific sales rep, that can tell him something different | R, F, UP | | |
| 234:10-234:20 | CPI does not cancel based solely off of online reviews | R, F, UP | | |
| 237:5-237:8 | Replying to online reviews is something his department does regularly | R, F, UP | | |
| 245:18-246:5 | Some customers complaining to CPI about Vivint DSP have not cancelled their CPI contracts | | | |

42

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 255:21-256:3 | CPI has never quantified the number of times the CFL department as had to address a Vivint complaint – it has not tracked those separately | | | |
| 256:8-256:15 | Some of CFL's operational costs are spent retaining CPI customers that have made complaints about CPI | | | |
| 257:8-257:12 | CFL deals with lots of things other than complaints about Vivint | | | |
| 257:24-258:9 | CFL operating expenses/expenditures are intended to retain all customers trying to cancel for any reason | | | |

4.      Jorge Millares, 08/31/2021

CPI objects to the entirety of Defendants' designations of Jorge Millares. Millares resides at 11231 Quiet Wood Court, Charlotte, NC 28277, which is within 100 miles of the Court for this matter, and therefore Millares is not considered an unavailable witness under FRCP 32(a)(4) and FRE 804(a). Additionally, Defendants' witness list states that "Mr. Millares' testimony relates to the corporate culture of CPI and the controversial statements made by CPI's CEO, Ken Gill." CPI further objects that Mr. Millares testimony is not relevant and unfairly prejudicial under FRE 403, as further detailed in CPI's motion *in limine* on these issues. CPI counter-designates the testimony below expressly subject to these objections in the event that they are overruled and the deposition testimony is permitted.

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| 4:24-5:1 | Intro | R, UP, MIL | | |
| 6:10-6:21 | Employment History | R, UP, MIL | | |
| 7:3-7:13 | Call center director with CPI and directly reported to John Shocknesse. He and John got along "good at best" – there were racial undertones. | R, UP, MIL | | |
| 8:6-8:12 (first 3 words ending preceding sentence ) | At CPI he led a team of 20 sales reps that focused on retention. | R, UP, MIL, I | 14:02-15:22; 16:19-20:06 | R |
| 20:7-20:23 | Organized a protest of about 30-40 people outside of CPI headquarters after Mr. Gill's June 2020 comments. | R, UP, MIL | | |
| 21:15-22:5 | He had conversations after the protest with 10-20 CPI employees. | R, UP, MIL, F, HR | 22:08-23:23 | R |
| 26:3-29:2 (omitting objection) | Mr. Gill's comments stemmed from an email Mr. Millares wrote addressed to | R, UP, MIL | | |

44

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| | several thousand people, including Mr. Gill, urging for social and racial justice after the George Floyd incident.  Mr. Millares believes the comment to be racist. The general consumer feeling about CPI was disappointment. This perception is based on emails from now ex-CPI customers. Many CPI employees at the time expressed their gratitude at the email being made public. | | | |
| 32:9-33:13 | The hiring of Mr. Putney was perceived as a slap in the face in the community since he was leading a police force at the time.  This perception is based off of numerous phone calls, social media posts and local leaders speaking out. | R, UP, MIL, F, HR | | |
| 42:8-42:21 | He was told by former CPI employees that CPI had a policy that if a customer requested that the tech coming to their home not be African-American, CPI would make sure | R, UP, MIL, F, HR | | |

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| | to send a white or Caucasian tech. | | | |
| 54:8-54:19 (objection omitted) | It is his understanding that CPI (and/or its employees and/or its marketing department) created an artificial Facebook post with people of color and made it appear the post was not new. | R, UP, MIL, F, HR | | |
| 57:8-57:12 | Mr. Gill never reached out to him personally nor to Queen City Unity. | R, UP, MIL | | |
| 57:16-58:20 | Mr. Gill did hold an employee meeting that was recorded by a CPI employee where he called Mr. Millares George and an "activist type". After the meeting, several employees walked out, not just people of color. This meeting was reported to the media. | R, UP, MIL, F, HR | | |
| 60:3-62:18 (objections omitted) | The publicity was very impactful. Mr. Millares received death threats and the police came to his home. News crews reached out almost every day for months. However, the response was about 90 percent | R, UP, MIL, F. HR | 64:03-20 | |

| Designations | Description | Plaintiff's Objections | Plaintiff's Counter Designations | Defendant's Objections |
|---|---|---|---|---|
| | supportive. CPI customers were trying to cancel and hold times were 24 hours. There was an online petition of thousands of CPI customers wanting to cancel but not being able to, or being told they would have to pay money to cancel. | | | |