UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-00504-FDW-DSC

CPI SECURITY SYSTEMS, INC.,

Plaintiff,

v.

VIVINT SMART HOME, INC. f/k/a Mosaic Acquisition
Corp.; and LEGACY VIVINT SMART HOME, INC. f/k/a
Vivint Smart Home, Inc.,

Defendants.

**DEFENDANTS' DESIGNATION OF
PLAINTIFF'S INTERROGATORY ANSWERS**

Pursuant to the Court's Case Management Order [Doc 35 at p. 10, subsection (5)], Defendants hereby designate the following Plaintiff's Interrogatory Answers that Vivint may offer at trial (except those offered solely for impeachment or cross-examination).

1. **CPI Security Systems, Inc.'s Answers to Defendants' First Set of Interrogatories and *Supplemental* Answers and Objections to First Set of Interrogatories:**

| Defendants' Interrogatory | CPI Response (including supplemental responses) | Plaintiff's Counter Designations / Objections |
|---|---|---|
| **INTERROGATORY NO. 2:** For each Customer, identify and | **ANSWER:** Pursuant to F.R.C.P. 33(d), CPI will produce available records identifying each | |

describe in detail each and every alleged false or misleading statement or omission, misrepresentation, and/or unfair or deceptive sales practice by a Vivint sales representative to each Customer ("Alleged Conduct"), including without limitation the date and location of the Alleged Conduct, the identity of the sales representative(s) who engaged in the Alleged Conduct, the identities of any other individuals present when the Alleged Conduct occurred, the way in which Plaintiff learned of the Alleged Conduct, and the complete factual basis for Plaintiff's belief that the Alleged Conduct occurred.

Customer, along with Customer contracts, available audio recordings (and/or video recordings), or other available non-privileged records relating to each Customer and the Alleged Conduct, as these terms have been defined. CPI notes that it does not have a comprehensive system for tracking and memorializing Alleged Conduct and Deceptive Sales Practices ("DSPs") committed by Defendants against CPI's customers, and as such, CPI cannot identify the full scope of Defendants' conduct after-the-fact. Answering further, and as Defendants are well aware, many customers to whom Defendants' sales representatives make false and/or misleading statements do not report such conduct to CPI; many never report the conduct to any entity; and many more report such conduct only to Defendants or other third-parties such that CPI is not aware of those deceptive sales incidents. CPI has requested documentation relating to this topic from Defendants, but Defendants refused to produce them. The Court ordered Defendants to produce these documents on March 2, 2021. Defendants produced voluminous records on April 22, 2021, but CPI has not had an opportunity to review them prior to serving these responses. CPI refers Defendants to those documents for additional information regarding the Customers and Alleged Conduct. CPI notes that Vivint's supplemental responses following the Court's March 2, 2021 Order indicate that "Vivint does

2

not maintain a uniform or mandated practice of documenting a customer's former alarm service provider" and accordingly that Vivint cannot identify all of the CPI customers who complained to Vivint about its sales representatives making false or misleading statements or claims of affiliation with CPI. Therefore, by Vivint's own statements, there is no method by which all Customers who were subject to DSPs (i.e., Alleged Conduct) by Vivint can be identified even through Vivint's database. Further responding, CPI is informed and believes that many of its customers have complained to other entities such as state attorneys general offices or the Better Business Bureau, and CPI refers Defendants to those records, as they are not in CPI's possession, control, or knowledge. Finally, CPI objects to the extent this interrogatory seeks information protected from disclosure by the work product/ trial preparation doctrine under Rule 26 such as notes of interviews with some CPI customers and former customers created by CPI's attorneys or agents working at the direction of CPI's counsel following the filing of this lawsuit. *See* Fed R. Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). Further responding, discovery is ongoing and CPI is continuing to attempt to identify the scope of Defendants' conduct, affected Customers, and the details of the Alleged Conduct. CPI will provide further information as it is identified subject to the objections contained in this response.

3

**SUPPLEMENTAL ANSWER:** Subject to and without waiving the above objections, CPI states it is producing non-privileged records relating to each Customer and the Alleged Conduct for each Customer pursuant to CPI's supplemental response to Request for Production No. 2. CPI maintains its objection to this interrogatory to the extent it seeks information protected from disclosure by the work product/ trial preparation doctrine under Rule 26 relating to CPI's investigation of the Alleged Conduct for each identified Customer, as these terms have been defined, such as notes of interviews with some CPI customers and former customers, and any related audio recordings of such interviews, created by CPI's

attorneys or agents working at the direction of CPI's counsel following the filing of this lawsuit. *See* Fed R. Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). The Supreme Court has explicitly recognized that "Rule 34, like Rule 33, is limited to parties to the proceeding thereby excluding their counsel or agents." *Hickman v. Taylor*, 329 U.S. 495, 504 (1947) (emphasis added). Thus, as a matter of procedure, a party may not direct requests for production—as Defendants attempt here—to obtain documents prepared or collected by the other party's outside counsel in preparation for trial. *See id.* In line with the Supreme Court's guidance, Federal District Courts routinely reject this type of

| | | |
|---|---|---|
| | discovery directed at the post-filing activities of parties' outside counsel. *See e.g.*, *In re: Engle Cases*, Case No. 3:09–cv–10000–J–32JBT, 2013 WL 12156250 at *3-4 (Toomey, Magistrate J.); *Tracy v. NVR, Inc.*, 250 F.R.D. 130, 132 (W.D.N.Y. 2008); *Didonna v. Village Farms IGA, LLC*, No. CV 12–1487(JS) (ARL), 2012 WL 3879149, at *1 (E.D.N.Y. Sept. 6, 2012). "'How a party, its counsel and agents choose to prepare their case, the efforts they undertake, and the people they interview is not factual information to which an adversary is entitled.'" *In re: Engle Cases*, 2013 WL 12156250 at *4 (quoting *Tracy*, 250 F.R.D. at 132). CPI is serving an amended privilege log with these supplemental responses. | |
| **INTERROGATORY NO. 4:** Identify any and all Cancelled Accounts for which you seek relief in this Lawsuit. | **ANSWER:** CPI cannot know the full scope of customers it has lost due to Vivint's actions because many of CPI's customers who have fallen victim to Defendants' deceptive sales practices never report such issues to CPI when they cancel their accounts, and, further, many customers only report such conduct to Defendants. Yet, Defendants claim that "Vivint does not maintain a uniform or mandated practice of documenting a customer's former alarm service provider" for when it converts a customer from another alarm company like CPI such that Defendants cannot identify the CPI customers who cancelled their accounts following Defendants' deceptive sales practices. Accordingly, CPI has no reliable basis for | |

| | | |
|---|---|---|
| | identifying the total Cancelled Accounts resulting from Defendants' deceptive sales practices. Pursuant to F.R.C.P., CPI will produce records from which some Cancelled Accounts can be identified, but CPI notes that it does not have a comprehensive system for<br><br>tracking and memorializing Alleged Conduct and DSPs committed by Defendants against CPI's customers, and as such, CPI cannot identify the full scope of all Cancelled Accounts, as this term has been defined. The real number of total cancellations related to Defendants' unlawful conduct may be unascertainable, as anticipated expert testimony will speak to. CPI will disclose such expert opinions in accordance with the Court's scheduling deadlines for<br><br>disclosure of expert testimony in this case. Further responding, discovery is ongoing and CPI is continuing to attempt to identify the scope of Defendants' conduct. CPI will provide further information relating to Cancelled Accounts as it is identified.<br><br>**SUPPLEMENTAL ANSWER:** Subject to and without waiving the above objections, and in addition to the substantive response provided in CPI's original answer above, CPI is producing MasterMind printouts for all disclosed Customers pursuant to CPI's supplemental response to Request for Production No. 2. The MasterMind printouts include | |

6

| | | |
|---|---|---|
| | all information pertaining to cancelled Customer accounts. Pursuant to Fed. R. Civ. P. 33(d), CPI directs Defendants to those documents for the identity of the Cancelled Accounts that CPI has so far been able to identify. As stated in CPI's original answer above, CPI cannot know the full scope of customers it has lost due to Defendants' deceptive sales conduct<br><br>because many of CPI's customers who have fallen victim to Defendants' deceptive sales practices never report such issues to CPI when they cancel their accounts, and, further, many customers only report such conduct to Defendants. Yet, Defendants claim that "Vivint does not maintain a uniform or mandated practice of documenting a customer's former alarm service provider" for when it converts a customer from another alarm company like CPI such that Defendants cannot identify the CPI customers who complained to Defendants about deceptive sales practices and cancelled their CPI accounts as a result thereof. | |
| **INTERROGATORY NO. 5:** Identify all current or former employees of the Defendants you or your attorneys have contacted and/or communicated with regarding this Lawsuit. In answering this Interrogatory, please list the date of the communication, the identity of Plaintiff's representative communicating with the | **ANSWER:** CPI objects to this Interrogatory as it seeks information protected from disclosure by the work product/ trial preparation doctrine under F.R.C.P. 26(b)(3). *See Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947) ("In performing his various duties, . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what | |

7

| | | |
|---|---|---|
| current or former employee(s), and a summary of the content of the communication. | he considers to be relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways . . . ."). As such, "[T]he general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify [compelling] production." *Id.* at 512. Defendants have not carried their high burden of showing why disclosure of the individuals CPI's outside counsel has contacted is necessary to the resolution of any issues in dispute. Similarly, this interrogatory is not relevant to the resolution of any claims in dispute but instead is intended solely to harass CPI's outside counsel as it prepares its case for trial, so interrogatory also runs afoul of Rule 26's proportionality requirements. There is no relevant basis for this request other than to harass CPI's counsel in the investigation and preparation of its case and to impermissibly | |

borrow off the work of CPI's counsel. Certainly Defendants are able to identify and speak with any of their former employees that they identify based on their own investigation as having potentially relevant information to this case.

**SUPPLEMENTAL ANSWER:** The Supreme Court has explicitly recognized that "Rule 34, like Rule 33, is limited to parties to the proceeding thereby excluding their counsel or agents." *Hickman v. Taylor*, 329 U.S. 495, 504 (1947) (emphasis added). Thus, as a matter of procedure, a party may not direct requests for production—as Defendants attempt here—to obtain documents or information relating to the other party's outside counsel's preparation for trial. *See id.* Federal District Courts accordingly routinely reject this type of discovery directed at the post-filing activities of parties' outside counsel. *See e.g.*, *In re: Engle Cases*, Case No. 3:09–cv–10000–J–32JBT, 2013 WL 12156250 at *3-4 (Toomey, Magistrate J.); *Tracy v. NVR, Inc.*, 250 F.R.D. 130, 132 (W.D.N.Y. 2008); *Didonna v. Village Farms IGA, LLC*, No. CV 12–1487(JS) (ARL), 2012 WL 3879149, at *1 (E.D.N.Y. Sept. 6, 2012). "'How a party, its counsel and agents choose to prepare their case, the efforts they undertake, and the people they interview is not factual information to which an adversary is entitled.'" *In re: Engle Cases*, 2013 WL 12156250 at *4 (quoting *Tracy*, 250 F.R.D. at 132). Because the interrogatory is categorically improper with

| | | |
|---|---|---|
| | respect to its request for information pertaining to ADT's outside counsel's communications, CPI has not provided a privilege log that might otherwise disclose the very information that is protected from disclosure by the work product/trial preparation doctrine. In any event, CPI generally identifies communications its outside counsel have had with Defendants' former employees in the time since the filing of this action. *See* Fed. R. Civ. P. 26(b)(5)(A)(ii) (description of information a party claims is subject to a privilege should be given in a manner "without revealing information itself privileged or protected."). | |
| **INTERROGATORY NO. 15:** Identify and provide a detailed calculation, by cause of action, all damages you claim in this Lawsuit. | **ANSWER:** Objection. Responding to this request requires expert analysis and opinion. CPI will make expert disclosures at the time and in the manner required by the Case Management Order issued by the Court. Subject to these objections, CPI also refers Defendants to CPI's Rule 26 initial disclosures. CPI also generally answers that Defendants' conduct has injured CPI in the marketplace in a manner that necessitates corrective marketing to repair CPI's name, brand, and reputation, as well as to identify additional victims of Defendants' deceptive sales practices. CPI's expert reports will provide additional information and calculations relating to these issues. | |
| **INTERROGATORY NO. 16:** Identify all valuations of any and all of the Cancelled | **ANSWER:** Objection. Responding to this request requires expert analysis and opinion. CPI will make expert disclosures at the time and in the | |

| | | |
|---|---|---|
| Accounts for the Customers identified in response to Interrogatory No. 1, including, but not limited to, the processes, methodologies, and calculations that CPI employs to value the Cancelled Accounts. | manner required by the Case Management Order issued by the Court. Subject to these objections, CPI also refers Defendants to CPI's Rule 26 initial disclosures. Further answering, CPI states it has requested documents responsive to this request from Defendants, but they have so far refused to produce them.<br><br>**SUPPLEMENTAL ANSWER:** Subject to and without waiving the above objections, CPI has not identified any documents or information in its possession or control relating to this interrogatory. As stated in CPI's original answer above, it is CPI's position that responding to this interrogatory will require expert analysis and opinion. Further responding, information relating to each Customer who cancelled his or her account following a deceptive sales incident with Defendants is being provided pursuant to CPI's supplemental responses to Request for Production No. 2, including billing and payment history, and cancellation balances for each applicable Customer. | |
| **INTERROGATORY NO. 17:** Identify the revenues and/or profits, if any, that CPI claims it has lost on each Cancelled Account. | **ANSWER:** CPI objects that this interrogatory is vague and ambiguous and cannot be answered as written. Lost revenues and/or profits of each Cancelled Account depend on a variety of factors. Additionally, responding to this request requires CPI to know the full scope of Defendants' deceptive sales conduct and the CPI customers who have been affected. Yet, Defendants claim that "Vivint does not maintain a uniform or | |

mandated practice of documenting a customer's former alarm service provider" for when it converts a customer from another alarm company like CPI such that Defendants cannot identify the CPI customers who cancelled their accounts following Defendants' deceptive sales practices. Accordingly, CPI cannot identify the total Cancelled Accounts resulting from Defendants' deceptive sales practices. Answering further, responding to this request requires expert analysis and opinion. CPI will make expert disclosures at the time and in the manner required by the Case Management Order issued by the Court. Subject to these objections,
CPI also refers Defendants to CPI's Rule 26 initial disclosures.

**SUPPLEMENTAL ANSWER:** Subject to and without waiving the above objections, and in addition to CPI's original answer provided above, information relating to each *known* Customer who cancelled his or her account following a deceptive sales incident with Defendants is being provided pursuant to CPI's supplemental responses to Request for Production No. 2, including billing and payment history, and cancellation balances for each applicable Customer. As stated in CPI's original answer above, it is CPI's position that responding to this interrogatory will require expert analysis and opinion, in particular because it is impossible to identify all CPI customer accounts that cancelled

| | | |
|---|---|---|
| | their services following a deceptive sales incident with Defendants and also because the anticipated revenue or profit from each individual lost account (whether known or unknown) will vary depending on a number of factors. | |

Respectfully submitted the 10th day of December, 2021.


**GREENBERG TRAURIG, LLP**

By:  s/ Michael N. Kreitzer
    Michael N. Kreitzer
    Florida Bar No. 705561
    kreitzerm@gtlaw.com
    333 S.E. 2nd Avenue, Suite 4400
    Miami, FL 33131
    Telephone: (305) 579-0500


By:  s/ Gregory W. Herbert
    Gregory W. Herbert
    Florida Bar No. 111510
    herbertg@gtlaw.com
    Joshua R. Brown
    Florida Bar No. 0826391
    brownjr@gtlaw.com
    450 S. Orange Avenue, Suite 650
    Orlando, FL 32801
    Telephone: (407) 420-1000

**Counsel for Defendants**


**CLYDE SNOW & SESSIONS, P.C.**

By:  s/ Matthew A. Steward
    Matthew A. Steward
    Utah Bar No. 7637
    mas@clydesnow.com
    One Utah Center, 13th Floor
    201 South Main Street
    Salt Lake City, UT 84111-2216
    Telephone: (801) 322-2516

**Counsel for Defendants**


**POYNER SPRUILL LLP**

By:  s/ Andrew H. Erteschik
    Andrew H. Erteschik
    N.C. State Bar No. 35269
    aerteschik@poynerspruill.com
    P.O. Box 1801
    Raleigh, NC 27602-1801
    Telephone: (919) 783-2895

**Local Counsel for Defendants**