UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-CV-00504-FDW-DSC

| | |
|---|---|
| CPI SECURITY SYSTEMS, INC.<br><br>       Plaintiff,<br><br>  v.<br><br>VIVINT SMART HOME, INC.<br>f/k/a MOSAIC ACQUISITION CORP.;<br>LEGACY VIVINT SMART HOME, INC.<br>f/k/a VIVINT SMART HOME, INC.<br><br>      Defendants. | **[PROPOSED] JURY INSTRUCTIONS**[1, 2] |

**PHASE I**

---

[1] Vivint's draft objections appear in **red font** below, and Vivint's counter proposals appear in **blue font** below.

[2] CPI's original proposed instructions and citations of authority are in **black font** below. CPI's objections to Vivint's counter-proposed instructions and responses to Vivint's objections appear in **green font** below.

Case 3:20-cv-00504-FDW-DSC   Document 81-9   Filed 12/10/21   Page 1 of 154

Members of the Jury:

Now that you have been sworn, I will give you some preliminary instructions to guide you in your participation in this trial.

First, a few words about your conduct as jurors.

1. I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you. Until you all retire to the jury room at the end of the case to deliberate on your verdict, you must not to talk about this case.

2. Do not read or listen to anything touching on this case in any way – that includes newspaper articles or television or radio reports on this case. If anyone should try to talk to you about it, bring it to my attention promptly.

3. Do not try to do any research or make any investigation about the case on your own.

4. Finally, do not form any opinion until all the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

If you wish, you may take notes. If you do, remember that they serve merely as an aid to your memory; they are not a substitute for your own memory or the memory of any other juror. It is each juror's individual responsibility to listen carefully to and remember the evidence. Remember that your notes are not evidence, and your individual recollections must control your deliberations. Those of you who take notes should leave them in the jury room when you leave the courthouse each evening.

As members of the jury, you are the sole and exclusive judges of the facts. You determine the credibility of the witnesses and resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence. You are to perform the duty of finding the facts without bias, prejudice, or sympathy to any party.

As judge, it is my responsibility to preside over the trial, decide what testimony and evidence is admissible under the law for your consideration, and instruct you as to the legal  principles governing this case. It is your duty to accept my instructions of law and apply them to the facts as you determine them. You should not single out any instruction as alone stating the law, but must consider all of my instructions as a whole. You may not substitute or follow any personal or private notion or opinion as to what the law is or ought to be. Nothing that I may say or do during the course of the trial is intended to indicate, or should be taken by you as indicating, what your verdict should be.

The evidence from which you will find the facts will consist of the testimony of witnesses, documents, and other things received into the record as exhibits, and any facts that the lawyers agree to or stipulate to or that the court may instruct you to find. Certain things are not evidence and must not be considered by you. I will list them for you now:

1. Statements, arguments, and questions by the lawyers or myself are not evidence.  It is the witnesses' sworn testimony that is evidence. Thus, if a

lawyer makes a statement or propounds a question that assumes certain facts to be true, this must not be taken as evidence unless a witness adopts or agrees to the assumed facts in his answer.

2. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is overruled, treat the answer like any other. If the objection is sustained, ignore the question. Do not attempt to guess what answer might have been given had I allowed the question to be answered.

3. Testimony that the court has excluded or told you to disregard is not evidence and must not be considered. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

4. Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded. You are to decide the case solely on the evidence presented here in the courtroom.

There are two types of evidence which you may properly assess in determining whether a party has met its burden of proof – direct evidence and circumstantial evidence. Direct evidence is direct proof of a fact, such as the testimony of an eyewitness to something he knows by virtue of his own senses. Circumstantial evidence is proof of a set of facts from which you may infer or conclude, on the basis of your reason, experience, and common sense, that some other fact exists. As a

4

general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that your verdict must be based on a preponderance of all the evidence presented.

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or none of it, or believe part and disbelieve part. In addition, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of a fact. You may find that the testimony of a smaller number of witnesses on one side is more credible than the testimony of a greater number of witnesses on the other side.

In considering the testimony of any witness, you should use all the tests for truthfulness that you would use in determining matters of importance to you in your daily life. You should consider any bias or hostility the witness displays for or against any party as well as any interest the witness has in the outcome of the case. You should consider the opportunity the witness has to see, hear, and know the things about which he testifies, the accuracy of his memory, his candor or lack of candor, his intelligence, the reasonableness and probability of his testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony. Always remember that you should use your common sense, your good judgment and your own life experience.

The trial will now begin. First, each side may make an opening statement. An opening statement is neither evidence nor argument; it is an outline of what that

party intends to prove, offered to help you follow the evidence. Next, the plaintiff will present his [her] witnesses, and the defendant may cross-examine them. Then the defendant will present his [her] witnesses, and the plaintiff may cross-examine them. After the evidence is in, I will instruct you on the law, and the attorneys will make their closing arguments to summarize and interpret the evidence for you. You will then retire to deliberate on your verdict.


SOURCE: Standing Order Governing Jury Selection and Instruction in Civil Cases before the Honorable Frank D. Whitney at 4, 7-9.

# PHASE II

## STIPULATIONS

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case. In this case, the parties have stipulated that:

[INSERT STIPULATIONS]

SOURCE: Modeled on Eleventh Circuit Pattern Jury Instruction 2.1.

## USE OF DEPOSITIONS

A deposition is a witness's sworn testimony that is taken before the trial.

During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

Some of the witnesses in this case will testify through depositions.

Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court. Some of the deposition testimony in this case will be presented to you by video, and some by the attorneys reading a transcript. When a transcript is read, do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

SOURCE: Modeled on Eleventh Circuit Pattern Instruction 2.2.

## USE OF RECORDED CONVERSATIONS AND TRANSCRIPTS

During the trial, you are going to hear recorded conversations. This is proper evidence for you to consider. Please listen to it very carefully. I will allow you to have transcripts of the recordings to help you identify speakers and guide you through the recordings. But remember that it is the recording that is evidence – not the transcript. If you believe at any point that the transcript says something different from what you hear on the recording, disregard that portion of the transcript and rely instead on what you hear.

SOURCE: Modeled on Eleventh Circuit Pattern Instruction 2.3.

Case 3:20-cv-00504-FDW-DSC   Document 81-9   Filed 12/10/21   Page 10 of 154

**USE OF INTERROGATORIES**

[You'll now hear/You've heard] answers that [name of party] gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, [name of party] gave the answers in writing while under oath. You must consider [name of party]'s answers to as though [name of party] gave the answers on the witness stand.

SOURCE: Modeled on Eleventh Circuit Pattern Instruction 2.6.

## INTERIM STATEMENTS

At times during the trial, the lawyers may address you. You have heard the lawyers' opening statements, and at the trial's conclusion you'll hear their closing arguments. Sometimes the lawyers may choose to make short statements to you, either to preview upcoming evidence or to summarize and highlight evidence they just presented. These statements and arguments are the lawyers' views of the evidence or of what they anticipate the evidence will be. They are not evidence themselves.


SOURCE: Modeled on Eleventh Circuit Pattern Instruction 1.5.

Case 3:20-cv-00504-FDW-DSC   Document 81-9   Filed 12/10/21   Page 12 of 154

**JUDICIAL NOTICE**

The rules of evidence allow me to accept facts that no one can reasonably dispute. The law calls this "judicial notice." You must accept it as true for this case the following fact to which I have judicially noticed:


[Facts]


Source: Modeled on Eleventh Circuit Pattern Instruction 2.5.

Case 3:20-cv-00504-FDW-DSC   Document 81-9   Filed 12/10/21   Page 13 of 154

## EXPERT TESTIMONY

You [have heard] [are about to hear] testimony from [name] who [testified] [will testify] to opinions and the reasons for [his] [her] opinions. This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

SOURCE: Ninth Circuit Pattern Instruction 2.13 (Expert Opinion).

# PHASE III

Members of the Jury:

Now that you have heard the evidence and soon will hear the arguments of counsel, I will instruct you as to the law that applies in this case. If any difference appears to you between the law as stated by the attorneys in closing arguments and that stated by me in these instructions, you are to be governed by my instructions.

I remind you that it is your duty and your responsibility in this trial to judge the facts in accordance with the law as I instruct you. You may find the facts only from the evidence which I have allowed to be admitted during this trial. You must not consider anything which I have instructed you to disregard, and evidence which I have admitted only for a limited purpose you must consider only for that purpose.

In a civil case, the party with the burden of proof on any given issue has the burden of proving every disputed element of his claim or affirmative defense to you by a preponderance (or the greater weight) of the evidence. To establish a fact by a preponderance (or the greater weight) of the evidence means to prove that the fact is more likely true than not true. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. If you conclude that the party bearing the burden of proof has failed to establish any essential part of his (her) claim or affirmative defense by a preponderance of the evidence, you must decide against him (her) on the issue you are considering.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this and you should put it out of your mind.

SOURCE: Standing Order Governing Jury Selection and Instruction in Civil Cases before the Honorable Frank D. Whitney at 4, 10-12.

**[CPI's PROPOSED INSTRUCTION NO. 1]**

[SUBJECT TO OBJECTION BY VIVINT]

**FALSE AFFILIATION IN
VIOLATION OF THE LANHAM ACT**

(COUNT I)

<u>LIABILITY</u>

*The first issue on the verdict form reads: "Is Vivint liable for making a false affiliation with CPI in violation of the Lanham Act?"*

To prove its claim, CPI must prove the following three facts by the greater weight of the evidence:

1. Vivint's agents used in commerce any false designation of origin, false or misleading description of fact, or false or misleading representation of fact;

2. The false or misleading representation(s) was/were likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Vivint with CPI, or as to the origin, sponsorship, or approval of Vivint's goods, services, or commercial activities by CPI; and

3. CPI has been, or is likely to be, injured as a result of the false or misleading representation(s).

**<u>Likelihood of Confusion Factors</u>**

CPI must establish that Vivint's conduct is likely to confuse an "ordinary consumer" as to the source or sponsorship of the goods or services. There are nine factors you may use to determine whether there is a likelihood of confusion. These factors need not be weighted equally, and consideration of all the factors is not

mandatory. You should weigh all of the relevant evidence in determining whether a likelihood of confusion exists.

The factors you may use to determine whether there is a likelihood of confusion are below. However, you should note that some of these factors may be either entirely irrelevant or only slightly relevant to your assessment of the likelihood of confusion given the nature of the claim in this case:

(1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace;

(2) the similarity of the two marks to consumers;

(3) the similarity of the goods or services that the marks identify;

(4) the similarity of the facilities used by the parties;

(5) the similarity of the advertising used by the parties;

(6) the defendant's intent;

(7) actual confusion;

(8) the quality of the defendant's product; and

(9) the sophistication of the consuming public.

If you find, by the greater weight of the evidence, that Vivint is liable for making a false affiliation with CPI, then it would be your duty to answer this issue "Yes" in favor of CPI on this question.

If, on the other hand, you fail to so find, then it would be your duty to answer this issue "No" in favor of Vivint.

SOURCE: 15 U.S.C. § 1125(a)(1)(A). *RXD Media, LLC v. IP Application Dev. LLC*, 986 F.3d 361, 372–73 (4th Cir. 2021) (Reciting the nine likelihood of confusion factors

and recognizing a party alleging trademark infringement must establish that the defendant's unauthorized use of a mark is "likely to confuse an 'ordinary consumer' as to the source or sponsorship of the goods."); *Georgia Pac. Consumer Prod., LP v. Von Drehle Corp.*, 618 F.3d 441, 454 (4th Cir. 2010) (depending on the nature of the claim, some of the nine factors may be "either entirely irrelevant or only slightly relevant."); *Anheuser-Busch, Inc. v. L. & L. Wings, Inc.*, 962 F.2d 316, 318 (4th Cir. 1992); *CareFirst of Md., Inc. v. First Care*, P.C., 434 F.3d 263, 267 (4th Cir. 2006) ("Likelihood of confusion exists if the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question."). *See also Babbit Elecs., Inc. v. Dynascan Corp.*, 36 F.3d 1161, 1181 (11th Cir. 1994) ("Section 1125(a) is broader than Section 1114 in that it covers false advertising or description whether or not it involves trademark infringement"); *accord Florida Int'l Univ. Bd. of Trustees v. Florida Nat'l Univ., Inc.*, 830 F.3d 1242, 1266 (11th Cir. 2016) (Section 1125(a)(1) claim "much broader" than Section 1114 infringement claim).

## **<u>Vivint's Objection</u>**

CPI has crafted its own instruction from scratch rather than using the Ninth Circuit Pattern Instructions, which are more familiar to this district in Lanham Act cases. *See, e.g.*, *Sauer Brands, Inc. v. Duke Sandwich Productions, Inc.*, No. 3:19-cv-00508 (W.D.N.C. 2020), Doc. 206-5; *Sedgewick Homes v. Stillwater Homes, Inc.*, No. 5:16-cv-0049 (W.D.N.C. 2019), Doc. 167.

More fundamentally, CPI's instruction is internally inconsistent, inconsistent with its own allegations, and inconsistent with precedent. For example, a false affiliation claim under 15 U.S.C. § 1125(a)(1)(A) requires CPI to establish ownership of an *unregistered* trademark, yet the instruction fails to identify what mark CPI alleges is valid, enforceable, and infringed by Vivint. *See, e.g., Parks LLC v. Tyson Foods, Inc*, 863 F.3d 220, 226 (3d Cir. 2017) ("False advertising claims do not require proof of secondary meaning, so litigants may be tempted to frame a false association claim as a false advertising claim, to ease their evidentiary burden."); *McCarthy on*

*Trademarks and Unfair Competition* § 27:9 (5th ed.) ("An unregistered trademark infringement (or 'false association') claim cannot be re-packaged as a false advertising claim in order to avoid having to prove the validity of a trademark."). Moreover, CPI's own allegations make clear that it does assert trademark infringement under 15 U.S.C. § 1125(a)(1)(A). *See* Doc. 29, ¶ 51 (asserting "CPI owns the CPI Trademark."); ¶ 22 (defining the term "CPI Trademark" based on U.S. Trademark Registration Number 2537673). Nevertheless, CPI fails to include any instructions regarding the ownership, validity, or strength of its asserted trademark.

Further, CPI's instruction is internally inconsistent. For example, CPI references likelihood of confusion factors including "the similarity of the two marks to consumers" without ever defining what trademark CPI claims to own or what confusingly similar trademark Vivint used. *See, e.g., U.S. Hosiery Corp. v. The Gap, Inc.*, 707 F. Supp. 800, 810 (W.D.N.C. 1989) ("Plaintiffs must establish at least four things in order to prevail on their [false designation of origin claim]: (1) ownership of (2) a valid trademark (3) which was used by Defendant in a trademark sense without the owner's consent (4) in a manner likely to cause confusion.").

Vivint also objects to this proposed instruction because it improperly combines elements of two separate causes of action into one by referring generally to elements of a claim of false advertising under 15 U.S.C. § 1125(a)(1)(B), which is not at issue in this case. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014) ("Section 1125(a) thus creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B).").

Vivint further objects to this instruction because CPI also misstates the test for likelihood of confusion set forth in *RXD Media, LLC v. IP Application Dev. LLC,* which indicates that factors (4) and (5) relate to "(4) the similarity of the facilities used by *the markholders*; [and] (5) the similarity of the advertising used by *the markholders*[.]" *RXD Media, LLC v. IP Application Dev. LLC,* 986 F.3d 361, 373 (4th Cir. 2021) (emphasis added). Instead, CPI replaces "markholders" with "parties" obfuscating the law that it's "false association" claim requires proof that CPI owns a valid trademark.

Further, the "facilities" referenced in the instruction are irrelevant to the allegations in CPI's complaint, and therefore inapplicable to this case.

## CPI's Response to Vivint's Objection and Counter-Proposed Instructions

CPI alleges a claim for false affiliation under § 1125(a), which is a distinct cause of action from traditional trademark infringement under § 1114. There is no model instruction in the Fourth Circuit or Ninth Circuit for a false affiliation claim. CPI's proposed instruction is based directly on the language of § 1125(a). Vivint's lengthy set of instructions on multiple issues relating to traditional trademark infringement claims is confusing, unnecessary, and misleading for a claim based on § 1125(a). CPI's instruction states the basis for liability as set forth by the statutory language itself. No additional instructions are necessary and inclusion of those instructions will charge the jury with incorrect law and cause confusion.

Vivint's argument regarding the necessity of alleging the use of an "unregistered" mark misstates the law and is not supported by the authority cited. CPI alleges Vivint has falsely affiliated itself with CPI in conducting door-to-door sales. Whether considered a "trade name" or "trademark"—there can be no dispute that CPI is entitled to the protections of the Lanham Act and § 1125(a) for a claimed affiliation with "CPI," both a registered trademark and a trade name. As stated in the comments to Ninth Circuit Pattern Instruction 15.4 (cited by Vivint below): "Trade names symbolize the reputation of a business as a whole. In contrast, trademarks and service marks are designed to identify and distinguish a company's goods and services…As a practical matter, courts are rarely called upon to distinguish between trade names, trademarks and service marks. Trade names often function as trademarks or service marks as well . . . Perhaps because of this functional overlap, *the same broad standards of protection apply to trademarks and trade names.*" *Accuride Int'l v. Accuride Corp.*, 871 F.2d 1531, 1534-35 (9th Cir. 1989) (emphasis added).

Vivint's objections to CPI's proposed instruction could be easily resolved simply by including Vivint's proposed instructions 15.1, 15.2 and 15.4 in conjunction with CPI's original proposed liability instruction without all the other unnecessary, confusing and misleading instructions on issues not in dispute relating to traditional trademark infringement.[3] Further, to the extent reference to "mark" or "trademark" confusing in reciting the nine likelihood of confusion factors in CPI's proposed

---

[3] The unnecessary and confusing instructions proposed on Vivint include: 15.5, 15.6, 15.8, 15.9, 15.10, 15.11, 15.13, 15.15, 15.17, 15.18, 15.19, 15.20 and 15.21.

instruction, as Vivint argues above, those words could be supplanted with "CPI's mark, trademark, or trade name."

Building off of its mischaracterization of CPI's claim as one strictly for traditional trademark "infringement," Vivint's counter-proposed instructions mischaracterize what CPI is required to show to state a claim under § 1125(a), and are confusing with respect to their focus on traditional trademark infringement. Vivint's proposed instructions would be appropriate if CPI alleged a traditional infringement claim—i.e., that Vivint was using a confusingly similar trademark *on its goods*. That is not at issue, nor is it, as Vivint states, what CPI alleges in its operative complaint. *See, e.g.*, Am. Compl. [Doc No. 29] at ¶ 2 (alleging that Vivint's sales agents trick CPI customers into believing, among other things, "(1) that Vivint has purchased or is purchasing CPI; (2) that Vivint is purchasing or "taking over" CPI customer accounts; (3) that Vivint manufactures CPI's equipment and is present at customers' homes simply to upgrade CPI's system; and (4) that Vivint was sent, or is acting on behalf of, CPI").

Further, Vivint's proposed instructions are based on Ninth Circuit standards (such as the "Sleekcraft" test stated in Vivint's proposed instruction 15.18) that have not been adopted in the Fourth Circuit. Rather, the appropriate Fourth Circuit standards are set forth in CPI's proposed instruction and cited authority—including the nine likelihood of confusion factors set forth in *RXD Media, LLC v. IP Application Dev. LLC*, 986 F.3d 361, 372–73 (4th Cir. 2021).

For these reasons, CPI objections to all of Vivint's counter-proposed instructions on CPI's Lanham Act / false affiliation claim and submits that CPI's proposed instruction above should be utilized. If any of Vivint's counter-proposed instructions are used, they should be altered to account for CPI's allegations with respect to Vivint's false association with CPI's trade name. CPI states additional objections to individual instructions proposed by Vivint below.

Case 3:20-cv-00504-FDW-DSC   Document 81-9   Filed 12/10/21   Page 25 of 154

**Vivint's Proposed Instruction:**

## 15.1 PRELIMINARY INSTRUCTION—TRADEMARK

### [SUBJECT TO OBJECTION BY CPI⁴]

The plaintiff, CPI, seeks damages against the defendant, Vivint, for trademark infringement and unfair competition. The defendant denies infringing any CPI trademarks or unfairly competing and contends the asserted trademarks are invalid and any use of the asserted trademarks or reference to CPI was fair use or otherwise allowed and not an infringement. To help you understand the evidence that will be presented in this case, I will explain some of the legal terms you will hear during this trial.

## DEFINITION AND FUNCTION OF A TRADEMARK

A trademark is a word, name, symbol, device, or any combination of these items that indicates the source of goods or services. The owner of a trademark has the right to exclude others from using that trademark or a similar mark that is likely to cause confusion in the marketplace. The main function of a trademark is to identify and distinguish goods or services as the product of a particular manufacturer or merchant and to protect its goodwill.

## HOW A TRADEMARK IS OBTAINED

A person may acquire the right to exclude others from using the same mark or a similar mark that is likely to cause confusion in the marketplace by being the first

---

⁴ CPI incorporates by reference its responses to Vivint's objections stated on page 22-25 above.

to use it in the marketplace, or by using it before the alleged infringer. Rights in a trademark are obtained only through commercial use of the mark.

## TRADEMARK INTERESTS

The owner of a trademark may transfer, give, or sell to another person the owner's interest in the trademark. This type of agreement is called an assignment, and the person who receives the owner's interest is called an assignee and becomes the owner of the mark. An assignee has the right to exclude others from using the trademark or a similar mark that is likely to cause confusion in the marketplace. To be enforceable, the assignment must be in writing and signed. It must also include the goodwill of the business connected with the trademark.

A trademark owner or assignee may enforce the right to exclude others in an action for infringement or unfair competition.

## TRADEMARK REGISTRATION

After the owner of a trademark has obtained the right to exclude others from using the trademark, the owner may obtain a certificate of registration issued by the United States Patent and Trademark Office. Thereafter, when the owner brings an action for infringement, the owner may rely solely on the registration certificate to prove that the owner has the right to exclude others from using the trademark or a similar mark that is likely to cause confusion in the marketplace in connection with the type of goods or services specified in the certificate. These presumptions in favor of the owner created by the certificate of registration can be overcome or rebutted only by certain types of evidence that I will describe to you later as appropriate.

Case 3:20-cv-00504-FDW-DSC   Document 81-9   Filed 12/10/21   Page 27 of 154

## LIKELIHOOD OF CONFUSION

To prove infringement or unfair competition, CPI must prove, by a preponderance of the evidence, that Vivint, without CPI's consent, used in commerce a reproduction, copy, counterfeit or colorable imitation of CPI's mark in connection with the distribution or advertisement of goods or services, such that Vivint's use of the mark is likely to cause confusion as to the source of the goods or services. It is not necessary that the mark used by Vivint be an exact copy of CPI's mark. Rather, CPI must demonstrate that, viewed in its entirety, the mark used by Vivint is likely to cause confusion in the minds of reasonably prudent purchasers or users as to the source of the product or service in question.

## CPI'S BURDEN OF PROOF

In this case, the plaintiff, CPI, contends that the defendant, Vivint, has infringed CPI's asserted trademarks. CPI has the burden of proving by a preponderance of the evidence that it is the owner of a valid trademark and that Vivint infringed that trademark. CPI also has the burden to prove any damages it claims by a preponderance of the evidence. Any damages awarded must be based on evidence introduced in the trial, not speculation.

Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the Vivint infringed a trademark owned by CPI.

## VIVINT'S BURDEN OF PROOF

Vivint contends that CPI's claims are barred by CPI's own unfair, deceptive, unlawful, and/or anti-competitive conduct and by the doctrines of unclean hands and

estoppel. Vivint contends CPI's claims are time-barred, in whole or in part, by the applicable statute of limitations and/or the doctrine of laches. Vivint contends CPI's claims are barred by the doctrines of fair use and nominative fair use. Vivint contends CPI's claims are barred, in whole or in part, by its failure to mitigate any alleged damages. Vivint contends CPI's claims are barred, in whole or in part, to the extent any Vivint sales representatives were acting outside their authority and/or the scope of their employment. Vivint contends CPI's asserted trademarks are merely descriptive and not entitled to protection. Vivint has the burden of proving these defenses by a preponderance of the evidence.

Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that CPI's asserted trademarks are invalid, that any use by Vivint was a fair use, that Vivint's claims are time barred or otherwise barred by the doctrines of fair use, nominative fair use, unclean hands, estoppel, or failure to mitigate alleged damages, or that CPI's unfair, deceptive, unlawful, and\or anti-competitive conduct bars its claims.

SOURCE: Modeled on Ninth Circuit Pattern Instruction 15.1.

**CPI Objection**

CPI incorporates its objections stated above on pp. 22-25. In addition, CPI objects that Vivint's proposed instruction No. 15.1, as drafted, is confusing with respect to its application to this case. The comment to Ninth Circuit Model Instruction 15.1 states expressly that "This instruction is tailored to fit a classic

trademark infringement case. If the case involves trade dress, trade name, or other unfair competition claims, this instruction will require modification." CPI alleges Vivint has falsely associated itself with CPI (a trade name) such that use of any of this model instruction "require[s] modification."  If the instruction is used at all, references to CPI's "trademark" should be supplanted with "CPI's trademark or trade name" throughout proposed instruction No. 15.1.

## 15.2 DEFINITION—TRADEMARK (15 U.S.C. § 1127)

### [SUBJECT TO OBJECTION BY CPI[5]]

A trademark is any word, name, symbol, device, or any combination thereof, used by a person to identify and distinguish that person's goods or services from those of others and to indicate the source of the goods or services, even if that source is generally unknown. A person who uses the trademark of another may be liable for damages.

SOURCE: Modeled on Ninth Circuit Pattern Instruction 15.2.

---

[5] CPI incorporates by reference its responses to Vivint's objections stated on page 22-25 above.

## 15.4 DEFINITION—TRADE NAME (15 U.S.C. § 1127)

## [SUBJECT TO OBJECTION BY CPI[6]]

A trade name is any word or words, a symbol, or combination of words and symbol, used by a person to identify that person's business and to distinguish it from the business of others. A trade name symbolizes the reputation of a person's business as a whole. By comparison, a trademark identifies a person's goods. Any person who uses the trade name of another may be liable for damages.

SOURCE: Modeled on Ninth Circuit Pattern Instruction 15.4

**Additional CPI Objection**

As stated above on pp. 22-25, inclusion of this instruction, in conjunction with CPI's proposed instruction No. 1 for False Association under the Lanham Act, should resolve Vivint's general objections to CPI's proposed liability instruction on the Lanham Act – False Affiliation claim. If this instruction is used, CPI objects that Vivint's proposed instruction omits the final portion supplied by the Ninth Circuit Model Instruction, which states, "**If a person owns a trade name then that person has the exclusive right to use the name or to control the use of confusingly similar variations of the name by others in the market**." That sentence should be included at the end of Vivint's proposed instruction above

---

[6] CPI incorporates by reference its responses to Vivint's objections stated on page 22-25 above.

following the sentence stating "Any person who uses the trade name of another may

be liable for damages."

## 15.5 TRADEMARK LIABILITY—THEORIES AND POLICIES
## (15 U.S.C. §§ 1114(1), 1125(a))

### [SUBJECT TO OBJECTION BY CPI[7]]

The trademark laws balance three often-conflicting goals: (1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; (2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and (3) protecting the public interest in fair competition in the market.

The balance of these policy objectives vary from case to case, because they may often conflict. Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

In these instructions, I will identify types of facts you are to consider in deciding if Vivint is liable to CPI for violating the trademark law. These facts are relevant to whether Vivint is liable for:

1. infringing CPI's trademark rights, by using a trademark owned by CPI in a manner likely to cause confusion among consumers;

2. unfairly competing, by using a trademark in a manner likely to cause confusion as to the origin or quality of CPI's goods;

[7] CPI incorporates by reference its responses to Vivint's objections stated on page 22-25 above. The standards for liability relating to false association are better stated in CPI's proposed instruction.

3. infringing CPI's trade name, by using similar corporate, business or professional names in a manner likely to cause confusion about the source of products in the minds of consumers; and

4. false advertising, by making a false statement that was material and that tended to deceive consumers, injuring CPI in the market.

SOURCE: Modeled on Ninth Circuit Pattern Instruction 15.5

**CPI's Additional Objection**

CPI alleges a claim for false affiliation under § 1125(a). CPI's proposed liability instruction is based on the direct statutory language and better states the elements of liability for such a claim.

## 15.6 INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF— TRADEMARK
## (15 U.S.C. § 1114(1))

### [SUBJECT TO OBJECTION BY CPI[8]]

On CPI's claim for trademark infringement, CPI has the burden of proving each of the following elements by a preponderance of the evidence:

1. [*CPI to describe the plaintiff's symbol or term*] is a valid, protectable trademark;

2. CPI exclusively owns [*describe the plaintiff's symbol or term*] as a trademark; and

3. Vivint used [*CPI to describe symbol or term used by the defendant*] a mark similar to [*describe the plaintiff's symbol or term*] without the consent of CPI in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods or services.


If you find that each of the elements on which CPI has the burden of proof has been proved, and none of the Vivint's affirmative defenses has been proved, your verdict should be for CPI. If, on the other hand, CPI has failed to prove any of these elements, your verdict should be for Vivint.

SOURCE: Modeled on Ninth Circuit Pattern Instruction 15.6

---

[8] CPI incorporates by reference its responses to Vivint's objections stated on page 22-25 above.

**CPI's Additional Objection**

CPI objects to this instruction in its entirety. CPI does not allege a traditional trademark infringement claim under § 1114, but instead alleges a claim for false association under § 1125(a). As such, CPI's proposed instruction better states the applicable law for a false affiliation claim. If this instruction is used rather than CPI's proposed instruction, it should, at minimum, be modified to include reference to CPI's "trademark or trade name."

## 15.8 INFRINGEMENT—ELEMENTS—PRESUMED VALIDITY AND OWNERSHIP
## —REGISTERED TRADEMARK (15 U.S.C. §§ 1057, 1065 and 1115)

### [SUBJECT TO OBJECTION BY CPI[9]]

I gave you instruction number [*insert number of instruction regarding Trademark Elements and Burden of Proof, e.g., 15.6*] that requires CPI to prove by a preponderance of the evidence that the trademark is valid and protectable and that CPI exclusively owns the trademark. A valid trademark is a word, name, symbol, device, or any combination of these, that indicates the source of goods and distinguishes those goods from the goods of others. A trademark may become protectable after it is used in commerce. One way for CPI to prove trademark validity is to show that the trademark is registered. An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark covered by that certificate.

Exhibit [*CPI to provide Exhibit #*] is a certificate of registration from the United States Patent and Trademark Office. It was submitted by CPI as proof of the validity of the trademark and that Crime Prevention, Inc. owns the trademark. The facts recited in this certificate are: that Crime Prevention, Inc. owns the exclusive right to use the asserted logo shown below for installation and monitoring of security

---

[9] CPI incorporates by reference its responses to Vivint's objections stated on page 22-25 above.

systems for homes and businesses; however, CPI has the burden to prove that Crime Prevention, Inc. validly and effectively assigned its exclusive rights in the logo to CPI. CPI cannot prevent others from using the words "warning" or "security systems," apart from the logo shown below.



SOURCE: Modeled on Ninth Circuit Pattern Instruction 15.8

**CPI's Additional Objection**

CPI objects to this instruction in its entirety. CPI alleges a claim for false association under § 1125(a) related to Vivint's sales representatives representing they have an affiliation with CPI when soliciting directly to CPI customers. As such, CPI's proposed Lanham Act / False Affiliation instruction better states the applicable law for a false affiliation claim.

## 15.9 INFRINGEMENT—ELEMENTS—VALIDITY—UNREGISTERED MARKS

### [SUBJECT TO OBJECTION BY CPI[10]]

[*CPI to describe its alleged unregistered trademarks and trade name*] are not registered. Unregistered trademarks can be valid and provide the trademark owner with the exclusive right to use that mark. Instruction [*insert number of instruction regarding Trademark Elements and Burden of Proof, e.g., 15.6*] requires CPI to prove by a preponderance of the evidence that [*CPI to describe its alleged unregistered trademarks and trade name*] are valid. A valid trademark is a word, name, symbol, device, or any combination of these items that is either:

1. inherently distinctive; or

2. descriptive, but has acquired a secondary meaning.

Only a valid trademark can be infringed. Only if you determine CPI proved by a preponderance of the evidence that the [*CPI to describe its alleged unregistered trademarks and trade name*] are valid trademarks should you consider whether CPI owns them or whether Vivint's actions infringed them.  Only if you determine that [*CPI to describe its alleged unregistered trademarks and trade name*] are not inherently distinctive should you consider whether it is descriptive but became distinctive through the development of secondary meaning, as I will direct in

---

10 CPI incorporates by reference its responses to Vivint's objections stated on page 22-25 above.

Instruction [*insert number of instruction regarding Distinctiveness and Secondary Meaning, e.g., 15.11*].

SOURCE: Modeled on Ninth Circuit Pattern Instruction 15.9.

## 15.10 INFRINGEMENT—ELEMENTS—VALIDITY—UNREGISTERED MARK—DISTINCTIVENESS

### [SUBJECT TO OBJECTION BY CPI[11]]

**Strength Required for Validity.**

How strongly a trademark indicates that a good or service comes from a particular source, even if unknown, is an important factor to consider in assessing its validity and determining whether a term used by Vivint creates for consumers a likelihood of confusion with CPI's asserted trademarks or trade name. CPI asserts [*insert claimed trademark*] is a valid and protectable trademark for its [*insert goods used in connection with the trademark*]. CPI contends that Vivint's use of that the term [*insert term allegedly used by Vivint*] in connection with Vivint's [*insert the defendant's good or service or business*] infringes CPI's trademark and trade name and is likely to cause confusion about the origin of goods or services, associated with that trademark and trade name.

In order to determine if CPI has met its burden of showing that [*insert claimed trademark*] is a valid trademark or trade name, you should classify it on the spectrum of trademark distinctiveness that I will explain in this instruction. An inherently distinctive trademark is a word, symbol or device, or combination of them, which intrinsically identifies a particular source of a good or service in the market. The law assumes that an inherently distinctive trademark is one that almost automatically

---

[11] CPI incorporates by reference its responses to Vivint's objections stated on page 22-25 above.

tells a consumer that it refers to a brand or a source for a product, and that consumers will be predisposed to equate the trademark with the source of a product.

### Spectrum of Trademark Distinctiveness

Trademark law provides protection to distinctive or strong trademarks. Conversely, trademarks that are not as distinctive or strong are called "weak" trademarks and receive less protection from infringing uses. Trademarks that are not distinctive are not entitled to any trademark protection. For deciding trademark protectability you must consider whether a trademark is inherently distinctive. Trademarks are grouped into four categories according to their relative strength. These four categories are, listed from strongest to weakest:

1. arbitrary (which is inherently distinctive);

2. suggestive (which also is inherently distinctive);

3. descriptive (which is protected only if it acquires in consumers' minds a "secondary meaning" which I explain in Instruction [*insert number of instruction regarding secondary meaning, e.g., 15.11*]; and

4. generic names (which are entitled to no protection).

**Arbitrary Trademarks.** The first category of "inherently distinctive" trademarks is arbitrary trademarks. They are considered strong marks and are clearly protectable. They involve the arbitrary, fanciful or fictitious use of a word to designate the source of a good or service. Such a trademark is a word that in no way describes or has any relevance to the particular good or service it is meant to identify.

It may be a common word used in an unfamiliar way. It may be a newly created (coined) word or parts of common words which are applied in a fanciful, fictitious or unfamiliar way, solely as a trademark. For instance, the common word "apple" became a strong and inherently distinctive trademark when used by a company to identify the personal computers that company sold. The company's use of the word "apple" was arbitrary or fanciful because "apple" did not describe and was not related to what the computer was, its components, ingredients, quality, or characteristics. "Apple" was being used in an arbitrary way to designate for consumers that the computer comes from a particular manufacturer or source.

**Suggestive Trademarks.** The next category is suggestive trademarks. These trademarks are also inherently distinctive but are considered weaker than arbitrary trademarks. Unlike arbitrary trademarks, which are in no way related to what the good or service is or its components, quality, or characteristics, suggestive trademarks imply some characteristic or quality of the good or service to which they are attached. If the consumer must use imagination or any type of multi-stage reasoning to understand the trademark's significance, then the trademark does not describe the product's features, but merely suggests them. A suggestive use of a word involves consumers associating the qualities the word suggests to the good or service to which the word is attached. For example, when "apple" is used not to indicate a certain company's computers, but rather "Apple–A–Day" Vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins are. However, consumers may come to associate the healthfulness of "an apple a day

keeping the doctor away" with the supposed benefits of taking "Apple–A–Day" Vitamins.

**Descriptive Trademarks.** The third category is descriptive trademarks. These trademarks directly identify or describe some aspect, characteristic, or quality of the good or service to which they are affixed in a straightforward way that requires no exercise of imagination to be understood. For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes ingredients of the juice. Other common types of descriptive trademarks identify where a good or service comes from, or the name of the person who makes or sells the good or service. Thus, the words "Apple Valley Juice" affixed to cider from the California town of Apple Valley is a descriptive trademark because it geographically describes where the cider comes from. Similarly, a descriptive trademark can be the personal name of the person who makes or sells the product. So, if a farmer in Apple Valley, Judy Brown, sold her cider under the label "Judy's Juice" (rather than CranApple) she is making a descriptive use of her personal name to indicate and describe who produced the apple cider and she is using her first name as a descriptive trademark.

**Generic Names.** The fourth category is entitled to no protection at all. They are called generic names and they refer to a general name of the good or service, as opposed to the plaintiff's brand for that good or service. Generic names are part of our common language that we need to identify all such similar goods or services. A generic name is a name for the good or service on which it appears. If the primary significance

of the alleged mark is to name the type of good or service rather than the manufacturer or provider, the term is a generic name and cannot be a valid trademark. If the majority of relevant consumers would understand the term to name the type of good or service rather than the manufacturer or provider, the primary significance of the term is generic and not entitled to protection as a trademark. The word "apple" can be used as a generic name and not be entitled to any trademark protection. This occurs when the word is used to identify the fruit from an apple tree. The computer maker who uses the word "apple" as a trademark to identify its personal computer, or the vitamin maker who uses that word as a trademark on vitamins, has no claim for trademark infringement against the grocer who used that same word to indicate the fruit sold in a store. As used by the grocer, the word is generic and does not indicate any particular source of the product. As applied to the fruit, "apple" is simply a commonly used name for what is being sold.

**Mark Distinctiveness and Validity**

If you decide that [*insert the plaintiff's claimed trademark*] is arbitrary or suggestive, it is considered to be inherently distinctive. An inherently distinctive trademark is valid and protectable. On the other hand, if you determine that [*insert the plaintiff's claimed trademark*] is generic, it cannot be distinctive and therefore is not valid nor protectable and you must render a verdict for Vivint on the charge of infringement in Instruction [*insert number of instruction regarding Trademark Elements and Burden of Proof, e.g., 15.6*].

If you decide that [*insert the plaintiff's claimed trademark*] is descriptive, you will not know if the trademark is valid or invalid until you consider whether it has gained distinctiveness by the acquisition of "secondary meaning," which I explain in Instruction [*insert number of instruction regarding secondary meaning, e.g., 15.11*].

SOURCE: Modeled on Ninth Circuit Pattern Instruction 15.10

**CPI's Additional Objection**

CPI objects to this instruction in its entirety. CPI does not allege a traditional trademark infringement claim under § 1114, but instead alleges a claim for false association under § 1125(a). As such, CPI's proposed instruction better states the applicable law for a false affiliation claim. If this instruction is used rather than CPI's proposed instruction, it should, at minimum, be modified to include reference to CPI's "trademark or trade name."

## 15.11 INFRINGEMENT—ELEMENTS—VALIDITY—DISTINCTIVENESS—SECONDARY MEANING

### [SUBJECT TO OBJECTION BY CPI[12]]

If you determined in Instruction [*insert number of instruction e.g. 15.10*] that [*identify plaintiff's claimed unregistered trademark*] is descriptive, you must consider the recognition that the mark has among prospective consumers in order to determine whether it is valid and protectable even though it is descriptive. This market recognition is called the trademark's "secondary meaning." A term acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is. You must find that the preponderance of the evidence shows that a significant number of the consuming public associates the [*identify the alleged trademark*] with a single source, in order to find that it has acquired secondary meaning. When you are determining whether [*describe symbol or term*] has acquired a secondary meaning, consider the following factors:

(1) **Consumer Perception.** Whether the people who purchase the good or service that bears the claimed trademark associate the trademark with the owner;

(2) **Advertisement.** To what degree and in what manner the owner may have advertised under the claimed trademark;

---

[12] CPI incorporates by reference its responses to Vivint's objections stated on page 22-25 above.

**(3) Demonstrated Utility.** Whether the owner successfully used this trademark to increase the sales of its good or service;

**(4) Extent of Use.** The length of time and manner in which the owner used the claimed trademark;

**(5) Exclusivity.** Whether the owner's use of the claimed trademark was exclusive;

**(6) Copying.** Whether Vivint intentionally copied the owner's trademark;

**(7) Actual Confusion.** Whether Vivint's use of the CPI's trademark has led to actual confusion among a significant number of consumers; and

**(8) Survey Evidence.** The presence or absence of survey evidence establishing secondary meaning.

The presence or absence of any particular factor should not necessarily resolve whether [*identify the alleged trademark*] has acquired secondary meaning. Descriptive marks are protectable only to the extent you find they acquired distinctiveness through secondary meaning. Descriptive marks are entitled to protection only as broad as the secondary meaning they have acquired, if any. If they have acquired no secondary meaning, they are entitled to no protection and cannot be considered a valid mark. CPI has the burden of proving that [*identify plaintiff's trademark*] has acquired a secondary meaning. Vivint has the burden of proving that the [*identify plaintiff's trademark*] lacks a secondary meaning. The mere fact that CPI is using [*describe symbol or term*], or that CPI began using it before Vivint, does not mean that the trademark has acquired secondary meaning. There is no particular

length of time that a trademark must be used before it acquires a secondary meaning. The best way for CPI to show secondary meaning is through consumer survey evidence.

SOURCE: Modeled on Ninth Circuit Pattern Instruction 15.11; *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 396 (4th Cir. 2009) (stating that survey evidence is "generally thought to be the most direct and persuasive way of establishing secondary meaning.").

### CPI's Additional Objection

CPI objects to this instruction in its entirety. CPI does not allege a traditional trademark infringement claim under § 1114, but instead alleges a claim for false association under § 1125(a). As such, CPI's proposed instruction (which is based directly on the statutory language of § 1125(a)) better states the applicable law for a false affiliation claim. If this instruction is used rather than CPI's proposed instruction, it should, at minimum, be modified to include reference to CPI's "trademark or trade name."

## 15.13 INFRINGEMENT—ELEMENTS—OWNERSHIP—GENERALLY

## [SUBJECT TO OBJECTION BY CPI[13]]

The law entitles the owner of a valid trademark to exclude others from using that trademark. A person may acquire the right to exclude others from using a trademark by being the first to use it in the marketplace or by using it before the alleged infringer. A person may also acquire the right to exclude others from using a trademark if industry or public usage creates, for a majority of relevant consumers, an association between the person and the mark prior to the alleged infringer's use. If you find CPI's [*describe trademark*] to be valid, that is, inherently distinctive, you must consider whether CPI used the [*describe trademark*] as a trademark for its [*identify the plaintiff's product*] before Vivint began to use the [*describe trademark*] to market its [*identify the defendant's product*] in the area where the plaintiff sells its [*identify the plaintiff's product*]. A trademark is "used" for purposes of this instruction when it is transported or sold in commerce and the trademark is attached to the product, or placed on its label or container or if that is not practical, placed on documents associated with the goods or their sale. If CPI has not shown by a preponderance of the evidence that CPI used [*describe trademark*] before Vivint's use of [*describe trademark*], then you cannot conclude that CPI is the owner of the trademark for purposes of Instruction.

SOURCE: Modeled on Ninth Circuit Pattern Instruction 15.13.

---

[13] CPI incorporates by reference its responses to Vivint's objections stated on page 22-25 above.

**CPI's Additional Objection**

CPI objects to this instruction in its entirety. CPI does not allege a traditional trademark infringement claim under § 1114, but instead alleges a claim for false association under § 1125(a). As such, CPI's proposed instruction (which is based directly on the statutory language of § 1125(a)) better states the applicable law for a false affiliation claim. If this instruction is used rather than CPI's proposed instruction, it should, at minimum, be modified to include reference to CPI's "trademark or trade name."

**15.15 Trademark Ownership—Assignee (15 U.S.C. § 1060)**

[SUBJECT TO OBJECTION BY CPI[14]]

The owner of a trademark may transfer to another the owner's interest in the trademark, that is, the right to exclude others from using the mark. This transfer is called an assignment, and the person to whom this right is assigned is called an assignee and becomes the owner of the trademark.

The assignment must be in writing and signed. To be enforceable, the assignment must include the goodwill of the business connected with the mark.

An assignee may enforce this right to exclude others in an action for infringement or unfair competition.

CPI must prove by a preponderance of the evidence that it is the owner or assignee of the asserted trade name and trademarks.

SOURCE: Modeled on Ninth Circuit Pattern Instruction 15.15.

**CPI's Additional Objection**

CPI objects to this instruction in its entirety. Any assignment of CPI's trademark or trade name is not at issue, such that inclusion of this instruction is unnecessary, misleading and confusing.

---

[14] CPI incorporates by reference its responses to Vivint's objections stated on page 22-25 above.

## 15.17 TRADEMARK OWNERSHIP—MERCHANT OR DISTRIBUTOR

## [SUBJECT TO OBJECTION BY CPI[15]]

A merchant or distributor may own a trademark that identifies products the merchant or distributor sells even though the products are manufactured by someone else.

SOURCE: Modeled on Ninth Circuit Pattern Instruction 15.17.

### CPI's Additional Objection

CPI objects to this instruction in its entirety. There is no evidence relating to merchants or distributors of CPI's trademark or trade name such that inclusion of this instruction is unnecessary, misleading and confusing.

---

[15] CPI incorporates by reference its responses to Vivint's objections stated on page 22-25 above.

## 15.18 INFRINGEMENT—LIKELIHOOD OF CONFUSION—FACTORS— *SLEEKCRAFT* TEST (15 U.S.C. §§ 1114(1) and 1125(a))

**[SUBJECT TO OBJECTION BY CPI[16]]**

You must consider whether Vivint's use of the term *[to be filled out by CPI]* is likely to cause confusion about the source of CPI's or Vivint's goods or services. I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

**(1) Strength or Weakness of CPI's Mark.** The more the consuming public recognizes CPI's trademark as an indication of origin of CPI's goods or services, the more likely it is that consumers would be confused about the source of the Vivint's goods or services if Vivint uses a similar mark.

**(2) Vivint's Use of the Mark.** If Vivint and CPI use their trademarks on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

**(3) Similarity of CPI's and Vivint's Marks.** If the overall impression created by CPI's trademark in the marketplace is similar to that created by

---

[16] CPI incorporates by reference its responses to Vivint's objections stated on page 22-25 above.

Vivint's trademark in appearance, sound, or meaning, there is a greater chance that consumers are likely to be confused by Vivint's use of a mark.

**(4) Actual Confusion.** If use by Vivint of CPI's trademark has led to instances of actual confusion, this strongly suggests a likelihood of confusion. However actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, Vivint's use of the trademark may still be likely to cause confusion. As you consider whether the trademark used by Vivint creates for consumers a likelihood of confusion with CPI's trademark, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

**(5) Vivint's Intent.** Knowing use by Vivint of CPI's trademark to identify similar goods or services may strongly show an intent to derive benefit from the reputation of CPI's mark, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that Vivint acted knowingly, the use of CPI's trademark to identify similar goods or services may indicate a likelihood of confusion.

**(6) Marketing/Advertising Channels.** If CPI's and Vivint's goods or services are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

**(7) Consumer's Degree of Care.** The more sophisticated the potential buyers of the goods or services, or the more costly the goods or services, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be. They may be less likely to be confused by similarities in CPI's and Vivint's trademarks.

**(8) Product Line Expansion.** When the parties' products differ, you may consider how likely CPI is to begin selling the products for which Vivint is using CPI's trademark. If there is a strong possibility of expanding into the other party's market, there is a greater likelihood of confusion.

**(9) Quality of Vivint's Products.** If CPI establishes that the quality of Vivint's goods or services or inferior to those offered by CPI, then this factor favors a finding of likelihood of confusion.

SOURCE: Modeled on Ninth Circuit Pattern Instruction 15.18.

## CPI's Additional Objection

CPI's proposed instruction better states the applicable law for a false affiliation claim and the test for likelihood of confusion in the Fourth Circuit. If this instruction

is used rather than CPI's proposed instruction, it should, at minimum, be modified to include reference to CPI's "trademark or trade name."

## 15.19 INFRINGEMENT—LIKELIHOOD OF CONFUSION—FACTOR—STRENGTH OF TRADEMARK

### [SUBJECT TO OBJECTION BY CPI[17]]

**Strength as a Factor for Evaluating Likelihood of Confusion**

How strongly CPI's trademark indicates that the goods or services come from a particular source is an important factor to consider in determining whether the trademark used by Vivint is likely to create confusion with CPI's mark. CPI asserts that [*insert trademark*] is a trademark for its goods or services. CPI contends that Vivint's use of [*insert defendant's mark*] in connection with Vivint's [*insert the defendant's good or service*] infringes CPI's trademark because it is likely to cause confusion.

**The Strength of Marks**

The more distinctive and strong a trademark is, the greater the scope of protection the law provides. The law measures trademark strength by considering two prongs:

1. Commercial Strength: This is the amount of marketplace recognition of the mark; and

2. Conceptual Strength: This is the placement of the mark on the spectrum of marks.

---

[17] CPI incorporates by reference its responses to Vivint's objections stated on page 22-25 above.

**Commercial Strength**: What is "commercial strength?" Not all marks are equally well known. Trademark strength is somewhat like the renown of people. Only a few very famous people are widely known and recognized around the world. Most people are known and recognized only by a small circle of family and friends. Some trademarks are relatively "strong," in the sense they are widely known and recognized. A few trademarks are in the clearly "famous" category. These "famous" marks are those like "Apple" for computers and mobile phones, "Google" for a search engine, "Coca-Cola" for beverages and "Toyota" for vehicles. Some trademarks may be strong and well known only in a certain market niche such as mountain climbing gear, plumbing supplies, or commercial airplane electronics equipment, but relatively weak outside that field.

**Conceptual Strength**: What is "conceptual strength?" All trademarks are grouped into two categories: either inherently distinctive or not inherently distinctive. If a mark is inherently distinctive it is immediately protected when first used. If it is not inherently distinctive, to become a legally protected mark, a designation must acquire distinctiveness in people's minds by becoming known as an indication of source of goods or services. The law calls this "secondary meaning." (*See* Instruction 15.11 (Infringement—Elements—Validity— Distinctiveness—Secondary Meaning). If the plaintiff's mark is determined to be inherently distinctive, there will be no need to instruct the jury on acquiring a secondary meaning for the mark.

For determining the conceptual strength of a mark, trademarks are grouped on a spectrum according to the nature of the mark. In the spectrum, there are three categories of word marks that the law regards as being inherently distinctive: coined, arbitrary and suggestive. Descriptive word marks are regarded as not being inherently distinctive and require a secondary meaning to become a valid trademark.

**Coined** and arbitrary words are regarded as being relatively strong marks. A coined word mark is a word created solely to serve as a trademark. For example, "Clorox" for cleaning products and "Exxon" for gasoline are coined marks.

**Arbitrary** marks are words that in no way describe or suggest the nature of the goods or services it is used with. For example, "apple" is a common word, but it does not describe or suggest anything about the nature of "Apple" brand computers or smart phones. It is an arbitrary word when used as a mark on those products and is said to be conceptually strong as a mark.

**Suggestive** word marks are regarded as not being as conceptually strong as coined or arbitrary marks. Suggestive trademarks suggest some characteristic or quality of the goods or services with which they are used. If the consumer must use her imagination or think through a series of steps to understand what the trademark is telling about the product, then the trademark does not directly describe the product's features, but merely suggests them. For example, the trademark "Tail Wagger" for

dog food merely suggests that your dog will like the food. As another example, when "apple" is used in the mark "Apple-A-Day" for vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins are. However, it suggests the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple-A-Day" vitamins.

**Descriptive** word marks are not inherently distinctive. These marks directly describe some characteristic, or quality of the goods or services with which they are used in a straightforward way that requires no exercise of imagination. For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes one of ingredients of the juice.

SOURCE: Modeled on Ninth Circuit Pattern Instruction 15.19.

<u>**CPI's Additional Objection**</u>

CPI's proposed instruction better states the applicable law for a false affiliation claim and the test for likelihood of confusion in the Fourth Circuit. If this instruction is used rather than CPI's proposed instruction, it should, at minimum, be modified to include reference to CPI's "trademark or trade name."

## 15.20 DERIVATIVE LIABILITY—INDUCING INFRINGEMENT

### [SUBJECT TO OBJECTION BY CPI[18]]

A person is liable for trademark infringement by another if the person intentionally induced another to infringe the trademark. CPI has the burden of proving each of the following by a preponderance of the evidence:

1. [*Name of direct infringer*] infringed CPI's trademark;

2. Vivint intentionally induced [*name of direct infringer*] to infringe plaintiff's trademark; and

3. CPI was damaged by the infringement.

If you find that each of the elements on which CPI has the burden of proof has been proved, your verdict should be for CPI. If, on the other hand, CPI has failed to prove any of these elements, your verdict should be for Vivint.

SOURCE: Modeled on Ninth Circuit Pattern Instruction 15.20

### CPI's Additional Objection

At this time, there is no evidence to suggest inducement of infringement by a third party as opposed to direct infringement by Vivint's sales agents. CPI therefore objects this instruction is unnecessary.

---

[18] CPI incorporates by reference its responses to Vivint's objections stated on page 22-25 above.

## 15.21 DERIVATIVE LIABILITY—CONTRIBUTORY INFRINGEMENT

### [SUBJECT TO OBJECTION BY CPI[19]]

A person is liable for trademark infringement by another if the person sells or supplies goods or services to another knowing or having reason to know that the other person will use the goods or services to infringe the plaintiff's trademark. CPI has the burden of proving each of the following by a preponderance of the evidence:

1. Vivint sold or supplied goods or services to [*name of direct infringer*];

2. [*name of direct infringer*] used the goods or services Vivint sold or supplied to infringe CPI's trademark;

3. Vivint knew or had reason to know [*name of direct infringer*] would use the goods to infringe CPI's trademark or was infringing CPI's trademark and the Vivint continued to supply its goods or services;

4. Vivint providing the goods or services to [*name of direct infringer*] had direct control and monitoring of the instrumentality used by [*name of direct infringer*] to infringe; and

5. CPI was damaged by the infringement.

---

[19] CPI incorporates by reference its responses to Vivint's objections stated on page 22-25 above.

If you find that each of the elements on which CPI has the burden of proof has been proved, your verdict should be for CPI. If, on the other hand, CPI has failed to prove any of these elements, your verdict should be for Vivint.

SOURCE: Modeled on Ninth Circuit Pattern Instruction 15.21

**CPI's Additional Objection**

There is no evidence to suggest inducement of infringement by a third party as opposed to direct infringement by Vivint's sales agents, and that has not been a case theory litigated by Vivint. CPI therefore objects this instruction is unnecessary and inconsistent with the evidence.

## AFFIRMATIVE DEFENSES

## (to Count I – Lanham Act)

**Generally**

If you find that CPI has met its burden to prove its claim by a preponderance of the evidence, you must next consider Vivint's affirmative defenses to the claim. If you find that CPI has not met its burden to prove its claims by a preponderance of the evidence, you do not need to consider Vivint's affirmative defenses. I will now instruct you on those affirmative defenses.

SOURCE: Eleventh Circuit Pattern Instruction 3.7.1–3.7.2

**Classic Fair Use (15 U.S.C. § 1115(b)(4))**

The owner of a trademark cannot exclude others from making a fair use of that trademark. Vivint makes fair use of a mark when it uses it as other than a trademark, to accurately describe its own goods or services. Vivint contends that it fairly used [*the trademark*] to describe its goods or services. Vivint has the burden of proving its fair use of the mark by a preponderance of the evidence. Vivint makes fair use of a trademark when it:

1. used the mark other than to distinguish the defendant's goods from the plaintiff's and to indicate the source of the defendant's goods;

2. used the mark fairly and in good faith; and

3. used the mark only to describe Vivint's goods or services as those of Vivint and not at all to describe CPI's product.

SOURCE: Modeled on Ninth Circuit Pattern Instruction 15.24


**Nominative Fair Use**

The owner of a trademark cannot exclude others from making a nominative fair use of that trademark. Vivint makes nominative fair use of a mark when it uses it as other than a trademark, to accurately describe, name, or identify CPI's goods or services. Vivint contends that it did not infringe [*the trademark*] because the alleged infringement was a nominative fair use of the trademark to describe, name, or identify CPI's good or service, even if Vivint's ultimate goal was to describe its own product. Vivint has the burden of proving its nominative fair use of the mark by a preponderance of the evidence. Vivint makes nominative fair use of a trademark when it:

1. Uses the mark in connection with CPI's goods or services, which were not readily identifiable without use of that mark;

2. Used only so much of the mark as was reasonably necessary to identify the goods and services in question; and

3. Did not do anything in connection with the trademark that would suggest sponsorship or endorsement of Vivint's good or service by CPI.

A good or service cannot be effectively identified without use of its trademark when there would be no other effective way to compare, criticize, refer to or identify it without using the trademark.

A reasonably necessary use of a trademark occurs when no more of the mark's appearance is used than is necessary to identify the product and make the reference intelligible to the consumer. For example, if a particular word is CPI's trademark, Vivint reasonably uses it when Vivint does not use any distinctive color, logo, abbreviation, or graphic that CPI uses to display the trademark than is necessary to identify the goods or services.

The fact that Vivint's use of the trademark may bring Vivint a profit or help in competing with the mark owner does not mean the use was not a fair use.

SOURCE: Modeled on Ninth Circuit Pattern Instruction 15.25

**Laches**

Laches is an unreasonable delay in pursuing a right or claim in a way that prejudices the opposing party and renders the granting of a claim inequitable. To establish this defense, Vivint must prove the following by a preponderance of the evidence:

1. CPI knew of Vivint's adverse use of the CPI mark;

2. CPI's delay in challenging that use was inexcusable or unreasonable; and

3. Vivint has been unduly prejudiced by CPI's delay.

Laches is presumed to bar CPI's Lanham Act claims if the claims were filed more than 4 years after the acts CPI alleges violate the Lanham Act occurred.

If Vivint proves each of these elements by a preponderance of the evidence, or if you determine that CPI filed its claim more than 4 years after the complained-of acts occurred, then your verdict should be for Vivint on all of CPI's Lanham Act claims. If Vivint fails to prove each of these elements by a preponderance of the evidence, then you shall consider the next affirmative defense.

SOURCE: *Belmora LLC v. Bayer Consumer Care AG*, 987 F.3d 284, 294 (4th Cir. 2021), cert. denied, No. 21-195, 2021 WL 5284616 (U.S. Nov. 15, 2021) ("Laches is presumed to bar § 43(a) claims filed outside the analogous limitations period."); *Dmarcian, Inc. v. Dmarcian Eur. BV*, No. 1:21-CV-00067-MR, 2021 WL 2144915, at *16 (W.D.N.C. May 26, 2021), amended in part, No. 1:21-CV-00067-MR, 2021 WL 3561182 (W.D.N.C. Aug. 11, 2021) (4 year statute of limitations for trademark claim).

**[CPI's PROPOSED INSTRUCTION NO. 2]**

<span style="color:red">[SUBJECT TO OBJECTION BY VIVINT]</span>

**COMMON LAW UNFAIR COMPETITION**

(COUNT II)

<u>LIABILITY</u>

*The second issue on the verdict form reads: "Is Vivint liable for common law unfair competition?"*

On this question, you **<u>must</u>** answer "Yes" if you find Vivint liable on CPI's claim for false affiliation under the Lanham Act (Count I).

However, even if you did not find Vivint liable on CPI's claim for false affiliation under the Lanham Act (Count I), you may still find Vivint liable for common law unfair competition.

There is no singular definition of "unfair competition." Traditionally, unfair competition consists of acts or practices by a competitor which are likely to deceive the public. The essence of a claim for unfair competition is to protect a plaintiff business from misappropriation of its commercial advantage earned through organization, skill, labor, and money.

Unfair competition includes, but is not confined to, the "palming off" by one competitor of its goods as the goods of another. Other means or practices, in addition to "palming off," may also constitute unfair competition.

70

Unfair competition encompasses a range of behaviors, including but not limited to trademark infringement, imitation of a competitor's product or its appearance, interference with a competitor's contractual relations, disparagement of a competitor's product or business methods, and misappropriation of a competitor's intangible property rights such as advertising devices or business systems.

The central question for determining CPI's claim for common law unfair competition is: Has CPI's legitimate business been damaged through acts of Vivint that are unfair?

In this case, CPI contends Vivint has engaged in the following conduct which CPI contends constitutes common law unfair competition that has damaged CPI's business:

   a. Stating that the representative is visiting from "the alarm company" or "the security company" without also specifying Vivint's name in the same sentence;

   b. Stating or suggesting that CPI is going out of business, has gone out of business, was bought out, or is in financial difficulty;

   c. Stating CPI does not exist;

   d. Stating CPI is changing or has changed its company name;

   e. Stating or suggesting Vivint has acquired, has merged with, has taken over, or is a part of CPI;

   f. Stating or implying that Vivint, or its representatives, is acting on behalf of, or otherwise acting with the consent or approval of CPI;

   g. Stating that Vivint is a "sister" or related company to CPI (or a similar implication);

   h. Stating or suggesting Vivint manufactures the equipment used by CPI, or that Vivint represents or is visiting on behalf of an alarm equipment manufacturer;

i. Stating Vivint is merely performing routine maintenance on the customer's CPI equipment;

j. Stating or suggesting the proposed change to the customer's existing system is just an "update" or "upgrade" without specifying explicitly that such change will require the customer to cease using CPI, to pay required termination charges to CPI, and to begin using and paying for Vivint's services;

k. Stating a CPI customer's CPI security system is outdated or deficient when it is not;

l. Stating Vivint is "taking over" the monitoring of an CPI account or has purchased a CPI account or accounts from CPI;

m. Stating or suggesting CPI has stopped monitoring the alarm system for that person, residence, business or geographic area;

n. Stating CPI will no longer be able to monitor or service the alarm system for that person, resident, business or geographic area;

o. Stating Vivint is affiliated with, has the endorsement of, or is in any manner acting at the direction of any governmental or law enforcement agency without the prior explicit approval of such entity;

p. Presenting statistics or other information as accurate which is known by Vivint to be false or misleading, or which Vivint has not made a reasonable effort to objectively quantify or substantiate;

q. Falsely representing the nature, amount or other details of Vivint's promised "buyout" of a given customer's CPI account or failing to abide by the representations made by the sales agent to the respective CPI customer to convert the account to Vivint;

r. Falsely representing the "free trial" period as being longer than the contractual right of rescission;

s. Misrepresenting or omitting that the customer is taking out a bank loan to pay for their equipment and/or that the bank loan does not require a hard credit check;

t. Falsely stating the nature or details regarding certain private comments made by CPI's CEO Ken Gill in the summer of 2020 relating to the Black Lives Matter protest, including but not limited to proliferating a false narrative about such comments as an improper means to convert CPI

accounts (oftentimes in conjunction with other misrepresentations about the transaction)[20];

u. Falsely representing other aspects of the sales transaction such that a given customer is deprived of a full and fair "free choice" based on complete truthful and accurate information when changing his or her alarm services from CPI to Vivint; OR

v. Utilizing any combination of the above, or any other false or misleading representation or omission to current or former customers of CPI, in the marketing or sale of an alarm system that Vivint's sales agent knows to be false when made.

On each of these issues, the burden of proof is on CPI. This means that CPI must prove, by the greater weight of the evidence, that Vivint did at least one of the acts specified above. It is up to you, the jury, to determine both the issue of whether Vivint engaged in any of this conduct, and also whether such conduct constitutes "unfair competition" under the standards set forth in this instruction.

If you find by the greater weight of the evidence that Vivint committed common law unfair competition, then you would answer "Yes" in the space beside each act so found. If, on the other hand, you fail to so find, then you would answer "No" in the space provided.

SOURCE: Modeled on N.C. Pattern Instruction 813.21. *See also Henderson v. United States Fidelity & Guaranty Co.*, 346 N.C. 741, 749 488 S.E.2d 234, 240 (1997) (recognizing that "[u]nfair competition is not confined to the palming off by one competitor of his goods as the goods of another" and may be accomplished by "other means or practices"); *Charcoal Steak House of Charlotte, Inc. v. Staley,* 263 N.C. 199, 139 S.E.2d 185 (1964) ("Unfair competition is 'the child of confusion.'"); *Carolina Aniline & Extract Co. v. Ray*, 221 N.C. 269 (1942) ("Unfair competition in trade is not confined to the imitation of a trade-mark, but takes as many forms as the ingenuity

---

[20] CPI includes this portion of the instruction subject to its motion *in limine* to preclude reference to the Ken Gill comments. If the Court bars any reference to that issue, then CPI withdraws this subjection of the instruction.

of man can devise.") (citing *Benj. T. Crump Co. v. J. L. Lindsay*, 130 Va. 144, 151–52 (1921)); *Stearns v. Genrad, Inc.*, 564 F. Supp. 1309, 1320 (M.D.N.C. 1983) ("Traditionally at common law, including that of North Carolina, the tort of unfair competition consisted of acts or practices by a competitor which are likely to deceive the consuming public."), *aff'd*, 752 F.2d 942 (4th Cir. 1984); *Triage Logic Mgmt. & Consulting, LLC v. Innovative Triage Servs., LLC*, No. 20 CVS 399, 2020 WL 4597279, at *10 (N.C. Super. Aug. 11, 2020) (citing *Charcoal Steak House, Henderson, Stearns* and *Gateway Management* for the propositions recited here). *See also Int'l News Serv. v. Associated Press*, 248 U.S. 215, 236 (1918) ("[T]he question of what is unfair competition in business must be determined with particular reference to the character and circumstances of the business."); *Gateway Mgmt. Servs., Ltd. v. Carrbridge Berkshire Grp., Inc.*, No. 17 CVS 5275, 2018 WL 2164992, at *7 (N.C. Super. May 9, 2018) ("Unfair competition has been found to encompass a range of behaviors "such as trademark infringement, imitation of a competitor's product or its appearance, interference with a competitor's contractual relations, [and] disparagement of a competitor's product or business methods, and misappropriation of a competitor's intangible property rights such as advertising devices or business systems."); *X-It Prod., LLC v. Walter Kidde Portable Equip., Inc.*, 227 F. Supp. 2d 494, 537–38 (E.D. Va. 2002) (recognizing that the North Carolina Supreme Court "has recently echoed" that unfair competition "is not limited to 'palming off' the goods of another as one's own" and that the test for unfair competition under the common law is: "[h]as the plaintiff's legitimate business been damaged through acts of the defendants which a court of equity would consider unfair?") (citing *Charcoal Steak House of Charlotte, Inc. v. Staley*, 263 N.C. 199, 139 S.E.2d 185, 189 (1964)).

### **Vivint's Objection**

Vivint objects to CPI's proposed instruction in its entirety as inaccurate, incomplete, and misleading.

First, CPI has not alleged any unfair competition distinct from that which forms the basis for its Lanham Act and Unfair and Deceptive Trade Practices Act claims. And because the relevant distinction between these claims is that the unfair competition claim is limited to claims between competitors, which is undisputed here, liability on this claim will rise or fall with the Lanham Act and Unfair and Deceptive Trade Practices Act claims. Consequently, this instruction should be delivered last.

74

Second, by including a laundry list of alleged misconduct, this instruction incorrectly implies that such acts both (a) actually occurred and (b) constitute unfair competition. As just one example, a Vivint representative stating that a CPI customer's equipment is outdated or deficient (subparagraph k) would not constitute unfair competition—to the contrary, this is legitimate competition or, at most, mere puffery protected by the First Amendment.

Finally, this instruction omits the element of proximate cause.

### CPI's Response to Vivint's Objections and Counter-Proposed Instruction

As clearly stated in the binding authority cited in CPI's proposed instruction, while a Lanham Act false affiliation may be sufficient to state a common law unfair competition claim, common law unfair competition is not *limited* to the scope of such a Lanham Act claim and may encompass a wide variety of other unfair conduct. Indeed, as the North Carolina Supreme Court has expressly held, "Unfair competition is not confined to the palming off by one competitor of his goods as the goods of another" and may be accomplished by "other means or practices." *Henderson v. United States Fidelity & Guaranty Co.*, 346 N.C. 741, 749 488 S.E.2d 234, 240 (1997). Similarly: "Unfair competition in trade is not confined to the imitation of a trade-mark, **but takes as many forms as the ingenuity of man can devise**." *Carolina Aniline & Extract Co. v. Ray*, 221 N.C. 269 (1942) (emphasis added) (citing *Benj. T. Crump Co. v. J. L. Lindsay*, 130 Va. 144, 151–52 (1921). Vivint's attempt to confine CPI's common law unfair competition claim to just a redundant Lanham Act claim is erroneous as a matter of established law.

An example illustrates the point: a Vivint sales representative tells a CPI customer that CPI has "gone out of business" and therefore Vivint is at the customer's home to offer its services. While such a representation may not suggest a claim of affiliation between Vivint and CPI, such a representation is clearly actionable as a material misrepresentation of the transaction. Such a representation is actionable under the wide definition of "unfair competition" under the common law, even if it is not an affiliation misrepresentation under § 1125(a) of the Lanham Act.

Further, Vivint's objections to listing out the the kinds alleged wrongful conduct at issue is inconsistent with the North Carolina pattern instruction on which this instruction is modeled. N.C. Pattern Instruction 813.21 (Trade Regulation--Violation--Issue of Unfair Methods of Competition and Unfair or Deceptive Acts or Practices), which applies to NC UDTPA claims, expressly instructs that specific types of conduct alleged to be unfair and a violation of the Act should be listed out for the jury's consideration as to whether such conduct occurred—as done in CPI's proposed instruction above.  The only difference between CPI's proposed instruction and the NC UDTPA pattern instruction is that CPI's proposed instruction permits the jury to consider both whether the conduct occurred and *also* whether such conduct meets the broad standard of what constitutes common law unfair competition. Because common law unfair competition differs from the NC UDTPA definition of unfair competition and may encompass a wide variety of conduct, CPI submits it would be appropriate for the jury to consider the latter issue of whether such conduct meets the definition of unfair competition. Alternatively, the Court could decide whether the listed types

76

of conduct constitute "unfair competition" as a matter of law, and the jury could be instructed solely to determine the issue of whether the alleged conduct occurred, which is more akin to the approach set forth by N.C. Pattern Instruction 813.21. However, contrary to Vivint's counter-proposed instruction, the jury should be given express direction on the types of conduct it may consider when assessing liability.

**Vivint's Proposed Instruction**

[SUBJECT TO OBJECTION BY CPI]

**The (state number) issue reads:** "Is Vivint liable to CPI for common law unfair competition?"

To prove its claim, CPI must prove Count I, III, or V by a preponderance of the evidence because the elements are the same in this case.

If a preponderance of the evidence does not support CPI's claims in Count I, III, and V, then your verdict should be for Vivint on this claim.

However, if you find that a preponderance of the evidence supports CPI's unfair competition claim, then you must consider Vivint's affirmative defenses.

SOURCE: *Stearns v. Genrad, Inc.*, 564 F. Supp. 1309, 1320 (M.D.N.C. 1983) (citing *Charcoal Steak House of Charlotte, Inc. v. Staley*, 263 N.C. 199, 139 S.E.2d 185 (1964)); *Henderson v. U.S. Fid. & Guar. Co.*, 346 N.C. 741, 749, 488 S.E.2d 234, 239–40 (1997); NCPI 813.70; *also compare Old Salem Foreign Car Serv., Inc. v. Webb*, 159 N.C. App. 93, 582 S.E.2d 673 (2003) (holding that "a claim for common law unfair competition is analyzed as a claim for unfair or deceptive trade practices under [N.C.]G.S. § 75-1.1"); *with Power Home Solar, LLC v. Sigora Solar, LLC*, No. 20 CVS 7165, 2021 WL 2530984, at *19 (N.C. Super. June 18, 2021) (proximate cause is an essential element of a claim for unfair or deceptive trade practices).

**CPI's Objection**

Vivint's instruction mischaracterizes the law and improperly limits CPI's claim for unfair competition as a redundant claim for violation of the Lanham Act, tortious interference, or a violation of the NC UDTPA. As the authority cited in CPI's proposed instruction makes clear, common law unfair competition is broader than these other types of claims and encompasses a wide variety of conduct. Further, Vivint improperly attempts to impose proximate cause standards from the NC UDTPA onto

the common law unfair competition claim, contrary to North Carolina law. No North Carolina authority has extended the proximate cause standards engrafted onto claims stemming from misrepresentation under an NC UDTPA claim to a common law claim for unfair competition; that standard is unique to a NC UDTPA claim. CPI's instruction more accurately describes the law.

# AFFIRMATIVE DEFENSES

## (to Count II – Unfair Competition)

## [SUBJECT TO OBJECTION BY CPI]

**Generally**

If you find that CPI has met its burden to prove its claim by a preponderance of the evidence, you must next consider Vivint's affirmative defenses to the claim. If you find that CPI has not met its burden to prove its claims by a preponderance of the evidence, you do not need to consider Vivint's affirmative defenses. I will now instruct you on those affirmative defenses.

**Competitor Privilege**

Vivint has raised the defense of legitimate business purpose as to each of CPI's claims. Vivint alleges that it has a legitimate business purpose in growing its business by soliciting customers and explaining Vivint's pricing, products, and services and how they are different and better than those of Vivint's competitors, including CPI.

In determining whether Vivint's conduct was legitimate business conduct, you should determine:

1. Whether the conduct is consistent with competition on the merits;

2. Whether the conduct provides benefits to consumers; and

3. Whether the conduct would make business sense apart from any effect it has on excluding competition or harming competitors.

If Vivint proves each of these elements by a preponderance of the evidence, then your verdict should be for Vivint on CPI's claims.

If Vivint fails to prove each of these elements by a preponderance of the evidence, then you shall consider the next affirmative defense.

SOURCE: *Embree Constr. Group, Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992).

## CPI Objection

There is no "competitor privilege" affirmative defense to common law unfair competition, and Vivint's recitation of the law above is incorrect and not supported by the authority cited. As an initial matter, *Embree Constr. Group, Inc. v. Rafcor, Inc.*—the sole case cited by Vivint in support of this "affirmative defense"—analyzed a claim for *tortious interference with contract*, not common law unfair competition, and therefore is entirely inapposite to CPI's common law unfair competition claim. Further, inclusion of this affirmative defense is confusing and misleading: if conduct is found to be "unfair competition" under the elements of that claim, then that is the end of the inquiry and there is no need to conduct a secondary (redundant) analysis of any alleged "competitor privilege" "affirmative defense." In essence, Vivint's proposed instruction above is just rewriting certain standards applicable to tortious interference claims and asking the jury to make a second determination as to whether the conduct subject to CPI's unfair competition claim was improper—which the jury will have already decided in determining liability for the common law unfair competition claim. CPI objects to the entirety of this subsection (and similarly objects

to any subsequent reference to this "competitor privilege" "affirmative defense" in subsequent instructions).

**First Amendment**

Vivint has raised the defense of puffery under the First Amendment as to all CPI's claims. Puffery is language that includes exaggerated advertising, blustering, and boasting, or vague and general claims of superiority, as well as indefinite statements of corporate optimism. Bald assertions of superiority, general statements of opinion, and puffery, are not misrepresentations of fact. Rather, the statements of fact must be a specific and measurable claim that is capable of being proven false.

If you find by a preponderance of the evidence that Vivint's statements were puffery, then your verdict should be in favor of Vivint on all of CPI's claims.

If you find that Vivint failed to prove that Vivint's statements were puffery by a preponderance of the evidence, then you shall consider the next affirmative defense.

SOURCE: *Glob. Hookah Distributors, Inc. v. Avior, Inc.*, 401 F. Supp. 3d 653, 659 (W.D.N.C. 2019) (quoting *Verisign, Inc. v. XYZ.com LLC*, 848 F.3d 292, 302 (4th Cir. 2017) and *Plymouth Cty. Ret. Ass'n v. Primo Water Corp.*, 966 F. Supp. 2d 525, 544 (M.D.N.C. 2013)).

**[CPI's PROPOSED INSTRUCTION NO. 3]**

[SUBJECT TO OBJECTION BY VIVINT]

**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS**

(COUNT V)

<u>LIABILITY</u>

*The third issue on the verdict form reads: "Is Vivint liable for tortious interference with CPI's business relationships?"*

On this issue the burden of proof is on CPI. This means that CPI must prove, by the greater weight of the evidence, five things:

1. That (a) valid contract right(s) existed between CPI and its customers;

2. That Vivint's agents had knowledge of the facts giving rise to CPI's contract right(s) with its customers (it does not matter if there was a mistake as to the legal significance of these facts or that Vivint believed that no contract right existed);

3. That Vivint intentionally induced CPI's customers not to perform or to breach their contractual obligations;

4. That Vivint acted without justification; and

5. That Vivint's actions resulted in actual damages to CPI.

**"Without Justification"**

As to the fourth element, Vivint's conduct is considered "without justification" if it is done with "legal malice." A person acts with legal malice if he or she commits a wrongful act or exceeds his legal right or authority in order to prevent the

continuation of the contract between the parties to the contract. Legal malice denotes the intentional doing of a harmful act; it does not require proof of actual malice in the sense of personal hatred, ill will, or spite.

In evaluating the nature of Vivint's conduct for purposes of CPI's tortious interference claim, one consideration is whether Vivint's conduct is otherwise unlawful. Conduct specifically in violation of statutory provisions or contrary to established public policy may for that reason make an interference improper.

In this case, CPI claims that Vivint's interference with CPI's business relationships was improper and accompanied by legal malice because Vivint's agents made material misrepresentations about the respective transaction between Vivint and CPI's customers when attempting to convert the customers from CPI's to Vivint's services.

Specifically, CPI contends Vivint has engaged in the following wrongful conduct when attempting to convert customers from CPI's to Vivint's services:

    a. Stating that the representative is visiting from "the alarm company" or "the security company" without also specifying Vivint's name in the same sentence;

    b. Stating or suggesting that CPI is going out of business, has gone out of business, was bought out, or is in financial difficulty;

    c. Stating CPI does not exist;

    d. Stating CPI is changing or has changed its company name;

    e. Stating or suggesting Vivint has acquired, has merged with, has taken over, or is a part of CPI;

    f. Stating or implying that Vivint, or its representatives, is acting on behalf of, or otherwise acting with the consent or approval of CPI;

g. Stating that Vivint is a "sister" or related company to CPI (or a similar implication);

h. Stating or suggesting Vivint manufactures the equipment used by CPI, or that Vivint represents or is visiting on behalf of an alarm equipment manufacturer;

i. Stating Vivint is merely performing routine maintenance on the customer's CPI equipment;

j. Stating or suggesting the proposed change to the customer's existing system is just an "update" or "upgrade" without specifying explicitly that such change will require the customer to cease using CPI, to pay required termination charges to CPI, and to begin using and paying for Vivint's services;

k. Stating a CPI customer's CPI security system is outdated or deficient when it is not;

l. Stating Vivint is "taking over" the monitoring of an CPI account or has purchased a CPI account or accounts from CPI;

m. Stating or suggesting CPI has stopped monitoring the alarm system for that person, residence, business or geographic area;

n. Stating CPI will no longer be able to monitor or service the alarm system for that person, resident, business or geographic area;

o. Stating Vivint is affiliated with, has the endorsement of, or is in any manner acting at the direction of any governmental or law enforcement agency without the prior explicit approval of such entity;

p. Presenting statistics or other information as accurate which is known by Vivint to be false or misleading, or which Vivint has not made a reasonable effort to objectively quantify or substantiate;

q. Falsely representing the nature, amount or other details of Vivint's promised "buyout" of a given customer's CPI account or failing to abide by the representations made by the sales agent to the respective CPI customer to convert the account to Vivint;

r. Falsely representing the "free trial" period as being longer than the contractual right of rescission;

s.  Misrepresenting or omitting that the customer is taking out a bank loan to pay for their equipment and/or that the bank loan does not require a hard credit check;

t.  Falsely stating the nature or details regarding certain private comments made by CPI's CEO Ken Gill in the summer of 2020 relating to the Black Lives Matter protest, including but not limited to proliferating a false narrative about such comments as an improper means to convert CPI accounts (oftentimes in conjunction with other misrepresentations about the transaction)[21];

u.  Falsely representing other aspects of the sales transaction such that a given customer is deprived of a full and fair "free choice" based on complete truthful and accurate information when changing his or her alarm services from CPI to Vivint; <u>OR</u>

v.  Utilizing any combination of the above, or any other false or misleading representation or omission to current or former customers of CPI, in the marketing or sale of an alarm system that Vivint's sales agent knows to be false when made.

On each of these issues, the burden of proof is on CPI. This means that CPI must prove, by the greater weight of the evidence, that Vivint did at least one of the acts specified above resulting in damage to CPI's business. It is up to you, the jury, to determine both the issue of whether Vivint engaged in any of this conduct, and also whether such conduct constitutes improper conduct or "legal malice" rendering any interference with CPI's contractual rights without justification under the standards set forth in this instruction.

If you find, by the greater weight of the evidence, that Vivint tortiously interfered with CPI business relationships, then it would be your duty to answer this issue "Yes" in favor of CPI.

---

[21] CPI includes this portion of the instruction subject to its motion *in limine* to preclude reference to the Ken Gill comments. If the Court bars any reference to that issue, as CPI requests, then CPI withdraws this subjection of the instruction as a basis for liability.

If, on the other hand, you fail to so find, then it would be your duty to answer this issue "No" in favor of Vivint.

SOURCE: Modeled on N.C.P.I.-CIVIL 807.00. *See also Childress v. Abeles*, 240 N.C. 667, 675 (1954) ("It is not necessary, however, to allege and prove actual malice in the sense of personal hatred, ill will, or spite in order to make out a case for the recovery of compensatory damages against the outsider for tortiously inducing the breach of the third person's contract with the plaintiff. The term 'malice' is used in this connection in its legal sense, and denotes the intentional doing of the harmful act without legal justification."); *Robinson, Bradshaw, & Hinson, P.A. v. Smith*, 129 N.C. App. 305, 318, 498 S.E.2d 841, 851 (1998) ("A person acts with legal malice if he does a wrongful act or exceeds his legal right or authority in order to prevent the continuation of the contract between the parties."). *Georgia Pac. Consumer Prod., LP v. Von Drehle Corp.*, 618 F.3d 441, 457 (4th Cir. 2010) ("[I]n evaluating nature of defendant's conduct for purposes of tortious interference with contract claim, one consideration is whether defendant's conduct is unlawful; 'Conduct specifically in violation of statutory provisions or contrary to established public policy may for that reason make an interference improper.'" (citing *Restatement (Second) of Torts* § 767 cmt. c.)). Note that, as to the "without justification" element, N.C.P.I.-CIVIL 807.00 specifically instructs that "Whether a defendant acts without justification depends on the unique facts of each case. This element of the instruction may be supplemented to explain the meaning of 'without justification' as supported by the evidence."). *See also Computer Design & Integration, LLC v. Brown*, 2018 WL 6609014, at *21 (N.C. Super. Dec. 10, 2018) (alleging business slander by claiming the defendant falsely stated the plaintiff "was going out of business" could render the interference unjustified).

## **Vivint's Objection**

Vivint objects to CPI's proposed instruction in its entirety as inaccurate, incomplete, and misleading. This instruction improperly suggests that CPI may recover damages for tortious interference with its "customer contracts" in general. Rather, CPI must prove that Vivint interference with specific contracts with specific customers. This instruction also fails to accurately and completely describe the elements of justification and proximate cause. Finally, by including a laundry list of

alleged misconduct—a laundry list that does not appear in the North Carolina Pattern Jury Instruction—this instruction incorrectly implies that such acts (a) actually occurred and (b) constitute tortious interference. As just one example, a Vivint representative stating that a CPI customer's equipment is outdated or deficient (subparagraph k) would not constitute tortious interference—to the contrary, this is legitimate competition or, at most, mere puffery protected by the First Amendment.

### CPI's Response to Vivint's Objections and Counter-Proposed Instruction

CPI is aware of no authority requiring a tortious interference with business relationships claim to be proven on an individual, contract-by-contract basis The standard set forth by the relevant authorities merely requires proof of valid contractual rights with which a defendant improperly interfered. CPI will show that it had valid contractual rights with the individuals subject to interference by Vivint.

As to Vivint's objection to listing particular conduct, the applicable pattern instruction, N.C.P.I.-CIVIL 807.00, specifically instructs that "**Whether a defendant acts without justification depends on the unique facts of each case. This element of the instruction may be supplemented to explain the meaning of 'without justification' as supported by the evidence.**" CPI's proposed instruction lists specifically the type of conduct that CPI alleges rendered Vivint's interference "without justification." Vivint's proposed instruction does not provide any guidance to the jury as to what evidence it should consider on this issue.

**Vivint's Proposed Instruction**

[SUBJECT TO OBJECTION BY CPI]

The (state number) issue reads: "Did Vivint wrongfully interfere with a contract right between CPI and (name other party to contract)?"

On this issue the burden of proof is on CPI. This means that CPI must prove, by the greater weight of the evidence, five things:

First, that a valid contract right existed between CPI and (name other party to contract).

Second, that Vivint had knowledge of the facts giving rise to CPI's contract right with (name other party to contract). It does not matter that Vivint was mistaken as to the legal significance of these facts or that Vivint believed that no contract right existed.

Third, that Vivint intentionally induced (name other party to contract) to terminate the contract right to which CPI was entitled.

Fourth, that Vivint acted without justification. Interference with contract is justified if it is motivated by a legitimate business purpose, as when the plaintiff and the defendant are competitors. Here, the parties have stipulated that Vivint and CPI are competitors. Thus, CPI must prove that Vivint's actions were not motivated by the legitimate business purpose of competition and, instead, were motivated by malice. Malice exists when a person acts out of a motive of ill will, spite, grudge, revenge or oppression. However, if Vivint had a legitimate business reason for

inducing the breach of contract, it is exempt from liability for so doing, no matter how malicious in actuality its conduct may be.

And Fifth, that Vivint's actions proximately caused actual damages to CPI. Proximate cause is a cause which in a natural and continuous sequence produces the injury, and is a cause which a reasonable and prudent person could have foreseen would probably produce such injury or some similar injurious result.

Finally, as to the (state number) issue on which CPI has the burden of proof, if you find, by the greater weight of the evidence, that Vivint wrongfully interfered with a contract right between CPI and (name other party to contract), then it would be your duty to answer this issue "Yes" in favor of CPI.

If, on the other hand, you fail to so find, then it would be your duty to answer this issue "No" in favor of Vivint.


SOURCE: NCPI 807; NCPI 801.10 (malice); NCPI 813.70 (proximate cause); *Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 368 N.C. 693, 701, 784 S.E.2d 457, 463 (2016) (explaining that a "claim for tortious interference with prospective economic advantage . . . arises when a party interferes with a business relationship by maliciously inducing a person not to enter into a contract with a third person, which he would have entered into but for the interference, *if damage proximately ensues*, when this interference is done not in the legitimate exercise of the interfering person's rights" (emphasis added)); *Childress v. Abeles*, 240 N.C. 667, 675 (1954) ("[A]ctual malice and freedom from liability for this tort may coexist. If the outsider has a sufficient lawful reason for inducing the breach of contract, he is exempt from liability for so doing, no matter how malicious in actuality his conduct may be."); *Robinson, Bradshaw & Hinson, P.A. v. Smith*, 129 N.C. App. 305, 318 (1998).

## CPI's Objection to Vivint's Instruction

Vivint's definition of "without justification" is inaccurate and contrary to binding authority, which define that term synonymously with the commission of any "wrongful act." As the cases cited in CPI's proposed instruction make clear: "It is **not** necessary . . . to allege and prove actual malice in the sense of personal hatred, ill will, or spite in order to make out a case for the recovery of compensatory damages against the outsider for tortiously inducing the breach of the third person's contract with the plaintiff. The term 'malice' is used in this connection in its legal sense, and denotes the intentional doing of the harmful act without legal justification." *Childress v. Abeles*, 240 N.C. 667, 675 (1954). *See also Robinson, Bradshaw, & Hinson, P.A. v. Smith*, 129 N.C. App. 305, 318, 498 S.E.2d 841, 851 (1998) ("A person acts with legal malice if he **does a wrongful act** or **exceeds his legal right or authority** in order to prevent the continuation of the contract between the parties." (emphasis added)). *Georgia Pac. Consumer Prod., LP v. Von Drehle Corp.*, 618 F.3d 441, 457 (4th Cir. 2010) ("[I]n evaluating nature of defendant's conduct for purposes of tortious interference with contract claim, one consideration is whether defendant's conduct is unlawful; 'Conduct specifically in violation of statutory provisions or contrary to established public policy may for that reason make an interference improper.'" (citing *Restatement (Second) of Torts* § 767 cmt. c.)).

Similarly, the inclusion of the phrase "*if Vivint had a legitimate business reason for inducing the breach of contract, it is exempt from liability for so doing, no matter how malicious in actuality its conduct may be*" in Vivint's proposed instruction

misstates the law. As CPI's cited authorities make clear, the commission of a wrongful act in conjunction with the interference with CPI's contract rights renders the interference improper such that any alleged competitor privilege does not apply. CPI's proposed instruction more accurately explains the applicable legal standards.

# AFFIRMATIVE DEFENSES

## (to Count V – Tortious Interference)

## [SUBJECT TO CPI OBJECTION]

## Generally

If you find that CPI has met its burden to prove its claim by a preponderance of the evidence, you must next consider Vivint's affirmative defenses to the claim. If you find that CPI has not met its burden to prove its claims by a preponderance of the evidence, you do not need to consider Vivint's affirmative defenses. I will now instruct you on those affirmative defenses.

## Competitor Privilege

Vivint has raised the defense of legitimate business purpose as to CPI's tortious interference claim. I have already instructed you regarding the elements of this affirmative defense.

If Vivint proves each of these elements by a preponderance of the evidence, then your verdict should be for Vivint on CPI's claim. If Vivint fails to prove each of these elements by a preponderance of the evidence, then you shall consider the next affirmative defense.

## CPI Objection

CPI incorporates its objections above with respect to Vivint's misstatement of the competitor privilege as it applies to the "without justification" factor of tortious interference. Additionally, this issue is not a proper "affirmative defense" but instead

is part of the analysis of liability for tortious interference in the first place. The fourth element of a tortious interference claim requires consideration of whether the interference was justified. If it was not, that is the end of the inquiry, and there is no additional need to analyze an "affirmative defense" of a competitor privilege. As such, this entire subsection is objectionable and should be removed.

**First Amendment**

Vivint has raised the defense of puffery under the First Amendment as to CPI's tortious interference claim. I have already instructed you regarding the elements of this affirmative defense.

If you find by a preponderance of the evidence that Vivint's statements were puffery, then your verdict should be in favor of Vivint on CPI's tortious interference claim. If you find that Vivint failed to prove that Vivint's statements were puffery by a preponderance of the evidence, then you shall consider the next affirmative defense.

**CPI Objection**

Vivint cites no authority in support of its claim that a "first amendment" affirmative defense excuses otherwise improper interference with contract. CPI objects to the inclusion of this entire subsection.

**Outside the Scope of Agency**

Vivint has raised the defense that any alleged misconduct by its employees occurred outside the scope of employment. I have already instructed you regarding the elements of this affirmative defense.

If you find that Vivint's representatives were acting outside the course and scope of their employment at the time of any misconduct, then your verdict should be in favor of Vivint on all of CPI's claims.

If you find that Vivint representatives were acting within the course and scope of their employment at the time of any misconduct, then you shall consider the next affirmative defense.

**CPI Objection**

Vivint again cites no authority supporting the proposition stated above that actions allegedly outside the scope of agency excuse an interference with contract. CPI objects to this entire subsection. Additionally, inclusion of this "affirmative defense" without an instruction as to the elements of agency would be confusing, misleading and improper.

**[CPI's PROPOSED INSTRUCTION NO. 4]**

[SUBJECT TO OBJECTION BY VIVINT]

**VIOLATION OF THE NORTH CAROLINA
UNFAIR AND DECEPTIVE TRADE PRACTICES ACT**

(COUNT III)

<u>VIOLATION</u>

*The fourth issue on the verdict form reads: "Did Vivint violate the North Carolina Unfair and Deceptive Trade Practices Act?"*

On this question, you **<u>must</u>** answer "Yes" if you find Vivint liable on CPI's claim for false affiliation under the Lanham Act (Count I), CPI's claim for common law unfair competition (Count II), **<u>or</u>** CPI's claim for tortious interference with business relationships (Count V).

If you found Vivint liable on Count I, Count II, or Count V, then it would be your duty to answer this issue "Yes" in favor of CPI on this question.

If, on the other hand, you did not find Vivint liable on Count I, Count II, or Count V, then it would be your duty to answer "No" in favor of Vivint on this question.

SOURCE: This instruction is based on the Court's Order on Vivint's Motion for Partial Summary Judgment, Doc. No. 77 at 8 ("Defendants are not entitled to judgment as a matter of law as to Plaintiff's UDTPA claim to the extent Plaintiff basis [sic] its claim on Defendants' violations of the Lanham Act and common law unfair

competition. Further, in accordance with *Bite Busters*, Plaintiff's claim for tortious interference with business relationships (Count V) may serve as an independent basis for its UDTPA claim.").

### Vivint's Objection

For preservation purposes, Vivint objects to this instruction for the reasons it asserted that partial summary judgment was warranted—namely, because CPI's Unfair and Deceptive Trade Practices Act claim is a misrepresentation-based claim premised on third-party reliance, rather than on CPI's own reliance. *See* Vivint's Part. Sum. J. Br., Doc. 59.

### Vivint's Proposed Instruction

Vivint's complete proposed instructions on CPI's Unfair and Deceptive Trade Practice Act claim is set forth further below in full, following Vivint's objections to each of CPI's separate instructions for this claim.

### CPI's Response to Vivint's Objections and Counter-Proposed Instructions

CPI similarly incorporates its arguments and briefing in conjunction with Vivint's motion for partial summary judgment.

**[CPI's PROPOSED INSTRUCTION NO. 5]**

[SUBJECT TO OBJECTION BY VIVINT]

**VIOLATION OF THE NORTH CAROLINA
UNFAIR AND DECEPTIVE TRADE PRACTICES ACT**

(COUNT III)

LIABILITY – ISSUE OF PROXIMATE CAUSE

*The fifth issue on the verdict form reads: "Was Vivint's violation of the North Carolina Unfair and Deceptive Trade Practices Act a proximate cause of injury to CPI's business?"*

You should only answer this question if you found that Vivint violated the North Carolina Unfair and Deceptive Trade Practices Act in the preceding question.

On this issue the burden of proof is on CPI. This means that CPI must prove, by the greater weight of the evidence, two things:

1. That CPI's business has suffered an injury; and

2. That Vivint's conduct in violation the North Carolina Unfair and Deceptive Trade Practices Act was a proximate cause of the injury to CPI's business.

Proximate cause is a cause which in a natural and continuous sequence produces the injury, and is a cause which a reasonable and prudent person could have foreseen would probably produce such injury or some similar injurious result.

There may be more than one proximate cause of an injury. Therefore, CPI need not prove that Vivint's conduct was the sole proximate cause of CPI's injury. CPI must

prove, by the greater weight of the evidence, only that Vivint's conduct was a proximate cause.

If you find by the greater weight of the evidence that CPI has suffered an injury, and that the Vivint's conduct proximately caused CPI's injury, then it would be your duty to answer this issue "Yes" in favor of CPI.

If, on the other hand, you fail to so find, then it would be your duty to answer this issue "No" in favor of Vivint.

SOURCE: N.C.P.I.-CIVIL 813.70.

**<u>Vivint's Objection</u>**

Vivint objects to CPI's proposed instruction in its entirety because it omits the reliance requirement for a misrepresentation-based Unfair and Deceptive Trade Practices Act claim, which is the claim that CPI is asserting here. Although CPI has now attempted to premise its UDTPA claim on its Lanham Act claim, its unfair competition claim, and (for the first time in this case) its tortious interference claim, all three of those underlying claims—as CPI's proposed jury instructions for those claims only demonstrate further, through laundry lists of alleged misrepresentations to third parties—are misrepresentation-based claims. Therefore, CPI must demonstrate first-party reliance; its third-party reliance theory cannot support a UDTPA claim. *See* Vivint's Part. Sum. J. Br., Doc. 59.

Vivint respects the Court's ruling on its motion for partial summary judgment (Doc. 77), but for preservation purposes, Vivint is compelled to object to CPI's

proposed instructions, which only confirm that CPI seeks to avoid the proximate-cause requirement of first-party reliance for misrepresentation-based claims. *See* Doc. 59.

CPI's proposed instruction omits the reliance requirement for proximate cause despite the North Carolina Pattern Instruction's express admonishment to "note well" that "[a] claim for an unfair or deceptive trade practice stemming from an alleged misrepresentation requires a plaintiff to demonstrate reliance on the misrepresentation in order to show the necessary proximate cause." NCPI 813.70 (citing *Bumpers v. Community Bank of N. Va.*, 747 S.E.2d 220, 226 (N.C. 2013)). The Pattern Instruction goes on to provide first-party-reliance instructions to this effect—instructions that CPI has also omitted here. *See id.* ("plaintiff must show (1) that [he] [it] actually relied on the representation" and "actually incorporated the alleged misrepresentation into *his* decision-making process" (emphasis in original)).

As this conspicuous omission from the pattern instruction shows, CPI is seeking to present a misrepresentation based-UDTPA claim to the jury without proving—and, now, without even instructing the jury—on first-party reliance, which North Carolina law requires for this claim. *See* Vivint's Part. Sum. J. Br., Doc. 59. CPI's attempt to do so by conspicuously deleting portions of the North Carolina Pattern Instruction only makes this all the more apparent.

**CPI's Response to Vivint's Objections**

The Court has already resolved this issue in its ruling on Vivint's motion for partial summary judgment in holding that CPI's claims for violation of the Lanham

Act, common law unfair competition, and tortious interference each independently support a UDTPA claim. *See* Order on Vivint's Motion for Partial Summary Judgment, Doc. No. 77 at 8 ("Defendants are not entitled to judgment as a matter of law as to Plaintiff's UDTPA claim to the extent Plaintiff basis [sic] its claim on Defendants' violations of the Lanham Act and common law unfair competition. Further, in accordance with *Bite Busters*, Plaintiff's claim for tortious interference with business relationships (Count V) may serve as an independent basis for its UDTPA claim."). CPI's proposed instruction follows the pattern North Carolina instruction with appropriate modifications in accordance with the instruction's notes for use. Including an admonishment regarding a requirement of a plaintiff's reliance on the misrepresentation is not necessary, misleading and confusing when CPI's NC UDTPA claim is premised upon the other three causes of action, which, again, the Court has already held, if proven, each independently establish a UDTPA claim.

## Vivint's Proposed Instruction

Vivint's complete proposed instructions on CPI's Unfair and Deceptive Trade Practice Act claim is set forth further below in full, following Vivint's objections to each of CPI's separate instructions for this claim.

## CPI's Response to Vivint's Proposed Instructions

CPI incorporates its arguments and briefing in conjunction with Vivint's motion for partial summary judgment.

**[CPI's PROPOSED INSTRUCTION NO. 6]**

<span style="color:red">[SUBJECT TO OBJECTION BY VIVINT]</span>

**VIOLATION OF THE NORTH CAROLINA
UNFAIR AND DECEPTIVE TRADE PRACTICES ACT**

(COUNT III)

<u>LIABILITY – CONDUCT IN OR AFFECTING COMMERCE</u>

*The sixth issue on the verdict form reads: "Was Vivint's conduct in commerce or did it affect commerce?"*

You should only answer this question if you found that Vivint violated the North Carolina Unfair and Deceptive Trade Practices Act and that the conduct was a proximate cause of injury to CPI's business in the preceding two questions.

On this issue the burden of proof is on CPI. This means that CPI must prove, by the greater weight of the evidence, that Vivint's conduct was either "in commerce" or that it "affected commerce."

Conduct is "in commerce" when it involves a business activity. Conduct "affects commerce" whenever a business activity is adversely and substantially affected.

A "business activity" is the way a business conducts its regular, day-to-day activities or affairs, or whatever other activities the business regularly engages in and for which it is organized.

If you find by the greater weight of the evidence that Vivint's conduct was "in commerce" or that it "affected commerce," then it would be your duty to answer this issue "Yes" in favor of CPI.

If, on the other hand, you fail to so find then it would be your duty to answer this issue "No" in favor of Vivint.

SOURCE: N.C.P.I. Civil § 813.62.

**<u>Vivint's Objection</u>**

Vivint objects to this instruction to the extent it is presented before proximate cause, rather than after proximate cause in accordance with the pattern instruction.

**<u>CPI's Response to Vivint's Objections</u>**

CPI does not object to this instruction preceding the NCUDTPA proximate cause instruction; the ordering makes no difference.

**Vivint's Proposed Instruction (in full, as to all elements of Count III, CPI's Unfair and Deceptive Trade Practices Act claim):**

**[SUBJECT TO OBJECTION BY CPI]**

**The (state number) issue reads:** "Did Vivint misrepresent to CPI customers[22] a false affiliation between Vivint and CPI to unlawfully induce them into terminating their contracts with CPI?"

On this issue the burden of proof is on CPI. This means that CPI must prove, by the greater weight of the evidence, that Vivint did the acts that CPI contends. In this case CPI contends, and Vivint denies, that Vivint misrepresented a false affiliation between Vivint and CPI to unlawfully induce CPI customers into terminating their contracts with CPI.

Finally, as to this issue on which CPI has the burden of proof, if you find by the greater weight of the evidence that Vivint did the act(s) contended by CPI, then you would answer "Yes" in the space beside each act so found.

If, on the other hand, you fail to so find, then you would answer "No" in the space provided.

**The (state number) issue reads**: "Was Vivint's conduct in commerce or did it affect commerce?"

---

[22]     Vivint proposes this instruction only in compliance with the Court's order on Vivint's motion for partial summary judgment (Doc. 77), and expressly preserves its objections above and in its motion for partial summary judgment.  *See* Vivint's Part. Sum. J. Br., Doc. 59.

You will answer this issue only if you have found in CPI's favor on the preceding issue. On this issue the burden of proof is on CPI. This means that CPI must prove, by the greater weight of the evidence, that Vivint's conduct was either "in commerce" or that it "affected commerce."

Conduct is "in commerce" when it involves a business activity.

Conduct "affects commerce" whenever a business activity is adversely and substantially affected.

(A "business activity" is the way a business conducts its regular, day-to-day activities or affairs (such as the purchase or sale of goods), or whatever other activities the business regularly engages in and for which it is organized.)

Finally, as to the (state number) issue on which CPI has the burden of proof, if you find by the greater weight of the evidence that Vivint's conduct was "in commerce" or that it "affected commerce," then it would be your duty to answer this issue "Yes" in favor of CPI.

If, on the other hand, you fail to so find then it would be your duty to answer this issue "No" in favor of Vivint.

**The (state number) issue reads:** "Was Vivint's conduct a proximate cause of CPI's injury?"

In (state number) issue, if you answered "Yes" that Vivint committed the acts described in issue (state number) above, then in order to establish that Vivint's conduct was the proximate cause of CPI's injury, CPI must show (1) that CPI actually

relied on the representation made by Vivint and (2) that CPI's reliance was reasonable.

"Actual reliance" requires that CPI affirmatively incorporated the alleged misrepresentation into its decision-making process; that is, if it were not for the misrepresentation, then CPI would likely have avoided the injury altogether.

CPI's reliance would be reasonable if, under the same or similar circumstances, a reasonable person, in the exercise of ordinary care for his own interests, would have relied on the misrepresentation.

Finally, as to this issue on which CPI has the burden of proof, if you find, by the greater weight of the evidence, that CPI has suffered an injury, and that Vivint's conduct proximately caused CPI's injury, then it would be your duty to answer this issue "Yes" in favor of CPI.

If, on the other hand, you fail to so find, then it would be your duty to answer this issue "No" in favor of Vivint.


**The (state number) issue reads:** "In what amount has CPI been injured?"

If you have answered all the preceding issues "Yes" in favor of CPI, CPI is entitled to recover nominal damages even without proof of actual damages. Nominal damages consist of some trivial amount such as one dollar in recognition of the technical damage caused by the wrongful conduct of the defendant.

CPI may also be entitled to recover actual damages. On this issue the burden of proof is on CPI. This means that CPI must prove, by the greater weight of the

evidence, the amount of actual damages sustained, if any, as a result of the injury to CPI's business.

Such damages would include any loss in profits suffered (or to be suffered) by CPI, any loss in the value of the CPI's business as a going concern.

CPI's damages are to be reasonably determined from the evidence presented in the case. CPI is not required to prove with mathematical certainty the extent of its injury to CPI's business in order to recover damages. Thus, CPI should not be denied damages simply because they cannot be calculated with exactness or a high degree of mathematical certainty. An award of damages must be based on evidence which shows the amount of CPI's damages with reasonable certainty. However, you may not award any damages based upon mere speculation or conjecture.

Finally, as to this issue on which CPI has the burden of proof, if you find, by the greater weight of the evidence, the amount of actual damages sustained by CPI by reason of the injury to CPI's business, then it would be your duty to write that amount in the blank space provided. If, on the other hand, you fail to so find, then it would be your duty to write a nominal amount such as "One Dollar" in the blank space provided.

SOURCE: NCPI 813.21, NCPI 813.70, NCPI 813.80.

**CPI's Objection to Vivint's Counter-Proposed Instruction**

CPI's proposed instructions better follow the Court's order on Vivint's motion for partial summary judgment and the pattern North Carolina instructions

applicable to the UDTPA claim. CPI incorporates by reference its arguments and authorities cited above.

## AFFIRMATIVE DEFENSES
## (to Count III – NCUDTPA)

### [SUBJECT TO CPI OBJECTION]

### Generally

If you find that CPI has met its burden to prove its claim by a preponderance of the evidence, you must next consider Vivint's affirmative defenses to the claim. If you find that CPI has not met its burden to prove its claims by a preponderance of the evidence, you do not need to consider Vivint's affirmative defenses. I will now instruct you on those affirmative defenses.

### Competitor Privilege

Vivint has raised the defense of legitimate business purpose as to CPI's Unfair and Deceptive Trade Practices Act claim. I have already instructed you regarding the elements of this affirmative defense.

If Vivint proves each of these elements by a preponderance of the evidence, then your verdict should be for Vivint on CPI's claim. If Vivint fails to prove each of these elements by a preponderance of the evidence, then you shall consider the next affirmative defense.

## CPI OBJECTION

CPI incorporates its prior arguments regarding Vivint's asserted "competitor privilege" "affirmative defense." No such thing exists with respect to an NC UDTPA claim. Vivint cites no authority applying this "affirmative defense" to an NC UDTPA claim. Further, as with the common law unfair competition claim, this "affirmative defense" is entirely unnecessary because the issue of whether Vivint's conduct is justified is subsumed in the initial analysis of whether CPI has proven a NC UDTPA claim. If the jury decides in CPI's favor on the NC UDTPA claim, there is no need to re-consider any alleged "competitor privilege" because the jury will already have decided that Vivint's conduct was improper (rendering any arguable "competitor privilege" inapplicable). CPI objects to this entire subsection.

## First Amendment

Vivint has raised the defense of puffery under the First Amendment as to CPI's Unfair and Deceptive Trade Practices Act claim. I have already instructed you regarding the elements of this affirmative defense.

If you find by a preponderance of the evidence that Vivint's statements were puffery, then your verdict should be in favor of Vivint on CPI's Unfair and Deceptive Trade Practices Act claim. If you find that Vivint failed to prove that Vivint's statements were puffery by a preponderance of the evidence, then you shall consider the next affirmative defense.

## Outside the Scope of Agency

Vivint has raised the defense that any alleged misconduct by its employees occurred outside the scope of employment. I have already instructed you regarding the elements of this affirmative defense.

If you find that Vivint's representatives were acting outside the course and scope of their employment at the time of any misconduct, then your verdict should be in favor of Vivint on CPI's Unfair and Deceptive Trade Practices Act claim. If you find that Vivint representatives were acting within the course and scope of their employment at the time of any misconduct, then you shall consider the next affirmative defense.

## CPI OBJECTION

Vivint again cites no authority supporting its asserted agency "affirmative defense" applies to a NCUDTPA claim. CPI further incorporates by reference its prior objections to Vivint's unsupported "agency" affirmative defense. Additionally, inclusion of this affirmative defense without an instruction as to the elements of agency would be confusing, misleading and improper.

**[CPI's PROPOSED INSTRUCTION NO. 7]**

[SUBJECT TO OBJECTION BY VIVINT]

**FALSE AFFILIATION IN
VIOLATION OF THE LANHAM ACT**

(COUNT I)

<u>DAMAGES</u>

*The seventh issue on the verdict form reads: "What amount of damages, if any, do you award to CPI for Vivint's false affiliation in violation of the Lanham Act (Count I)?"*

If you find that CPI has proven its false affiliation claim (Count I), you must determine whether and to what extent to award money damages. If you find that CPI has not proven its false affiliation claim, you need not consider damages on this claim.

**<u>Factors for Assessing Damages</u>**

There are six factors you may consider when determining whether, and in what amount, to award damages for Vivint's false affiliation:

(1) whether Vivint had the intent to confuse or deceive;

(2) whether sales have been diverted;

(3) the adequacy of other remedies;

(4) any unreasonable delay by CPI in asserting its rights;

(5) the public interest in making the misconduct unprofitable; and

(6) whether Vivint's conduct involves "palming off."

The first factor addresses whether there has been a willful infringement on the trademark rights of CPI, or whether Vivint has acted in bad faith. Although willfulness is an important factor in an assessment of whether to make an award, it is not essential. In other words, a lack of willfulness or bad faith by Vivint should weigh against an award of damages being made, but it does not necessarily preclude such an award. The second factor—whether sales have been diverted—involves the issue of whether CPI lost sales as a result of Vivint's false affiliation activities. Although this is a factor to consider in awarding actual damages, an award of Vivint's profits does not require CPI to prove any actual damages or lost sales. The third factor—the adequacy of other remedies—addresses whether another remedy might more appropriately correct any injury CPI suffered from Vivint's activities. The fourth factor—unreasonable delay by the plaintiff in asserting its rights—addresses the temporal issue of whether CPI waited too long, after Vivint began the wrongful activities, before seeking legal relief. A substantial delay between the commencement of infringement activities and the plaintiff seeking judicial relief should weigh against an award of damages. The fifth factor—the public interest in making the infringing misconduct unprofitable—addresses the balance between a plaintiff's right to be compensated for the defendant's infringing activities, and the statutory right of the defendant to not be assessed a penalty because any damage award should constitute compensation as opposed to a penalty. The sixth and final factor—whether the conduct at issue involves "palming off"—focuses on whether Vivint used its claimed

affiliation with CPI to sell Vivint's products, misrepresenting to the public that Vivint's products were really those of CPI. If "palming off" is shown, such activity should weigh in favor of an award of damages.

## Categories of Damages

If you decide to award damages for Vivint's false affiliation, there are two general categories of damages you may award. Damages for a false affiliation claim may include both a plaintiff's actual damages (also known as compensatory damages) and also an award of the defendant's profits. However, you may not include in any award of a defendant's profits any amount that you took into account in determining a plaintiff's actual damages. CPI must prove its damages by the greater weight of the evidence.


## CPI's Actual (Compensatory) Damages

Actual damages consist of the amount of money required to compensate CPI for the injury caused by Vivint's false affiliation.

In determining whether CPI has been damaged and what amount to award, you may consider the following types of compensatory damages:

- **Damage to goodwill.** Goodwill is consumer recognition or drawing power of a trademark. In determining damages to CPI's goodwill, you may consider CPI's expenditures to build its reputation and promote its trademark in order to estimate the harm resulting from Vivint's actions. Damages may be awarded for actual confusion that causes harm to a company's goodwill even if no lost sales have been shown.

- **Costs of corrective advertising.** This is the cost to CPI to counteract the effects of Vivint's false affiliation and the amount necessary to dispel any public confusion that lingers following Vivint's infringement.

- **Royalty award.** A royalty is a payment for the right to use a trademark. In determining CPI's damages, you may consider the royalty that Vivint and CPI would have agreed upon if Vivint had properly negotiated a right to affiliate with CPI before Vivint's wrongful conduct.

- **CPI's lost profits.** Lost profits consists of the revenue CPI would have earned but for Vivint's infringement, less the expenses CPI would have sustained in earning those revenues.

- **Any other damages sustained by CPI**. (The above list is not meant to be exhaustive of the types of damages which may be awarded.)

## Vivint's Profits

In addition to CPI's actual damages, CPI may recover the profits Vivint gained from Vivint's false affiliation with CPI. You may not, however, include in any award of profits any amount that you took into account in determining actual damages. CPI need not demonstrate actual damages to obtain an award of Vivint's profits.

In calculating the amount of Vivint's profits to award, you are to consider the following guidelines:

- CPI is required to prove Vivint's gross sales <u>only</u>.

- Profit is determined by deducting expenses from gross revenue. Gross revenue is all of the money that Vivint received due to its false affiliation with CPI.

- The burden is on Vivint to prove the amount of sales made for reasons other than a false affiliation with CPI. The burden is also on Vivint to prove its costs or other deductions which it claims should be subtracted from the amount of its gross sales to determine its profits on such sales. The burden is on Vivint to prove that particular sales (and any related profits) were not the result of unlawful conduct. Vivint must show these things by the greater weight of the evidence.

- CPI is entitled to recover Vivint's total profits, unless Vivint proves that a portion of its gross sales or profit is due to factors other than a false affiliation with CPI.

114

- If Vivint fails to show, by the greater weight of the evidence, what profits are due to a false affiliation with CPI and what profits are not, then you may award an amount equal to Vivint's gross sales. Although this could result in a windfall recovery for CPI, the law requires any such windfall be assessed against the wrongdoer.

CPI's damages are to be reasonably determined from the evidence presented in the case. CPI is not required to prove with mathematical certainty the extent of its injury in order to recover damages. Thus, CPI should not be denied damages simply because they cannot be calculated with exactness or a high degree of mathematical certainty. An award of damages must be based on evidence which shows the amount of CPI's damages with reasonable certainty. However, you may not award any damages based upon mere speculation or conjecture.

If you find, by the greater weight of the evidence, the amount of actual damages sustained by CPI by reason of its injury, then it would be your duty to write that amount in the blank space provided.

If, on the other hand, you fail to so find, then it would be your duty to write "None" in the blank space provided.

SOURCE: 15 U.S.C. § 1117(a). This instruction is adapted from Seventh Circuit Model Instructions 13.6.3 and 13.6.4 and supplemented with relevant Fourth Circuit standards, including the six factors for assessing whether and in what amount to make a damages award supplied by *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006).

**Factors for Assessing Damages.** *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006) (identifying and explaining the six factors for considering an award of damages under the Lanham Act); *Exclaim Mktg., LLC v. DirecTV, LLC*, 674 F. App'x

250, 256 (4th Cir. 2016) (unpublished) (citing *Synergistic*).

**Categories of Damages Permitted Generally.** *See* 15 U.S.C. § 1117(a) ("When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."). *See also Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1157 (7th Cir. 1994) (the standard method for calculating plaintiff's recovery under Section 1117(a) "both allows the plaintiff to recover any damages it suffered on account of the infringement and also requires the defendant to disgorge any profits it gained from the infringement.").

**Damage to Goodwill.** *Georgia Pac. Consumer Prod., LP v. Von Drehle Corp.*, 618 F.3d 441, 454 (4th Cir. 2010) (citing *Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp.*, 376 F.3d 8, 15 (1st Cir. 2004) for the proposition that "[t]he fact that the injury is to a company's reputation or goodwill, rather than directly to its sales, does not render the confusion any less actionable" and *Balance Dynamics Corp. v. Schmitt Indus., Inc.,* 204 F.3d 683, 693 (6th Cir. 2000) for the proposition that damages may be awarded for actual confusion that causes harm to goodwill under Lanham Act even if no lost sales have been shown); *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1091 (7th Cir. 1988) ("the owner of a mark is damaged by a later use of a similar mark which place[s] the owner's reputation beyond its control, *though no loss in business is shown*" (emphasis and alteration in original) (internal quotation marks omitted); 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 2:15; *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1112 (9th Cir. 2012) ("In measuring harm to goodwill, a jury may consider a plaintiff's expenditures in building its reputation in order to estimate the harm to its reputation after a defendant's bad acts."); *ADT & ADT US Holdings, Inc. v. Alarm Prot. LLC*, No. 9:15-CV-80073, 2017 WL 2212541, at *9 (S.D. Fla. May 17, 2017) (holding same, citing *Skydive* as persuasive authority); *Smith Corona Corp. v. Pelikan, Inc.*, 784 F. Supp. 452, 476 (M.D. Tenn. 1992) ("[I]n order to calculate damage to a corporation's goodwill due to a competitor's false advertising, one must take into account the amount of money expended by the injured corporation in the promotion of its trademark."), *aff'd,* 1 F.3d 1252 (Fed. Cir. 1993) (unpublished); *Meridian Mut. Ins. Co. v. Meridian Is. Group*, 128 F.3d 1111, 1117 (7th Cir. 1997) (defining goodwill); *Sands, Taylor & Wood v. Quaker Oats Co.*, 1990 U.S. Dist. LEXIS 17342 at *29, 1990 WL 251914, *9 (N.D. Ill. December 20, 1990); *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145,1157 (7th Cir. 1994). *See also Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 973 (2d Cir. 1985) (noting that "[r]ecovery under section 1117 is not limited to cases in which the quantum of actual damages is demonstrated").

**Corrective Advertising Damages.** *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1375 (10th Cir. 1977) (holding, under Lanham Act, plaintiff was entitled to award of costs of corrective advertising to correct the misinformation introduced into the marketplace by the defendant); *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 506 (7th Cir. 1992); *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633 (7th Cir. 2003); *Otis Clapp & Son, Inc. v. Filmore Vitamin Company*, 754 F.2d 738, 745 (7th Cir. 1985); *Adray v. Adry–Mart, Inc.*, 76 F.3d 984, 988–89 (9th Cir. 1995); *U–Haul International, Inc. v. Jartran, Inc.*, 793 F.2d 1034 (9th Cir. 1986); *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1564 (11th Cir. 1986) (affirming award of corrective advertising damages supported by testimony of marketing expert). *See also Novell, Inc. v. Network Trade Ctr., Inc.*, 25 F.Supp.2d 1233, 1241 (D. Utah 1998). *PBM Prod., Inc. v. Mead Johnson & Co.*, 174 F. Supp. 2d 417, 422 (E.D. Va. 2001) (permitting recovery of corrective advertising costs under Lanham Act).

**Royalty Damages.** *Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1351 (7th Cir. 1994) (affirming awarded damages based on hypothetical royalty); *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1519–20 (11th Cir. 1990) ("The use of lost royalties to determine the actual damages incurred by a victim of trademark misuse is well established in this court."); *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1565 (11th Cir. 1986) (noting that loss of royalty payments during the period of infringement is a proper measure of damages for the misuse of the mark, even if damages awarded based on hypothetical franchise contract); *Clear Blue, Inc. v. Clear!Blue, Inc.*, No. 3:07-CV-00339-W, 2008 WL 5232897, at *4 (W.D.N.C. Dec. 12, 2008) ("[C]ourts have approved the use of hypothetical royalty rates as a reasonable tool on which to base damages.") (citing *Sands* and *Ramada Inns*); *Holiday Inns v. Airport Holiday Corporation*, 493 F. Supp. 1025, 1028 (N.D. Tex. 1980) ("Royalties normally received for the use of a mark are the proper measure of damages for misuse of those marks."), *aff'd* 683 F.2d 931 (5th Cir. 1982).

**Plaintiff's Lost Profits.** *See, e.g.*, *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1092 (7th Cir. 1994); *Borg-Warner Corp. v. York-Shipley, Inc.*, 293 F.2d 88 (7th Cir. 1961).

**Defendant's Profits – Actual Damages Not Required.** *Wesco Mfg. Inc. v. Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484 (11th Cir.1987) (reversing the district court's denial of an accounting and noting that a plaintiff need not prove actual damages to obtain an accounting of the infringer's profits); *X-It Prod., LLC v. Walter Kidde Portable Equip., Inc.*, 227 F. Supp. 2d 494, 529 (E.D. Va. 2002) (citing

*Wesco* and holding a plaintiff need not have shown actual damages to obtain an accounting of the defendant's profits). *See also Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 606 (6th Cir. 1991); *Web Printing Controls, Co. v. Oxy–Dry Corp.*, 906 F.2d 1202, 1203 (7th Cir. 1990).

**Defendant's Profits – Burden Shifting Framework.** *See generally* 15 U.S.C. § 1117(a); *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206-07 (1942) ("The burden is the infringer's to prove that his infringement had no cash value in sales made by him. If he does not do so, the profits made on sales of goods bearing the infringing mark properly belong to the owner of the mark. There may be a windfall to the trade-mark owner where it is impossible to isolate the profits which are attributable to the use of the infringing mark. But to hold otherwise would give the windfall to the wrongdoer."); *Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 261 (1916) (holding where a plaintiff is unable to apportion profits specifically attributable to the infringement either "because of the action of the wrongdoer" or the "inherent impossibility of making an approximate apportionment," that the issue should be resolved against the infringer); *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 265 (1946) ("The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created."). *See also Exclaim Mktg., LLC v. DirecTV, LLC*, 674 F. App'x 250, 256 (4th Cir. 2016) (unpublished) (affirming enhanced award of defendant's profits where the defendant "failed to meet is burden to distinguish between profits attributable to infringement and any others"); *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 973 (2d Cir. 1985) (holding, under Section 1117, that doubts about actual damages will be resolved against party who evades ascertainment of actual damages, including where a defendant refuses to produce records from which the scope of infringing activity could be ascertained); *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 337 (5th Cir. 2008) (explaining the burden-shifting framework of Section 1117 and holding that once the plaintiff establishes the defendant's sales, then it is the defendant's burden to prove all elements of cost or deduction claimed.); *Burger King Corp. v. Mason*, 855 F.2d 779, 780–81 (11th Cir. 1988) ("The damage provision of the Lanham Act entitles a trademark holder to recover, among other things, the profits earned by a defendant from infringement of the mark. The Act confers upon the district court a wide scope of discretion to determine the proper relief due an injured party. . . . An accounting for profits has been determined by this Court to further the congressional purpose by making infringement unprofitable, and is justified because it deprives the defendant of unjust enrichment and provides a deterrent to similar activity in the future." (citations omitted)); *Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484, 1487–88 (11th Cir. 1987) ("A plaintiff need not demonstrate actual damage to obtain an accounting of an infringer's profits under section 35 of the Lanham Act. It is enough that the plaintiff proves the infringer's sales. The burden then shifts to the defendant, which must prove its expenses and other deductions from gross sales." (citations omitted)); *Maltina Corp. v. Cawy Bottling Co., Inc.*, 613 F.2d 582, 585 (5th

Cir. 1980); *Springs Mills, Inc. v. Ultracashmere House, Ltd.,* 724 F.2d 352, 356 (2nd Cir. 1983).

**Defendant's Profits – Submission of Issue to the Jury**. *AMF Inc. v. Nat'l Boat Works, Inc.*, No. C-75-125, 1975 WL 21202, at *4 (M.D.N.C. Nov. 25, 1975) (unreported) (holding plaintiff was entitled to jury determination on claim for accounting of defendant's profits); *X-It Prod., LLC v. Walter Kidde Portable Equip., Inc.*, 227 F. Supp. 2d 494, 529 (E.D. Va. 2002) (upholding jury award of defendant's profits and denying motion for new trial); *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 349 (5th Cir. 2002) (affirming jury verdict on claim for disgorgement of profits and recognizing "[i]n order to determine whether an accounting is appropriate, the court, *or the jury in this case*, considers the factors . . . ." (emphasis added)); *see also* 15 U.S.C.A. § 1117(a) ("The court shall assess such profits and damages [specified in subsection (a)] *or cause the same to be assessed under its direction.*" (emphasis added)). *Cf. Variety Stores, Inc. v. Walmart Inc.*, 852 F. App'x 711, 716 (4th Cir. 2021) (unpublished) (recognizing that damages issue of lost royalties and disgorgement of the defendant's profits "sounds in equity" and therefore "was to be tried before the jury on an advisory basis"). CPI submits that the question of an award of Defendant's profits should be assessed by the jury, at least in the first instance.

## <span style="color:red">Vivint's Objection</span>

<span style="color:red">Again, CPI has crafted its own instruction from scratch rather than using the Ninth Circuit Pattern Instructions, which are more familiar to this district in Lanham Act cases. *See, e.g.*, *Sauer Brands, Inc. v. Duke Sandwich Productions, Inc.*, No. 3:19-cv-00508 (W.D.N.C. 2020), Doc. 206-5; *Sedgewick Homes v. Stillwater Homes, Inc.*, No. 5:16-cv-0049 (W.D.N.C. 2019), Doc. 167.</span>

<span style="color:red">More fundamentally, CPI's instruction is contrary to established law. For example, CPI's proposed instruction again references trademarks purportedly owned by CPI without defining what trademark rights CPI is asserting or including instructions regarding proof of ownership or validity of such rights. *See, e.g.*, *U.S. Hosiery Corp. v. The Gap, Inc.*, 707 F. Supp. 800, 810 (W.D.N.C. 1989) ("Plaintiffs</span>

must establish at least four things in order to prevail on their [false designation of origin claim]: (1) ownership of (2) a valid trademark (3) which was used by Defendant in a trademark sense without the owner's consent (4) in a manner likely to cause confusion."). Further, CPI seeks damages to its goodwill without specifying or establishing any valid trademark owned by CPI that embodies its goodwill or proving that the value of that trademark has diminished.

Vivint further objects to CPI's proposed instruction because it permits an award of non-compensatory damages. *See, e.g., Illinois Tool Works, Inc. v. Rust-Oleum Corp.*, 955 F.3d 512, 516 (5th Cir. 2020) ("Corrective-advertising awards, like all § 1117(a) awards, are compensatory. If [the plaintiff] did not show a loss for which it needs compensation, it cannot receive a compensatory award."); *Macia v. Microsoft Corp.*, 335 F. Supp. 2d 507, 521 (D. Vt. 2004), aff'd, 164 Fed. Appx. 17 (2d Cir. 2006) ("[D]amages are available only to the extent that injury is shown already to have been suffered.").

Vivint further objects to CPI's proposed instruction because it permits an award of damages that is not causally linked to Vivint's proven wrongful conduct. "Under the Lanham Act, '[t]o recover damages for false advertising, a plaintiff "must prove both actual damages and a causal link between [the defendant's] violation and those damages."'" *PBM Products, Inc. v. Mead Johnson & Co.*, 174 F. Supp. 2d 417, 422 (E.D. Va. 2001) (quoting *Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*, 26 F. Supp. 2d 834, 863 (E.D. Va. 1998) (quoting *United Indus. Corp. v. Clorox Corp.*, 140 F.3d 1175, 1180 (8th Cir. 1998))).

Vivint further objects to CPI's proposed instruction because it permits a damages award for corrective advertising without establishing actual confusion amongst the relevant consuming public. *See, e.g., Thompson v. Haynes*, 305 F.3d 1369, 1382 (Fed. Cir. 2002) (acknowledging that an award of corrective advertising is only appropriate upon a showing of actual confusion); *Irwin Indus. Tool Co. v. Worthington Cylinders Wisconsin, LLC*, 747 F. Supp. 2d 568, 583 (W.D.N.C. 2010) (declining corrective advertising award where the plaintiff merely asserted the defendant's advertisements were false, not that they caused any actual public confusion).

Vivint further objects to CPI's proposed instruction because it seeks an award of royalty damages unrelated to the scope of CPI's wrongful conduct. "'A royalty-based damages award must be rationally related to the scope of the defendant's infringement.'" *Variety Stores, Inc. v. Wal-Mart Inc.*, 5:14-CV-217-BO, 2019 WL 11638969, at *7 (E.D.N.C. May 6, 2019)

Vivint further objects to CPI's proposed instruction because it seeks an award of royalty damages without evidence that CPI previously licensed the trademarks at issue or the parties previously negotiated such a license. *See, e.g., A&H Sportswear Co., Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 208-209 (3d Cir. 1999) ("Even when the courts have awarded a royalty for past trademark infringement, it was most often for continued use of the product beyond authorization, and damages were measured by the license the parties had or contemplated."); *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 950, 963 (7th Cir. 1992) (reversing trademark

damage award based on the defendant's profits and instead suggesting a "reasonable royalty" based on fee third party paid the plaintiff for us of the trademark at issue); *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1519 (11th Cir. 1990) (affirming sanctions based on "amount of royalty payments [the plaintiff] would have received during the period the defendants were diluting or using a colorable imitation of its trademark had the defendants been a genuine Howard Johnson franchise"); *Boston Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 597 F.2d 71, 75–76 (5th Cir. 1979) (reducing royalty awarded to what the defendant previously offered to pay the plaintiff for a non-exclusive license); *ADT & ADT US Holdings, Inc. v. Alarm Prot. LLC*, Case No. 9:15-CV-80073, 2017 WL 2212541, at *4 (S.D. Fla. May 17, 2017) (allowing royalty damages theory based on the plaintiff's well established dealer program); *QS Wholesale, Inc. v. World Mktg., Inc.*, Case No. 12-CV-0451, 2013 WL 1953719, at *4 (C.D. Cal. May 9, 2013) ("Because of the 'reasonable certainty' requirement, reasonable royalties are most often granted in a trademark context where the parties had a prior licensing arrangement, or where the plaintiff previously had engaged in the practice of licensing the mark to a third party."); *Trovan Ltd. v. Pfizer*, Case No. CV-98-00094, 2000 WL 709149, at *16 (C.D. Cal. May 24, 2000) (collecting cases).

Vivint also objects that CPI's proposed instruction and cited case law reference "palming off," which is not what CPI plead in its Count I. *See* Doc. 29 ¶¶ 50–59.

## CPI Response to Vivint's Objection

CPI's instruction is adapted from Seventh Circuit Model Instructions 13.6.3 and 13.6.4 and supplemented with relevant Fourth Circuit standards, including the six factors for assessing whether to make a damages award supplied by *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006).

As stated above with respect to CPI's instruction on liability for false affiliation under the Lanham Act, Vivint's objections regarding reference to "trademarks" can easily be resolved by supplanting the phrase with CPI's "trademarks or trade name," and including Vivint's proposed instructions 15.1, 15.2 and 15.4 in conjunction with CPI's original proposed liability instruction for false affiliation under the Lanham Act without all the other unnecessary, confusing and misleading instructions on issues not in dispute relating to traditional trademark infringement.

Vivint's other objections are without merit. CPI incorporates by reference the abundant authority cited in support of CPI's proposed damages instruction, which supports each and every element of damage set forth within CPI's instruction. CPI also notes that the Vivint's counter-proposed instructions 15.27 and 15.29 include much of the same legal standards and elements of damage proposed in CPI's instruction.

**<u>Vivint's Proposed Instruction</u>:**

**15.26 TRADEMARK DAMAGES—ACTUAL OR STATUTORY NOTICE**

**(15 U.S.C. § 1111)**

**[SUBJECT TO OBJECTION BY CPI]**

In order for CPI to recover damages for infringement of a registered trademark, CPI has the burden of proving by a preponderance of the evidence that Vivint had either statutory or actual notice that the CPI's trademark was registered.

Vivint had statutory notice if:

1. CPI displayed the trademark with the words "Registered in U.S. Patent and Trademark Office";

2. CPI displayed the trademark with the words "Reg. U.S. Pat. & Tm. Off."; or

3. CPI displayed the trademark with the letter R enclosed within a circle, thus ®.

SOURCE: Modeled on Ninth Circuit Pattern Instruction 15.26.

**<u>CPI's Objection</u>**

CPI incorporates its objections as to all of Vivint's counter-proposed instructions relating to traditional trademark infringement claims. This instruction is not necessary or appropriate in light of CPI's false association claim under § 1125(a). CPI's proposed instruction accurately describes applicable law.

## 15.27 TRADEMARK DAMAGES—PLAINTIFF'S ACTUAL DAMAGES
## (15 U.S.C. § 1117(a))

### [SUBJECT TO CPI OBJECTION]

If you find for CPI on CPI's false affiliation claim and find that Vivint had statutory notice or actual notice of CPI's registered trademark, you must determine CPI's actual damages. CPI has the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate CPI for an injury you find was caused by Vivint's infringement of CPI's trademark. Any damage awarded must be based on evidence introduced in the trial, not speculation. You should consider the following:

(1) The injury to CPI's reputation;

(2) The injury to CPI's goodwill embodied in its validly owned trademarks;

(3) The lost profits that CPI would have earned but for Vivint's infringement. Profit is determined by deducting all expenses from gross revenue;

(4) The expense of preventing customers from being deceived;

(5) The cost of future corrective advertising reasonably required to correct actual public confusion caused by the infringement; and

(6) [*Insert any other factors that bear on plaintiff's actual damages*].

When considering prospective costs (e.g., cost of future advertising, expense of preventing customers from being deceived), you must not overcompensate. Accordingly, your award of such future costs should not exceed the actual damage to the value of CPI's mark caused by the infringement by the defendant.

Source: Modeled on Ninth Circuit Pattern Instruction 15.27.

**CPI's Objection**

CPI's proposed instruction more accurately describes applicable law and the various types of awardable damages. CPI incorporates by reference the authorities cited in CPI's proposed damages instruction on the Lanham Act claim. To the extent Vivint's proposed instruction 15.27 is used, the term "trademark" should be supplanted with "trademark or trade name." Additionally, to the extent this instruction is used, CPI also objects:

- to the wording of subsection (2)—The model Ninth Circuit instruction instead states, "The injury to [loss of] plaintiff's goodwill, including injury to the plaintiff's general business reputation." That phrase should be used rather than Vivint's confusing modification "embodied in its validly owned trademarks."

- to the inclusion of the word "actual" in subsection (5)—The model Ninth Circuit instruction does not include that word and instead states "The cost of future corrective advertising reasonably required to correct <u>any</u> public confusion caused by the infringement" (emphasis added).

Finally, to the extent this instruction is used, the numbered list of damages to consider should include an element of damage for a "reasonable royalty" such as "the amount of royalty that CPI lost due to Vivint's failure to properly license a right of affiliation with CPI."

## 15.29 TRADEMARK DAMAGES—DEFENDANT'S PROFITS

## (15 U.S.C. § 1117(a))

### [SUBJECT TO CPI OBJECTION]

In addition to actual damages, CPI may be entitled to any profits earned by Vivint that are attributable to the infringement, which CPI proves by a preponderance of the evidence. You may not, however, include in any award of profits any amount that you took into account in determining actual damages. Profit is determined by deducting all expenses from gross revenue. Gross revenue is all of Vivint's receipts from using the CPI's trademark in the sale of Vivint's goods and services. CPI has the burden of proving Vivint's gross revenue by a preponderance of the evidence. Expenses are all operating expenses, overhead, and production costs incurred in producing the gross revenue. Vivint has the burden of proving the expenses and the portion of the profit attributable to factors other than use of the trademark by a preponderance of the evidence. CPI has the burden to prove that the revenue it seeks profits from is related to Vivint's established infringement. Any damage awarded must be based on evidence introduced in the trial, not speculation. Unless you find that a portion of the profit from the sale of the [*specify goods and services*] using the trademark is attributable to factors other than use of the trademark, you should find that the total profit is attributable to the infringement.

SOURCE: Modeled on Ninth Circuit Pattern Instruction 15.2

## CPI's Objection

CPI's proposed instruction more accurately describes applicable law and the various types of awardable damages. As an initial matter, to the extent this instruction is used, the term "trademark" should be supplanted with "trademark or trade name," as previously stated in response to other proposed instructions.

In regard to the burden-shifting framework detailed in this instruction, CPI objects that Vivint's proposed instruction improperly defines the relative burdens of the parties, especially where, as here, there is inherent difficulty of proof and a lack of records pertaining to the scope of Vivint's infringing activities, which occur in largely undocumented and unsolicited door-to-door sales throughout a wide geographic area. CPI refers to the authorities cited in its instruction on this issue, some of which are re-pasted below. In particular, Vivint's proposed instruction improperly states it is "CPI's burden to provide Vivint's receipts from using the CPI's trademark in the sale of Vivint's goods and services." Under established law, and the direct statutory language of section 1117(a), "In assessing profits the plaintiff shall be required to prove **defendant's sales only**; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. 1117(a). Vivint's proposed instruction improperly shifts the burden to CPI to show specifically which profits are attributable to the infringement rather than simply Vivint's gross sales. To the contrary, Section 1117(a) does not require the *victim* of infringement to show specifically which sales were attributable to the infringement because the victim is without that information—especially where, as here, the defendant states that it has no records from which the scope of the infringing activity can be ascertained. Instead, in these

circumstances, the Lanham Act imposes the burden of making that showing on the defendant. *See, e.g.*, *Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 261 (1916) (holding where a plaintiff is unable to apportion profits specifically attributable to the infringement either "because of the action of the wrongdoer" or the "inherent impossibility of making an approximate apportionment," that the issue should be resolved against the infringer); *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 973 (2d Cir. 1985) (holding, under Section 1117, that doubts about actual damages will be resolved against party who evades ascertainment of actual damages, including where a defendant refuses to produce records from which the scope of infringing activity could be ascertained);[23] *Nintendo of America, Inc. v. Dragon Pacific Int'l*, 40 F.3d 1007, 10102 (9th Cir. 1994) (holding that when infringing and noninfringing elements of work cannot be readily separated, all of defendant's profits should be awarded to plaintiff) (cited in Defendant's model Ninth Circuit Instruction No. 15.29); **5 McCarthy on Trademarks and Unfair Competition** § 30:65 (5th ed.) (reviewing applicable authority).

See also: *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206-07 (1942) ("The burden is the infringer's to prove that his infringement had no cash value in sales made by him. If he does not do so, the profits made on sales of goods bearing the infringing mark properly belong to the owner of the mark. There may be a windfall to the trade-mark owner where it is impossible to isolate the profits which are

---

[23] As the evidence will show, here Vivint has similarly refused to produce records from which the scope of infringing activity can be ascertained, has disobeyed the Court's orders compelling discovery with respect to Vivint's sales in CPI's geographic footprint, and claims it has no basis for tracking revenue on a state-by-state basis despite testimony from former Vivint employees to the contrary.

attributable to the use of the infringing mark. But to hold otherwise would give the windfall to the wrongdoer."); *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 265 (1946) ("The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created."); *Exclaim Mktg., LLC v. DirecTV, LLC*, 674 F. App'x 250, 256 (4th Cir. 2016) (unpublished) (affirming enhanced award of defendant's profits where the defendant "failed to meet is burden to distinguish between profits attributable to infringement and any others"); *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 337 (5th Cir. 2008) (explaining the burden-shifting framework of Section 1117 and holding that once the plaintiff establishes the defendant's sales, then it is the defendant's burden to prove all elements of cost or deduction claimed.); *Burger King Corp. v. Mason*, 855 F.2d 779, 780–81 (11th Cir. 1988) ("The damage provision of the Lanham Act entitles a trademark holder to recover, among other things, the profits earned by a defendant from infringement of the mark. The Act confers upon the district court a wide scope of discretion to determine the proper relief due an injured party. . . . An accounting for profits has been determined by this Court to further the congressional purpose by making infringement unprofitable, and is justified because it deprives the defendant of unjust enrichment and provides a deterrent to similar activity in the future." (citations omitted)).

**[CPI's PROPOSED INSTRUCTION NO. 8]**

[SUBJECT TO OBJECTION BY VIVINT]


**COMMON LAW UNFAIR COMPETITION**

(COUNT II)


**VIOLATION OF THE NORTH CAROLINA
UNFAIR AND DECEPTIVE TRADE PRACTICES ACT**

(COUNT III)


**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS**

(COUNT V)


<u>DAMAGES</u>

*The eighth issue on the verdict form reads "What amount of damages, if any, do you award to CPI on Count II, Count III, and/or Count V beyond any damages already awarded to CPI on Count I?"*


If you awarded damages to CPI on Count I, you must not award duplicative damages for the same conduct on Count II, Count III or Count V. However, if you find that CPI suffered damages on Count II, Count III, or Count V that are separate and distinct from, or in addition to, any damages awarded to CPI on Count I, you may award additional damages so long as they do not constitute a double recovery for the same conduct. Also, you may award damages on Count II, Count III or Count V even if you did not award damages on Count I.

If you found Vivint liable on Count II, Count III, or Count V, CPI is entitled to recover nominal damages even without proof of actual damages. Nominal damages consist of some trivial amount such as one dollar in recognition of the technical damage caused by the wrongful conduct of Vivint.

CPI may also be entitled to recover actual damages (also known as compensatory damages). On this issue the burden of proof is on CPI. This means that CPI must prove, by the greater weight of the evidence, the amount of actual damages sustained, if any, as a result of its injury. It is up to you, the jury, to determine CPI's damages, if any.

Such damages you could award include:

- **Damage to goodwill.** Goodwill is consumer recognition or drawing power of a trademark. In determining damages to CPI's goodwill, you may consider CPI's expenditures to build its reputation and promote its trademark in order to estimate the harm resulting from Vivint's actions. Damages may be awarded for actual confusion that causes harm to a company's goodwill even if no lost sales have been shown.

- **Costs of corrective advertising.** This is the cost to CPI to counteract the effects of Vivint's wrongful conduct and the amount necessary to dispel any public confusion that lingers following Vivint's conduct.

- **Royalty award.** A royalty is a payment for the right to use a trademark. In determining CPI's damages, you may consider the royalty that Vivint and CPI would have agreed upon if Vivint had properly negotiated a right to interact with CPI's customers before Vivint's wrongful conduct.

- **CPI's lost profits.** Lost profits consists of the revenue CPI would have earned but for Vivint's wrongful conduct, less the expenses CPI would have sustained in earning those revenues.

- **Vivint's profits.** The amount of profits Vivint gained from the wrongful conduct may be used as a measure of CPI's damages.

- **Any loss in the value of CPI's business as a going concern**.

CPI's damages are to be reasonably determined from the evidence presented in the case. CPI is not required to prove with mathematical certainty the extent of its injury in order to recover damages. Thus, CPI should not be denied damages simply because they cannot be calculated with exactness or a high degree of mathematical certainty. An award of damages must be based on evidence which shows the amount of CPI's damages with reasonable certainty. However, you may not award any damages based upon mere speculation or conjecture.

If you find, by the greater weight of the evidence, the amount of actual damages sustained by CPI by reason of its injury, then it would be your duty to write that amount in the blank space provided.

If, on the other hand, you fail to so find, then it would be your duty to write a nominal amount such as "One Dollar" in the blank space provided.

SOURCE: N.C.P.I. § 813.80. Note that the pattern instruction states that case-specific elements of damages should be listed, and includes, as examples only, "any loss in the value of the plaintiff's business as a going concern" and "any loss in profits suffered (or to be suffered) by the plaintiff" as example elements of damage to list in a case involving injury to a plaintiff as a competitor. The case-specific damages listed above relate to various elements of damage for which the jury will also receive evidence on the Lanham Act claim (see citations, *supra*).

**Defendant's Profits.** *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 149 (4th Cir. 1987) (holding plaintiff was entitled an award of defendant's profits based upon its common law claim of unfair competition and its claim under North Carolina's Unfair Trade Practices Act and recognizing a "defendants' profits . . . are a rough measure of the plaintiff's damages. Indeed, they are probably the best possible measure of damages available."); *Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 168 (4th Cir. 2012), as amended (May 9, 2012) (discussing *Polo Fashions, Inc.* and holding the trial

court "properly treated the award of [defendant's] profits as damages subject to trebling under N.C. Gen. Stat. § 75–16").

**<u>Vivint's Objection</u>**

Vivint objects to CPI's proposed instruction's listing of categories of damages, including and especially those damages to which CPI is not entitled in this case, as described more fully above with respect to its Lanham Act claim.

Vivint believes that this Court's standard instruction on compensatory damages is more appropriate than the one that CPI has crafted. That standard instruction follows below, with two additions (shown <u>in underlined text</u>), which track precedent and, as to the second addition, also appear (in some form) in CPI's proposed instruction.

**<u>CPI's Response to Vivint's Objection and Counter-Proposed Instruction</u>**

CPI's instruction is modeled on N.C.P.I. § 813.80, which explicitly states that case-specific elements of damages should be listed. Given the complex nature of the various kinds of damages at issue, the jury should be instructed on what specifically it should consider. Vivint's counter-proposed instruction does not provide the jury any guidance on what types of damages is may consider.

**Vivint's Proposed Instruction**

[SUBJECT TO OBJECTION BY CPI]

**The (state number) issue reads:** "What amount of compensatory damages, if any, do you award to CPI on Count II, Count III, and/or Count V?"

If CPI has proven any of its claims against Vivint by a preponderance of the evidence, you must determine the damages to which CPI is entitled. You should not interpret the fact that I have given instructions about the plaintiff's damages as an indication in any way that I believe that CPI should, or should not, win this case. It is your task first to decide whether Vivint is liable on any of the CPI's claims. I am instructing you on damages only so that you will have guidance in the event you decide that Vivint is liable and that CPI is entitled to recover money from Vivint.

The purpose of the law of damages is to award, as far as possible, just and fair compensation for the loss, if any, which resulted from the defendant's wrongful conduct. If you find that Vivint is liable on the claims, as I have explained them, then you must award CPI sufficient damages to compensate it for any injury proximately caused by Vivint's conduct. These are known as "compensatory damages." Compensatory damages seek to make the plaintiff whole – that is, to compensate it for the actual damage suffered. At a minimum, you may award some nominal amount of damages to the plaintiff even in the absence of proof of actual damages.

You may award compensatory damages only for injuries that CPI proves were proximately caused by Vivint's allegedly wrongful conduct. The damages that you award must be fair and reasonable, neither inadequate nor excessive. You should not

award compensatory damages for speculative injuries, but only for those injuries that CPI has actually suffered. In awarding compensatory damages, you must be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. CPI bears the burden of proving its damages to a reasonable degree of certainty. On the other hand, the law does not require a plaintiff to prove the amount of its losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. You are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

Furthermore, you must not award duplicative damages for the same conduct on multiple claims. You may award damages only if they do not constitute a double recovery for the same conduct.

SOURCE: Standing Order Governing Jury Selection and Instruction in Civil Cases before the Honorable Frank D. Whitney at 11–12; *Olivetti Corp. v. Ames Business Systems, Inc.*, 319 N.C. 534, 547–48, 356 S.E.2d 578, 586 (1987) (party seeking damages bears burden of showing that "the amount of damages is based upon a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty"); *Lord of Shalford v. Shelley's Jewelry, Inc.*, 127 F. Supp. 2d 779, 788 (W.D.N.C. 2000) (same), *aff'd*, 18 Fed. Appx. 147 (4th Cir. 2001); *Holland v. Southern Public Utilities Co.*, 208 N.C. 289, 290, 180 S.E. 592, 593 (1935) ("[T]here can be but one recovery for the same injury or damage.").

## CPI's Objection

CPI incorporates by reference the authorities cited in CPI's proposed instruction. Vivint's proposed instruction fails to instruct the jury on the specific items of damage at issue.

# AFFIRMATIVE DEFENSES

## (as to Compensatory Damages)

### [SUBJECT TO OBJECTION BY CPI]

**Failure to Mitigate**

Vivint has raised the affirmative defense that CPI failed to mitigate its damages.

On this issue the burden of proof is on Vivint. This means that Vivint must prove, by the greater weight of the evidence, two things:

First, that CPI failed to use ordinary care to mitigate the damages sustained by it as a result of Vivint's conduct. The law imposes upon the injured party a duty to use ordinary care to reduce, minimize, and avoid the damages resulting from such conduct. Ordinary care means that degree of care which a reasonable and prudent person would use under the same or similar circumstances to mitigate the adverse consequences of the conduct. Once the conduct becomes definite and known to a party, it must take such steps as fair and reasonable business prudence would require to reduce the damage.

And Second, that, as a result of CPI's failure to use ordinary care to mitigate, certain damages that CPI could have reduced, minimized, or avoided were not reduced, minimized, or avoided. The opportunity to mitigate damages must be a reasonable one. The injured party is not required to make more than a reasonable exertion or to undertake more than a reasonable expense.

In this case, Vivint contends, and CPI denies, that CPI failed to use ordinary care to mitigate damages in one or more of the following ways: (1) making inadequate efforts to reclaim lost customers; (2) making inadequate efforts to stop losing customers; and (3) failing to promptly notify Vivint of its complaints concerning Vivint's conduct in order to alleviate the effects of any alleged injuries.

Vivint further contends, and CPI denies, that, as a result of the CPI's failure to use ordinary care, certain damages CPI could have reduced, minimized, and avoided were not reduced, minimized, and avoided.

If you find that Vivint proved by a preponderance of the evidence that CPI failed to mitigate its damages, either in whole or in part, then you should reduce the amount of CPI's damages by the amount that you find was attributable to the failure.

However, if the preponderance of the evidence does not support this defense, then you shall consider the next defense.


SOURCE: N.C.P.I. Civil 503.90


**Superseding or Intervening Cause**

Vivint has raised the affirmative defense of an intervening cause as to CPI's damages. An intervening cause is a new proximate cause that breaks the connection with the original cause and becomes itself solely responsible for the result in question, making the effect of the original action in the causation remote. Vivint asserts that certain comments made by CPI's President and CEO, Ken Gill, were an intervening cause of any damages that CPI alleges.

If you find that Vivint proved by a preponderance of the evidence that comments made by CPI's President and CEO, Ken Gill, were an intervening cause of CPI's damages, either in whole or in part, then you should reduce the amount of CPI's damages by the amount that you find was attributable to the intervening cause.

SOURCE: *Hampton v. Hearn*, 838 S.E.2d 650, 656, 269 N.C. App. 397, 402 (2020) (quoting *Harton v. Tel. Co.*, 141 N.C. 455, 54 S.E. 299 (1906)), *review denied*, 840 S.E.2d 787, 374 N.C. 425 (2020).

## CPI's Objection

CPI objects to the "superseding or intervening cause" affirmative defense set forth above for the reasons set forth in CPI's motion *in limine* relating to the same, which is incorporated by reference.

**[CPI's PROPOSED INSTRUCTION NO. 9]**

[SUBJECT TO OBJECTION BY VIVINT]

**PUNITIVE DAMAGES**

<u>LIABILITY</u>

*The ninth issue on the verdict form reads: "Is Vivint liable for punitive damages?"*

You are to answer this question only if you have found Vivint liable on Count II or Count V.

On this issue the burden of proof is on CPI to prove three things. CPI must prove the first thing by clear and convincing evidence. Clear and convincing evidence is evidence which, in its character and weight, establishes what the plaintiff seeks to prove in a clear and convincing fashion. You shall interpret and apply the words "clear" and "convincing" in accordance with their commonly understood and accepted meanings in everyday speech.

Thus, the first thing CPI must prove, by clear and convincing evidence, is the existence of willful or wanton conduct by Vivint.

Willful or wanton conduct means the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in damage or other harm. Willful or wanton conduct means more than gross negligence.

CPI must prove the second and third things by the greater weight of the evidence. The greater weight of the evidence does not refer to the quantity of the

evidence, but rather to the quality and convincing force of the evidence. It means that you must be persuaded, considering all of the evidence, that the necessary facts are more likely than not to exist.

These second and third things are:

Second, that the willful or wanton conduct by Vivint was related to the injury to CPI for which you have already awarded relief.

And Third, that Vivint participated in, or that Vivint's officers, directors or managers participated in or condoned, the willful or wanton conduct.

Finally, as to this issue on which CPI has the burden of proof, if you find by the standards herein explained that Vivint is liable to CPI for punitive damages, then it would be your duty to answer this issue "Yes" in favor of CPI.

If, on the other hand, you fail to so find, then it would be your duty to answer "No" in favor of Vivint.


SOURCE: N.C.P.I. § 810.96. *Holloway v. Wachovia Bank & Trust Co.,* 339 N.C. 338, 452 S.E.2d 233 (1994) (under North Carolina law, a party may seek both punitive damages on a common law tortious interference claim and treble damaged pursuant to the North Carolina Unfair Trade Practices Statute); *X-It Prod., LLC v. Walter Kidde Portable Equip., Inc.*, 227 F. Supp. 2d 494, 537 (E.D. Va. 2002) (awarding punitive damages on common law unfair competition in addition to trebled damage award under North Carolina Unfair Trade Practices Act).

### **Vivint's Objection**

Vivint objects to CPI's proposed instruction in its entirety as inappropriate, inaccurate, and misleading.

First and foremost, CPI appears to believe that it can recover treble damages under the Unfair Deceptive Trade Practices Act and punitive damages for its common law claims—a result that North Carolina law expressly forbids. *See, e.g.*, *Compton v. Kirby*, 577 S.E.2d 905, 917–18 (N.C. Ct. App. 2003). In the event of a compensatory damages award and a punitive damages award, CPI must elect between treble damages under the UDTPA or punitive damages; it "may not have both." *Id.*

Furthermore, this proposed instruction is inaccurate in that it suggests the participation of Vivint's officers, directors, or managers is optional, not mandatory, for an award of punitive damages.

Lastly, this proposed instruction is also inappropriate in that it adopts the "willful or wanton conduct" standard, which is more appropriate for traditional tort cases involving personal injuries; here, CPI's claims are all misrepresentation-based, and, therefore, the "fraud" standard is more appropriate.

## CPI Response to Vivint's Objection and Counter-Proposed Instruction

CPI is not required to elect its remedy until a verdict is reached. Vivint does not cite any authority requiring such an election before a verdict, and issues relating to an election of remedy can properly be dealt with by the Court following a verdict.

As to Vivint's other objections, CPI's proposal accurately recites the applicable standards directly from North Carolina's pattern instructions.

The willful or wanton conduct standard is more applicable to the facts here because the claims relate to intentional conduct inflicted upon CPI's customers

(which in turn causes damage to CPI), not a fraud perpetuated directly on CPI where any sort of reliance is at issue. If the fraud standard were to be utilized, the corresponding reliance standard from the pattern instruction should be modified to omit any necessary reliance by CPI to account for the fact that the "fraud" at issue is fraud committed by Vivint upon CPI's customers, which in turn has damaged CPI.

**Vivint's Proposed Instruction**:

[SUBJECT TO OBJECTION BY CPI]

**The (state number) issue reads:** "Is Vivint liable to CPI for punitive damages?"

(You are to answer this issue only if you have awarded CPI relief in conjunction with (state number(s) of plaintiff's issue(s) [Common-law Unfair Competition or Tortious Interference with Contract].)

On this issue the burden of proof is on CPI to prove three things. CPI must prove the first thing by clear and convincing evidence. Clear and convincing evidence is evidence which, in its character and weight, establishes what CPI seeks to prove in a clear and convincing fashion. You shall interpret and apply the words "clear" and "convincing" in accordance with their commonly understood and accepted meanings in everyday speech.

Thus, the first thing CPI must prove, by clear and convincing evidence, is the existence of fraud. Fraud means a false representation of material fact made by Vivint with intent to deceive which was reasonably calculated to deceive and which did, in fact, deceive and damage CPI because of CPI's reasonable reliance on it.

CPI must prove the second and third things by the greater weight of the evidence. The greater weight of the evidence does not refer to the quantity of the evidence, but rather to the quality and convincing force of the evidence. It means that you must be persuaded, considering all of the evidence, that the necessary facts are more likely than not to exist. These second and third things are:

Second, that the fraud was related to the injury to CPI for which you have already awarded relief.

And Third, that Vivint's officers, directors or managers participated in or condoned the fraud.

Finally, as to this issue on which CPI has the burden of proof, if you find by the standards herein explained that Vivint is liable to CPI for punitive damages, then it would be your duty to answer this issue "Yes" in favor of CPI.

If, on the other hand, you fail to so find, then it would be your duty to answer "No" in favor of Vivint.

SOURCE: NCPI 810.96, 810.98.

## CPI Response to Vivint's Counter-Proposed Instruction

CPI incorporates its arguments stated above and submits that its version of this instruction is more appropriate in light of the facts at issue.

**[CPI's PROPOSED INSTRUCTION NO. 10]**

<span style="color:red">[SUBJECT TO OBJECTION BY VIVINT]</span>

**PUNITIVE DAMAGES**

<u>WHETHER TO MAKE AWARD AND AMOUNT</u>

*The tenth issue on the verdict form reads: "What amount of punitive damages, if any, does the jury in its discretion award?"*

You are to answer this issue only if you have answered the preceding issue as to liability for punitive damages "Yes" in favor of CPI.

Whether to award punitive damages is a matter within the sound discretion of the jury. Punitive damages are not awarded for the purpose of compensating the plaintiff for damages nor are they awarded as a matter of right.

If you decide, in your discretion, to award punitive damages, any amount you award must bear a rational relationship to the sum reasonably needed to punish Vivint for egregiously wrongful acts committed against CPI and to deter Vivint and others from committing similar wrongful acts.

In making this determination, you may consider only that evidence which relates to:

- the reprehensibility of Vivint's motives and conduct;

- the likelihood, at the relevant time, of serious harm (to CPI or others similarly situated);

- the degree of Vivint's awareness of the probable consequences of the conduct;

- the duration of Vivint's conduct;

- the actual damages suffered by CPI;

- any concealment by Vivint of the facts or consequences of the conduct;

- the existence and frequency of any similar past conduct by Vivint;

- whether Vivint profited by the conduct; and

- Vivint's ability to pay punitive damages, as evidenced by its revenues or net worth.

Finally, if you determine, in your discretion, to award punitive damages, then you may award an amount which bears a rational relationship to the sum reasonably needed to punish Vivint for egregiously wrongful acts and to deter Vivint and others from committing similar wrongful acts. That amount should be written in the space provided on the verdict sheet.

If, on the other hand, you determine, in your discretion, not to award any amount of punitive damages, then you should write the word "None" in the space provided on the verdict sheet.

SOURCE: N.C.P.I. § 810.98.

## **Vivint's Objection**

Vivint objects to CPI's proposed instruction to the extent it conspicuously omits the words "to CPI" from the portion of the pattern instruction that discusses the making of an award. This deviation from the pattern instruction appears designed to diminish the fact that CPI, a large corporate plaintiff, would be the recipient of any such award.

**CPI Response to Vivint's Objection and Counter-Proposed Instruction**

  The inclusion of "to CPI" is neither necessary nor material. CPI's and Vivint's proposed instructions are otherwise virtually the same.

**Vivint's Proposed Instruction**

**[SUBJECT TO OBJECTION BY CPI]**

The (state number) issue reads:  "What amount of punitive damages, if any, does the jury in its discretion award to CPI?"

You are to answer this issue only if you have answered the (state number issue) "Yes" in favor of CPI.

Whether to award punitive damages is a matter within the sound discretion of the jury. Punitive damages are not awarded for the purpose of compensating CPI for its damage, nor are they awarded as a matter of right.

If you decide, in your discretion, to award punitive damages, any amount you award must bear a rational relationship to the sum reasonably needed to punish Vivint for egregiously wrongful acts committed against CPI and to deter Vivint and others from committing similar wrongful acts.  In making this determination, you may consider only that evidence which relates to

- [the reprehensibility of Vivint's motives and conduct]

- [the likelihood, at the relevant time, of serious harm (to CPI or others similarly situated)]

- [the degree of Vivint's awareness of the probable consequences of its conduct]

- [the duration of Vivint's conduct]

- [the actual damages suffered by CPI]

- [any concealment by Vivint's of the facts or consequences of its conduct]

- [the existence and frequency of any similar past conduct by Vivint]

- [whether Vivint profited by the conduct]

- [Vivint's ability to pay punitive damages, as evidenced by its revenues or net worth].

Finally, if you determine, in your discretion, to award punitive damages, then you may award to CPI an amount which bears a rational relationship to the sum reasonably needed to punish Vivint for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts. That amount should be written in the space provided on the verdict sheet.

If, on the other hand, you determine, in your discretion, not to award CPI any amount of punitive damages, then you should write the word "None" in the space provided on the verdict sheet.


SOURCE: NCPI 810.96, 810.98.

**PHASE IV**

Now, members of the jury, you have heard the evidence and the arguments of counsel. It is your duty to remember the evidence whether it has been called to your attention or not, and if your recollection of the evidence differs from that of the attorneys, you are to rely solely upon your recollection of the evidence in your deliberations.

It is your duty not only to consider all the evidence, but also to consider all the arguments, the contentions and positions urged by the attorneys and any other contention that arises from the evidence, and to weigh them all in the light of your common sense, and as best you can, to determine the truth of this matter.

The law, as indeed it should, requires the presiding judge to be impartial. Therefore, do not assume from anything I may have done or said during the trial that I have any opinion concerning any of the issues in this case.

I instruct you that a verdict is not a verdict until all [eight] jurors agree unanimously as to what your decision shall be. Each one of you must decide the case for yourself. However, you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

I suggest that as soon as you reach the jury room, before beginning deliberations, you select one of your members to serve as foreperson. This individual

has the same vote as the rest of the jurors, but simply serves to preside over the discussions. Once you begin deliberating, if you need to communicate with me, the foreperson should send a written message to me by ringing the buzzer next to the door and handing your note to the Marshal. However, you are not to tell me how you stand numerically as to your verdict – for instance, should you be split in your voting at any particular time, you would not tell me the specific numbers of division in your note.

We use a verdict sheet. This is simply the written notice of the decision that you reach in this case. As soon as you have reached a verdict as to the claims alleged in the pleadings, you will return to the courtroom and your foreperson will, on request, hand the verdict sheet to the Clerk. There are places on the verdict sheet for the foreperson to enter the verdict, sign it, and date it.

During the trial, several items were received into evidence as exhibits. You will not be taking the exhibits into the jury room with you at the start. If, after you have begun your discussions of the case, you think it would be helpful to have any of the exhibits with you in the jury room, have the foreperson send me a note asking for them.

If you need a break during deliberations, you may do so in the jury room, or if you need a break outside the jury room, a Marshal will escort you. But you must not deliberate during a break unless all [eight] of you are together. If you are not together, then do not talk about the case until all of you are all back together.

You may now take the case and see how you find.

Standing Order Governing Jury Selection and Instruction in Civil Cases before the Honorable Frank D. Whitney at 4, 13.