UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-CV-00504-FDW-DSC

| | |
|---|---|
| CPI SECURITY SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> VIVINT SMART HOME, INC., <br> f/k/a MOSAIC ACQUISITION CORP.; <br> LEGACY VIVINT SMART HOME, INC. <br> f/k/a VIVINT SMART HOME, INC., <br><br> Defendants. | **[REDACTED]** <br><br> **BRIEF IN SUPPORT OF DEFENDANTS' RULE 702 MOTION TO EXCLUDE TESTIMONY OF RUSSELL WINER** |

## INTRODUCTION

As one of its two damages experts, CPI hired Russell Winer, a marketing professor who proposes a door-to-door remedial advertising campaign for all of CPI's customers. Winer has never offered this opinion before, nor has he designed or implemented such a remedial campaign, nor does he apply the scientific method to his hypothesis or any of its subparts. In addition, his opinion is at odds with the Lanham Act in several key respects.

For these reasons, Winer should be excluded from testifying at trial.

I.  **Winer's opinion fails under Rule 702.**

  A.  **Winer admits that his opinion does not amount to "scientific knowledge" under Rule 702(a).**

Rule 702(a) permits expert testimony based on "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702(a). As the Fourth Circuit recently reaffirmed, "'to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method.'" *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 291 (4th Cir. 2021) (quoting *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 590 (1993)).

Winer admits that his opinion fails this standard. *Id.* He admits that he does not use the scientific method for his litigation matters (Exhibit 1 [Winer Dep. Tr.] at 105:8–22), and that this case was no different: He admits that he did *not* ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 105:23–106:1.[1]

In short, Winer concedes that his opinion does not amount to "scientific knowledge" under Rule 702(a).

  B.  **Winer's opinions violate the "common knowledge rule."**

"The Fourth Circuit applies the 'common knowledge' rule," which requires excluding an expert's opinion "when reaching the expert's opinion 'is something that

---

[1]  Winer uses the scientific method in his academic research, but not when he is a paid expert. Exhibit 1 at 105:8–22. As Rule 702's advisory committee explained, it is appropriate for the Court to consider "'[w]hether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting.'" *Hoffman v. Monsanto Co.*, No. 2:05-cv-418, 2007 WL 2984692, at *3 (S.D.W. Va. Oct. 11, 2007) (quoting Rule 702 Advisory Committee Note).

can sufficiently be done by the jury without help from an expert.'" *Koenig v. Johnson*, 2:18-CV-3599-DCN, 2020 WL 2308305, at *5 (D.S.C. May 8, 2020) (quoting *United States v. Dorsey*, 45 F.3d 809, 815 (4th Cir. 1995)); *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986) ("[S]uch testimony, almost by definition, can be of no assistance."); *Lightfoot v. Georgia-Pac. Wood Products, LLC*, No. 7:16-CV-244-FL, 2018 WL 4517616, at *17 (E.D.N.C. Sept. 20, 2018), *amended on reconsideration*, 2018 WL 6729636 (E.D.N.C. Dec. 21, 2018) ("Determination of the facts from the evidence in this case is a task reserved to the jury, and . . . statements commenting on the evidence . . . are not helpful to the jury and are likely to mislead.").

Winer opines that CPI's factual allegations are true, thus supplanting a core task—if not *the* core task—reserved for the jury. Exhibit 2 ¶ 51 ███████████████████████████████████████████████████████████████████████████ Winer concludes this from his review of transcripts of 24 calls between CPI and its customers about alleged interactions with Vivint.[2] Exhibit 1 at 194:25–195:2.

Winer admits he reached this conclusion without doing anything to verify:

- whether ██████████████████████████████████████████████████ *id.* at 201:17–20;

---

[2] CPI's counsel provided the transcripts to Winer. Exhibit 1 at 85:11–86:2. Winer does not know how CPI's counsel selected the 24 calls. *Id.* at 248:6–249:25; *cf. Pods Enters., Inc. v. U-Haul Intern., Inc.*, 2015 WL 1097374, at *4 (M.D. Fla. Mar. 11, 2015) (jury did not have to accept expert's methodology or conclusions when documents were provided by counsel rather than through expert's independent research).

- whether the people making the calls were actually CPI customers, *id.* at 201:1–6; and
- whether the people allegedly giving misinformation to CPI customers were affiliated with Vivint, *id.* at 212:6–14.

Nor did Winer do anything to assess the reliability of the statements. *Id.* at 201:22–25. Instead, he applied his ▮▮▮▮ that the statements are true because they are ▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 207:13–209:19.

CPI's counsel also told Winer that 25 additional customers will testify to similar interactions with Vivint representatives. CPI's counsel is Winer's only source of information about this forecasted testimony. *Id.* at 92:3–93:5. Winer did not personally speak with any customers. *Id.* at 31:3–10.

What is more, even though Winer was prevented from testifying on customer confusion in two prior Lanham Act cases (*see* Exhibit 1 at 70:22–71:11, 73:1–74:12), he intends to testify about the state of mind of CPI customers in this case. *Id.* at 243:6–18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ 282:1–6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ He seeks to do so despite the fact that "[t]he reasonableness of conduct and a party's then-existing state of mind are the sort of questions that lay jurors have been answering without expert assistance from time immemorial." *Koenig*, 2020 WL 2308305, at *5.

In sum, Winer's opinion would not only fail to assist the jury as required by Rule 702, but indeed, it would supplant the role of the jury.

### C. Winer proposes damages figures without applying a scientific methodology.

Instead of applying a scientific methodology, Winer offers "assumptions" that fail to connect his damage figure to any reliable data.

Notably, Winer does not quantify the number of CPI customers that were allegedly deceived; he claims the number is ▮▮▮▮ Exhibit 1 at 110:7–111:12. He discusses research showing that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 112:7–15. But he did not apply that percentage to quantify the number of customers that allegedly experienced some type of misrepresentation in this case. *Id.* at 114:8–115:8. Instead, he admits that he does not know what that number is or how to measure it. *Id.* at 115:9–20.

Thus, Winer concedes that he cannot state ▮▮▮▮▮▮▮▮▮▮ that the number of people confused by Vivint's alleged misconduct is ▮▮▮, the number of people he claims must be visited for his remedial information campaign. *Id.* at 116:8–24; Exhibit 2 ¶ 97. Winer admits he did not test this hypothesis (Exhibit 1 at 117:10–16; 118:1–12), nor did he test any other hypothesis he made in this case. *Id.* at 118:23–119:2; *see also Daubert*, 509 U.S. at 593 ("Scientific methodology today is based on generating hypotheses and testing them[.]").

In fact, Winer acknowledges that his analysis is based on assumptions. Exhibit 1 at 119:4–19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Winer describes three separate assumptions he made regarding three groups of people: (1) there is a group of people that were dissatisfied from an interaction with Vivint but ▮▮▮▮▮▮▮▮ (2) there is a group of people that were deceived by an

interaction with Vivint that ▮▮▮ and (3) there is a group of people that were not visited by Vivint but ▮▮▮

▮▮▮

▮▮▮ *Id.* at 119:22–121:21. Winer doesn't know how many people are in each group. *Id.* at 121:23–122:2.

Winer also admits that some of his assumptions are based on nothing more than what he calls ▮▮▮ *Id.* at 129:14–130:21 ▮▮▮

▮▮▮). Such "logic," as described above, is not proper for expert testimony because jurors are capable of their own logic—that is, "common sense" inferences. *See Koenig*, 2020 WL 2308305, at *5 (quoting *Scott*, 789 F.2d at 1055) ("The admission of 'common sense' expert testimony is dangerous because 'the evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense.'").

In fact, Winer admits that many of his assumptions are based on the same common-sense inferences that a jury is fully capable of making or rejecting on its own. Exhibit 1 at 134:13–135:2 ▮▮▮

▮▮▮); 138:17–139:3 ▮▮▮); 157:9–20 ▮▮▮

▮▮▮; 157:25–158:1 ▮▮▮

After all, Winer does not apply his "logic" to any data. Exhibit 1 at 129:25–130:2. And he cannot test it. *Id.* at 130:3–9. He further admits that he could have conducted a survey in support of some of his assumptions, but he did not. *Id.* at 136:8–137:16.

6

In other places, Winer asserts his assumptions are based on his experience as a marketing expert but does not explain how he applied that experience. *See, e.g.*, *id.* at 141:1–4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Nor does he explain what data to which he applied his expertise. *See, e.g.*, *id.* at 141:9–17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Rule 702 does not permit this kind of "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Rather, Rule 702 calls for excluding it when "there is simply too great an analytical gap between the data and the opinion proffered." *Id.*

In sum, Winer applies no scientific methodology to reach his damages figures. His opinion should be excluded under Rule 702.

## II. Winer's opinions conflict with the Lanham Act.

### A. Winer offers a novel opinion with no Lanham Act foundation.

When deciding whether to admit expert testimony, the Court may consider "[w]hether the theory or technique enjoys 'general acceptance' within a 'relevant scientific community.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quoting *Daubert*, 509 U.S. at 594). Corrective advertising is an established means of remedying actual confusion caused by Lanham Act violations. *See, e.g.*, *Irwin Indus. Tool Co. v. Worthington Cylinders Wisconsin, LLC*, 747 F. Supp. 2d 568, 583 (W.D.N.C. 2010); *PODS Enterprises, LLC v. U-Haul Intern., Inc.*, 126 F. Supp. 3d 1263, 1283 (M.D. Fla. 2015).

Winer did not base his opinions on corrective advertising. Exhibit 1 at 94:2–5. Instead, he opines on ███████████████████████████ *Id.* at 94:6–13.

Before this case, Winer had never opined on ███████████████ ████████ *Id.* at 103:14–18. Nor is Winer aware of any other experts that have performed this analysis, *id.* at 105:2–5, nor any court that has ever accepted it. *Id.* at 104:13–25.

In short, Winer's novel opinion lacks a Lanham Act foundation.

### B. Winer proposes compensating for alleged future harm, which the Lanham Act does not allow.

"Corrective-advertising awards, like all [Lanham Act] § 1117(a) awards, are compensatory. If [the plaintiff] did not show a loss for which it needs compensation, it cannot receive a compensatory award." *Illinois Tool Works, Inc. v. Rust-Oleum Corp.*, 955 F.3d 512, 516 (5th Cir. 2020) (vacating corrective advertising award); *see also Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1374 (10th Cir. 1977) ("The purpose of general compensatory damages [including corrective advertising] is to make the plaintiff whole."); *Macia v. Microsoft Corp.*, 335 F. Supp. 2d 507, 521 (D. Vt. 2004), *aff'd*, 164 F. App'x. 17 (2d Cir. 2006) ("Damages are available only to the extent that injury is shown already to have been suffered.")

Winer admits his damage measure goes beyond compensating for alleged past harm. At least part of his remedial information campaign is ████████████ ████████████ that he believes (without any basis) CPI might incur. Exhibit 1 at 292:15–294:19; *id.* at 116:24–117:3 ███████████████████████████ ████████████████████████████████████████████████████████

███████████████████████████████████████████████████; *id.* at 122:9–10 (discussing persons █████████████████████████████████ ██████; 306:11–307:3 (admitting that his damages measure is both forward-looking and backward-looking).

Consequently, Winer's opinion would compensate for alleged future harm, which the Lanham Act does not allow.

### C. Winer's analysis conflicts with the Lanham Act by proposing a remedy without material evidence of actual confusion.

Corrective advertising is not an appropriate remedy in Lanham Act cases without material evidence of actual confusion that requires correction. *See Irwin Indus. Tool*, 747 F. Supp. 2d at 583 (declining corrective award where plaintiff asserted the defendant's advertisements were false, not that they caused any actual public confusion); *Lurzer GMBH v. Am. Showcase, Inc.*, 75 F. Supp. 2d 98, 101 (S.D.N.Y. 1998), *aff'd*, 201 F.3d 431 (2d Cir. 1999) (same).

Nevertheless, Winer testified his analysis would not change if:

- Vivint's representatives misrepresented an affiliation with CPI or made some other type of deceptive statement, Exhibit 1 at 214:3–216:18;

- no CPI customers actually switched from CPI to Vivint, *id.* at 152:1–21 ████████████████████████████████████████████████████████ ██████████████████████████████████████;

- CPI customers called CPI about their interactions with Vivint and were no longer confused after those calls, *id.* at 230:10–231:9 ████████████ █████; or

- call transcripts show that some CPI customers are no longer confused by any alleged misrepresentation by Vivint, *id.* at 233:11–234:17.

Regardless of the presence or absence of actual confusion, Winer opines that

███████████████████████████████████████████████████████████████

███████████████ *Id.* at 233:11–234:17. That opinion is at odds with the Lanham Act.

### D. Winer's opinion is untethered to the alleged conduct at issue.

"Under the Lanham Act, to recover damages for false advertising, a plaintiff must prove both actual damages and a causal link between the defendant's violation and those damages." *PBM Products, Inc. v. Mead Johnson & Co.*, 174 F. Supp. 2d 417, 422 (E.D. Va. 2001).

Winer previously opined in *PODS Enterprises, LLC v. U-Haul Intern., Inc.* that "a corrective advertising campaign should target the same audience that received the 'misimpressions,' using the same media that delivered the misimpressions." 126 F. Supp. 3d at 1283. Winer calculated his award in that case by multiplying the number of misimpressions by three times the cost to create an impression. *Id.*

Here, Winer admits that the correct analysis is to ███████████████ ███████████████████████████████ Exhibit 1 at 66:4–9. In *PODS*, the allegedly deceptive statements were made on webpages, so Winer quantified the misimpressions by counting the number of persons that viewed the offending webpages. *Id.* at 69:7–22, 75:25–76:5. In this case, because the impressions occurred at people's homes, Winer suggests that he can ███████████████████████

██████████████████████████████████████████████

██████████ *Id.* at 76:12–22.

But critically, Winer did not quantify the number of visits to people's homes where a misrepresentation occurred. *Id.* at 76:23–77:14 ███████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████). Nor did Winer determine the ████████████

██████████████████████████████████████████████

██████████████ *Id.* at 79:22–80:3. Nor did Winer quantify the proportion of alleged misrepresentations ████████████████████████████████

████████████████████████████████ *Id.* at 83:1–7. Instead, Winer *assumes* what happened at the unknown number of home visits based on 24 call transcripts given to him by CPI's counsel and CPI's counsel's assertions about 25 customers who may testify at trial. *Id.* at 83:9–22.

Winer then opines in his expert report that the 24 calls depicted in the transcripts ████████████████████████████████████████████

████████████████ Exhibit 2 ¶ 52. Winer's provides two bases for that opinion.

First, CPI's counsel has told him that 25 additional customers will testify at trial to similar interactions. Exhibit 1 at 89:3–25. But there is no scientific basis for this inference. Moreover, the jury can hear testimony and draw its own conclusions.

Second, Winer asserts ████████████████████████████████████████

████████████████████████████████ *Id.* at 89:25–90:3. He then points to prior-acts

evidence, such as ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ and a past FTC investigation. *Id.* at 90:3–10. As discussed in Vivint's motion in limine, this evidence is entirely inappropriate for consideration. *See* Doc. 91. Regardless, Winer ultimately testifies that the 24 call t▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Exhibit 1 at 241:13–242:8.

As these points show, Winer's damage award is unlinked to any conduct by Vivint in *this* case. It should be excluded as contrary to law.

## CONCLUSION

Winer should be excluded from testifying at trial.

Respectfully submitted the 15th day of December, 2021.

| **GREENBERG TAURIG, LLP** | **CLYDE SNOW & SESSIONS, P.C.** |
|---|---|

By: s/ Michael N. Kreitzer
Michael N. Kreitzer
Florida Bar No. 705561
kreitzerm@gtlaw.com
333 S.E. 2nd Avenue, Suite 4400
Miami, FL 33131
Telephone: (305) 579-0500

By: s/ Gregory W. Herbert
Gregory W. Herbert
Florida Bar No. 111510
herbertg@gtlaw.com
Joshua R. Brown
Florida Bar No. 826391
brownjr@gtlaw.com
450 S. Orange Avenue, Suite 650
Orlando, FL 32801
Telephone: (407) 420-1000

**Counsel for Defendants**

By: s/ Matthew A. Steward
Matthew A. Steward
Utah Bar No. 7637
mas@clydesnow.com
Shannon K. Zollinger
Utah Bar No. 12724
skz@clydesnow.com
One Utah Center, 13th Floor
201 South Main Street
Salt Lake City, UT 84111-2216
Telephone: (801) 322-2516

**Counsel for Defendants**

**POYNER SPRUILL LLP**

By: s/ Andrew H. Erteschik
Andrew H. Erteschik
N.C. State Bar No. 35269
aerteschik@poynerspruill.com
John M. Durnovich
N.C. State Bar No. 47715
jdurnovich@poynerspruill.com
N. Cosmo Zinkow
N.C. State Bar No. 53778
nzinkow@poynerspruill.com
P.O. Box 1801
Raleigh, NC 27602-1801
Telephone: (919) 783-2895

**Local Counsel for Defendants**

## **CERTIFICATE OF COMPLIANCE**

I certify that the foregoing document complies with the length requirements set forth in paragraph 3(c)(i) of the Case Management Order (Doc. 35).

This the 15th day of December, 2021.

s/ Andrew H. Erteschik
Andrew H. Erteschik

## CERTIFICATE OF SERVICE

I certify that I have electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of filing to all counsel and parties of record.

This the 15th day of December, 2021.

s/ Andrew H. Erteschik
Andrew H. Erteschik
