UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-CV-00504-FDW-DSC

| | |
|---|---|
| CPI SECURITY SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> VIVINT SMART HOME, INC., <br> f/k/a MOSAIC ACQUISITION CORP.; <br> LEGACY VIVINT SMART HOME, INC. <br> f/k/a VIVINT SMART HOME, INC., <br><br> Defendants. | **[REDACTED]** <br><br> **BRIEF IN SUPPORT OF DEFENDANTS' RULE 702 MOTION TO EXCLUDE TESTIMONY OF RUSSELL MANGUM** |

## INTRODUCTION

As one of its two damages experts, CPI hired Russell Mangum, an economics professor whose testimony has been excluded or limited under Rule 702 by seven other courts in the past decade.[1] Based on a new methodology that Mangum admits he invented for this case, he opines that CPI's damages ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ Exhibit 1 (Mangum Report) ¶ 10.

---

[1] *Sprint Communications Co. LP v. Charter Communications, Inc.*, CV 17-1734-RGA, 2021 WL 982732, at *10 (D. Del. Mar. 16, 2021); *Grasshopper House, LLC v. Clean & Sober Media LLC*, 2:18-CV-00923-SVW-RAO, 2019 WL 12074086, at *3 (C.D. Cal. July 1, 2019); *ADT LLC v. Vivint, Inc.*, No. 17-cv-80432 (S.D. Fla. Nov. 14, 2017), attached as Exhibit 3; *Tawfilis v. Allergan, Inc.*, 8:15-CV-00307-JLS-JCG, 2017 WL 3084275, at *7 (C.D. Cal. June 26, 2017); *McCrary v. Elations Co. LLC*, EDCV 13-0242 JGB (SPx), 2014 WL 12589137, at *13 (C.D. Cal. Dec. 2, 2014); *Fujitsu Ltd. v. Belkin Intern., Inc.*, 10-CV-03972-LHK, 2012 WL 5835741, at *6 (N.D. Cal. Nov. 16, 2012); *ePlus, Inc. v. Lawson Software, Inc.*, 764 F. Supp. 2d 807, 815 (E.D. Va. 2011), *aff'd*, 700 F.3d 509 (Fed. Cir. 2012).

Mangum's opinion should be excluded under Rule 702 for at least two reasons.

First, Mangum's opinion is not reliable. There is simply no evidentiary basis for Mangum's royalty because CPI has never had a trademark licensing program and the parties have never negotiated to license CPI's trademarks—the only circumstances under which a royalty-based damages award is appropriate in Lanham Act cases. Instead, Mangum used unreliable hearsay to invent a new methodology for this case—an approach that falls well short of Rule 702's reliability requirement.

Second, assuming *arguendo* that Mangum's royalty rate is reliable, it should be excluded under Rule 702 because Mangum did not apply it in a reliable way. In Lanham Act cases, any royalty-based damages award must be rationally related to the scope of the trademark infringement. Here, as Mangum admits, he failed to consider the scope of the alleged infringement entirely. This is not Mangum's first time committing this error either. It is precisely why a federal court substantially limited Mangum's testimony a few years ago in a case in which CPI's counsel hired him to testify.

For these reasons, Mangum's testimony should be excluded under Rule 702.

## **GOVERNING STANDARDS**

Rule 702 allows qualified experts to testify only if:

(a)  [their testimony] will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)  the testimony is based on sufficient facts or data;

(c)  the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The rule "imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (*quoting Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)); *Nease v. Ford Motor Co.*, 848 F.3d 219, 229, 231, 234 (4th Cir. 2017) (describing "a district court's gatekeeping responsibility").

CPI has the burden of satisfying Rule 702 by presenting evidence "from which the court can determine that [Mangum's] testimony [is] properly admissible." *McEwen v. Baltimore Washington Med. Ctr. Inc.*, 404 F. App'x 789, 792 (4th Cir. 2010).

For the reasons that follow, CPI cannot meet that burden.

## ARGUMENT

### I. Mangum's testimony is not reliable and would not be helpful to the jury.

Rule 702 allows experts to testify only if their testimony is reliable—that is, if their testimony "is based on sufficient facts or data" and "is the product of reliable principles and methods." Fed. R. Evid. 702(b), (c). The Rule also requires that the testimony must be helpful to the jury—that is, sufficient to "help the trier of fact to . . . determine a fact in issue." Fed. R. Evid. 702(a).

3

CPI cannot meet its burden of satisfying these requirements because Mangum's royalty has no evidentiary basis and, to sidestep this failing, he relied on unreliable hearsay to invent a new methodology.

### A. Mangum's royalty has no evidentiary basis.

A "reasonable royalty" is a statutory remedy in patent infringement cases. *See* 35 U.S.C. § 284. Some courts have sustained royalty damages in Lanham Act cases, but only under narrow circumstances where: (1) the plaintiff had an established trademark licensing program or history of trademark licensing with the defendant or third parties; or (2) there was evidence of prior trademark licensing negotiations between the parties. *See A&H Sportswear Co., Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 208–209 (3d Cir. 1999); *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 950, 963 (7th Cir. 1992); *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1519 (11th Cir. 1990); *Boston Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 597 F.2d 71, 75–76 (5th Cir. 1979); *ADT & ADT US Holdings, Inc. v. Alarm Prot. LLC*, No. 9:15-cv-80073, 2017 WL 2212541, at *4 (S.D. Fla. May 17, 2017); *see also QS Wholesale, Inc. v. World Mktg., Inc.*, No. 12-cv-0451, 2013 WL 1953719, at *4 (C.D. Cal. May 9, 2013).

This Court's decision in *Clear Blue, Inc. v. Clear!Blue, Inc.*, No. 3:07-cv-00339-W, 2008 WL 5232897, at *5 (W.D.N.C. Dec. 12, 2008) (Whitney, J.), is illustrative. There, the defendant sought a new trial arguing that "the jury's royalty award was purely speculative and not permitted as a matter of law because there was no previous licensing arrangement between the parties or between [the] Plaintiff and a

4

third party." *Id*. at *3. The Court denied the motion because the plaintiff "presented evidence through the testimony of its owner . . . that in 2003, Plaintiff proposed the possibility of granting Defendant a license in exchange for a royalty payment in whatever arrangement Defendant might consider." *Id*. at *5.

Here, in stark contrast, Mangum's royalty has no support because CPI has never had a trademark licensing program, and these parties have never previously discussed the possibility of Vivint licensing CPI's trademarks. *See* Exhibit 2 (Mangum Dep. Tr.) at 182:10–14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ CPI's corporate representative also confirmed that CPI has never licensed—or even sought a valuation of—any trademark, logo, or other intellectual property. Exhibit 4 (Schachner Dep. Tr.) at 119:17–122:8. Thus, a royalty is wholly improper as a measure of damages.

Mangum all but admits as much. He acknowledges that no one has ever attempted to propose a royalty ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ Exhibit 2 at 302:5–15.

For this reason alone, Mangum's opinion is unreliable and should be excluded under Rule 702.

### B. Mangum invented a new methodology based on unreliable hearsay.

Conceding that a royalty without any evidence of a dealer program is unprecedented, Mangum admits to having ▮▮▮▮▮▮▮ (i.e., invented) a new methodology, not peer reviewed, which he calls his ▮▮▮▮▮▮▮▮▮▮▮▮

5

Exhibit 2 at 297:2–20. Mangum acknowledges that no court has accepted this methodology before.[2]

Mangum's made-up methodology cannot satisfy Rule 702's reliability requirement. After all, reliability is assessed by looking at whether a "theory or technique . . . can be (and has been) tested," "whether it 'has been subjected to peer review and publication,'" and "whether the theory or technique enjoys 'general acceptance' within a 'relevant scientific community.'" *Kumho Tire*, 526 U.S. at 149–50 (quoting *Daubert*, 509 U.S. at 592–94). Mangum's methodology necessarily fails each of these tests because it was newly invented for this case.

The Eastern District dealt with a similar situation in *Lumber Liquidators, Inc. v. Stone Mountain Carpet Mills, Inc.*, No. 3:08-cv-573, 2009 WL 5876245, at *2 (E.D. Va. July 23, 2009). There, the plaintiff's damages expert admitted that "'[b]ecause [the plaintiff] does not license its trademarks or trade dress to third parties . . . and because the parties did not have a prior relationship or licensing agreement,'" he could not apply a traditionally proven methodology. *Id.* at *2 (E.D. Va. July 23, 2009). So instead, "[i]n the absence of licensing information," the expert created "a novel methodology." *Id at* *3.

The Eastern District held that this methodology was not reliable because "the record lacks evidence that [the method] is generally accepted by accountants or

---

[2] The only other use of this theory is by Mangum's co-worker in a different case also brought by CPI's lawyers. That case is still in its pretrial stages and there has been no ruling as to the admissibility of the damage theory. Exhibit 2 at 303:10–304:4, 305:2–4.

6

economists"; neither the expert nor the court found "any other patent or trademark case using [the method]." *Id.* at *3. Instead, this was "the first time [the expert] applied [the method] in a trademark infringement suit, and he has never seen any other damages expert apply [the method]." *Id.*

For all of those same reasons here, Mangum's testimony based on "a novel methodology" should be excluded. *Id.*

But the flaws in Mangum's unreliable methodology do not end there.

Further compounding the flaws described above, Mangum ▮▮▮▮ his new methodology from general industry data, rather than particular license agreements subject to reliability testing. Exhibit 2 at 12:8–19 ▮▮▮▮



▮▮▮▮); 98:21–99:13 ▮▮▮▮

▮▮▮▮); 237:16–19 ▮▮▮▮

▮▮▮▮); 298:1–300:22 ▮▮▮▮).

Moreover, as Mangum admits, none of the industry data that Mangum relied on is specific to CPI. *Id.* at 332:7–16.

Courts have excluded similar opinions in patent cases. *See, e.g., Joyce v. Armstrong Teasdale, LLP*, 4:08-CV-1390-CEJ, 2012 WL 3541825, at *3 (E.D. Mo. Aug. 15, 2012) (royalty rates used by expert were "so fundamentally unsupported that

7

[they] offer no assistance to the jury" where they were "based solely [on] several published sources that estimated the industry average for the entire computer software industry" and expert did not "link certain licenses to the patent at issue"); *IP Innovation L.L.C. v. Red Hat, Inc.*, 705 F. Supp. 2d 687, 690–91 (E.D. Tex. 2010) ("[L]icenses are far more relevant than the general market studies on which [expert] primarily relied in his expert report.").

Furthermore, the general industry data that Mangum relies on primarily comes from two industry reports whose authors CPI has not disclosed as testifying experts or witnesses—i.e., individuals who will not testify at trial.[3] *See* Exhibit 1, Appendix B. Although experts can rely on hearsay evidence, it must be evidence "reasonably relied on by other experts in the field as required by Fed. R. Evid. 703." *Perry v. Scruggs*, 17 F. App'x 81, 87 (4th Cir. 2001). CPI cannot satisfy this requirement because, again, the only other expert who used this type of data is Mangum's co-worker who was hired by CPI's counsel. Exhibit 2 at 240:11–241:8.

Finally, Mangum's newly invented methodology suffers from additional flaws that make it unreliable. As one indicator of unreliability, there are key portions of Mangum's analysis that cannot be discerned from his report. *See Peters-Martin v. Navistar Intern. Transp. Corp.*, 410 F. App'x 612, 618, 623 (4th Cir. 2011) ("[T]he district court must . . . require an experiential witness to 'explain how [his] experience leads to the conclusion reached [and] why [his] experience is a sufficient basis for the

---

[3] Mangum does not know if these two individuals reviewed any particular dealer agreements; he didn't ask them. Exhibit 2 at 249:19–250:6.

opinion."). For example, Mangum claims his methodology is based on principles used by economists, but he does not explain how; instead, he suggests one should simply ▮▮▮▮▮▮▮▮▮▮ Exhibit 2 at 283:7–284:2. Mangum's report also fails to explain how he reached certain conclusions. For example, Mangum uses a ▮▮▮▮▮ for monthly recurring revenue. *Id.* at 331:18–22. Yet he fails to explain how he reached that number such that his results could be replicated. *Id.* at 333:10–335:4.

Similarly, Mangum's report is unreliable because it fails to account for any "alternative explanations." *Peters-Martin*, 410 F. App'x at 623. For example, Mangum admits that he did not analyze what factors contributed to CPI's attrition ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Exhibit 2 at 309:13–17. Thus, Mangum fails to consider the possibility that CPI customers left CPI for reasons other than Vivint's alleged misconduct—for example, the controversial comments by CPI's President and CEO. *Id.* at 316:20–317:3. Without accounting for such alternative causes, Mangum's analysis is not "rationally related to the scope of the defendant's infringement" and, therefore, unreliable for this reason as well. *Variety Stores, Inc v. Wal-Mart, Inc*, 5:14-cv-217-BO, 2019 WL 11638969, at *7 (E.D.N.C. May 6, 2019), *vacated in part sub nom.*, 852 F. App'x 711 (4th Cir. 2021).

In sum, Mangum's royalty opinion is unreliable because it lacks any evidentiary basis and, instead, is a newly invented methodology based on unreliable hearsay. Such unreliable testimony cannot satisfy Rule 702, and, therefore, should be excluded.

II. **Even assuming *arguendo* that Mangum's methodology is reliable, his testimony should be excluded under Rule 702 because it was not applied in a reliable way—the same reason it was substantially limited in another case.**

Rule 702 not only requires that a methodology be reliable, but also that it is "reliably applied . . . to the facts of the case." Fed. R. Evid. 702(d)); *Trana Discovery, Inc. v. S. Research Inst.*, 915 F.3d 249, 255 (4th Cir. 2019) ("An expert must offer an opinion that fits the case at hand, not some other, hypothetical case, and a damages model that simply ignores key evidence veers into speculation.").

In Lanham Act cases, any "royalty-based damages award must be rationally related to the scope of the defendant's infringement.'" *Variety Stores,* 2019 WL 11638969, at *7 (quoting *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 461 (5th Cir. 2017)); *Lumber Liquidators,* 2009 WL 5876245, at *2; *see also Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1252 (11th Cir. 2007) (Lanham Act plaintiff failed to establish actual damages where the plaintiff's expert "failed to 'separate out' the claimed damages that were actually attributable to" the defendant's alleged misconduct).

Mangum admits that he failed to consider the scope of the trademark rights allegedly misappropriated in this case. Exhibit 2 at 151:22–153:10 ▮▮▮▮ 163:8–13 ▮▮▮▮ ); 164:3–10 ▮▮▮▮ 265:5–11 ▮▮▮▮ In fact, Mangum was not even familiar with the intellectual property at issue or the particular wrongful conduct that CPI alleges. *Id.* at 192:2–10 (did not rely on understanding of what intellectual

10

property CPI claims Vivint used ▮▮▮▮▮▮"); 226:18–227:4 (particular intellectual property allegedly used by Vivint not relevant); 258:11–260:16 ▮▮▮▮▮▮▮▮▮▮).[4] In short, Mangum's methodology is not "reliably applied . . . to the facts of the case." Fed. R. Evid. 702(d)).

This basic flaw is the reason that the Southern District of Florida substantially excluded key elements of Mangum's testimony a few years ago. *See* Exhibit 3. In that case, ADT brought a Lanham Act claim against Vivint. Mangum advocated for a royalty based on ADT's established dealer program, but in doing so, he opined as to a royalty *rate*[5] and failed to opine as to a royalty *base*—a calculation that takes into account the selected value of the intellectual property allegedly infringed upon and is the foundation on which a royalty calculation is built. *Id.* at 5. Thus, the court precluded Mangum from testifying "that the royalty rate should be applied to Vivint's revenue that are not actually attributable to Vivint's alleged misconduct." *Id.* at 6.

Mangum's opinion in this case suffers from the same flaw. *See* Exhibit 2 at 142:24–143:2 ▮▮▮▮▮▮▮▮▮▮); 140:18–141:4 ▮▮▮▮▮▮▮▮▮▮). Thus, as in the *ADT* case, Mangum should be prevented

---

[4] CPI's corporate representative further admitted that CPI has not undertaken any analysis to value the allegedly canceled accounts. Exhibit 4 at 66:1–12.

[5] The Court held that "Mangum may testify as to an appropriate royalty rate applicable to ADT's claims for a forced royalty" because unlike CPI in this case, ADT had a dealer program that arguably provided some evidentiary basis for a royalty rate. Exhibit 3 at 6.

from testifying as to an appropriate royalty base or suggesting that it would be appropriate to apply a royalty rate to revenue earned by Vivint that is not related to any alleged misconduct.[6] *See* Exhibit 3; *Variety Stores*, 2019 WL 11638969, at *7.

## **CONCLUSION**

Mangum's testimony should be excluded under Rule 702.

---

[6] At a minimum, Mangum should not be permitted to opine on a royalty base or a dollar figure for damages because he did not include those opinions in his report. *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (expert reports must contain "a complete statement of all opinions the witness will express and the basis and reasons for them").

Respectfully submitted the 15th day of December, 2021.

|  |  |
|---|---|
| **GREENBERG TAURIG, LLP** | **CLYDE SNOW & SESSIONS, P.C.** |
| By: s/ Michael N. Kreitzer<br>Michael N. Kreitzer<br>Florida Bar No. 705561<br>kreitzerm@gtlaw.com<br>333 S.E. 2nd Avenue, Suite 4400<br>Miami, FL 33131<br>Telephone: (305) 579-0500 | By: s/ Matthew A. Steward<br>Matthew A. Steward<br>Utah Bar No. 7637<br>mas@clydesnow.com<br>Shannon K. Zollinger<br>Utah Bar No. 12724<br>skz@clydesnow.com<br>One Utah Center, 13th Floor<br>201 South Main Street<br>Salt Lake City, UT 84111-2216<br>Telephone: (801) 322-2516 |
| By: s/ Gregory W. Herbert<br>Gregory W. Herbert<br>Florida Bar No. 111510<br>herbertg@gtlaw.com<br>Joshua R. Brown<br>Florida Bar No. 826391<br>brownjr@gtlaw.com<br>450 S. Orange Avenue, Suite 650<br>Orlando, FL 32801<br>Telephone: (407) 420-1000 | **Counsel for Defendants** |
|  | **POYNER SPRUILL LLP** |
| **Counsel for Defendants** | By: s/ Andrew H. Erteschik<br>Andrew H. Erteschik<br>N.C. State Bar No. 35269<br>aerteschik@poynerspruill.com<br>John M. Durnovich<br>N.C. State Bar No. 47715<br>jdurnovich@poynerspruill.com<br>N. Cosmo Zinkow<br>N.C. State Bar No. 53778<br>nzinkow@poynerspruill.com<br>P.O. Box 1801<br>Raleigh, NC 27602-1801<br>Telephone: (919) 783-2895 |
|  | **Local Counsel for Defendants** |

## **CERTIFICATE OF COMPLIANCE**

I certify that the foregoing document complies with the length requirements set forth in paragraph 3(c)(i) of the Case Management Order (Doc. 35).

This the 15th day of December, 2021.

s/ Andrew H. Erteschik<br>
Andrew H. Erteschik

# **CERTIFICATE OF SERVICE**

I certify that I have electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of filing to all counsel and parties of record.

This the 15th day of December, 2021.

s/ Andrew H. Erteschik
Andrew H. Erteschik
