UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-00504-FDW-DSC

CPI SECURITY SYSTEMS, INC.,

              Plaintiff,

v.

VIVINT SMART HOME, INC. f/k/a
Mosaic Acquisition Corp.; and LEGACY
VIVINT SMART HOME, INC. f/k/a
Vivint Smart Home, Inc.,

              Defendants.

**PLAINTIFF CPI SECURITY SYSTEMS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE IRRELEVANT AND INFLAMMATORY RACE-RELATED EVIDENCE AT TRIAL**

I.    **INTRODUCTION**

Plaintiff CPI Security Systems, Inc. ("CPI") sued Defendants Vivint Smart Home, Inc. f/k/a Mosaic Acquisition Corp. and Legacy Vivint Smart Home, Inc. f/k/a Vivint Smart Home, Inc. (collectively, "Vivint") because, for many years, Vivint sales representatives—including leaders and sales managers—have engaged in a pattern of deceptive sales practices on the doorsteps and in the homes of CPI customers. These deceptive practices include lying that Vivint is affiliated with CPI; deceiving customers that Vivint will "buy out" the contract with a customer's prior alarm provider then failing to do so after the customer is locked into a contract with Vivint; and lying about whether the customer is entering a service contract that includes a third-party loan. These practices, and a wide variety of other deceptive acts, are well documented in twelve state AG actions against Vivint over the years, and two recent DOJ/FTC actions that collectively settled for $23 million based on the conduct of

1

Vivint's sales force. *See United States of America v. Vivint Smart Home, Inc.*, Case No. 2:21-cv-00267-DAK (Doc. 81-1, Pl.'s Tr. Ex. P230). Indeed, the evidence will show Vivint trained and condoned this behavior for many years. *See, e.g.*, Statement of Comm'r R. Chopra, *In re Vivint Smart Home*, Comm'n File No. 192 3060 (FTC Apr. 29, 2021) ("I also believe that Vivint turned a blind eye to obvious compliance failures by its sales force, which violated the FTC Act's prohibition on unfair practices.") (Doc. 81-1, Pl.'s Tr. Ex. P778).

To distract the jury from the conduct actually at issue in this unfair competition case, it has become apparent that Vivint intends to focus on a comment made by CPI's CEO, Ken Gill, in a 2020 private email response to a former employee and community activist, which led to significant media attention, and a recently-filed employment discrimination lawsuit. To that end, Vivint apparently seeks to introduce numerous exhibits and elicit extensive testimony related to: (1) Gill's private email to Jorge Millares, the leader of non-profit Queen City Unity, regarding the Charlotte-Mecklenburg Police Department ("CMPD"), and the related fallout after Millares made that email public; (2) a wholly-unrelated employment discrimination lawsuit by former CPI employee, Kelley Phelps; and (3) other unsubstantiated allegations related to CPI's employment and operational practices related to issues of race. This evidence is irrelevant, extremely prejudicial, and has the clear objective of confusing and inflaming the jury by impermissibly interjecting issues of race into this commercial dispute. CPI moves *in limine* to exclude any evidence, comment, reference, or testimony on these issues, as outlined further below.

## II. BACKGROUND ON THE CLAIMS AT ISSUE

This case is about Vivint's long history of deceptive sales practices. For years dating back to at least September 2016 in this case, Vivint has deployed a salesforce, well-versed in in a variety of deceptive sales practices, to CPI's customers' doors. Vivint's deceptions take many forms, including tricking CPI customers into believing (1) the Vivint agent is there to simply "update" or "upgrade" the CPI customer's equipment, when in reality the agent replaces CPI's equipment and services for those provided by Vivint; (2) CPI has been bought out or is going out of business and Vivint is taking over CPI's accounts; and (3) Vivint is a subcontractor, installer, or is otherwise affiliated with or acting on behalf of CPI. *See* Doc. 29 ¶¶ 1-2.

These deceitful tactics have created a toxic marketplace that damages CPI's brand, revenue, reputation, and customer base, among other aspects of CPI's business. CPI's customers leave (oftentimes unknown to CPI) with any number of false impressions in their minds, planted there by Vivint, such as: CPI is no longer in business; CPI has antiquated equipment, vulnerable to thieves; or CPI's services expose the customer to unwanted scams like Vivint's. Given the false claims of affiliation, CPI's customers can and do blame CPI for Vivint's swindling conduct, further damaging CPI's reputation and goodwill.

## III. ARGUMENT

### A. THE COURT HAS SIGNIFICANT DISCRETION TO EXCLUDE EVIDENCE.

The Court has "broad discretion to manage jury trials," which necessarily includes making evidentiary rulings, through motions *in limine*, before trial. *See Lord & Taylor, LLC v. White Flint, L.P.*, 849 F.3d 567, 572 (4th Cir. 2017); *see also* Fed. R.

104. In considering evidence at trial, only relevant evidence is admissible. *See* Fed. R. Evid. 402. Evidence is relevant where it "has any tendency to make a fact more or less probable than it would without the evidence" and the evidence "is of consequence to the determination of the action." Fed. R. Evid. 401. Evidence must be relevant to be admitted. Fed. R. Evid. 402. "Relevancy exists only as a relationship between an item of evidence and a matter properly provable in a case." *Norton v. Rosier*, No. 7:14-CV-00260-FL, 2019 WL 346709, at *1 (E.D.N.C. Jan. 28, 2019) (quoting Fed. R. Civ. Proc. 402, Advisory Committee Note).

Even relevant evidence can be excluded where the evidence's "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Evidence is unfairly prejudicial and thus should be excluded under Rule 403 when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence." *US v. Williams*, 445 F.3d 724, 730 (4th Cir. 2006).

Although this case is about Vivint's longstanding deceptive business practices that harm competitors like CPI and its customers, Vivint wants to make this case about race and employee relations at CPI. Because these issues are not relevant to this commercial dispute, and because any scant probative value they may carry is substantially outweighed by the danger of unfair prejudice, the Court should preclude all such evidence at trial.

B. **VIVINT SHOULD NOT BE PERMITTED TO INTRODUCE EVIDENCE OR ELICIT TESTIMONY REGARDING GILL'S COMMENTS IN A JUNE 2020 PRIVATE EMAIL RELATING TO THE CMPD, OR THE RELATED FALLOUT.**

Shortly after George Floyd's tragic death, Charlotte resident and activist Jorge Millares sent a mass email to recipients of Queen City Unity's list-serve, expressing the organization's position regarding the CMPD and its response to BLM protests. Gill, a staunch supporter of the CMPD, responded to that email and in particular to assertions made against CMPD by Millares, which Millares then shared with the media, setting off a significant wave of local media attention.

In his response, Gill took issue with Millares' assertion that the CMPD had a "long history of racial profiling, targeting black and brown communities, and utilizing excessive use of force, and the murder of unarmed and cooperative people of color." Gill's response email[1] stated:

> Please spend your time in a more productive way. I challenge your statistics. A better use of time, [sic] would be to focus on the black on black crime and senseless killing of our young men by other young men.

After his private email was made public, Gill apologized for his remarks and reaffirmed that both CPI and Gill personally stood against racism and discrimination of any kind.

Vivint has referenced the Gill email and ensuing "controversy" repeatedly in depositions in this case, undoubtedly hoping to leverage a highly sensitive societal issue to inflame witnesses and jurors, and to remove the focus from Vivint's years of

---

[1] A copy of Gill's response email and the original message from Queen City Unity/ Jorge Millares is attached as **Ex. A** hereto.

misconduct. CPI also anticipates Vivint will advocate through witnesses, and in opening and closing arguments, that Gill and CPI are "racist."[2] The Court should preclude this evidence, argument and innuendo.

1. **The evidence is irrelevant.**

Gill's email response and the attention that surrounded it have no bearing on the merits of the issues or defenses presented in CPI's unfair competition case. CPI anticipates Vivint will generally reference CPI's asserted damages and argue, without more, this information is someone how relevant to assessing damages for Vivint's conduct against CPI's customers, including the damage to CPI's brand and goodwill. But the issue is a complete red-herring and has no bearing on CPI's damages related to Vivint's conduct. CPI has and will present evidence of the damages it sustained as a direct result of Vivint's false and misleading sales practices, of which there are many, and which have nothing to do with Gill's 2020 email or the related "controversy" that ensued.

Vivint has attempted to create overlap between its 5+ years of bad conduct with a limited period of bad publicity caused by Gill's email in the summer of 2020. However, there is no overlap and the two issues are distinct—even if both caused some sort of harm to CPI.[3] CPI's damage claims isolate Vivint's deceptive conduct and clearly identify how *those* specific predatory practices have damaged CPI. CPI has

---

[2] Vivint has listed several exhibits on its exhibit list relating to this issue, including: Exs. 37, 67, and 96-105 (various news articles).

[3] CPI acknowledges it experienced some loss of accounts and negative publicity following the BLM protests in June 2020. But, again, those issues are unrelated to the damages CPI asserts against Vivint related to its deceptive sales conduct.

designated an expert to provide additional testimony on those damages, and who, in response to questions from Vivint's counsel at his deposition, explained how such damages are wholly unrelated from any impact CPI may have experienced because of Gill's email. (Vivint has designated its own rebuttal expert on these issues, too.) This is the evidence properly before the Court on CPI's damages in this case; not generic references to an email from Gill, dozens of news stories following its publication, and speculation as to how such things may have harmed CPI. Accordingly, CPI requests the Court exclude any evidence of, reference to, or testimony regarding Gill's email, the BLM protests or movement, or the ensuing "controversy" following Gill's email, under Rule 402 of the Federal Rules of Evidence.

### 2. The evidence is highly prejudicial and inflammatory.

Even assuming Gill's email and the related fallout had some marginal relevance to the issue of brand damage, the probative value is, without question, substantially outweighed by its prejudicial effect. *See* Fed. R. Evid. 403. Floyd's tragic death and the months of protests created an understandably visceral reaction throughout the country and also deepened already fraught political divides. And labeling a person, company, or conduct as "racist" creates an instant, inerasable impression in a juror. Those impressions and reactions, and their potential to pervade the jurors' objectivity and overcome the salient issues in this case, are the *precise* type of prejudice Rule 403 contemplates. There is simply no legitimate reason to interject such a polarizing issue into a commercial trial between business competitors. *See McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 999 (4th Cir. 2020) ("The Supreme

Court has long made clear that statements that are capable of inflaming jurors' racial or ethnic prejudices degrade the administration of justice.").

Courts regularly exclude this type of evidence. For example, in *In re Peanut Farmers Antitrust Litigation*, the defendant sought to introduce evidence of the plaintiffs' racial identity in a lawsuit about price fixing. No. 2:19CV463, 2021 WL 1140917, at *3 (E.D. Va. Feb. 23, 2021). The plaintiffs moved *in limine* to exclude the evidence, arguing "it would create a side issue on the subject of race totally unrelated to any of the claims or defenses in" the litigation. *Id.* The court agreed, excluding the evidence because it was "fraught with the potential to create such a distracting side issue that it would create a danger to unfairly prejudice Plaintiffs, confuse the issues, mislead the jury, unduly delay the proceedings, and waste time in violation of Rule 403." *Id.*; *accord McKiver*, 980 F.3d at 998, 999, 1001 (finding the district court committed reversible error in a nuisance action by allowing plaintiffs to introduce evidence that defendant was a Chinese corporation, where the evidence "was largely irrelevant" and "create[d] an unacceptable risk that the jury's verdict would be based on anti-China bias"); *Smithfield Foods, Inc. v. United Food & Commercial Workers Int'l Union*, No. 3:07CV641, 2008 WL 4610305, at *1, *2 (E.D. Va. Oct. 14, 2008) (granting plaintiffs' motion *in limine* to exclude newspaper articles regarding racial tensions at plaintiffs' plant, because the article was "highly inflammatory" and "would inevitably serve to inflame the passions of the jury against Smithfield").

If Vivint is allowed to present *any* of this evidence to the jury, the bell cannot be "unrung." The evidence would also create a "trial within a trial" and set up a

sideshow about emotionally charged issues that are unrelated to the claims in this case. *See Fry v. Rand Constr. Corp.*, No. 1:17-cv-0878, 2018 WL 10435251, at *2 (E.D. Va. Apr. 20, 2018) (excluding evidence where it "threaten[ed] to confuse the issues for the jury and unnecessarily lengthen th[e] case by creating a 'trial within a trial'"); *accord McKiver*, 980 F.3d at 1001 (chastising the district court for allowing evidence of defendant's Chinese ownership "without curtailing Plaintiffs' xenophobic rhetoric," which resulted in sanctioning defendant for anti-Chinese bias). The Court has already indicated its desire to keep this trial streamlined; permitting this evidence will only lengthen trial, requiring CPI to put on additional witnesses and evidence to rebut these incendiary allegations. In addition to its irrelevance, the Court should also exercise its discretion to exclude this evidence under Rule 403.

### C. THE COURT SHOULD ALSO PRECLUDE EVIDENCE AND TESTIMONY REGARDING PHELPS' EMPLOYMENT-DISCRIMINATION LAWSUIT AND CPI'S ALLEGED RACE-RELATED EMPLOYMENT PRACTICES.

CPI also anticipates Vivint will attempt to introduce evidence of, elicit testimony on, or otherwise refer to an employment discrimination lawsuit recently filed by former CPI employee, Kelley Phelps. Further, CPI expects Vivint will attempt to introduce evidence regarding CPI's employment and operational practices, which CPI anticipates Vivint will label as discriminatory or "racist." None of this "evidence" is germane to any matter that is properly before and provable in this unfair competition lawsuit and must also be excluded.

### 1. The Court should exclude evidence of, reference to, or testimony regarding Phelps' employment discrimination lawsuit.

On November 17, 2021, Phelps, a former CPI employee, filed an employment discrimination lawsuit against CPI and Gill in North Carolina state court, alleging racial discrimination in violation of Title VII of the Civil Rights Act.[4] Even a cursory review of the complaint, chronicling Phelps' career and alleged internal treatment at CPI, reveals that the allegations have no relevance to any matter at issue in CPI's unfair competition case. *See Norton*, 2019 WL 346709, at *4 (excluding other lawsuits, filed by plaintiff against defendant, were none of them were "similar in claims brought or facts alleged").

Even if there was any slight relevance in Phelps' lawsuit to this case, the probative value is, again, demonstrably outweighed by the extremely prejudicial nature of the evidence. It is a near certainty that such evidence will mislead and confuse the jury in this case, who will be charged to hear an unfair competition case, not a race-discrimination employment case. Finally, allowing Vivint to even mention such evidence will, again, impermissibly result in a "trial within a trial," wasting the resources of the Court, the parties, and the jury, and requiring CPI to put on a considerable amount of evidence to rebut such allegations. *See id.*

---

[4] Phelps' state court complaint is listed as Defense Exhibit 38. A copy is attached as **Ex. B** hereto for reference.

## 2. Any evidence or testimony regarding CPI's alleged discriminatory operational practices must also be excluded.

During depositions in this case, Vivint has tried to elicit testimony regarding CPI's business practices that it alludes to as racist or discriminatory, and most of which are unsubstantiated, speculative, and based on hearsay. For example, at several depositions, Vivint's counsel spent time questioning witnesses in this case about whether CPI customers had ever requested CPI send a sales rep or technician of a certain race to their home and whether CPI ever acquiesced to such a request.[5]

This unsubstantiated "evidence" and innuendo regarding allegedly discriminatory practices has no relevance to any matter in dispute and should be excluded. *See* Fed. R. Evid. 402, 403. Furthermore, the testimony elicited by Vivint during discovery is based on hearsay, lacks foundation, and is outside the perception of the witness.[6] Rules 601, 701, and 801 of the Federal Rules of Evidence also bar the introduction of such evidence.

Finally, the limited value of any such evidence again is irrefutably outweighed by its prejudicial effect. Interjecting any racial discrimination component into this unfair competition case risks distracting the jury from all other evidence or issues

---

[5] Vivint asked these questions in the depositions of Jorge Millares (8:21-12:3, 44:4-52:7) and John Shocknesse (77:18-91:4). Excerpts of these depositions are attached as **Exs. C** and **D** hereto.

[6] *See, e.g.*, **Ex. C**, Millares Dep. at 11:12-18 (Millares testifying regarding discrimination allegations from another employee, stating "I didn't witness it. . . . It doesn't take away from the fact that it may have happened, but I just personally didn't witness it.").

11

properly before it in this case. *See McKiver*, 980 F.3d at 1001; *In re Peanut Farmers Antitrust Litig.*, 2021 WL 1140917, at *3.

## IV. CONCLUSION

For the reasons discussed above, CPI respectfully moves this Court to grant its Motion *in Limine* and for any additional relief it deems just and proper.[7]

### CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

In accordance with section 3.c.i. and 4.d. of the Case Management Order (Doc. No. 35), CPI certifies that the text of the above motion consists of 2,968 words (excluding the caption and signature block, but including footnotes).

Dated: December 15, 2021　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　**SHOOK, HARDY & BACON L.L.P.**

　　　　　　　　　　　　　　By:　/s/ *Caroline M. Gieser*
　　　　　　　　　　　　　　　　　North Carolina Bar No. 51610
　　　　　　　　　　　　　　　　　cgieser@shb.com
　　　　　　　　　　　　　　　　　1230 Peachtree Street, Suite 1200
　　　　　　　　　　　　　　　　　Atlanta, Georgia 30309
　　　　　　　　　　　　　　　　　(470) 867-6013

　　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　　　　/s/ *Charles C. Eblen*
　　　　　　　　　　　　　　　　　Charles C. Eblen (Admitted *Pro Hac Vice*)
　　　　　　　　　　　　　　　　　Missouri Bar No. 55166
　　　　　　　　　　　　　　　　　ceblen@shb.com
　　　　　　　　　　　　　　　　　Erin M. Fishman (Admitted *Pro Hac Vice*)

---

[7] CPI notes that if the Court permits any of the evidence CPI seeks to exclude in this motion, CPI intends to make Vivint's sales conduct mischaracterizing and proliferating misinformation relating to the Gill email a basis of liability under CPI's common law unfair competition, tortious interference and NC UDTPA claims. If, however, the Court excludes such evidence as requested by this motion, CPI will not cite such conduct as an additional basis of liability or damages on these claims.

Missouri Bar No. 69842
efishman@shb.com
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, Missouri 64108-2613
(816) 474-6550

-and-

/s/ *Eric J. Hobbs*
Eric J. Hobbs (Admitted *Pro Hac Vice*))
Colorado Bar No. 46813
ehobbs@shb.com
Daniel E. Rohner (Admitted *Pro Hac Vice*)
Colorado Bar No. 27469
drohner@shb.com
SHOOK, HARDY & BACON L.L.P.
1660 17th Street, Suite 450
Denver, Colorado 80202
(303) 285-5300

*Counsel for Plaintiff*
*CPI Security Systems, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on the 15th day of December, 2021, I have electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of filing to all counsel and parties of record.

/s/ <u>*Caroline M. Gieser*</u>