UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-00504-FDW-DSC

| | |
|---|---|
| CPI SECURITY SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> VIVINT SMART HOME, INC. f/k/a Mosaic Acquisition Corp.; and LEGACY VIVINT SMART HOME, INC. f/k/a Vivint Smart Home, Inc., <br><br> Defendants. | **PLAINTIFF CPI SECURITY SYSTEMS, INC.'S MEMORANDUM IN OPPOSITION TO VIVINT'S MOTION *IN LIMINE* TO EXCLUDE UNDEFINED "HEARSAY" EVIDENCE RELATED TO CPI'S DAMAGES [DOCS 92-93]** |

**INTRODUCTION**

In all of its motions *in limine*, Vivint reveals an exceedingly myopic and incorrect interpretation of what evidence is admissible to establish liability and damages in CPI's unfair competition case. In its pretrial filings, CPI has identified over 780 trial exhibits and 40+ witnesses establishing the extensive scope of Vivint's conduct and the damages CPI has suffered because of Vivint's years-long use of deceptive and predatory sales practices to convert CPI's customers. In this motion, Vivint asks the Court to exclude a broad, undefined category of evidence related to CPI's damages—namely, *any* evidence outside of witness testimony at trial (presumably meaning the voluminous evidence of consumer complaints to Vivint and other entities about its practices). Despite the sweeping nature of the requested relief, however, Vivint fails to identify a single exhibit or a single line of deposition testimony that it seeks to exclude by such a broad request.

1

Vivint's litigation approach is another extension of its approach to sales. Vivint steals accounts by whatever means available, and then uses everything in its arsenal to make it as hard as possible for Vivint to face accountability for its actions—blaming the customer, objecting that the evidence of the incident is all "hearsay," or insisting it was all just a "misunderstanding." In Vivint's skewed view, it believes every customer subject to Vivint's predatory conduct must take time out of their schedules, travel to Charlotte, and provide in-person testimony on how Vivint entered their homes based on false pretenses and stole their accounts for CPI to prove its case. Vivint asks the Court to impose additional, unwarranted evidentiary hurdles notwithstanding the fact that, in many instances, Vivint's own records confirm the conduct of its sales representative was deceptive and misleading based on Vivint's own investigation and classification of the incident.

The Court should deny Vivint's motion based on its extreme generality and its failure to identify which evidence it actually seeks to exclude. Instead, the Court should address the evidence of CPI's damages, and Vivint's objections, at trial. In any event, CPI will support its damages with competent evidence, including the Vivint's own voluminous records of complaints from customers *to Vivint* establishing the breadth and numerosity of Vivint's predatory sales pitches and false affiliation claims.

**ARGUMENT**

A. **THE COURT SHOULD DENY VIVINT'S MOTION BECAUSE IT FAILS TO IDENTIFY WHAT EVIDENCE IT SEEKS TO EXCLUDE.**

In its exceedingly vague motion, Vivint fails to identify, with even a modicum of specificity, the evidence it wants the Court to exclude. Instead, Vivint refers only to an extraordinarily broad category of evidence—essentially anything CPI may present at trial on its damages, outside of live witness testimony. Vivint's lack of specificity and general request to exclude such a broad category of evidence are, alone, sufficient grounds to deny Vivint's motion. "District courts routinely deny a motion in limine that does not specify the evidence or argument to be excluded because such a motion is premature." *A. Hak Indus. Servs. BV v. Techcorr USA, LLC*, No. 3:11–CV–74, 2014 WL 12591696, at *1 (N.D.W.V. Dec. 18, 2014). "[B]road pre-trial evidentiary rulings, like that requested by a generalized motion in limine, present a serious risk of excluding admissible evidence." *Id.* In considering a broad request "to exclude a general category of evidence," such as the one made by Vivint, "the best course of action is to deny the motion and see how the case unfolds because a blanket exclusion could likely preclude a party from introducing evidence that a court finds admissible with the benefit of knowing the particular evidence and relevant context." *Id.*; *see also E.I. DuPont De Nemours & Co. v. Kolon Indus., Inc.*, 564 Fed. Appx. 710, 715 (4th Cir. 2014) ("[A] court is often wise to await the unfolding of evidence before the jury before undertaking to make definitive rulings on the likely probative value of disputed evidence.").

Without knowing the critical detail of *what* Vivint wants the Court to exclude, it is nearly impossible for CPI to respond to Vivint's motion. With these salient facts omitted, it is entirely impossible for CPI to anticipate Vivint's potential hearsay attacks and articulate why the evidence is not hearsay, or identify an applicable hearsay exception. The unidentified documents and testimony may, for example, provide evidence of the actual confusion experienced by CPI's customers, which is an essential element of CPI's claim and demonstrably *not* hearsay. *See, e.g.*, *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 780 (4th Cir. 2001) (noting that anecdotal reports of actual confusion are not hearsay); *PNGI Charles Town Gaming, LLC v. Hot Spot CT Real Estate, LLC*, No. 3:18-CV-38, 2019 WL 6869873, at *8 (N.D.W.V. Dec. 16, 2019) (finding plaintiffs' evidence of actual confusion was not hearsay because "third-party statements [are] admissible and probative when used to demonstrate instances of consumer confusion").

In addition, the broad category of evidence generally referenced by Vivint may fall under any number of hearsay exceptions, or it may not be hearsay at all. By its very definition, evidence is "hearsay" only if it is offered to prove "the truth of the matter asserted in the [out of court] statement." FED. R. EVID. 801(c)(2). Of course, out of court statements may be offered to show something *other than* the truth of the matter asserted by the declarant, such as: tangible evidence of consumer confusion; that Vivint was repeatedly put on notice that its sales force was committing deceptive acts against customers throughout CPI's commercial footprint (yet did little if anything to remedy the conduct); or to establish Vivint's intent, the lack of "mistake"

4

by the customer,[1] and/or Vivint's modus operandi in using these false and predatory practices on CPI customers. FED. R. EVID. 404(b)(2); *cf. RXD Media, LLC v. IP Application Dev. LLC*, 986 F.3d 361, 372-73 (4th Cir. 2021) (reciting the nine likelihood of confusion factors under the Lanham Act, including "(6) the defendant's intent"). In the undefined category of evidence that Vivint wants to exclude, there is also abundant evidence constituting records of regularly-conducted activity or public records that meet other hearsay exceptions. FED. R. EVID. 803(6), (8). Furthermore, documents and testimony in this undefined category of evidence may also qualify for admission under the residual hearsay exception, as Vivint itself has argued in similar cases it has prosecuted against competitors for the same conduct CPI alleges against Vivint here. FED. R. EVID. 807.

It is impossible to exclude an entire category of evidence in the abstract, without knowing which evidence Vivint wants to exclude. To do so, based on Vivint's generalized suppositions about what may happen at trial, would certainly result in the exclusion of admissible evidence. *See A. Hak Indus. Servs.*, 2014 WL 12591696, at *1. Vivint's hearsay objections must be raised and applied, if it all, to the evidence at trial so that it may be presented in the proper context. *See E.I. DuPont De Nemours & Co.*, 564 Fed. Appx. at 715. Even then, the Court must caution against excluding entire documents (in the event it finds one may contain hearsay) as opposed to simply

---

[1] Vivint statement of its case theory in the joint pretrial submission confirms that Vivint intends to claim that any customer confusion was just a "mistake" that is the customer's fault. *See* Jnt. Pretrial Subm., DE 81, at 2 ("To the extent that there is any CPI customer confusion, Vivint contends it is limited to a handful of customers and the nature and scope of any confusion is unique to the individual customers' [sic] experience.").

5

redacting the portion of the document with any hearsay statement but retaining the portions that do not contain hearsay (such as Vivint's own classification of the complaints its received).

### B. CPI WILL ESTABLISH ITS DAMAGES WITH ADMISSIBLE EVIDENCE.

CPI will prove its damages at trial through competent and admissible evidence. In its pretrial filings, CPI identified hundreds of documents and witnesses that will establish the essential elements of CPI's claims, including the significant damages CPI has sustained as a direct result of Vivint's bad acts and the broad geographic scope and numerosity of Vivint's deceptive acts. It is well-settled that "the award of monetary damages, attorney fees and costs under the Lanham Act is committed to the sound discretion of the Court, based on the equities of each particular case." *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 371 (4th Cir. 2001) (internal quotations omitted); *see also PBM Prods., Inc. v. Mead Johnson & Co.*, 174 F. Supp. 2d 424, 430 (E.D. Va. Oct. 25, 2001) ("[A] plaintiff seeking relief under the Lanham Act is not required to prove the amount of its damages with exacting specificity.").

### 1. CPI is entitled to present evidence of customer complaints beyond just the witnesses called to testify.

Although Vivint does not say what evidence it wants the Court to exclude, the implication in Vivint's motion is that CPI's evidence should be limited to customer testimony only. Vivint's position—that CPI should be required to call hundreds, if not thousands, of customers approached by Vivint in a deceptive fashion—is, practically speaking, absurd and would require a months-long trial that this Court has already

suggested it is unwilling to sanction. CPI is clearly entitled to present and rely on evidence beyond just testifying customers, if for no other reason than the practical limitation that it is impossible to call every customer Vivint has ripped off to testify before the jury.

Here, in Vivint's own records CPI has identified hundreds of customers complaints to Vivint regarding Vivint's sales representatives' deceptive sales pitches. Based on the sheer numbers at issue in this case, CPI must present evidence of the scope of Vivint's conduct through these records. This is a permissible way to provide proof of the scope of Vivint's conduct without offering cumulative evidence from dozens of witnesses on the stand. And, many of CPI's customers are old, ill, or disabled. Most of these customers live beyond the Court's trial subpoena power. Few have the means to travel and, even if they did, the country is in the grip of the Omicron variant and significant spikes in Covid cases. Even if CPI were to fly these customers to Charlotte to testify, at CPI's expense, Vivint would accuse the witnesses of bias.

Vivint's position—that only live testimony is permissible at trial—would leave CPI in an impossible position, unable to present admissible evidence of the full scope of Vivint's deceptive sales practices.

> **2. Vivint itself has relied on out of court customer complaints to establish its affirmative unfair competition claims.**

Importantly, some of the evidence which CPI will present to establish the scale and reach of Vivint's deceptive sales practices is the same type of evidence Vivint successfully argued was admissible for use in proving its own unfair competition

7

cases against competitors it sued for the same sales conduct. *See, e.g.*, *Vivint, Inc. v. Elite Security Servs., Inc.*, Case No. 2:12-cv-00692, Doc. 34, (D. Utah Dec. 12, 2012).[2] Specifically, and directly contrary to its position taken here, Vivint argued that it was entitled to present evidence of its competitors' alleged bad acts through recorded phone calls from customers reporting the respective deceptive sales conduct to Vivint. *See id.* at Doc. 64.[3] As discussed in more detail in CPI's response in opposition to Vivint's motion *in limine* to exclude customer complaints (Doc. No. 87), this evidence also supports CPI's claims and may rightfully be considered with respect to CPI's damages.

> 3. **The admissible evidence will establish the scope of Vivint's bad acts and the damages suffered by CPI as a direct result.**

Witness testimony from dozens of customers (and Vivint's own representatives) will establish the existence of the many deceptive sales practices employed by Vivint's sales force, that Vivint and its leaders knew of these practices and their widespread occurrence, and that those predatory practices directly harmed CPI. Any other evidence CPI offers to show the *scope* and *numerosity* of complaints about Vivint's sales practices will be offered for that non-hearsay purpose—just as the Court held in Vivint's prior lawsuit with ADT. *See ADT LLC v. Vivint, Inc.*, No. 17-CV-80432-MIDDLEBROOKS, Doc. 201 (S.D. Fla. Dec. 8, 2017) (denying Vivint's motion to exclude customer complaints to the BBB because the complaints contained

---

[2] A copy of Vivint's motion, arguing for the admissibility of third party customer complaints to prove its unfair competition claims, is attached hereto as **Exhibit A**.
[3] A copy of the Court's Order, finding the recorded customer complaints were admissible, is attached hereto as **Exhibit B**.

8

statements of a party opponent and showed Vivint's notice of widespread complaints of similar allegations from customers spread throughout the country); *cf. id.*, at Doc. 206 (Dec. 11, 2017) (overruling Vivint's motion to exclude customer complaints where Vivint "failed to identify particular statements that it claim[ed we]re hearsay").[4]

The Court has already telecasted its intent to streamline this trial. It is not feasible for CPI to call every victim of Vivint's extensive fraud, and CPI must be permitted to establish the broad scope and numerosity of Vivint's conduct by other evidence—such as Vivint's own internal records memorializing the abundant complaints from former CPI customers about Vivint's deceptive sales conduct.

### 4. The case law relied on by Vivint does not warrant the exclusion of CPI's damage-related evidence.

Nothing cited by Vivint's motion compels the broad relief it seeks. In fact, none of the authority cited by Vivint addresses the evidentiary analysis of what a party may present at trial to prove its case and whether a court may exclude an entire, general body of evidence before trial. Instead, those cases address distinguishable matters in a variety of cases with different claims and issues not germane to this dispute. *See, e.g.*, *Reich v. Southern Md. Hosp. Inc.*, 43 F.3d 949, (4th Cir. 1995) (addressing computation of back pay in a FLSA case, after liability was established, based on representative testimony); *Tony Guiffre Distrib. Co. v. Wash. Metro. Area Transit Auth.*, 740 F.2d 295, 297 (4th Cir. 1984) (discussing whether evidence of rent was relevant in an inverse condemnation claim); *Best v. Time Warner Inc.*, No. 5:11-cv-00104-RLV-DSC, 2013 WL 66265, at *5 (W.D.N.C. Jan. 4, 2013) (finding plaintiff,

---

[4] Copies of Judge Middlebrooks' orders are attached hereto as **Exhibits C and D**.

in breach of contract action, could not extrapolate royalty payments allegedly due in later years, based on an audit conducted in 1981); *US v. Rand*, No. 3:10-cr-182, 2011 WL 4914962 (W.D.N.C. Oct. 17, 2011) (precluding the government from introducing evidence of loss under a 18 U.S.C. §1014 action for false statements to a bank); *Commodity Futures Trading Comm'n v. Wilshire Inv. Mgmt. Corp.*, 407 F. Supp. 2d 1304, 1314 (S.D. Fla. 2005) (rejecting the CFTC's request for restitution *after* the evidence was admitted at trial).[5]

### C. CPI PROPERLY AND TIMELY DISCLOSED ITS DAMAGES TO VIVINT.

CPI's difficulty in responding to Vivint's overbroad and generalized motion is multiplied by what appears to be an attempt by Vivint to backdoor a Rule 37 motion to exclude CPI's damages. (Doc. 93 at 8-9). Vivint's argument is baseless. For months, CPI asked Vivint for discovery on the customer complaints Vivint received from former CPI customers related to Vivint's sales force's deceptive practices in converting their accounts from CPI to Vivint. Vivint objected and refused to produce any such documents. After months of obstruction, the Court ultimately compelled Vivint to produce such documents. After granting Vivint numerous requested extensions of time to make the production, late in discovery, Vivint finally produced a mountain of complaint records from former CPI customers, which CPI immediately began reviewing *en masse*. Despite the delays and tardy production from Vivint, CPI timely supplemented its disclosures to identify an additional 500-800 customers

---

[5] In the only unfair competition case cited by Vivint in the motion, the issue concerned the admissibility of an expert's opinion. *Pharmanetics, Inc. v. Aventis Pharm., Inc.*, No. 5:03-CV-817-FL(2), 2005 WL 6000369, at *1, 16 (E.D.N.C. May 4, 2005).

deceived by Vivint's false sales pitches, identified directly from Vivint's own records. Vivint inquired extensively about these disclosures and the underlying evidence when Vivint deposed CPI's corporate representative witnesses. There is no surprise. To the extent Vivint complains about the timing of the disclosures, it has only itself to blame.[6]

### D. THE ADMISSIBLE EVIDENCE WILL REVEAL THE ENTIRE ICEBERG OF VIVINT'S WIDESPREAD DECEPTIVE AND PREDATORY PRACTICES.

As a final throw-away argument, Vivint urges the Court to preclude CPI from presenting evidence of the "tip of the iceberg" principle. This is a spurious request; Vivint has repeatedly endorsed the tip of the iceberg doctrine when the shoe is on the other foot and Vivint is engaged in lawsuits against its competitors for the same conduct at issue here. In fact, in its affirmative cases against competitors, Vivint has gone so far as to claim that this principle is so uncontroversial it is capable of judicial notice:

---

[1] It is commonly accepted and the Court may take Judicial Notice of the fact that only a limited number of affected customers, roughly 4%, actually will take the time to complain. *See* Sheila Kessler, Measuring and Managing Customer Satisfaction, American Society for Quality 63-64 (1996). Therefore, the customers who have complained to Vivint about Defendants' unlawful activities likely represent only a fraction of the Vivint customers who have fallen victim to Defendants' improper conduct. More problematic, it is those who do not complain, and thus remain unidentified, who are likely to have ended their relationship with Vivint. *See* Jerry Plymire, *Complaints as Opportunities*, Business Horizons (Mar.-Apr. 1991)
(available at http://findarticles.com/p/articles/mi_m1038/is_n2_v34/ai_10544096/) (last visited March 23, 2012) (explaining that only 4% of dissatisfied customers complain, but that 91% of dissatisfied customers will never return and each of these dissatisfied customers will likely also repeat their complaints to eight to ten of their friends). Defendants' campaign to smear Vivint's reputation and goodwill is pervasive and consistent—and can be presumed to reach far beyond those Vivint customers who have reached out to Vivint to complain.

---

[6] The instant motion—served less than three weeks before trial—is the first time CPI has heard Vivint's claims regarding the sufficiency of its disclosures. At no point has Vivint conferred with CPI on this issue or presented the dispute through the channels prescribed the Federal Rules of Civil Procedure and the Court.

11

(Pl.'s Tr. Ex. P616, 4 n.1 (**Exhibit E**)). As Vivint has itself has argued, this evidence is uncontroversial, competent evidence highly probative of the scope of the deceptive conduct. Vivint cites no valid reason for its exclusion in its veiled attempt to keep this type of evidence out.

## CONCLUSION

The Court should deny the motion.

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

In accordance with section 3.c.i. and 4.d. of the Case Management Order (Doc. No. 35), CPI certifies that the text of the above motion consists of 2,916 words (excluding the caption and signature block, but including footnotes).

Dated: December 22, 2021                    Respectfully submitted,

**SHOOK, HARDY & BACON L.L.P.**

By: /s/ *Caroline M. Gieser*
North Carolina Bar No. 51610
cgieser@shb.com
1230 Peachtree Street, Suite 1200
Atlanta, Georgia 30309
(470) 867-6013

-and-

/s/ *Charles C. Eblen*
Charles C. Eblen (Admitted *Pro Hac Vice*)
Missouri Bar No. 55166
ceblen@shb.com
Erin M. Fishman (Admitted *Pro Hac Vice*)
Missouri Bar No. 69842
efishman@shb.com
SHOOK, HARDY & BACON L.L.P.

2555 Grand Blvd.
Kansas City, Missouri 64108-2613
(816) 474-6550

    -and-

/s/ *Eric J. Hobbs*
Eric J. Hobbs (Admitted *Pro Hac Vice*))
Colorado Bar No. 46813
ehobbs@shb.com
Daniel E. Rohner (Admitted *Pro Hac Vice*)
Colorado Bar No. 27469
drohner@shb.com
SHOOK, HARDY & BACON L.L.P.
1660 17th Street, Suite 450
Denver, Colorado 80202
(303) 285-5300

*Counsel for Plaintiff*
*CPI Security Systems, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on the 22nd day of December, 2021, I have electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of filing to all counsel and parties of record.

/s/ *Caroline M. Gieser*
