# EXHIBIT A

Rodney G. Snow (#3028)
rgs@clydesnow.com
Matthew A. Steward (#7637)
mas@clydesnow.com
Shannon K. Zollinger (#12724)
skz@clydesnow.com
**CLYDE SNOW & SESSIONS**
One Utah Center, 13th Floor
201 South Main Street
Salt Lake City, Utah  84111-2216
Telephone (801) 322-2516
Facsimile  (801) 521-6280

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH,

CENTRAL DIVISION

| | |
|---|---|
| VIVINT, INC. (formerly APX ALARM SECURITY SOLUTIONS, INC.), <br><br> Plaintiff, <br><br> v. <br><br> ELITE SECURITY SERVICES, INC., a Utah corporation, JEFF WILSON, SHAWN HANSON, CHASE ERICKSON, TAYLOR HARRIS, BLAKE MCCARTY, JOHN IABONI, DERK WATSON, JASON TIPPETTS (individuals) and JOHN DOES I through X, <br><br> Defendants. | **VIVINT, INC.'S MOTION IN LIMINE TO ADMIT AUDIO RECORDINGS** <br><br><br> Case No. 2:12-cv-00692 <br><br> Judge Clark Waddoups |

Plaintiff Vivint, Inc. ("Vivint" or "Plaintiff"), by and through its undersigned counsel, respectfully submits this Motion in Limine to Admit Audio Recordings for purposes of trial in this matter.

**PRECISE RELIEF SOUGHT AND GROUNDS FOR MOTION**

Pursuant to Fed. R. Civ. P. 7 and DUCivR 7-1, Vivint seeks an order from the Court that audio recordings of its customers' phone calls to Vivint's Customer Service Department, reporting false and misleading statements made by Defendants to those customers, are admissible at trial in this case. The grounds for this Motion are that the audio recordings are relevant and admissible evidence under the Federal Rules of Evidence 401 and 402, and constitute non-hearsay or fall within an exception to hearsay under Rules 801(c)(2), 801(d)(2), 803(6) and/or 807. The Court's determination of the admissibility of the audio recordings at this stage of the litigation is necessary in order for the parties to ascertain the extent and nature of fact discovery that will be required to support their claims and defenses at trial.

**INTRODUCTION AND PROCEDURAL BACKGROUND**

Vivint was compelled to commence this action against Defendants in response to Defendants' repeated and widespread campaign targeting Vivint customers with deceptive sales tactics in order to deceive those customers into entering into alarm services contracts with Elite Security Services, Inc. ("Elite"). In conjunction with its Complaint, Vivint moved for a preliminary injunction to enjoin Defendants from continuing these illegal practices against its customers. At the hearing on Vivint's Motion for Preliminary Injunction on August 30, 2012, the Court permitted both Vivint and Elite to introduce audio recording excerpts of phone calls from customers reporting to Vivint's Customer Service Department the statements made by Defendants. The Court, however, did not definitively rule on the admissibility of this type of evidence (the "Audio Recordings") for purposes of trial. Given that Elite has already objected to this evidence pursuant to its Motion to Strike the Affidavit of Sean Ricks with attached

spreadsheet summarizing the Audio Recordings, and its Objections to Offering of Edited Audio Recordings as Evidence -- both of which the Court denied at the hearing on preliminary injunction -- Vivint anticipates that Elite will object to admitting the Audio Recordings at trial. A ruling on admissibility is therefore imperative at this juncture, before the close of fact discovery, in the event the parties will be required to secure the attendance of these customers located all over the country to testify at trial.  As demonstrated herein, doing so would constitute an extensive, onerous and ultimately fruitless task resulting in evidence that would not be any more probative than the Audio Recordings, which are admissible under the controlling Rules of Evidence.  To that end, Vivint respectfully requests the Court rule that the Audio Recordings are admissible at trial.

## RELEVANT FACTS

1.     The instant lawsuit was instigated by Vivint's receipt of repeated, unsolicited phone calls by unrelated Vivint customers, reporting similar or in some instances identical misrepresentations made to them by Elite sales representatives in order to induce the customer to enter into an alarm services contract with Elite (or, "slams").  (Affidavit of Sean Ricks ("Ricks Aff.") , ¶¶ 4-6, attached hereto as Ex. A.)

2.     These phone calls were received by Vivint's Customer Service Department, which fields all customer service-related concerns from Vivint customers, including but not limited to reports of slams by competing companies such as Elite.  (*Id*. at ¶ 7.)

3.     At the commencement of every phone call, the Vivint customer service representative taking the call verifies that the caller is, in fact, the owner of a valid Vivint account pursuant to a verbal passcode provided by the caller before the caller provides any

information regarding the account at issue.  (*Id*. at ¶ 8.)  The customer's contact information is also verified.  (*Id*.)

4.      These phone calls, and any follow up phone calls forwarded to Vivint's anti-slam department, are audio recorded contemporaneously with the call taking place.  (*Id*. at ¶ 9.)

5.      It is Vivint's policy to make and keep audio recordings of the phone calls received by its Customer Service Department in the regular course of business for all customer service-related concerns, including but not limited to reports of slams.  (*Id*. at ¶ 10.)

6.      Audio recordings specifically containing reports of slams attributed to Elite, including those audio recordings previously produced to Elite in this case, were culled directly from Vivint's customer service database in an unaltered and unedited format.  (*Id*. at ¶ 11.)

7.      If and when additional slams by Elite sales representatives are reported to Vivint, the audio recordings of those phone calls are made, kept and ultimately will be culled for use in litigation in the same manner and  format as those recordings referenced above.  (*Id*. at ¶ 12.)

## ARGUMENT

I.      **THE AUDIO RECORDINGS ARE ADMISSIBLE UNDER THE FEDERAL RULES OF EVIDENCE.**

As a threshold matter, the Audio Recordings are relevant evidence generally admissible pursuant to Fed. R. Evid. 402.[1]  The Audio Recordings consist of two components otherwise admissible under the Rules as non-hearsay or as an exception to hearsay: (A) statements of

---

[1] Rule 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Here, the Audio Recordings are relevant because Defendants' misrepresentations reported therein form the crux of Vivint's causes of action for, *inter alia*, defamation, intentional interference with contractual relations, and unfair business practices. Rule 402 provides: "Relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court."  As set forth herein, the Audio Recordings are relevant, admissible evidence because they fall within well-entrenched hearsay exceptions under the Rules.

misrepresentations made by Elite sales representatives; and (B) statements of Vivint customers reporting those misrepresentations.

### A. Statements Made by Elite Sales Representatives to Vivint's Customers Are Admissible as Non-Hearsay Pursuant to Fed. R. Evid. 801(d)(2) and/or 801(c)(2).

The Audio Recordings consist, at their core, of non-hearsay statements made by Elite sales representatives to Vivint customers.

Rule 801(d)(2) states, in pertinent part:

> A statement that meets the following conditions is not hearsay: (2) An Opposing Party's Statement. The statement is offered against an opposing party and: (A) was made by the party in an individual or representative capacity . . . (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed[.]

Any statements, including misrepresentations, made by Elite's sales representatives are not considered hearsay under this section because they are offered against Defendants as opposing parties in this case, whether as individually named representatives or as agents and employees of Defendant Elite.[2] Nor is a statement considered hearsay unless it is offered "to prove the truth of the matter asserted in the statement" pursuant to Rule 801(c)(2). Vivint clearly does not offer the misrepresentations of Elite sales representatives for their truth; to the contrary, Vivint's lawsuit is premised on the falsity of Defendants' statements and the resulting damage those falsities have caused Vivint.

---

[2] Elite cannot in good faith claim it is not a party within the scope of Rule 801(d)(2)(D) based on its sales representatives' misrepresentations during the course of selling Elite security systems. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756 (1998) (citing Restatement (Second) of Agency (hereinafter "Restatement") §§ 228(1)(c), 230). "[W]hen a salesperson lies to a customer to make a sale, the tortious conduct is within the scope of employment because it benefits the employer by increasing sales, even though it may violate the employer's policies." *Id.* (emphasis added).

5

Accordingly, the statements of the Elite sales representatives are admissible non-hearsay under either of these Rules. *See e.g., Guidance Endontics, LLC v. Dentsply Intern., Inc*., 663 F. Supp. 2d 1138, 1146 (D. Kan. 2009) (in unfair competition case where plaintiff alleged competitors misrepresented its ability to sell its products, disparaged its goods and services, and engaged in other unfair and deceptive conduct, court held that "statements from the sales representative [of the defendant competitor] to the customer (<u>as relayed by the customer in a phone call to plaintiff</u>) are not hearsay [because they are not for the truth of the matter asserted and are vicarious admissions by an opposing party]"). "The hearsay issue is not whether the representative was being truthful -- indeed, [plaintiff] asserts that the statements were false -- but whether the statement was made. And the representative's statement qualifies as an admission under Rule 801(d)(2)(D) of the Federal Rules of Evidence." *Id*. at 1146. (emphasis added).

### B. Statements Made by Vivint Customers to Vivint's Customer Service Employees Are Admissible Under the Business Records Exception of Fed. R. Evid. 803(6) and/or the Residual Exception under Fed. R. Evid. 807.

The format in which Vivint will admit Defendants' non-hearsay misrepresentations at trial -- through audio recordings of its customers reporting the information -- is admissible under (i) the business records exception to hearsay pursuant to Fed. R. Evid. 803(6)[3]; or (ii) the residual hearsay exception pursuant to Rule 807.

---

[3] At the preliminary injunction hearing the Court indicated that it did not consider the spreadsheet attached to the Ricks Affidavit, summarizing and relaying the content of the Audio Recordings for purposes of convenience at the hearing, to constitute business records under Fed. R. Evid. 803(6). To be clear, Vivint's Motion does not seek a ruling on the admissibility of the spreadsheet at trial, but rather admissibility of the Audio Recordings themselves, which, as discussed herein, were not prepared in anticipation of litigation but received unsolicited by customers and created as part of Vivint's regular course of business.

### i.      Business Records Exception

"Double hearsay in the context of a business record exists when the record is prepared by an employee with information supplied by another person." *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (10th Cir. 1991). Here, the business records are Audio Recordings prepared by Vivint with information -- Defendants' non-hearsay admissions -- supplied by Vivint customers.

Rule 803(6) provides that the following is "not excluded by the rule against hearsay" :

> (6) *Records of a Regularly Conducted Activity*. A record of an act, event, condition, opinion, or diagnosis if:
> (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

In this case, first, the record was audio-recorded by Vivint contemporaneously with the customers' verbal transmission of the information to the Vivint employee. Rule 803(6)(A).

Second, the Audio Recordings are kept in the course of Vivint's regularly conducted activity of fielding all customer service-related phone calls -- whether the calls report slams by Defendants or express an entirely unrelated concern. Rule 803(6)(B). It is immaterial in this case that the record was prepared with information supplied by Vivint customers who were "not acting in the regular course of business", i.e., "outsiders". *Wilson, supra.* In *United States v. Blechman*, 657 F.3d 1052, 1064-70 (10th Cir. 2011) the court stated:

> [T]he general rule is that "[a]ny information provided by ... an outsider to the business preparing the record[ ] must itself fall within a hearsay exception to be admissible." . . . *see also* Fed. R. Evid. 805 ("Hearsay included within hearsay is

>   not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."). This Court, however, has recognized one exception to the general rule: information provided by an outsider that is included in a business record may come in under the business records exception "[i]f the business entity has adequate verification or other assurance of accuracy of the information provided by the outside person."

(internal quotations and citations omitted). Here, the information provided by the customers is admissible under the general rule because the information -- statements by Defendants -- constitute non-hearsay under Rules 801(c)(2) and (d)(2). *See, e.g., In re Fleet*, 95 B.R. 319, 331 (E.D. Penn. 1989) (records containing information from outside source admissible when the outsider's statements fall within an exception to the hearsay rule; admitting record of a consumer complaint against a party defendant under Rule 803(6) over objections that records were not prepared by employees of the company; the complaint was an internal record produced by the proponent company and "[t]he information provided by the consumer in the Complaint Form . . . related to representations made by employees of [the defendant company], which would not be considered hearsay since it related to admissions by a party opponent") (citing Fed. R. Evid. 801(d)(2)(D)).

Alternatively, Vivint has adequate verification or other assurance of the accuracy of the information provided. Vivint verifies the customer's identity and contact information for purposes of follow-up questions pursuant to a verbal passcode each caller provides. The accuracy of the information is self-evident in the context in which it is provided: unsolicited, verbatim customer reports which duplicate the substance of other complaints received from unrelated customers about Defendants.

Third, making an audio recording of the customers' reports is a regular practice in Vivint's fielding and resolution of customer concerns, again, without regard to the content of the

phone call but as a matter of course for all customer service phone calls. The Audio Recordings were not created in anticipation of litigation, but culled directly from Vivint's broader customer service database for use at trial.[4] Rule 803(6)(C).

Fourth, all of these conditions are shown by the qualified witness testimony of Sean Ricks, Vivint's Assistant General Counsel in charge of tracking reported slams with Vivint's Customer Service Department, as set forth in the Affidavit of Sean Ricks attached hereto as Ex. A, and to be presented via Mr. Ricks's or similar custodial testimony at trial, if necessary. Rule 803(6)(D). *See also BP Amoco* ("A party establishes a foundation for admission of business records when it demonstrates through the testimony of a qualified witness that the records [i.e. Exhibit 1] were kept in the course of regularly conducted business activity, and that it was the regular practice of that business to make such records[.]").

Fifth, the source of the information, affected customers, does not indicate a lack of trustworthiness. These customers spontaneously and unilaterally contacted Vivint, are unrelated to one another, and yet provided substantively identical information about Elite, its sales representatives, and the misrepresentations made by those sales representatives. The customers have no reason to lie where they have no assurance or reason to believe that by reporting a slam they will be released from their Vivint contract; it is unlikely a party would knowingly bind

---

[4] For purposes of satisfying Rule 803(6), there is no difference between the larger customer service database containing all customer service phone calls and the Audio Recordings extracted from that database as relevant evidence of "slams." The Audio Recordings are merely a "summary" of relevant data gleaned from that larger database--they are considered the same "record" for purposes of Rule 803(6). *See, e.g., Health Alliance Network, Inc. v. Continental Cas. Co.*, 245 F.R.D. 121 (S.D.N.Y. 2007) (upholding admission of data compilation culled from broader business records database pursuant to Rule 803(6); as long as original data satisfies business record requirements, "a smaller subset of data provided as evidence from the database is subject to the business records exception to the hearsay rule"). Indeed, summaries or subsets of voluminous data are expressly admissible pursuant to Rule 1006, particularly in the context of providing business records under Rule 803(6). As explained by the court in *BP Amoco Chem. Co. v. Flint Hills Res., LLC*, 697 F. Supp. 2d 1001, 1032-33 (N.D. Ill. 2010): "Rule 1006 facilitates the presentation of voluminous data at trial . . . If a large amount of data cannot be conveniently examined

9

themselves to a redundant second security contract without this assurance. Moreover, their identities are verified as legitimate owners of valid Vivint accounts, and their contact information is available for the parties to verify, question, or cross examine their report by affidavit, deposition, or interview.[5] Rule 803(6)(E). Indeed, the Audio Recordings are precisely the type of evidence contemplated by Rule 803(6). *See In re Fleet, supra*; *Ratliff v. Coca-Cola Bottling Co. of Mid-America*, No. 00-1007-WEB, 2001 WL 310962, at n. 1 (D. Kan. Feb. 28, 2001) (unpublished) (with respect to offering employee's testimony recounting customer complaints for the truth of what the customers asserted, where "defense counsel stated during oral arguments that defendant has contemporaneous business records documenting some of the complaints[,] [a]ssuming the proper foundation can be established, such records could be admissible as an exception to the hearsay rule [under] Fed. R. Evid. 803(6)").

        ii.        **Residual Exception**

In the alternative, the Audio Recordings additionally satisfy the requirements under the residual exception to hearsay under Rule 807:

> (a) In General. Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
> (2) it is offered as evidence of a material fact;
> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (4) admitting it will best serve the purposes of these rules and the interests of justice.
> (b) Notice. The statement is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the

---

in court, the parties may be allowed to submit summaries of the data in place of the underlying documents."
[5] In its Initial Disclosures served November 28, 2012, Vivint indicated that it would provide the contact information for the customers reporting the slams subject to a protective order for the individual information. That same day, Vivint provided Elite with a proposed stipulated protective order to which Elite has not yet responded.

      statement and its particulars, including the declarant's name and address, so that
the party has a fair opportunity to meet it.

In the context of records of customer complaints, *F.T.C. v. Figgie*, 994 F.2d 595 (9th Cir. 1993) and other federal case law is instructive. *Figgie* admitted the contents of consumer complaints received by the FTC about the defendants in that case, in the form of written letters, upon satisfaction of each requirement of Rule 807. *Id*. at 608. *See also F.T.C. v. Kuykendall*, 312 F.3d 1329 (10th Cir.) (consumer declarations and complaints admissible under Rule 807); *Flow Control Industries, Inc. v. AMHI Inc*., 278 F. Supp. 2d 1193 (W.D. Wash. 2003) (holding "contemporaneous complaints" from potential customers admissible under Rule 807 to show the truth of the matters asserted); *In re A.H. Robins Co., Inc*., 575 F. Supp. 718 (D. Kan. 1983) (statements provided by outsiders to company's employees would be admissible under residual exception).

In this case, first, the Audio Recordings have the necessary "circumstantial guarantees of trustworthiness". Again, the Audio Recordings consist of verbatim recordings made contemporaneously with unsolicited phone calls from unrelated customers, all reporting substantively identical misrepresentations made by Defendants, with no motive to lie, and culled directly from Vivint's customer service database kept in the regular course of business. Rule 807(a)(1); *see Figgie*, at 608 (letters of customer complaints "have the necessary 'circumstantial guarantees of trustworthiness'" under Rule 807(a)(1) because the letters were sent independently from unrelated members of the public, all reported roughly similar experiences suggesting their truthfulness, and the declarants had no motive to lie regarding the substance of their complaint). Indeed, there was little risk that the content of the customer letters were the "product of faulty perception, memory or meaning, the dangers against which the hearsay rule seeks to guard." *Id*.;

11

*In re A.H. Robins,* at 724 (even assuming statements provided by outsiders to a company's employees "are hearsay requiring a recognized exception to the hearsay rule as a prerequisite to admissibility, the statements are usually admissible under the [residual exception]. The statements of the outsiders have a "circumstantial guarantee of trustworthiness", in part, where they "were produced directly from [the company's] corporate files" ); *Flow Control Industries*, at 1197-98 (customer communications have "circumstantial guarantee of trustworthiness":  the comments were made independently from unrelated consumers, the declarants report roughly similar experiences, and they had no identifiable motive to lie) (internal quotations and citations omitted).

Second, the Audio Recordings are offered as evidence of a "material fact," that is, that Defendants made misrepresentations to Vivint's customers constituting defamation, unfair and deceptive sales practices, and interference with Vivint's contractual relations, and that Vivint customers were actually misled and confused as a result of Defendants' misrepresentations. Rule 807(a)(2). *See Flow Control Industries,* at 1197 (the fact that individuals were confused or did not understand the relationship between defendants and plaintiff's products is material fact).

Third, the contemporaneously recorded Audio Recordings are the most probative evidence available and "reasonable efforts" would not produce more probative evidence.  Rule 807(a)(3).  As explained by *Figgie*:

> Conceivably, [the FTC] could bring letter-writers into court to swear, under oath and subject to cross-examination, that the contents of their letters were true.  But such efforts would not be reasonable.  "It should not be necessary to scale the highest mountains of Tibet to obtain a deposition for use in a $500 damage claim arising from an accident with a postal truck."  Furthermore, testimony from letter writers is not likely to be any more reliable than the letters themselves.

*Id.* at 608-09  (citing *Dallas County v. Commercial Union Assurance Co.*, 286 F.2d 388 (5th Cir. 1961) (contemporary report of a fire in a newspaper article "is more reliable, more trustworthy, more competent evidence than the testimony of a witness called to the stand fifty-eight years later.")); *Flow Control Industries*, at 1197 (reasonable efforts would not produce evidence that is more probative than these contemporaneous communications . . . [b]ringing each complainant into court to testify, under oath, that their statements were true would be an unreasonable exercise and would not necessarily result in testimony that is any more trustworthy than the complaints themselves).  Here it is no different.  At present Vivint has recordings of over 30 slams reported by customers located all over the country.  "Reasonable efforts" would, in fact, require the parties to subpoena each witness in out-of-state jurisdictions to attend trial in Utah or be deposed to, at best, reaffirm with diminished memories the testimony captured verbatim in the Audio Recordings.  Doing so would not be more probative than the contemporaneous recordings.

Fourth, admitting the Audio Recordings in this factual context "furthers the federal rules' paramount goal of making relevant evidence admissible."  Rule 807(a)(4).  *Figgie*, at 609; *Flow Control Industries,* at 1197 (admitting the customer communications will make relevant evidence available for consideration and provides an efficient means by which plaintiff can show confusion among far-flung consumers).

Finally, under Rule 807(b), Defendants have ample notice of Vivint's intent to introduce the Audio Recordings.  The parties recently exchanged their Rule 26(a)(1) initial disclosures on November 28, 2012, in which both parties disclosed the Audio Recordings.  (Elite Initial Discl. at p. 12, ¶ 5; Vivint Initial Discl. at p. 5, ¶ 2.)  The parties have yet to conduct fact discovery, and the case is not anticipated to be ready for trial until May 2014.  (*See* Scheduling Order, signed

13

11/27/12.)  Moreover, Elite has already been provided with the full Audio Recordings for all but two slams, reported to Vivint after the preliminary injunction in August.  *See also F.T.C. v. Kuykendall*, 312 F.3d 1329 (10th Cir.) (<u>one month</u> notice of intent to admit customer complaints was sufficient for opposing party to subpoena individual customers if so desired).

## CONCLUSION

In sum, the Audio Recordings are admissible primarily as to the material facts of misrepresentations made by Defendants, which are not hearsay because they are not offered for their truth and constitute admissions by a party opponent.  The medium in which these statements are introduced, through the recorded reports of Vivint customers, are admissible as business records or pursuant to the residual exception to hearsay, as has been held repeatedly by Tenth Circuit and other federal courts in this factual context.  For these reasons, Vivint respectfully requests that the Court rule that the Audio Recordings are admissible evidence for purposes of trial in this matter.

DATED this 20th day of December, 2012.

CLYDE SNOW & SESSIONS, P.C.


/s/ Matthew A. Steward
Matthew A. Steward
Shannon K. Zollinger
*Attorneys for Plaintiff Vivint, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of December, 2012, I caused a copy of the foregoing **VIVINT, INC.'S MOTION IN LIMINE TO ADMIT AUDIO RECORDINGS** to be filed with the CM/ECF system, which caused the filed document to be electronically served upon the following:

>Barry N. Johnson
>Daniel K. Brough
>BENNETT TUELLER JOHNSON & DEERE
>3165 East Millrock Drive, Suite 500
>Salt Lake City, UT 84121
>bjohnson@btjd.com
>dbrough@btjd.com

/s/ Matthew A. Steward