# EXHIBIT C

Matthew A. Steward (#7637)
mas@clydesnow.com
Timothy R. Pack (#12193)
trp@clydesnow.com
Shannon K. Zollinger (#12724)
skz@clydesnow.com
**CLYDE SNOW & SESSIONS**
One Utah Center, 13th Floor
201 South Main Street
Salt Lake City, Utah  84111-2216
Telephone (801) 322-2516
Facsimile (801) 521-6280

*Attorneys for Plaintiff Vivint, Inc.*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | | |
|---|---|---|
| VIVINT, INC., a Utah corporation | : : | **VIVINT, INC.'S MOTION IN LIMINE TO ADMIT AUDIO RECORDINGS** |
| Plaintiff, | : : | |
| v. | : : | Case No. 2:14-cv-00441-BCW |
| ALARM PROTECTION, LLC, a Utah limited liability company, et al. | : : : | Judge Clark Waddoups |
| Defendants. | : : | Magistrate Judge Evelyn J. Furse |

**PRECISE RELIEF SOUGHT AND GROUNDS FOR MOTION**

Plaintiff Vivint, Inc. ("Vivint"), by and through its counsel of record, submits its Motion in Limine to Admit Audio Recordings for purposes of trial in this matter.  The grounds for this Motion are that in this action, Vivint seeks relief from Defendants/Counterclaimants Alarm Protection, LLC, et al (collectively, "AP"), in response to AP's widespread campaign targeting Vivint customers with deceptive sales tactics in order to deceive those customers into entering

{01023231-1}

into alarm services contracts with AP.  Vivint seeks an order from the Court that audio recordings of its customers' phone calls to Vivint's Customer Service Department, reporting the false and misleading statements made by AP to those customers (the "Audio Recordings"), are admissible at trial in this case.  The Audio Recordings are relevant and admissible evidence under the Federal Rules of Evidence 401 and 402, and constitute non-hearsay or fall within an exception to hearsay under Rules 801(c)(2), 801(d)(2), 803(6) and/or 807.

Judge Waddoups previously granted an identical motion brought by Vivint against a different competitor committing the same conduct in the matter entitled *Vivint, Inc. v. Elite Security Services, Inc.*, Case No. 2:12-cv-692cw (D. Utah 2013) (hereafter, the "Elite Matter").  The hearing transcript that preceded Judge Waddoups' ruling is attached hereto as Exhibit A.  As demonstrated herein, the hearsay analysis and structure of the Audio Recordings is the same in both cases, and this case compels the same result under the Court's reasoning in the prior matter.

Moreover, similar to the prior case, a ruling on admissibility is warranted and imperative at this stage of the proceedings, in the event the parties will alternatively be required to secure the attendance of these customers (approximately 130 located across the country), to testify at trial or to take their trial depositions.  As demonstrated herein, doing so would constitute an extensive, onerous and ultimately fruitless task resulting in evidence that would not be any more probative than the Audio Recordings themselves, which are admissible under the controlling Rules of Evidence.  It would be contrary to the purposes of the Federal Rules of Evidence and not in the interests of justice to require the parties to engage in this burdensome discovery and collect duplicative evidence when the Audio Recordings are admissible and trustworthy business

records. To that end, Vivint respectfully requests the Court rule that the Audio Recordings are admissible at trial.

## FACTUAL BACKGROUND

1. The instant lawsuit resulted from Vivint's receipt of no less than 130 complaints received in unsolicited phone calls by Vivint customers, reporting that AP sales representatives made a false or misleading statement in an attempt to have the customer cancel their agreement with Vivint and/or enter into an alarm services contract with AP (alternatively described herein as "slams"). (*See* Declaration of Nathan B. Wilcox ("Wilcox Dec.") at ¶ 6, attached hereto as Exhibit B.)

2. These phone calls were received by Vivint's Customer Service Department, which fields all customer service-related concerns from Vivint customers in its normal course of business, including but not limited to reports of slams by competing companies such as AP. (*Id.* at ¶ 7.) (The Audio Recordings were produced to AP as VIVINT000653 on June 3, 2016.)

3. For example, Vivint customers have complained that AP sales representatives made misrepresentations, including but not limited to the following:

    a. Vivint is a scam and/or a fraud;

    b. Vivint was going out of business, or had already gone out of business;

    c. Vivint had been or was being bought out by another company;

    d. Vivint is not a local company and that AP is a local company;

    e. Vivint went "bankrupt" or had filed for bankruptcy;

    f. Vivint was bought out by AP or had merged with AP;

    g. AP is affiliated with or is a division of Vivint;

    h.  AP was in the customer's area doing "upgrades" for Vivint;

    i.  The representative was there on behalf of Vivint and/or worked for Vivint;

    j.  The customer's account was expired or expiring, and AP was going to take over.

    (*See* Am. Compl. at ¶ 26.)

  4.  Specific misrepresentations made by AP to each of the 130 Vivint customers disclosed to date in this lawsuit—as reflected on the Audio Recordings—were listed and disclosed to AP as part of Vivint's First Supplement to its Initial Disclosures on June 3, 2016.[1]

  5.  At the commencement of every phone call, the Vivint customer service representative taking the call verifies that the caller is, in fact, the owner of a valid Vivint account pursuant to a verbal passcode provided by the caller. (Wilcox Dec. at ¶ 8.) The customer's address and contact information is also verified. (*Id*.)

  6.  These initial customer telephone calls, and any follow up telephone calls forwarded to other groups within the Customer Service Department, are audio recorded contemporaneously with the call taking place. (*Id*. at ¶ 9.)

  7.  It is Vivint's policy and practice to make and keep audio recordings of all telephone calls received by its Customer Service Department in the regular course of business for all customer service-related concerns, including but not limited to reports of slams. (*Id*. at ¶ 10.)

---

[1] Vivint customers continue to reports slams committed by AP. Vivint has reserved the right to supplement its Initial Disclosures as additional Vivint customers and slams are identified, in the same manner that it has disclosed its 130 customers to date.

{01023231-1}         iv

8. Audio recordings specifically containing reports of slams attributed to AP, including those audio recordings previously produced to AP in this case, were culled directly from Vivint's customer service database in an unaltered format. (*Id*. at ¶ 11.)

9. If and when additional slams by AP sales representatives are reported to Vivint, the audio recordings of those phone calls are recoded and kept in the same regular course of business with all other customer service-related telephone calls and will be culled from the customer database for use at trial in the same manner and format as those recordings described above. (*Id*. at ¶ 12.)

# ARGUMENT

I. **THE AUDIO RECORDINGS ARE ADMISSIBLE UNDER THE FEDERAL RULES OF EVIDENCE.**

As a threshold matter, the Audio Recordings are relevant evidence generally admissible pursuant to Fed. R. Evid. 402.[2] The Audio Recordings consist of two components otherwise admissible under the Rules as non-hearsay or as an exception to hearsay: (A) statements of misrepresentations made by AP sales representatives; and (B) statements of Vivint customers reporting those misrepresentations. In addition, where applicable, Vivint refers to Judge Waddoups' findings and reasoning in granting the motion in limine in the Elite Matter.

A. **Statements Made by AP Sales Representatives Are Admissible as Non-Hearsay Party Opponent Statements Under Fed. R. Evid. 801(d)(2) and/or 801(c)(2) (or, "Level One Statements").**

The Audio Recordings consist, at their core, of non-hearsay statements made by AP sales representatives to Vivint customers. In the hearing on the motion in limine filed in the Elite Matter, the Court and parties referred to these as the "Level One Statements." Pursuant to Rule 801(d)(2), an opposing party's own statement is not hearsay when "[t]he statement is offered against an opposing party and: (A) was made by the party in an individual or representative capacity . . . (D) was made by the party's agent or employee on a matter within the scope of that

---

[2] Rule 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Here, the Audio Recordings are relevant because AP's misrepresentations reported therein form the crux of Vivint's causes of action for, *inter alia*, intentional interference with contractual relations, and unfair business practices and competition. Rule 402 provides: "Relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court." As set forth herein, the Audio Recordings are relevant, admissible evidence because they fall within well-entrenched hearsay exceptions under the Rules.

relationship and while it existed[.]" *Id*. Any statements, including misrepresentations, made by AP's sales representatives are not considered hearsay under Rule 801(d)(2) because they are offered against AP as opposing parties in this case, as agents and employees of AP.[3] Nor is a statement considered hearsay unless it is offered "to prove the truth of the matter asserted in the statement" pursuant to Rule 801(c)(2). Vivint clearly does not offer the misrepresentations of AP sales representatives for their truth; to the contrary, Vivint's lawsuit is premised on the falsity of AP's statements and the resulting damage those falsities have caused Vivint.

Accordingly, the statements of the AP sales representatives are admissible non-hearsay under either of these Rules. *See e.g., Guidance Endontics, LLC v. Dentsply Intern., Inc*., 663 F. Supp. 2d 1138, 1146 (D. Kan. 2009) (in unfair competition case where plaintiff alleged competitors misrepresented its ability to sell its products, disparaged its goods and services, and engaged in other unfair and deceptive conduct, court noted that statements from the sales representative of the defendant competitor to the customer are not hearsay because they are not for the truth of the matter asserted and are vicarious admissions by an opposing party). "The hearsay issue is not whether the representative was being truthful – indeed, [plaintiff] asserts that the statements were false – but whether the statement was made. And the representative's statement qualifies as an admission under Rule 801(d)(2)." *Id*. at 1146. (Emphasis added). In

---

[3] AP cannot in good faith claim it is not a party within the scope of Rule 801(d)(2)(D) based on its sales representatives' misrepresentations during the course of selling AP security systems. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756 (1998) (citing Restatement (Second) of Agency (hereinafter "Restatement") §§ 228(1)(c), 230). "[W]hen a salesperson lies to a customer to make a sale, the tortious conduct is within the scope of employment because it benefits the employer by increasing sales, even though it may violate the employer's policies." *Id*. (Emphasis added).

{01023231-1}                               2

the Elite Matter, Judge Waddoups found that the Level One Statement was not offered for its truthfulness and was therefore non-hearsay. (*See* Hearing Transcript in Elite Matter, at 6:8-14.)

    **B.**    **Statements Made by Vivint Customers to Vivint's Customer Service Employees Are Admissible Under the Business Records Exception of Fed. R. Evid. 803(6) and/or the Residual Exception under Fed. R. Evid. 807 (or, "Level Two Statements").**

The format in which Vivint will admit AP's non-hearsay misrepresentations at trial – through Audio Recordings of its customers reporting the information – is admissible under (i) the business records exception to hearsay pursuant to Fed. R. Evid. 803(6); or (ii) the residual hearsay exception pursuant to Rule 807. This layer of the analysis was referred to in the Elite Matter as the "Level Two Statements." The crux of the issue, as articulated by Judge Waddoups, is not relevance—"they clearly are relevant" (Hearing Transcript, 9:2)—and the fact that Vivint has tape recordings with the customers speaking in their own words is "completely different if we had a Vivint employee here recalling what the customer said." (*See id*. at 9:13-15.)[4] Rather, the pertinent question is if "that form of evidence [is] sufficiently reliable that it should be admissible when it's not subject to cross-examination?" (*Id*. at 9:16-19.) Judge Waddoups concluded in the affirmative and admitted the audio recordings in the Elite Matter. As demonstrated below, the Audio Recordings should be admitted based on the same rationale.

---

[4] Indeed, in *Guidance*, the court found that the customer reports were inadmissible to the extent the plaintiff's employees intended to "pass along" the reports of misrepresentations received by customers. *Id*. at 1146. Declarations from the customers stating the misrepresentations told to them by the defendant sales representatives, however, were admissible. *Id*. at 1147. Here, the Audio Recordings capture the report in the customers' own words, contemporaneous with the original report.

### i.     Business Records Exception

The Audio Recordings are business records prepared by Vivint with information – AP's non-hearsay admissions – supplied by Vivint customers. Rule 803(6) provides that records of regularly conducted activity are not excluded by the rule against hearsay if:

(A)  the record was made at or near the time by — or from information transmitted by — someone with knowledge;
(B)  the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
(C)  making the record was a regular practice of that activity;
(D)  all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
(E)  the opponent does not show that the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). Here, the Audio Recordings satisfy all requirements of Rule 803(6).

First, the record was audio recorded by Vivint contemporaneously with the customers' verbal transmission of the information to the Vivint employee.

Second, the Audio Recordings are kept in the course of Vivint's regularly conducted activity of fielding all customer service-related telephone calls – whether the calls report slams by AP or express an entirely unrelated concern. It is immaterial in this case that the record was prepared with information supplied by Vivint customers who were "not acting in the regular course of business," i.e., "outsiders." *See Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (10th Cir. 1991). In fact, the Tenth Circuit has held:

> [T]he general rule is that [a]ny information provided by . . . an outsider to the business preparing the record[ ] <u>must itself fall within a hearsay exception to be admissible</u> . . . This Court, however, has recognized one exception to the general rule: information provided by an outsider that is included in a business record may come in under the business records exception [i]f the business entity has adequate verification or other assurance of accuracy of the information provided by the outside person.

{01023231-1}                                                  4

*United States v. Blechman*, 657 F.3d 1052, 1064-70 (10th Cir. 2011) (internal quotations and citations omitted) (emphasis added). Here, the information provided by the customers is admissible under the general rule because the information – statements by Defendants – are not hearsay under Rules 801(c)(2) and (d)(2). *See e.g., In re Fleet*, 95 B.R. 319, 331 (E.D. Penn. 1989) (records containing information from outside source admissible when the outsider's statements fall within an exception to the hearsay rule; admitting record of a consumer complaint against a party defendant under Rule 803(6) over objections that records were not prepared by employees of the company; the complaint was an internal record produced by the proponent company and "[t]he information provided by the consumer in the Complaint Form . . . related to representations made by employees of [the defendant company], which would not be considered hearsay since it related to admissions by a party opponent").

Third, making an audio recording of the customers' reports is a regular practice in Vivint's fielding and resolution of customer concerns, again, without regard to the content of the telephone call but as a matter of course for all customer service telephone calls. The Audio Recordings were not created in anticipation of litigation, but culled directly from Vivint's broader customer service database for use at trial.[5]

---

[5] For purposes of satisfying Rule 803(6), there is no difference between the larger customer service database containing all customer service phone calls and the Audio Recordings extracted from that database as relevant evidence of "slams." The Audio Recordings are merely a "summary" of relevant data gleaned from that larger database – they are considered the same "record" for purposes of Rule 803(6). *See, e.g., Health Alliance Network, Inc. v. Continental Cas. Co.*, 245 F.R.D. 121 (S.D.N.Y. 2007) (upholding admission of data compilation culled from broader business records database pursuant to Rule 803(6); as long as original data satisfies business record requirements, "a smaller subset of data provided as evidence from the database is subject to the business records exception to the hearsay rule"). Indeed, summaries or subsets of voluminous data are expressly admissible pursuant to Rule 1006, particularly in the context of

{01023231-1}  5

Fourth, all of these conditions are shown by the qualified witness testimony of Nathan B. Wilcox, Vivint's Chief Compliance Officer in charge of tracking reported slams with Vivint's Customer Service Department, as set forth in Exhibit B, and to be presented via Mr. Wilcox's or similar custodial testimony at trial, if necessary. *See also BP Amoco Chem. Co. v. Flint Hills Res., LLC*, 697 F. Supp. 2d 1001, 1032-33 (N.D. Ill. 2010) ("A party establishes a foundation for admission of business records when it demonstrates through the testimony of a qualified witness that the records were kept in the course of regularly conducted business activity, and that it was the regular practice of that business to make such records[.]").

Fifth, AP cannot show that the source of the information, affected customers, indicates a lack of trustworthiness. These customers spontaneously and unilaterally contacted Vivint, are unrelated to one another, and yet provided substantively identical information about AP, its sales representatives, and the misrepresentations made by those sales representatives. Vivint verifies the customer's identity and contact information for purposes of follow-up questions pursuant to a verbal passcode each caller provides. The customer contact information is available for the parties to verify, question, or cross examine their report by affidavit, deposition, or interview. The Audio Recordings are precisely the type of evidence contemplated by Rule 803(6). *See In re Fleet, supra*; *Ratcliff v. Coca-Cola Bottling Co. of Mid-America*, No. 00-1007-WEB, 2001 WL 310962, at n. 1 (D. Kan. Feb. 28, 2001) (records contemporaneously documenting customer complaints for the truth of the matter asserted are admissible under Rule 803(6) if proper

---

providing business records under Rule 803(6). As explained by the court in *BP Amoco Chem. Co. v. Flint Hills Res., LLC*, 697 F. Supp. 2d 1001, 1032-33 (N.D. Ill. 2010): "Rule 1006 facilitates the presentation of voluminous data at trial . . . If a large amount of data cannot be conveniently examined in court, the parties may be allowed to submit summaries of the data in place of the underlying documents."

foundation can be established). In the Elite Matter, Judge Waddoups ruled that "the statements do meet the requirements of the business records exception for the following reason:"

> I'm satisfied that the purpose of recording the calls had a business purpose other than simply collecting evidence for the purposes of trial and litigation. In other words, they were collected, as I understand the facts, all statements with customers are recorded, we're all familiar with tape recording, this may be recorded, and I understand Vivint's practice to be to record these tape recordings and to use them for purposes of policing its own sales force, as well as collecting information that has relevance to the conduct of its business outside of the purposes of litigation. So I think that level of the business records exception is met. With respect to the statement itself, there's not a question in terms of whether the tape recording accurately reflected what the customer said. And to the extent the customer is then reporting statements that were made that could be interpreted to be disparaging or in the jargon of this industry "slams," that is not offered for the truthfulness of the statement but simply for the fact that the statement was made. (Hearing Transcript, 27:2-25; 28:1.)

### ii.     Residual Exception

Judge Waddoups did not rule on application of the residual exception to the audio recordings in the Elite Matter because he found them admissible under the business records exception. Nonetheless, in the alternative, the Audio Recordings also satisfy the requirements of the residual exception to hearsay under Rule 807. Rule 807 provides that "a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804" [if]:

> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
> (2) it is offered as evidence of a material fact;
> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (4) admitting it will best serve the purposes of these rules and the interests of justice.

Utah R. Evid. 807(a). In this case, each Rule 807 requirement weighs in favor of admitting the Audio Recordings.

First, as set forth above, the Audio Recordings have the necessary "circumstantial guarantees of trustworthiness" and are inherently reliable. The Audio Recordings consist of verbatim recordings made contemporaneously with unsolicited phone calls from unrelated customers, all reporting misrepresentations made by AP, with no motive to lie, and culled directly from Vivint's customer service database kept in the regular course of business. *See F.T.C. v. Figgie*, 994 F.2d 595, 608 (9th Cir. 1993) (letters of customer complaints "have the necessary circumstantial guarantees of trustworthiness" under Rule 807(a)(1) because the letters were sent to the FTC independently from unrelated members of the public, all reported roughly similar experiences suggesting their truthfulness, and the declarants had no motive to lie regarding the substance of their complaint); *In re A.H. Robins Co., Inc.*, 575 F. Supp. 718, 724 (D. Kan. 1983) (customer statements to company employees "are usually admissible under the [residual exception]" because the statements "have a circumstantial guarantee of trustworthiness" when "produced directly from [the company's] corporate files" ); *Flow Control Industries, Inc. v. AMHI Inc.*, 278 F. Supp. 2d 1193, 1197-98 (W.D. Wash. 2003) (holding that "contemporaneous complaints" from potential customers were admissible under Rule 807, as customer communications have "circumstantial guarantee of trustworthiness" and there is little risk that the content of the communications are the "product of faulty perception, memory or meaning, the dangers against which the hearsay rule seeks to guard").

Second, the Audio Recordings are offered as evidence of a "material fact," that is, that AP made misrepresentations to Vivint's customers constituting unfair and deceptive sales practices, and interference with Vivint's contractual relations, and that Vivint customers were actually misled and confused as a result of AP's misrepresentations. *See Flow Control,* 278 F.

Supp. 2d at 1197 (the fact that individuals were confused or did not understand the relationship between defendants and plaintiff's products is material fact).

Third, the contemporaneously recorded Audio Recordings are the most probative evidence available and "reasonable efforts" would not produce more probative evidence. As explained by *Figgie*:

> Conceivably, [the FTC] could bring letter-writers into court to swear, under oath and subject to cross-examination, that the contents of their letters were true. But such efforts would not be reasonable. "It should not be necessary to scale the highest mountains of Tibet to obtain a deposition for use in a $500 damage claim arising from an accident with a postal truck." Furthermore, testimony from letter writers is not likely to be any more reliable than the letters themselves.

*Id*. at 608-09  (citing *Dallas County v. Commercial Union Assurance Co.*, 286 F.2d 388 (5th Cir. 1961) (contemporary report of a fire in a newspaper article "is more reliable, more trustworthy, more competent evidence than the testimony of a witness called to the stand fifty-eight years later.")); *Flow Control*, 278 F. Supp. 2d at 1197 (reasonable efforts would not produce evidence that is more probative than these contemporaneous communications . . . [b]ringing each complainant into court to testify, under oath, that their statements were true would be an unreasonable exercise and would not necessarily result in testimony that is any more trustworthy than the complaints themselves). Here it is no different. At present, Vivint has recordings of approximately 130 slams reported by customers located all over the country. "Reasonable efforts" would, in fact, require the parties to subpoena each witness in out-of-state jurisdictions to attend trial in Utah or be deposed to, at best, reaffirm with diminished memories the testimony captured verbatim in the Audio Recordings.  Doing so would not be more probative than the contemporaneous recordings.

Fourth, the purpose of the Federal Rules of Evidence is "to administer every proceeding

fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination." Fed. R. Evid. 102; *see also Figgie,* at 609 (goal of the federal evidence rules is to make "relevant evidence admissible."); *Flow Control,* at 1197 (admitting the customer communications will make relevant evidence available for consideration and provides an efficient means by which plaintiff can show confusion among far-flung consumers). Requiring the parties to traverse the country taking hundreds of customer depositions or attempting to subpoena each customer to appear at trial will only create "unjustifiable expense and delay" and will not result in testimony that is any more trustworthy than the Audio Recordings themselves. Finally, AP has been given notice under Rule 807(b) of Vivint's intent to introduce the Audio Recordings. Vivint has produced complete copies of the Audio Recordings, in addition to a list identifying, by customer, each specific misrepresentation reflected on the Audio Recordings to be admitted at trial.

Accordingly, the purposes of the Rules of Evidence and the interests of justice weigh heavily in favor of admitting the Audio Recordings into evidence.

## CONCLUSION

In sum, the Audio Recordings are admissible primarily as to the material facts of misrepresentations made by AP, which are not hearsay because they are not offered for their truth and constitute admissions by a party opponent. The medium in which these statements are introduced, through the recorded reports of Vivint customers, are admissible as business records or pursuant to the residual exception to hearsay, as has been held repeatedly by courts—and specifically this Court—in this context. For these reasons, Vivint respectfully requests that the Court rule that the Audio Recordings are admissible evidence for purposes of trial in this matter.

DATED this 25th day of January, 2017.

                                              CLYDE SNOW & SESSIONS

                                              /s/ Timothy R. Pack
                                              Matthew A. Steward
                                              Timothy R. Pack
                                              Shannon K. Zollinger

                                              *Attorneys for Plaintiff Vivint, Inc.*

## CERTIFICATE OF SERVICE

On this 25th day of January, 2017, a true and correct copy of the foregoing **VIVINT, INC.'S MOTION IN LIMINE TO ADMIT AUDIO RECORDINGS** was served on the following via CM/ECF electronic notification:

> Erik A. Olson
> Jason R. Hull
> MARSHALL OLSON & HULL
> Newhouse Building
> 10 Exchange Place, Suite 350
> Salt Lake City, UT 84111
>
> *Attorneys for Defendants*

/s/ Kari J. Peck