# Exhibit E

**U.S. District Court**
**Southern District of Florida (West Palm Beach)**
**CIVIL DOCKET FOR CASE #: 9:12-cv-81120-WPD**

| | |
|---|---|
| ADT LLC v. Security Networks, LLC et al | Date Filed: 10/12/2012 |
| Assigned to: Judge William P. Dimitrouleas | Date Terminated: 06/21/2019 |
| Referred to: Magistrate Judge William Matthewman | Jury Demand: Defendant |
| Case in other court: USCA, 16-15351-D | Nature of Suit: 840 Trademark |
| USCA, 19-10525-A | Jurisdiction: Federal Question |
| Cause: 15:1125 Trademark Infringement (Lanham Act) | |

| 02/27/2017 | 267 | MOTION in Limine *to Exclude ADT's Customer Evidence at Trial* by NorthStar Alarm Services LLC. (Attachments: # 1 Exhibit A)(Chait, Matthew) (Entered: 02/27/2017) |
|---|---|---|

| 03/01/2017 | 276 | RESPONSE in Opposition re 267 MOTION in Limine *to Exclude ADT's Customer Evidence at Trial* filed by ADT LLC. Replies due by 3/8/2017. (McNew, Charles) (Entered: 03/01/2017) |
|---|---|---|

| 03/02/2017 | 279 | ORDER denying 267 without prejudice to renew NorthStar's Motion in Limine to exclude evidence of ADT's customer complaints for the reasons stated on the record during the motion hearing. Signed by Magistrate Judge James M. Hopkins on 3/2/2017. (hky) (Entered: 03/02/2017) |
|---|---|---|

| 03/02/2017 | 281 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge James M. Hopkins: Miscellaneous Hearing on parties' motions in limine (DE 261, 262, 267) held on 3/2/2017, and Final Pretrial Conference held on 3/2/2017. Total time in court: 1 hour(s) : 34 minutes. (Digital 9:31:20) (hky) (Entered: 03/02/2017) |
|---|---|---|

1

```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                  CASE NO. 9:12-cv-81120-DTKH

 3

 4

 5   ADT LLC,

 6              Plaintiff,           March 2, 2017
        vs.                          9:31 a.m.
 7                                   West Palm Beach, Florida
     SECURITY NETWORKS, LLC.,
 8   et al.,

 9              Defendants.          Pages 1 through 67

10

11

12

13          TRANSCRIPT OF MISCELLANEOUS HEARING
               ON PARTIES' MOTIONS IN LIMINE
14        BEFORE THE HONORABLE JAMES M. HOPKINS
               UNITED STATES MAGISTRATE JUDGE
15

16

17   APPEARANCES:

18   For the Plaintiff:            Charles Sanders McNew, Esq.
                                   Richard G. Sander, Esq.
19
     For the Respondent
20   NorthStar Alarm Services:     Matthew Ross Chait, Esq.
                                   Eric Christu, Esq.
21                                 Jonathan Phillip Hart, Esq.

22

23

24   Transcribed By:              Judith M. Wolff
                                   Certified Realtime Reporter
25                                 judymwolff@hotmail.com
```

22

```
1   right to take the deposition of Mr. Christenson, the fact

2   witness that they identified in their witness disclosures, as

3   well.

4          MR. CHAIT:  We have never denied that and when they

5   asked, we said yes.

6          THE COURT:  Okay.

7          MR. CHAIT:  No motion required, Judge.

8          THE COURT:  The next one I want to address is

9   NorthStar's motion in limine to exclude ADT's evidence of

10  customer complaints where the out-of-court declarant was not

11  deposed and the related spreadsheet summaries prepared by ADT.

12  I'm inclined to agree with ADT on this point.

13         As has been pointed out, I have found that the

14  recordings are reliable, and it seems to me at this stage of

15  the proceeding it is necessary for ADT to use that information

16  to attempt to quantify the extent of the damages.  Now,

17  whether they can do it is another matter.

18         And that's something I want to talk a little bit

19  about is how you're going to go about doing that, in an effort

20  to figure out how long this hearing is going to last.

21         But before we get into that, do you want any final

22  word to persuade me of this ruling, other than repeating what

23  you've already said?

24         MR. CHAIT:  I would like to try, your Honor.

25         THE COURT:  Go ahead.
```

1          MR. CHAIT:  Because I think there are some things

2     that haven't been said.

3          So what we're really talking about is whether these

4     recordings fit within the residual rule, and we've obviously

5     had extensive hearings on that.

6          One of the elements of the residual rule is that they

7     have to be -- the evidence has to be evidence of a material

8     fact.  We've already dealt with the Court's correct statement

9     that their argument about law of the case that they asserted

10    in their response last night is not relevant here.

11         THE COURT:  I noted it in the notes, too.

12         MR. CHAIT:  So, I think there are two issues that we

13    have to focus on.  I would like to start with evidence of a

14    material fact because I don't think enough has been said about

15    that.

16         ADT has said in its various filings, Mr. McNew has

17    said it again this morning, they're seeking only compensatory

18    damages.  The Court has recommended 16 violations of the

19    injunction.  Their compensatory damages will have to be

20    necessarily damages that directly flow from those 16

21    violations.

22         Calls with other customers -- because that's what

23    we're really talking about here -- calls with other customers

24    are not probative of that.  This is a contempt proceeding and

25    they are limited, as they have acknowledged, to damages for

1  their proven violations which, right now, is 16.  And that is

2  the most it will be.

3          What they are asking --

4          THE COURT:  I don't think that I agreed with that.  I

5  mean, it seems to me that we have 16 violations.  That I

6  found, anyway.  And I think that they can make the argument --

7  and I think it will be relevant to this argument -- but I

8  think they can make the argument that the 16 violations

9  evidence a pattern or scheme that is not limited to the 16

10  violations.

11          MR. CHAIT:  Your Honor, I respectfully disagree.

12  They cannot make that argument in contempt.  If they had sued

13  us under the Lanham Act, which we've repeatedly said was their

14  choice not to do, then maybe.  But in contempt, there is no

15  case that supports that damages model in the contempt case.

16  They cannot do that.

17          And the Court has already necessarily found that a

18  call does not equal a violation by virtue of the fact that

19  they presented to you 19 and the Court found 16.  So those are

20  three calls right there that the Court said those witnesses,

21  there was no contempt.

22          Now, not only that.  Of the 261 -- and they have a

23  different number, but close to 261 -- about 134 of them

24  concern the so-called upgrade violations.  And the Court found

25  no upgrade violations even on their 16 or their 19.

1          So even if a scheme were relevant, which, again,

2   there is no case that supports that damages model in

3   contempt -- and they're not going to show you one -- the calls

4   of other customers are not probative of a material fact

5   because just because there is a call doesn't mean there is a

6   violation.

7          Now, they cite these cases --

8          THE COURT:  Let me go, give them an opportunity on

9   that point.

10         MR. CHAIT:  Sure, sure.

11         MR. McNew:  Judge, there are plenty of cases that

12   talk about how you measure damages under the act -- I mean, in

13   a contempt proceeding.  And there are Eleventh Circuit cases

14   that say where the violation is an injunction that arose under

15   the trademark law, the trademark measure of damages is an

16   appropriate measure.

17         If what they were saying were correct, then a guy

18   selling knockoff Fendi bags could only receive, in violation

19   of an injunction, would only be able to receive 100 bucks for

20   the violation because they might only be able to prove one

21   sale.

22         THE COURT:  Where are the cases that you're talking

23   about?

24         MR. McNew:  I would have to, again -- we've already

25   offered them in the motion, but I would be happy to provide

1   you with additional authorities.

2            THE COURT:  Okay.

3            MR. CHAIT:  If I may, your Honor?

4            THE COURT:  Um-h'm.

5            MR. CHAIT:  First of all, the trademark cases are

6    trademark cases.

7            THE COURT:  I understand that.

8            MR. CHAIT:  This is not that.

9            The cases that ADT cites, particularly on page 5,

10   there is a series -- a long paragraph on page 5 of their

11   response.  I would like to make a couple general statements

12   about those cases.  And, obviously, we haven't had a lot of

13   time to really get through all of them.

14           First of all, not a single one of those is a contempt

15   case, which is about the most relevant thing I could say about

16   them.  None of them allowed inadmissible evidence to prove

17   damages.

18           What those cases are all talking about, on page 5 of

19   their response, those are all instances of defendants whose

20   conduct made the proof of damages difficult or impossible, and

21   so the courts allowed less reliable evidence in to prove

22   damages because it was the defendant's very conduct that made

23   it impossible to prove.

24           That's not present here.  They haven't alleged that.

25           The Louis Vuitton case that they cite, *Louis Vuitton*

1   *v Spencer Handbags*, 765 F.2d 966, that's a Second Circuit

2   case, they cite for the proposition that the Second Circuit

3   approved a damages award based on a hearsay recording of

4   defendant's remarks regarding the volume of sales.

5        Well, their statement about the case is its own

6   undoing.  The videotaped statements were the defendant's

7   statements.  They were admissions.  That is also not what

8   we're talking about here.

9        So those statements on the videotape came in as

10  admission.  They were not hearsay.  What we're talking about

11  here are recordings of calls with customers that were not

12  under oath, that are not NorthStar, are not alleged to be

13  NorthStar.

14       And, so, while admittedly the Court had suggested or

15  I think said outright at one of the prior hearings that you

16  felt that the trustworthiness element had been met, the Court

17  also did make extensive findings about the fact that these

18  calls were not necessarily reliable.

19       They've been distinguished from the FTC cases that

20  ADT has cited, such as *Figgie*, and have amounted to what the

21  Court called a unilateral run at the witness.

22       So, here, where the Court has already made a

23  determination that a call does not necessarily equal a

24  violation, and where in this contempt case -- and they're not

25  citing you any cases that suggest otherwise because there

1   aren't any -- but where in a contempt case they are limited to

2   their losses for the 16 violations that the Court found, I

3   fail to see the relevance, what material fact these calls go

4   to.

5           THE COURT:  First issue, first.  And let's allow them

6   an opportunity to brief it again, and you, of course, to

7   respond to it.  And similar to the other issue.  If I find

8   that I want to call you back in, we'll come back in.

9           MR. McNew:  Judge, I would just point out that the

10  *Howard Johnson v Khimani* decision, 892 F.2d, 1512, it's an

11  Eleventh Circuit decision from 1990, at page 1519, makes it

12  clear that when a Court is levying sanctions for violation of

13  an injunction arising under the Lanham Act, it can look to the

14  Lanham Act's case law as guidance for the amount of damages to

15  be assessed.  And the Court there had no problems with

16  estimating a damages amount based on its understanding of the

17  facts.  It did not require direct proof to get to where the

18  plaintiff was trying to go.  That's at page 1519.

19          So it's simply not true that this doesn't arise in

20  contempt cases.

21          With respect to their effort to distinguish the case

22  law saying that proof of damages is relaxed, that is a basic

23  rule of tort law.  Again, basic law of remedies.  It goes back

24  a century.

25          They say that they did not make it impossible for us

1   to figure out our damages.  Completely false.  You know, they

2   aren't -- we have no way of tracking what their sales agents

3   are doing in the field.  That is information uniquely within

4   their -- within their knowledge.  And we are left to figure

5   out, from the outside in, what the damages are.

6           We fall squarely within the four corners of that very

7   rich vein of cases.

8           MR. CHAIT:  Your Honor, since we're doing further

9   briefing, we'll address it.  *Howard Johnson*, though, does not

10  stand for the proposition that in a contempt case the Court

11  can allow in evidence of unproven violations.  And that's

12  what's at issue here.  That's all we're talking about.

13          These calls are, at best, evidence of violations

14  never proven.  But they have all of these other issues that

15  the Court has already found.  The lack of reliability, the

16  fact that they were not under oath, the fact that we were not

17  present.

18          *Howard Johnson* and no other case stand for the

19  proposition that you can allow in evidence in a contempt

20  proceeding of unrelated violations.  We're in the damages

21  phase now.  The Court has found 16 violations, and, at best,

22  they can seek damages for those 16 violations.

23          If it's a scheme they want, then contempt is not the

24  right framework.

25          THE COURT:  I'm going to take a close look at it.

1   The *Johnson* -- I just read it myself, you know, the pertinent

2   part.  I'm certainly intrigued enough by the arguments to give

3   it a close look.  I'll give you an opportunity to make your

4   arguments in writing and then to respond in writing.

5        Like I said, there is no reason to rush to judgment

6   on it.  We're going to be taking a look at a couple of issues

7   anyway.  And, likely as not -- because how I rule on this

8   issue is going to impact the length of the proceeding -- we're

9   going to have to get back together to discuss if not the

10  issues that are raised in the two things you're going to

11  brief, but perhaps the implications for the length of the

12  hearing.

13       And I would hope that you all would communicate

14  better about how you plan to conduct the hearing so that we

15  don't waste time at the hearing.  And probably I'm going to

16  want to talk with all of you about that.  So it's most likely

17  that I'm going to call you back in after getting your further

18  pleadings and you can hone in on the length of the hearing a

19  little more closely and how you plan to conduct the hearing.

20       But let's set a hearing date now.

21       MR. McNew:  March 15?

22       MR. CHAIT:  We're not available.

23       2018, I'm available.

24       THE COURT:  Maybe we should also set some deadlines

25  just for those briefs.  How long do you want to do your

```
 1   So I can commit that those dates work for us.  No one needs to
 2   check with me on that.
 3           THE COURT:  Okay.  Anything else for today?
 4           Okay.
 5           MR. CHAIT:  Could I ask just a quick question?  This
 6   is something we had talked about, but it's a little premature.
 7   Mr. Sander and I had discussed electronic presentation at
 8   trial, and we had agreed that it probably made sense to ask
 9   your Honor if your Honor has a preference about that.  To be
10   using the monitors and all that, just to see the exhibits,
11   versus hard copies.
12           THE COURT:  Oh, I'm --
13           MR. CHAIT:  I'm sorry?
14           THE COURT:  I'm a big electronic fan, so ...
15           MR. CHAIT:  Great.  As are we.
16           THE COURT:  Okay.  Thanks.
17           MR. CHAIT:  Thank you, your Honor.
18           MR. McNew:  Thank you, your Honor.
19      (Court recessed at 10:39 a.m., and proceedings continued
20   as follows at 11:10 a.m.:)
21           THE COURT:  We're back on line?
22           COURTROOM DEPUTY:  Yes.
23           THE COURT:  Okay.
24           Recalling ADT versus Security Networks, et al.
25           Counsel, please announce your appearances, again.
```

```
 1              MR. McNEW:  Sanders McNew and Chip Sander for the
 2     plaintiff, ADT.
 3              MR. CHAIT:  Matthew Chait, with Eric Christu and
 4     Jonathan Hart for NorthStar.
 5              MR. O'BRYAN:  John O'Bryan for Vision Security.
 6              THE COURT:  Thank you all for quickly reconvening.
 7              In the interim, I did some more thinking and taking a
 8     look at Howard Johnson's in more better detail and thinking
 9     about all the implications of this.
10              And what started me on the thinking journey was the
11     thought that if the defense is correct, does that mean -- that
12     is, correct on the issue of being limited to the 16 violations
13     that I've identified -- does that mean that I was incorrect in
14     my prior ruling?
15              And, so -- but before I wanted to go down that path
16     too much, I wanted to get you all back here -- and thanks for
17     coming back so quickly.  And I wanted to take a look at Howard
18     Johnson's to see what Howard Johnson's means.  And, so, I'm
19     taking a look at Howard Johnson's, and at the end of 1519, it
20     seems to me, is the really pertinent part of Howard Johnson's.
21              That's at Headnote 10, which says, "the District
22     Court determined Howard Johnson's actual damages by
23     calculating the amount of royalty payments it would have
24     received during the period that the defendants were diluting
25     or using a colorable imitation of its trademark had defendants
```

44

1   been a genuine Howard Johnson's franchise."

2          And in the context of this case, it seems to me that

3   applying that logic to this case, we would be talking about

4   damages during the period that are shown by the 16 violations.

5   And it really doesn't probably make much difference if we go

6   beyond the 16 violations during that period, because we've

7   already established -- or we've already concluded that there

8   were 16 violations during that period so that the defense was

9   in violation during that period.  And we're talking about a

10  relatively discrete period.

11         So it seems to me that -- and, furthermore, the 263

12  or whatever the number is of calls that you have doesn't do

13  much to advance your measure of damages.  I mean, really, what

14  are your measure of damages for that period of time?  Not --

15  do you think you're -- that you're limited to the 16?

16         MR. McNew:  No, sir.

17         THE COURT:  I didn't think so.  So what -- what

18  relevance does the 263 give you?

19         MR. McNew:  Well, your Honor, I -- in terms of the

20  relevance of the testimony --

21         THE COURT:  Can you talk into the mike a little --

22         MR. McNew:  Sure.  I'm sorry.

23         With respect to the relevance of the testimony --

24  relevance of the calls, they support the damages analysis that

25  the experts will offer, which will look at the known instances

1  of disrupted or loss accounts.  And then we'll try to

2  extrapolate from that a number of probable loss over the

3  period.

4        More broadly --

5        THE COURT:  So, what does that mean?  So you're going

6  to say what?

7        MR. McNew:  Well, we're going to have an expert who

8  will opine that for every instance that we are aware of, there

9  were likely a multiplier of instances that we're not aware,

10  and that the data that he's relying on are the call data.

11        I mean, he's going to be looking at who called --

12  which of those people left ADT and signed contracts with

13  NorthStar.  Which ones signed NorthStar contracts and later

14  came back to ADT.  And then we'll have another expert who will

15  assign values, dollar values to those.

16        But beyond that syllogism or equation of loss and

17  disrupted customers over the period, there is also the issue

18  of a loss to ADT's control of its mark, ADT's loss to goodwill

19  and reputation.  And all of the calls would be relevant to

20  that to establish pervasiveness of the conduct and how that

21  has eroded ADT's goodwill and ability to control its

22  trademark.

23        Now, if you're asking -- I guess that answers your

24  question, so I'll stop there.  If you have other questions,

25  I'll be happy to answer them.

1          One thing I would add, if your Honor will hear it?

2          THE COURT:  Go ahead.

3          MR. McNew:  One thing I would add is that I think

4   that this process, this kind of iterative process of, you

5   know, were they bound? did they violate? and, now, how big is

6   the violation? has been useful in some ways.  But I think one

7   way that it has done an injustice to the process is that it

8   has led us all to balkanize what should have been, had we had

9   woken up in time, a singular proceeding.

10          I mean, typically you don't consider liability in a

11  divorce from damage.  And that's an issue we're going to be

12  facing soon in the APT case, as you're well aware of.

13          And, so, to my mind, it is a false construct to say

14  okay, the damages phase -- I mean the liability phase is

15  closed, you've proven 16 violations, what is the loss of those

16  16 violations?

17          What we had understood your Honor to be doing -- and

18  we had a colloquy about this at the December 12th hearing.

19  What I had understood your Honor to be doing was to basically

20  be establishing a threshold and saying okay, so we're going to

21  have this -- you're going to give me your evidence on December

22  16th, and I'm going to consider it.  And if I find violations,

23  then we'll move forward.

24          I don't think that the Court ever intended that to be

25  a final ruling on the full extent of the violations of the

1   injunction.

2         And so now to say, ah-ha, you've only proven 16, so

3   that's what your universe of damages are, is contrary to what

4   the Court ruled on December 12, which was I will determine the

5   extent of the violations in the context of damages.

6         So I object to this kind of, you know, siloed

7   analysis whereas this silo and this silo, and what we're doing

8   now is divorced from what was already done, because that's not

9   the way this was meant to proceed.

10        I mean, this is -- the Court sits in equity.  If, at

11  the end of the day, they were to prevail on an argument that

12  we're cabined to now 16 claims for our damages when we were

13  barred from offering proof of a much larger universe, that

14  would be unfair.

15        THE COURT:  Well, my inclination is that upon

16  re-examination of it, I agree.

17        It seems to me that what the 16 violations did was

18  what I anticipated they would do.  Shows a -- an organized

19  effort to violate the terms of the injunction over the period

20  of time in question.

21        And it shows that it's not just limited to the 16.

22  Rather, NorthStar was violating over the period.  Not limited

23  to those 16.  Not necessarily limited to 263.  Because

24  undoubtedly there were people that were improperly approached

25  who didn't complain to ADT.

1          Now, I don't know how you're going to calculate your

2     damages, but I wouldn't presuppose to decide in advance how

3     many were -- you know, what's the measure of your damages and

4     how you're going to figure that out.

5          Rather, I would just say on the issue at hand, after

6     taking a look at *Howard Johnson's* and applying it to this

7     case, I don't think that we're limited to the 16.  Rather, I

8     think we're limited to damages that occurred as a result of

9     the defendant's conduct during the period of time that the 16

10    violations show there was an organized, widespread violation

11    of the injunction.

12          I'll leave it to your creative minds to figure out

13    what a proper measure of it is.

14          MR. McNew:  That certainly accords with our

15    understanding of where we were and where we should be.

16          MR. CHAIT:  I think we'll brief damages at the

17    appropriate time, but it seems that right now the Court is

18    granting the motion in limine, so I don't -- unless I'm wrong

19    about that, I don't think I need to argue that further.

20          And when we get to the stage of having to prove our

21    damages --

22          THE COURT:  No, no.  Rather, I'm denying the motion

23    in limine.  That is, I'm not saying -- I'm -- I'm saying that

24    it's not limited to the 16.

25          Now, how they figure out what the damages are, that's

```
 1   another matter.  If they think that 263 is relevant to their

 2   measure of damages, I don't know what their -- you know, I

 3   don't know the details of their theory of the measure of

 4   damages.

 5           I would be happy to, even at a later date, to talk

 6   about that in more detail, just in the context of making sure

 7   that the damages phase goes efficiently.  But that's something

 8   we should do, again, after Judge Hurley rules.

 9           MR. CHAIT:  I guess I'm a little confused.

10           I thought your Honor said that the calls, the other

11   26-- 261 (sic) calls are not relevant.  So when I made my

12   comment about granting the motion, I meant --

13           THE COURT:  They may -- they're not highly relevant.

14   They're not relevant to the extent that they don't show that

15   -- in my mind -- that the plaintiff is limited to 263.

16           They may be somewhat relevant from the perspective --

17   and I don't want to prejudge what the plaintiff's measure of

18   damages really is.  I would leave it to them and you to think

19   about what are the -- what did the 16 violations actually

20   show?  And what are the damages as a result of what was shown?

21   How were -- how was the defense violating the injunction?

22           It's apparent to me that the defense wasn't just

23   violating the injunction with the 16 specific instances.

24   Rather, the 16 specific instances showed that it was a bigger

25   problem than that.  I'll leave it to you all to argue over
```

1  what that means.  And the 263 might be relevant to that.  I

2  don't know.  Or it might not be.  It depends upon -- a lot of

3  it depends upon what their valid theory of damages is.

4         I can think of a lot of different measures in talking

5  about that.  And I wouldn't want to limit either side's

6  thinking by me saying this is what I would say.  That's not my

7  role here.  Rather, it's to react to what you all give me.

8         And, so, I think you need to each do a lot of

9  thinking about that.  And I'm happy to reconvene after Judge

10  Hurley -- I mean, this is all academic until Judge Hurley

11  rules on it but, I think we ought to reconvene after Judge

12  Hurley's ruling.

13         MR. McNew:  Your Honor --

14         THE COURT:  And I don't know -- because I don't even

15  know what Judge Hurley's going to say in his ruling about what

16  the 16 -- he may say what the 16 shows or what it doesn't

17  show.  I have no idea.

18         MR. CHAIT:  I think that's certainly true.  I think

19  that the concern we have with allowing the calls into evidence

20  is that, including *Howard Johnson's*, they haven't shown a case

21  that allows them to prove additional liability -- first of

22  all, we bifurcated for a reason.

23         They've proven no liability.  They haven't proven any

24  liability.  The Court's already, as we talked about in the

25  first part of this hearing, the Court's already expressed

```
 1   considerable concerns and issues with what's wrong with
 2   relying on these calls to prove liability.
 3           But it seems that at this point, you know, Howard
 4   Johnson involved one contemptuous act, being a franchise.  And
 5   I think stands for the proposition that you get the damages
 6   flowing from that one act.
 7           Here --
 8           THE COURT:  During the period of the violation.
 9           MR. CHAIT:  Right.  But --
10           THE COURT:  But --
11           MR. CHAIT:  But that's an ongoing, singular violation
12   of being a franchise.
13           Here, these are discrete acts that started and
14   stopped usually within minutes of each other.  Half an hour or
15   whatever it winds up being.
16           THE COURT:  And that's what I'm saying.  They don't
17   merely represent those discrete arguments.  They show a
18   violation over the period of time that the scheme -- I'll call
19   it a scheme -- the scheme was in place.
20           MR. CHAIT:  I think that in a Lanham Act case --
21   which this is not -- that might work.  But I still haven't
22   seen a contempt case where the plaintiff or the moving party
23   has been able to get damages based on a concept like that.
24           THE COURT:  That's why I read from Howard Johnson's.
25   Howard Johnson's stands for that proposition, in my mind.
```

1          It says "During the period that the defendants were

2    diluting or using a color able imitation of the its trademark.

3    That is, during the period they were in violation."

4          The 16 discrete instances shows that, over a period,

5    the defense was in violation.  That's what it shows to me.

6          MR. CHAIT:  I think I understand now the Court's

7    ruling.  I think, respectfully, that the violation in *Howard*

8    *Johnson* is of a different nature than the violation here.

9    Because in *Howard Johnson* they were looking at a period of the

10   violation, because it's the same violation.

11         Here, one violation doesn't mean another.  It could

12   have happened once, it could have happened more than once.

13   they proved it happened 16 times --

14         THE COURT:  I understand.

15         MR. CHAIT:  -- but that doesn't mean --

16         THE COURT:  I understand your point.  It doesn't

17   necessarily mean but, yes, I am concluding it does mean that

18   16 is enough.  That's what I'm concluding.

19         And, you know, I said that all along, from the very

20   beginning.  It's like they don't have to come in and -- it's

21   like in any fraud case.  You don't have to come in and say,

22   you know, 200 examples of fraudulent behavior is enough to

23   show a scheme to defraud.  No, you don't have to do that.

24         You know, I opined early on that you really didn't

25   have to show more than 10.  They came in and showed 16.  At a

53

1   certain point the scales are tipped towards showing, you know,

2   these aren't 16 random isolated instances.

3         MR. CHAIT:  I understand the Court's point.

4         THE COURT:  And I understand your point, too.  And,

5   you know, you're welcome to make that argument.

6         MR. CHAIT:  I have a question, actually.

7         THE COURT:  Sure.

8         MR. CHAIT:  So insofar -- well, not insofar.

9         The Court is denying the motion in limine.  Are we --

10   is that without prejudice, for us to still argue the

11   inadmissibility of these calls?

12         THE COURT:  Absolutely.

13         MR. CHAIT:  Okay.

14         THE COURT:  Absolutely.  We can talk about that some

15   more after Judge Hurley rules.

16         MR. CHAIT:  Okay.

17         THE COURT:  Because he may -- as long as we're -- who

18   knows what he's going to do.

19         MR. CHAIT:  Right.  And I think it's important to us

20   that we preserve the right to argue these calls are

21   inadmissible because they don't meet any hearsay exception, as

22   we've laid out in our motion.  So as long as we're without

23   prejudice to still make that argument, then that was my

24   question.

25         THE COURT:  And some of the thinking goes, as you

1   well know in that last equation on the hearsay part, some of

2   that goes into the necessity of it.  And, you know, I haven't

3   thought through well enough the necessity of those 263 calls

4   given what I've just articulated about what the 16 instances

5   mean to me.  And I want to see a well-formulated theory of

6   damages before I decide whether or not the 263 is necessary.

7           MR. CHAIT:  And it's on that basis that the Court's

8   denying the motion.

9           THE COURT:  Correct.

10          MR. CHAIT:  Understood.  Thank you, your Honor.

11          MR. SANDER:  Judge, this is helpful.  We have now, I

12  believe, one supplemental brief that we have to give you on

13  intent.  Let me make this suggestion.

14          Rather than -- we treat the 17th as an outside date.

15  I think I can probably get that out fairly quickly.  And then,

16  if they can file a response seven days after we serve -- I'll

17  certainly have it to you no later than the 17, but --

18          THE COURT:  That's fine.  I mean, that was always my

19  understanding, that theirs would be a week after you.

20          MR. SANDER:  Okay.  So if I can get it to it sooner,

21  I certainly will.

22          THE COURT:  Right.

23          MR. CHAIT:  That was our understanding.

24          THE COURT:  Yes.  Anything else?  Before we adjourn

25  again?