```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF FLORIDA
 2                    MIAMI DIVISION
 3    ADT, LLC; and The ADT Security      )
      Corporation,                        )
 4                                        )
         Plaintiffs/Counterclaim          )
 5         Defendants,                    )
                                          ) Cause No.
 6    vs.                                 ) 20-cv-23391-
                                          ) COOKE/GOODMAN
 7    VIVINT SMART HOME, INC., f/k/a      )
      MOSAIC ACQUISITION CORP.; and       )
 8    LEGACY VIVINT SMART HOME, INC.,     )
      f/k/a VIVINT SMART HOME, INC.,      )
 9                                        )
         Defendants/Counterclaimants.     )
10
            VIDEO ZOOM DEPOSITION OF TERRELL HARRIS
11       Taken on behalf of the Plaintiffs/Counterclaim
                          Defendants
12                     December 9, 2021
13                  Sheryl A. Pautler, RPR,
               MO-CCR 871, IL-CSR 084-004585
14
15         (The proceedings began at 10:39 a.m.)
16
17
18
19
20
21
22
23
24
25       Job No. CS4979796
```

| Page 2 | Page 4 |
|---|---|
| 1  QUESTIONS BY:                         PAGE NO.<br>2  Mr. Eblen                              6<br>3  Mr. Steward                            13<br>4<br>5           INDEX OF EXHIBITS<br>6           (No exhibits marked.) | 1     A P P E A R A N C E S<br>2   For the Plaintiffs/Counterclaim Defendants via Zoom:<br>3<br>         Mr. Charles C. Eblen<br>4        Shook, Hardy & Bacon, LLP<br>         2555 Grand Boulevard<br>5        Kansas City, Missouri  64108<br>         816-474-6550<br>6        Ceblen@shb.com<br>7<br>     For the Defendants/Counterclaimants via<br>8   Zoom:<br>9        Mr. Matthew A. Steward<br>         Clyde Snow & Sessions<br>10       201 South Main Street, Suite 1300<br>         Salt Lake City, Utah  84111<br>11       801-322-2516<br>         Mas@clydesnow.com<br>12<br>13   For the Defendants/Counterclaimants via Zoom:<br>14<br>         Mr. Gregory W. Herbert<br>15       Ms. Savannah Young<br>         Greenberg Traurig, P.A.<br>16       450 South Orange Avenue, Suite 650<br>         Orlando, Florida  32801<br>17       407-420-1000<br>         Herbert@gtlaw.com<br>18<br>19   The Court Reporter:<br>20       Ms. Sheryl Pautler<br>         Veritext Legal Solutions<br>21<br>22<br>23   The Videographer:<br>24<br>         Mr. Rick Deasley<br>25       Veritext Legal Solutions |

| Page 3 | Page 5 |
|---|---|
| 1        UNITED STATES DISTRICT COURT<br>          SOUTHERN DISTRICT OF FLORIDA<br>2            MIAMI DIVISION<br>3  ADT, LLC; and The ADT Security    )<br>   Corporation,                      )<br>4                                     )<br>     Plaintiffs/Counterclaim          )<br>5    Defendants,                      )<br>                                      ) Cause No.<br>6  vs.                               ) 20-cv-23391-<br>                                      ) COOKE/GOODMAN<br>7  VIVINT SMART HOME, INC., f/k/a    )<br>   MOSAIC ACQUISITION CORP.; and     )<br>8  LEGACY VIVINT SMART HOME, INC.,   )<br>   f/k/a VIVINT SMART HOME, INC.,    )<br>9                                     )<br>     Defendants/Counterclaimants.     )<br>10<br>11     ZOOM VIDEO DEPOSITION OF WITNESS, TERRELL<br>12  HARRIS, produced, sworn, and examined on the<br>13  9th day of December, 2021, between the hours of<br>14  ten o'clock in the forenoon and eleven o'clock<br>15  in the forenoon of that day, via Veritext Zoom,<br>16  before SHERYL A. PAUTLER, RPR, Certified<br>17  Shorthand Reporter within and for the State of<br>18  Illinois and Certified Court Reporter within<br>19  and for the State of Missouri, in a certain<br>20  cause now pending before the United States<br>21  District Court, Southern District of Florida,<br>22  Miami Division, wherein ADT, LLC, et al. are<br>23  the Plaintiffs, and VIVINT SMART HOME, INC., et<br>24  al. are the Defendants.<br>25 | 1       IT IS HEREBY STIPULATED AND AGREED, by and<br>2  between counsel for Plaintiffs and counsel for<br>3  Defendants, that the deposition of TERRELL<br>4  HARRIS may be taken in shorthand by Sheryl A.<br>5  Pautler, shorthand reporter, and afterwards<br>6  transcribed into typewriting; and the signature<br>7  of the witness is expressly waived.<br>8            * * * * *<br>9       TERRELL HARRIS,<br>10  of lawful age, being produced, sworn and examined on<br>11  behalf of the Plaintiffs/Counterclaim Defendants,<br>12  deposes and says:<br>13       THE VIDEOGRAPHER:  Today is Thursday,<br>14  December 9, 2021.  We'll go on the record at<br>15  10:39 a.m.  We are here to take the deposition<br>16  of Terrell Harris in Case No.<br>17  20-cv-23391-Cooke/Goodman in the U.S. District<br>18  Court for the Southern District of Florida,<br>19  Miami Division.<br>20       Will counsel state their names and<br>21  affiliations for the record, please.<br>22       MR. EBLEN:  Yes.  Charlie Eblen for ADT<br>23  and CPI.<br>24       MR. STEWARD:  Matt Steward and Greg<br>25  Herbert on behalf of the defendant, Vivint. |

1  THE VIDEOGRAPHER: Will the court reporter
2  please swear the witness.
3      (Whereupon the witness responded
4       "yes, ma'am" to the oath
5       administered by the court
6       reporter.)
7      [EXAMINATION]
8  QUESTIONS BY MR. EBLEN:
9  Q. Good morning. How are you today?
10 A. Me?
11 Q. Yeah.
12 A. Oh, pretty good.
13 Q. Could you introduce yourself, please, for
14 the jury?
15 A. My name is Terrell Harris.
16 Q. Mr. Harris, where do you live?
17 A. Kansas City, Missouri.
18 Q. What's your address?
19 A. 4705 Harvard Avenue.
20 Q. Who else lives with you at that address?
21 A. My wife, Alaina Harris.
22 Q. Anyone else?
23 A. No, sir.
24 Q. How long have you lived there?
25 A. Three -- three years.

1  Q. Give us a little bit of an idea about your
2  educational history and your job history.
3  A. My education history, I have a master's
4  degree. Education -- I'm sorry. Job, I worked at
5  the Kansas Star for ten years. Then I worked at
6  Shook for nine.
7  Q. What was your position at Shook?
8  A. Litigation support.
9  Q. Did you work for Shook or a vendor?
10 A. I worked for a vendor. Alexa -- Accela.
11 Q. And was Accela your employer?
12 A. Yes, sir.
13 Q. All right. I would like to direct you to,
14 in September of 2021, did you have an alarm system
15 with the company called Vivint?
16 A. No, I did not have.
17     MR. STEWARD: I'm sorry. Objection, form,
18 leading.
19 Q. (By Mr. Eblen) Who was your alarm provider
20 in September of 2021?
21 A. ADT.
22 Q. Have you ever had a contract for any type
23 of product or service with a company called Vivint?
24     MR. STEWARD: Objection.
25 A. No.

1      MR. STEWARD: I'm sorry, Mr. Harris. I'm
2  going to, from time to time, lodge an objection
3  to the question.
4      Objection to form, leading. Thank you. I
5  apologize for interrupting.
6  Q. (By Mr. Eblen) You can answer.
7  A. No, sir.
8  Q. All right. Do you recall in September of
9  2021 any door-to-door solicitors approaching your
10 home?
11 A. Yes, sir.
12     MR. STEWARD: I'm sorry. Same objection,
13 form, leading.
14 Q. (By Mr. Eblen) What company approached
15 your home in September of 2021?
16 A. Vivint.
17 Q. All right. Okay.
18     MR. STEWARD: I'm going to apologize. Let
19 me make an objection. Form, foundation.
20 Q. (By Mr. Eblen) I'm going to -- I'm going
21 to share my screen with you and play a video for you
22 real quick. Okay? All right. Can you see what's
23 pulled up on the screen here, Mr. Harris?
24 A. Yes, sir.
25 Q. Do you recognize the still image of what's

1  being depicted on the screen right here?
2  A. Yes.
3  Q. What do you see?
4  A. I see a gentleman holding an iPad type
5  device, trying to hide his face.
6  Q. And do you recognize -- looking out from
7  that advantage point, can you tell where that is?
8  A. That's -- that's my home.
9  Q. And where was this image captured?
10 A. On my front porch.
11 Q. And what captured that image?
12 A. Ring camera.
13 Q. To your knowledge, how does the Ring
14 camera work?
15 A. It captures motion.
16 Q. And when it captures motion, based on your
17 experience using that device, what does it do?
18 A. It records video and audio.
19 Q. All right. I'm going to go ahead and hit
20 play on this. And just sit tight. I'm going to
21 play the video all the way through. Okay?
22 A. Yes, sir.
23     (Video playing.)
24 Q. (By Mr. Eblen) Okay. Were you able to
25 watch that okay, Mr. Harris?

Page 10

1  A. Yes, sir.
2  Q. All right. And did the video that we
3  watched, did that fairly and accurately represent
4  what you recall occurring on your doorstep?
5  A. Yes, sir.
6  Q. Okay. And you see in the lower right-hand
7  of what's still on the screen on the video, does
8  it -- does it appear that there's a date and time on
9  there?
10  A. Yes.
11  Q. Is that date and time stamp, to your
12  recollection, is that accurate?
13  A. Yes.
14  Q. Early on in the process, did you hear the
15  gentleman on your doorstep say something to the
16  effect of that they were the ones who installed your
17  equipment; did you hear that?
18  A. Yes, I did. That's when I started to get
19  angry.
20  Q. Was that an accurate representation that
21  he made to you?
22  A. No. Because I was -- I was in the home
23  when ADT installed it.
24  Q. All right. I'm going to take this -- this
25  down now.

Page 11

1      Just tell me generally, how did you
2  feel about that transaction that you had or that
3  interaction that you had with the gentleman from
4  Vivint?
5  A. Angry. And I was a little worried because
6  he did have my correct information as far as the
7  name, what I was paying and my phone number. So I
8  was just -- I did look -- look them up after he
9  left.
10  Q. Do you have any knowledge as to how he
11  obtained the information that you just described?
12  A. No, I don't.
13  Q. Did you do any further investigation to
14  determine how he had that information about your
15  account?
16  A. I just looked up the company on Facebook
17  and Google. But, no, I have no idea how he got my
18  information.
19  Q. So after this video was captured, how were
20  you able to access it if you want to, to -- either
21  to view it or send it to someone else?
22  A. You go into the Ring app.
23  Q. And did you do that after this
24  transaction?
25  A. Yes.

Page 12

1  Q. Did you watch the transaction again
2  afterwards?
3  A. Yes, I did.
4  Q. And any time that you've looked at it, has
5  what's been depicted on the recording been
6  consistent with your memory of what occurred that
7  day?
8  A. Yes.
9  Q. So other than the gentleman at the door,
10  there were two voices that are on the recording.
11  Who are the two voices?
12  A. That's me and my wife.
13  Q. Since the recording, has anything happened
14  to your knowledge that altered what's depicted on
15  the Ring doorbell video?
16  A. No.
17  Q. Are you working right now, Mr. Harris?
18  A. I am not.
19  Q. Okay. Why not?
20  A. I had a stroke in 2016. And I did come
21  back to work after a year and a half, but then COVID
22  happened and I was let go.
23  Q. And how are you doing now?
24  A. Okay. Still doing therapy. You can see I
25  got some -- a little bit of droop and I still have

Page 13

1  paralysis in my right hand.
2  Q. Were you able to identify the name of the
3  gentleman from Vivint?
4  A. I was not.
5  Q. Did you call Vivint to report his conduct?
6  A. I -- I did on Facebook. I found them.
7  Q. Did you send the video to Vivint?
8  A. I did not send the video to Vivint. I
9  sent it to ADT.
10  Q. Did you ever call Vivint?
11  A. No. Just that brief Facebook interaction.
12  Q. Did they ever respond to you?
13  A. They did.
14  Q. And what was their response?
15  A. That they would look into it. And they
16  thanked me for contacting them.
17  Q. Did you ever hear from Vivint after you
18  reported the conduct to them on Facebook?
19  A. No.
20      MR. EBLEN: All right. Those are all the
21    questions I have for you today. Thank you.
22        [EXAMINATION]
23  QUESTIONS BY MR. STEWARD:
24  Q. Hi, Mr. Harris. My name's Matt Steward
25  and I'm one of the attorneys who represents Vivint.

1 Thank you for being here today. I just have a few
2 questions for you if that's okay.
3     A. Yes, sir.
4     Q. You mentioned that you had worked for the
5 law firm of Shook Hardy Bacon; is that right?
6     A. Yes, sir.
7     Q. And approximately what were the dates that
8 you worked for Shook Hardy Bacon?
9     A. I think I started in April of 2009. Wait.
10 No. I lost my -- I got -- I lost my job at the Star
11 in 2009. I started at -- the company changed names.
12 It wasn't Novatech. It was something else back
13 then. I can't remember the company's name when I
14 first started at Shook.
15     Q. That's fine.
16         When did you last provide any work or
17 services for the Shook Law Firm?
18     A. I think that was in '19.
19     Q. Okay. Did you ever work on any matters
20 that involved the company ADT?
21     A. No, sir.
22     Q. Okay. Did you ever work with Mr. Eblen?
23     A. To my knowledge, no. Can I --
24     Q. Yes, please. Go ahead.
25     A. Like in my department that I worked with

1 that partners with Shook, I worked with the --
2 usually with the assistants and the -- oh, my
3 goodness, what are the names?
4     Q. Maybe the paralegals?
5     A. Legals. Thank you. Paralegals. So very
6 rarely directly with the attorneys.
7     Q. Okay. Thank you for you that.
8         It sound -- it sounded to me like you
9 maybe joined the -- the interaction with the sales
10 representative after the interaction had started.
11 Is that right or were you present the whole time
12 with your wife?
13     A. No. That's -- that is correct. I was
14 listening to my wife.
15     Q. And what's your wife's -- what's your
16 wife's name?
17     A. Alaina.
18     Q. Alaina.
19     A. Harris.
20     Q. Did your interaction with the sales
21 representative depicted in that video cause you to
22 cancel your ADT service?
23     A. No, it did not.
24     Q. Did that interaction cause you to suspend
25 or delay your monthly payment to ADT?

1     A. No.
2     Q. Are you still an ADT customer?
3     A. Yes, sir.
4     Q. Do you know the duration of your ADT
5 contract, when it expires?
6     A. I want to say three years, but I'm not
7 positive.
8     Q. Okay. And do you recall, you mentioned
9 you had a Facebook interaction with somebody. Do
10 you recall the substance of your post? Sounds like
11 you didn't provide the Ring video, but that you
12 provided some description of the interaction; is
13 that right?
14     A. Yes.
15     Q. And let me ask, do you know approximately
16 when that was? Was it shortly after the interaction
17 on September, I think, 25?
18     A. It would have been that same day.
19     Q. The same day. Okay.
20         And that was -- sounded like that was
21 the only contact you had with Vivint, was that
22 Facebook post?
23     A. Yes.
24     Q. And you had indicated that you had looked
25 the rep up. But I just wanted to clarify. Sounds

1 like you looked up the company, not the individual
2 rep; is that right?
3     A. Because I didn't get his name on his
4 badge. So, no, I did not look up the individual.
5     Q. Okay.
6         MR. STEWARD: Those are all the questions
7 I have. Thanks for being here. I did want to
8 let you know that based on your providing the
9 Ring video, the sales representative has been
10 terminated. His employment has been
11 terminated. So I did want to let you know
12 that.
13         MR. EBLEN: I don't have any additional
14 questions either. Thank you very much for your
15 time today, Mr. Harris.
16         MR. STEWARD: I appreciate it. Thank you,
17 Mr. Harris. Have a good holiday.
18         THE COURT REPORTER: Signature?
19 Signature.
20         MR. EBLEN: Mr. Harris, you have the
21 opportunity, if you wish, to get a copy of the
22 transcript that's generated from this
23 proceeding today. And if want to read it and
24 make, you know, changes for typos and things
25 like that, you can. You don't have to. You

5 (Pages 14 - 17)

Case 3:20-cv-00504-FDW-DSC   Document 113-2   Filed 01/05/22   Page 5 of 13
Veritext Legal Solutions
800-567-8658                                                   973-410-4098

Page 18

1  can waive it and not do that. But it's
2  entirely up to you.
3      THE WITNESS: I'll waive it.
4      MR. EBLEN: Okay. Thank you.
5      THE VIDEOGRAPHER: We're going off the
6  record at 11:00 a.m.
7          (Whereupon signature was
8          waived.)
9          (Off the record at 11:00 a.m.)

Page 19

1      CERTIFICATE OF REPORTER
2      I, Sheryl A. Pautler, RPR, Certified Court
3  Reporter (MO), Certified Shorthand Reporter
4  (IL), do hereby certify that the witness whose
5  testimony appears in the foregoing deposition
6  was duly sworn by me; the testimony of said
7  witness was taken by me to the best of my
8  ability and thereafter reduced to typewriting
9  under my direction; that I am neither counsel
10 for, related to, nor employed by any of the
11 parties to the action in which this deposition
12 was taken, and further that I am not a relative
13 or employee of any attorney or counsel employed
14 by the parties thereto, nor financially or
15 otherwise interested in the outcome of the
16 action.
17
18
19  *[signature: Sheryl Pautler]*
20      Certified Court Reporter (MO)
21      Certified Shorthand Reporter (IL)

[& - covid]   Page 1

**&**
& 4:4,9

**0**
084-004585 1:13

**1**
10:39 1:15 5:15
11:00 18:6,9
13 2:3
1300 4:10
18606 19:19
19 14:18

**2**
20 1:6 3:6 5:17
2009 14:9,11
201 4:10
2016 12:20
2021 1:12 3:13 5:14 7:14,20 8:9 8:15
23391 1:6 3:6 5:17
25 16:17
2555 4:4

**3**
32801 4:16

**4**
407-420-1000 4:17
450 4:16
4705 6:19

**6**
6 2:2
64108 4:5
650 4:16

**8**
801-322-2516 4:11
816-474-6550 4:5
84111 4:10
871 1:13

**9**
9 1:12 5:14
9th 3:13

**a**
a.m. 1:15 5:15 18:6,9
ability 19:8
able 9:24 11:20 13:2
accela 7:10,11
access 11:20
account 11:15
accurate 10:12,20
accurately 10:3
acquisition 1:7 3:7
action 19:11,16
additional 17:13
address 6:18,20
administered 6:5
adt 1:3,3 3:3,3,22 5:22 7:21 10:23 13:9 14:20 15:22 15:25 16:2,4
advantage 9:7
affiliations 5:21
age 5:10
agreed 5:1
ahead 9:19 14:24
al 3:22,24
alaina 6:21 15:17 15:18
alarm 7:14,19
alexa 7:10
altered 12:14
angry 10:19 11:5
answer 8:6
apologize 8:5,18
app 11:22
appear 10:8
appears 19:5
appreciate 17:16
approached 8:14
approaching 8:9
approximately 14:7 16:15
april 14:9
assistants 15:2
attorney 19:13
attorneys 13:25 15:6
audio 9:18
avenue 4:16 6:19

**b**
back 12:21 14:12
bacon 4:4 14:5,8
badge 17:4
based 9:16 17:8
began 1:15
behalf 1:11 5:11 5:25
best 19:7
bit 7:1 12:25
boulevard 4:4
brief 13:11

**c**
c 4:1,3
call 13:5,10
called 7:15,23
camera 9:12,14
cancel 15:22
captured 9:9,11 11:19
captures 9:15,16
case 5:16
cause 1:5 3:5,20 15:21,24
ccr 1:13
ceblen 4:6
certain 3:19
certificate 19:1
certified 3:16,18 19:2,3,20,21
certify 19:4
changed 14:11
changes 17:24
charles 4:3
charlie 5:22
city 4:5,10 6:17
clarify 16:25
clyde 4:9
clydesnow.com 4:11
come 12:20
company 7:15,23 8:14 11:16 14:11 14:20 17:1
company's 14:13
conduct 13:5,18
consistent 12:6
contact 16:21
contacting 13:16
contract 7:22 16:5
cooke 1:6 3:6 5:17
copy 17:21
corp 1:7 3:7
corporation 1:3 3:3
correct 11:6 15:13
counsel 5:2,2,20 19:9,13
counterclaim 1:4 1:11 3:4 4:2 5:11
counterclaimants 1:9 3:9 4:7,13
court 1:1 3:1,18 3:21 4:19 5:18 6:1 6:5 17:18 19:2,20
covid 12:21

**cpi** 5:23
**cs4979796** 1:25
**csr** 1:13
**customer** 16:2
**cv** 1:6 3:6 5:17

**d**

**date** 10:8,11
**dates** 14:7
**day** 3:13,15 12:7 16:18,19
**deasley** 4:24
**december** 1:12 3:13 5:14
**defendant** 5:25
**defendants** 1:5,9 1:11 3:5,9,24 4:2 4:7,13 5:3,11
**degree** 7:4
**delay** 15:25
**department** 14:25
**depicted** 9:1 12:5 12:14 15:21
**deposes** 5:12
**deposition** 1:10 3:11 5:3,15 19:5 19:11
**described** 11:11
**description** 16:12
**determine** 11:14
**device** 9:5,17
**direct** 7:13
**direction** 19:9
**directly** 15:6
**district** 1:1,1 3:1,1 3:21,21 5:17,18
**division** 1:2 3:2,22 5:19
**doing** 12:23,24
**door** 8:9,9 12:9
**doorbell** 12:15

**doorstep** 10:4,15
**droop** 12:25
**duly** 19:6
**duration** 16:4

**e**

**e** 4:1,1
**early** 10:14
**eblen** 2:2 4:3 5:22 5:22 6:8 7:19 8:6 8:14,20 9:24 13:20 14:22 17:13 17:20 18:4
**education** 7:3,4
**educational** 7:2
**effect** 10:16
**either** 11:20 17:14
**eleven** 3:14
**employed** 19:10 19:13
**employee** 19:13
**employer** 7:11
**employment** 17:10
**entirely** 18:2
**equipment** 10:17
**et** 3:22,23
**examination** 6:7 13:22
**examined** 3:12 5:10
**exhibits** 2:5,6
**experience** 9:17
**expires** 16:5
**expressly** 5:7

**f**

**f** 1:7,8 3:7,8
**face** 9:5
**facebook** 11:16 13:6,11,18 16:9,22
**fairly** 10:3

**far** 11:6
**feel** 11:2
**financially** 19:14
**fine** 14:15
**firm** 14:5,17
**first** 14:14
**florida** 1:1 3:1,21 4:16 5:18
**foregoing** 19:5
**forenoon** 3:14,15
**form** 7:17 8:4,13 8:19
**found** 13:6
**foundation** 8:19
**front** 9:10
**further** 11:13 19:12

**g**

**generally** 11:1
**generated** 17:22
**gentleman** 9:4 10:15 11:3 12:9 13:3
**give** 7:1
**go** 5:14 9:19 11:22 12:22 14:24
**going** 8:2,18,20 9:19,20 10:24 18:5
**good** 6:9,12 17:17
**goodman** 1:6 3:6 5:17
**goodness** 15:3
**google** 11:17
**grand** 4:4
**greenberg** 4:15
**greg** 5:24
**gregory** 4:14
**gtlaw.com** 4:17

**h**

**half** 12:21
**hand** 10:6 13:1
**happened** 12:13 12:22
**hardy** 4:4 14:5,8
**harris** 1:10 3:12 5:4,9,16 6:15,16 6:21 8:1,23 9:25 12:17 13:24 15:19 17:15,17,20
**harvard** 6:19
**hear** 10:14,17 13:17
**herbert** 4:14,17 5:25
**hi** 13:24
**hide** 9:5
**history** 7:2,2,3
**hit** 9:19
**holding** 9:4
**holiday** 17:17
**home** 1:7,8,8 3:7,8 3:8,23 8:10,15 9:8 10:22
**hours** 3:13

**i**

**idea** 7:1 11:17
**identify** 13:2
**il** 1:13 19:4,21
**illinois** 3:18
**image** 8:25 9:9,11
**index** 2:5
**indicated** 16:24
**individual** 17:1,4
**information** 11:6 11:11,14,18
**installed** 10:16,23
**interaction** 11:3 13:11 15:9,10,20

| | | | |
|---|---|---|---|
| 15:24 16:9,12,16 | **llp** 4:4 | **neither** 19:9 | **play** 8:21 9:20,21 |
| **interested** 19:15 | **lodge** 8:2 | **nine** 7:6 | **playing** 9:23 |
| **interrupting** 8:5 | **long** 6:24 | **novatech** 14:12 | **please** 5:21 6:2,13 |
| **introduce** 6:13 | **look** 11:8,8 13:15 | **number** 11:7 | 14:24 |
| **investigation** | 17:4 | **o** | **point** 9:7 |
| 11:13 | **looked** 11:16 12:4 | **o'clock** 3:14,14 | **porch** 9:10 |
| **involved** 14:20 | 16:24 17:1 | **oath** 6:4 | **position** 7:7 |
| **ipad** 9:4 | **looking** 9:6 | **objection** 7:17,24 | **positive** 16:7 |
| **j** | **lost** 14:10,10 | 8:2,4,12,19 | **post** 16:10,22 |
| **job** 1:25 7:2,4 | **lower** 10:6 | **obtained** 11:11 | **present** 15:11 |
| 14:10 | **m** | **occurred** 12:6 | **pretty** 6:12 |
| **joined** 15:9 | **ma'am** 6:4 | **occurring** 10:4 | **proceeding** 17:23 |
| **jury** 6:14 | **main** 4:10 | **oh** 6:12 15:2 | **proceedings** 1:15 |
| **k** | **marked** 2:6 | **okay** 8:17,22 9:21 | **process** 10:14 |
| **k** 1:7,8 3:7,8 | **mas** 4:11 | 9:24,25 10:6 | **produced** 3:12 |
| **kansas** 4:5 6:17 | **master's** 7:3 | 12:19,24 14:2,19 | 5:10 |
| 7:5 | **matt** 5:24 13:24 | 14:22 15:7 16:8 | **product** 7:23 |
| **know** 16:4,15 17:8 | **matters** 14:19 | 16:19 17:5 18:4 | **provide** 14:16 |
| 17:11,24 | **matthew** 4:9 | **ones** 10:16 | 16:11 |
| **knowledge** 9:13 | **memory** 12:6 | **opportunity** 17:21 | **provided** 16:12 |
| 11:10 12:14 14:23 | **mentioned** 14:4 | **orange** 4:16 | **provider** 7:19 |
| **l** | 16:8 | **orlando** 4:16 | **providing** 17:8 |
| **lake** 4:10 | **miami** 1:2 3:2,22 | **outcome** 19:15 | **pulled** 8:23 |
| **law** 14:5,17 | 5:19 | **p** | **q** |
| **lawful** 5:10 | **missouri** 3:19 4:5 | **p** 4:1,1 | **question** 8:3 |
| **leading** 7:18 8:4 | 6:17 | **p.a.** 4:15 | **questions** 2:1 6:8 |
| 8:13 | **mo** 1:13 19:3,20 | **page** 2:1 | 13:21,23 14:2 |
| **left** 11:9 | **monthly** 15:25 | **paralegals** 15:4,5 | 17:6,14 |
| **legacy** 1:8 3:8 | **morning** 6:9 | **paralysis** 13:1 | **quick** 8:22 |
| **legal** 4:20,25 | **mosaic** 1:7 3:7 | **parties** 19:11,14 | **r** |
| **legals** 15:5 | **motion** 9:15,16 | **partners** 15:1 | **r** 4:1 |
| **listening** 15:14 | **n** | **pautler** 1:13 3:16 | **rarely** 15:6 |
| **litigation** 7:8 | **n** 4:1 | 4:20 5:5 19:2 | **read** 17:23 |
| **little** 7:1 11:5 | **name** 6:15 11:7 | **paying** 11:7 | **real** 8:22 |
| 12:25 | 13:2 14:13 15:16 | **payment** 15:25 | **recall** 8:8 10:4 |
| **live** 6:16 | 17:3 | **pending** 3:20 | 16:8,10 |
| **lived** 6:24 | **name's** 13:24 | **phone** 11:7 | **recognize** 8:25 9:6 |
| **lives** 6:20 | **names** 5:20 14:11 | **plaintiffs** 1:4,11 | **recollection** 10:12 |
| **llc** 1:3 3:3,22 | 15:3 | 3:4,23 4:2 5:2,11 | **record** 5:14,21 |
| | | | 18:6,9 |

**recording** 12:5,10 12:13
**records** 9:18
**reduced** 19:8
**related** 19:10
**relative** 19:12
**remember** 14:13
**rep** 16:25 17:2
**report** 13:5
**reported** 13:18
**reporter** 3:17,18 4:19 5:5 6:1,6 17:18 19:1,3,3,20 19:21
**represent** 10:3
**representation** 10:20
**representative** 15:10,21 17:9
**represents** 13:25
**respond** 13:12
**responded** 6:3
**response** 13:14
**rick** 4:24
**right** 7:13 8:8,17 8:22 9:1,19 10:2,6 10:24 12:17 13:1 13:20 14:5 15:11 16:13 17:2
**ring** 9:12,13 11:22 12:15 16:11 17:9
**rpr** 1:13 3:16 19:2

**s**

**s** 4:1
**sales** 15:9,20 17:9
**salt** 4:10
**savannah** 4:15
**says** 5:12
**screen** 8:21,23 9:1 10:7

**security** 1:3 3:3
**see** 8:22 9:3,4 10:6 12:24
**send** 11:21 13:7,8
**sent** 13:9
**september** 7:14,20 8:8,15 16:17
**service** 7:23 15:22
**services** 14:17
**sessions** 4:9
**share** 8:21
**shb.com** 4:6
**sheryl** 1:13 3:16 4:20 5:4 19:2
**shook** 4:4 7:6,7,9 14:5,8,14,17 15:1
**shorthand** 3:17 5:4,5 19:3,21
**shortly** 16:16
**signature** 5:6 17:18,19 18:7 19:19
**sir** 6:23 7:12 8:7 8:11,24 9:22 10:1 10:5 14:3,6,21 16:3
**sit** 9:20
**smart** 1:7,8,8 3:7,8 3:8,23
**snow** 4:9
**solicitors** 8:9
**solutions** 4:20,25
**somebody** 16:9
**sorry** 7:4,17 8:1 8:12
**sound** 15:8
**sounded** 15:8 16:20
**sounds** 16:10,25
**south** 4:10,16

**southern** 1:1 3:1 3:21 5:18
**stamp** 10:11
**star** 7:5 14:10
**started** 10:18 14:9 14:11,14 15:10
**state** 3:17,19 5:20
**states** 1:1 3:1,20
**steward** 2:3 4:9 5:24,24 7:17,24 8:1,12,18 13:23,24 17:6,16
**stipulated** 5:1
**street** 4:10
**stroke** 12:20
**substance** 16:10
**suite** 4:10,16
**support** 7:8
**suspend** 15:24
**swear** 6:2
**sworn** 3:12 5:10 19:6
**system** 7:14

**t**

**take** 5:15 10:24
**taken** 1:11 5:4 19:7,12
**tell** 9:7 11:1
**ten** 3:14 7:5
**terminated** 17:10 17:11
**terrell** 1:10 3:11 5:3,9,16 6:15
**testimony** 19:5,6
**thank** 8:4 13:21 14:1 15:5,7 17:14 17:16 18:4
**thanked** 13:16
**thanks** 17:7
**therapy** 12:24

**thereto** 19:14
**things** 17:24
**think** 14:9,18 16:17
**three** 6:25,25 16:6
**thursday** 5:13
**tight** 9:20
**time** 8:2,2 10:8,11 12:4 15:11 17:15
**today** 5:13 6:9 13:21 14:1 17:15 17:23
**transaction** 11:2 11:24 12:1
**transcribed** 5:6
**transcript** 17:22
**traurig** 4:15
**trying** 9:5
**two** 12:10,11
**type** 7:22 9:4
**typewriting** 5:6 19:8
**typos** 17:24

**u**

**u.s.** 5:17
**united** 1:1 3:1,20
**usually** 15:2
**utah** 4:10

**v**

**vendor** 7:9,10
**veritext** 3:15 4:20 4:25
**video** 1:10 3:11 8:21 9:18,21,23 10:2,7 11:19 12:15 13:7,8 15:21 16:11 17:9
**videographer** 4:23 5:13 6:1 18:5

| | |
|---|---|
| **view**   11:21<br>**vivint**   1:7,8,8 3:7,8<br>   3:8,23 5:25 7:15<br>   7:23 8:16 11:4<br>   13:3,5,7,8,10,17<br>   13:25 16:21<br>**voices**   12:10,11<br>**vs**   1:6 3:6 | **z** |
| **w** | **zoom**   1:10 3:11,15<br>   4:2,8,13 |
| **w**   4:14<br>**wait**   14:9<br>**waive**   18:1,3<br>**waived**   5:7 18:8<br>**want**   11:20 16:6<br>   17:7,11,23<br>**wanted**   16:25<br>**watch**   9:25 12:1<br>**watched**   10:3<br>**way**   9:21<br>**wife**   6:21 12:12<br>   15:12,14<br>**wife's**   15:15,16<br>**wish**   17:21<br>**witness**   3:11 5:7<br>   6:2,3 18:3 19:4,7<br>**work**   7:9 9:14<br>   12:21 14:16,19,22<br>**worked**   7:4,5,10<br>   14:4,8,25 15:1<br>**working**   12:17<br>**worried**   11:5 | |
| **y** | |
| **yeah**   6:11<br>**year**   12:21<br>**years**   6:25 7:5<br>   16:6<br>**young**   4:15 | |

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

# VERITEXT LEGAL SOLUTIONS
## COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.