EXHIBIT 11

```
          UNITED STATES DISTRICT COURT
    FOR THE WESTERN DISTRICT OF NORTH CAROLINA
              CHARLOTTE DIVISION
      CIVIL ACTION NO. 3:20-CV-00504-FDW-DSC


CPI SECURITY SYSTEMS, INC.,        )
                                   )
       Plaintiff,                  )
                                   )
vs.                                )
                                   )
VIVINT SMART HOME, INC. f/k/a      )
Mosaic Acquisitions Corporation;   )
and LEGACY VIVINT SMART HOME,      )
INC. f/k/a Vivint Smart Home,      )
Inc.,                              )
                                   )
       Defendants and              )
Counterclaimants.                  )
_____
```

DEPOSITION OF JANET NEWMARK

(TAKEN BY PLAINTIFF)

TAKEN VIA ZOOM

Wednesday, August 25, 2021

Reported in Stenotype by
Erin Ramsey
Transcript produced by computer-aide transcription

```
 1            APPEARANCES
 2   ON BEHALF OF PLAINTIFF:
 3            CHARLES EBLEN, ESQUIRE
              Shook, Hardy & Bacon, LLP
 4            2555 Grand Boulevard
              Kansas City, Missouri 64108
 5            (816) 474-6550
              Ceblen@chb.com
 6
 7   ON BEHALF OF DEFENDANT:
 8            MATTHEW STEWARD, ESQUIRE
              Clyde Snow
 9            201 S. Main Street
              Suite 1300
10            Salt Lake City, Utah 84111
              (801) 322-2516
11            Mas@clydesnow.com
12   Also Present:
13      David Cooper, Videographer
14
15
16
17
18
19
20
21         DEPOSITION OF JANET NEWMARK, a witness called
22   on behalf Plaintiff, before Erin Ramsey, Notary
23   Public, in and for the State of North Carolina, taken
24   via Zoom, on Wednesday, August 25, 2021, commencing at
25   11:04 a.m.
```

1                INDEX OF EXAMINATIONS
2    BY MR. EBLEN............................... PAGE 5
3    BY MR. STEWARD............................. PAGE 28
4    BY MR. EBLEN............................... PAGE 45
5    BY MR. STEWARD............................. PAGE 46
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25      Job No. CS4771065

1    Q.  We had clear days but we're back in the smoke.
2    A.  I feel bad for you.
3    Q.  Well, thanks.  I wish I was in North Carolina.
4  I noted that it looked like maybe you were referring
5  to some notes or documents as you were responding to
6  Mr. Eblen's questions.  Do you have any documents or
7  notes with you?
8    A.  I do.
9    Q.  Can you identify those for me, what you have?
10   A.  Can you excuse me?
11   Q.  Absolutely take whatever time you need.
12          MR. EBLEN:  We'll go off the record.  Why
13  don't we take five minutes just in case.
14          THE VIDEOGRAPHER:  The time is
15  approximately 11:42:24 a.m., we're now off the record.
16          (A recess was taken.)
17          THE VIDEOGRAPHER:  The time is
18  approximately 11:46:49 a.m., we're now on the record.
19  BY MR. STEWARD:
20   Q.  Thank you again, Ms. Newmark.  And I apologize
21  for the challenges and difficulties you had with
22  Vivint's customer service department, but this lawsuit
23  is about CPI alleging that Vivint and its sales
24  representatives represent or misrepresent to customers
25  that they are CPI or that they're affiliated with CPI

1  in some manner.
2       Did Shane do or say anything to cause you to
3  believe that Vivint and CPI were the same company?
4           MR. EBLEN:  I'll object to form.  That
5  characterization is part of our lawsuit but we don't
6  need to get into that today.  So object to form.
7     A.  I will answer that and no, he did not say that
8  they were one and the same company.
9     Q.  Right.  In fact, Shane clearly identified
10 himself as being there on behalf of Vivint, right?
11    A.  Yes, he did.
12    Q.  And you understood Shane was competing for your
13 business as a home alarm and automation customer and
14 trying to get you signed up for Vivint, a company that
15 was different than your existing provider, correct?
16    A.  Correct.
17    Q.  Okay.  Did Shane have anything on his person, a
18 hat, a uniform, a shirt, that identified him as being
19 a representative of the company Vivint?
20    A.  I don't recall.
21    Q.  Okay.  Do you recall was he did -- he have a
22 vehicle that was parked within your view that had any
23 markings identified as a Vivint vehicle?
24    A.  Not that I saw.  He was walking when I --
25    Q.  Do you recall if he had a badge that identified

1  him as being a Vivint representative?
2     A.  No, I do not.
3     Q.  Okay.  But in any event nothing he wore or said
4  suggested that he was there on behalf of CPI, correct?
5     A.  No.
6     Q.  Okay.  Now, you had -- you had mentioned that
7  Shane told you that the panel you had with CPI had
8  been developed by Vivint; do you recall that?
9           MR. EBLEN:  Objection to form.
10    A.  Yes, I recall that.
11    Q.  Okay.  And do you recall was your panel with
12 CPI a 2GIG panel, that's the number 2 and G-I-G?
13    A.  I don't recall.
14    Q.  Okay.  Do you still have that panel?
15    A.  No, I do not.
16    Q.  Okay.  Do you have any reason to believe that
17 Shane's representation regarding Vivint's development
18 of the control panel you had with CPI was false?
19    A.  Well, I don't know.  I didn't have any reason
20 to not believe it.  We were just taking his word for
21 it.  But yeah, we didn't research it or anything but
22 we just took his word for it.
23    Q.  I'm going to share my screen with you a second.
24 If I've done this correctly there is a photographic
25 image of a panel.

1  suite of equipment; is that fair?
2     A.   Yes.
3               MR. EBLEN:  Objection.
4     Q.   And did you -- do you have the Vivint app on
5  your phone?  If you can see that where --
6     A.   Yes.
7     Q.   Where it pulls up the cameras where you can
8  view from your home; do you have that feature?
9     A.   Yes.
10    Q.   Is that a feature that you were attracted to
11 when you made the decision to go with Vivint?
12    A.   Yes.
13    Q.   And you would agree with me that the Vivint
14 suite of equipment you ordered is fair superior to the
15 equipment that was being provided by CPI, right?
16              MR. EBLEN:  Object to form.
17    A.   We did like it better.  It had a few things
18 that we did like better.
19    Q.   And did you get the smart exterior high
20 definition cameras?
21    A.   Yes.
22    Q.   And you would agree with me that that provided
23 a far superior quality image than the CPI camera you
24 had?
25              MR. EBLEN:  Object to form.

1    A.  Yes.

2    Q.  Okay.  Do you recall calling CPI to cancel your

3  CPI contract?

4    A.  I don't specifically remember if I called or

5  e-mailed but I believe I did call.

6    Q.  Okay.  And do you recall telling CPI, and these

7  are your words which I quite liked, that their cameras

8  sucked, the quality sucked; do you recall using those

9  words?

10           MR. EBLEN:  Object to form.

11    A.  No, I don't, but that sounds like me.

12    Q.  Okay.  And is it your opinion that the CPI

13  cameras sucked?

14    A.  Yes, it is my opinion.

15    Q.  Right.  And you used somewhat less colorful

16  word you also said they're just horrible.  Do you

17  recall telling CPI that its cameras were just

18  horrible?

19    A.  No, I don't remember saying that but I may

20  have.

21    Q.  Okay.  Do you recall telling -- well,

22  complaining to CPI that their doorbell camera -- I

23  know this is an exaggeration but you said it sends

24  you, like, 485 billion texts and e-mails over one

25  night.  That if a gnat flies by you receive a text and