EXHIBIT 12

```
         UNITED STATES DISTRICT COURT
   FOR THE WESTERN DISTRICT OF NORTH CAROLINA
              CHARLOTTE DIVISION
      CIVIL ACTION NO. 3:20-CV-00504-FDW-DSC
```

CPI SECURITY SYSTEMS, INC.,
    Plaintiff and Counterclaim Defendant,
vs.
VIVINT SMART HOME, INC., f/k/a
Mosaic Acquisition Corp.; and
LEGACY VIVINT SMART HOME, INC.,
f/k/a Vivint Smart Home, Inc.,

    Defendants and Counterclaimants.

| | |
|---|---|
| VIDEOCONFERENCE AND VIDEOTAPED DEPOSITION OF: | LAURA WARD |
| DATE: | Tuesday, July 20, 2021 |
| TIME: | 3:19 p.m. |
| LOCATION: | Springhill Suites by Marriott Sumter<br>2645 Broad Street<br>Sumter, South Carolina 29150 |
| TAKEN BY: | Attorney for Plaintiff/<br>Counterclaim Defendant<br>CPI Security Systems, Inc. |
| REPORTED BY: | Ann C. Makris, Court Reporter |

Job No. CS4699399

Veritext Legal Solutions
800-567-8658     973-410-4098
Case 3:20-cv-00504-FDW-DSC Document 117-12 Filed 01/18/22 Page 1 of 11

```
 1   APPEARANCES OF COUNSEL:
 2          ATTORNEY FOR PLAINTIFF
             AND COUNTERCLAIM DEFENDANT:
 3
                 SHOOK, HARDY & BACON, L.L.P.
 4               BY:   Charles C. Eblen
                 2555 Grand Boulevard
 5               Kansas City, Missouri 64108-2613
                 (816) 474-6550
 6               ceblen@shb.com
 7          ATTORNEYS FOR DEFENDANTS
             AND COUNTERCLAIMANTS:
 8
                 GREENBERG TRAURIG, P.A.
 9               BY:   GREGORY W. HERBERT
                 450 South Orange Avenue, Suite 650
10               Orlando, Florida 32801
                 herbert@gtlaw.com
11               (407) 420-1000
12   IN ATTENDANCE:   Rodney Myers, Videographer
                       Veritext
13                     Alan Metts, Laptop Tech
14
15
16
17
18
19
20
21
22
23
24
25             (INDEX AT REAR OF TRANSCRIPT)
```

1 did see the sign because he -- he -- he stressed that he
2 -- he didn't -- he -- he wasn't a solicitor.
3     Q. All right. All right. So you started
4 saying that you said "he." Let's focus in on sometime
5 in late June of 2020, did someone who you now understand
6 worked for Vivint approached your home?
7     MR. HERBERT Object to the form; leading.
8     A. Correct.
9 BY MR. EBLEN:
10     Q. In two-thousand -- in June of 2020, did
11 anyone from an alarm company come to your door?
12     A. Yes, sir.
13     Q. And who do you now understand or -- or let
14 me ask that differently.
15     From what company do you now understand
16 the gentleman who approached your door in June of 2020
17 worked?
18     A. Vivint.
19     Q. When he approached -- well, describe what
20 happened when that gentleman approached your house in
21 June of 2020.
22     MR. HERBERT: We object to the form.
23     A. Do you want me to answer that?
24     Q. Yes, please.
25     A. Well, he showed up in my yard and rung my

1   doorbell and he -- I -- I walked -- I walked over to the
2   window and I told him to look at the sign on my door
3   meaning no soliciting and he basically said, "I'm not a
4   solicitor," so I went and answered the door and he said,
5   "I'm with Vivint and Vivint is buying out CPI and you
6   will no longer have CPI for your security company, and I
7   -- I guess I got scared and worried and he pretty much
8   talked me into going with Vivint.
9        Q.   So, as -- as I understand it, he comes to
10  the door and you -- you said you told him -- you pointed
11  to the sticker; is that right?
12       A.   Yes, sir.
13       Q.   Okay.
14       A.   He knew the sticker was on the door.  He
15  knew that -- the sign's about like that and he knew it
16  was on the door and he did specify or he said, "I'm not
17  a solicitor.
18       Q.   And then he told you that Vivint had
19  bought out CPI?
20       A.   Correct.
21            MR. HERBERT:  Correct.
22       A.   Correct.
23  BY MR. EBLEN:
24       Q.   So, at -- at that point in time in your
25  mind, did you believe that the gentleman at the door was

1  up and above my contract with CPI, I paid an additional
2  I think it was a $150 for the -- for the camera that was
3  on the outside of my house that Vivint tore up, cut the
4  wires on it.  I couldn't use it anymore.  That was --
5  that was my camera.  It wasn't CPI camera, it was my
6  camera.
7          Q.    (indiscernible crosstalk)
8          A.    I paid for it.
9          Q.    My -- my question -- my question was
10 actually, ultimately, once you -- once you reinstated
11 your service with CPI or Vivint, they -- they -- they
12 came in and installed all new equipment so that you got
13 all equipment that you were satisfied with from CPI is
14 that --
15         A.    Right.  But I wouldn't have had to -- they
16 wouldn't have had to replace the camera if Vivint hadn't
17 have tore up the camera.
18         Q.    Okay.  I  understand.
19               Let me change gears a little bit and ask
20 you about something that Mr. Eblen asked you about
21 earlier and that was a survey, a video survey that you
22 were asked to take at the -- prior to the installation
23 of the -- the Vivint equipment.  When Mr. -- and Mr.
24 Eblen asked you if you -- if you remembered taking a --
25 a video survey or if the Vivint sales representative

1	administered a video survey, and I believe you testified
2	that you don't -- you don't remember specifically; is
3	that right?
4	    A.   No, sir.  I -- I could have, but I really
5	don't remember.  I'm -- I'm sorry.  I don't remember.
6	    Q.   No.  No problem at all.  I -- I -- I
7	understand.  Now, he referred to it as a video survey,
8	so it might be a little bit difficult to understand.  I
9	think that you remember the Vivint sales representative
10	showing you something on his tablet or his device where
11	they asked you like a series of question and it said,
12	you know, there was a -- a microphone icon and it asked
13	you to tap that and you were asked certain questions and
14	then you answered them.  Does that sound familiar or
15	does that refresh your memory?
16	    A.   It -- it could -- I -- to tell you the
17	truth, I just don't remember.
18	    Q.   Okay.
19	    A.   I mean, it was a long day that day.
20	    Q.   I -- I understand.
21	    A.   A long, hot day.
22	    Q.   I understand.  If I represented to you
23	that that survey -- you did take that survey and in that
24	survey you did indicate that you understood that Vivint
25	and CPI were not affiliated companies, as you sit here

1  today, it sounds like you -- you can't remember one way
2  or another whether you said that, would that refresh
3  your recollection if I just represented that to you?
4             MR. EBLEN:  Object to form and foundation.
5  It assumes facts.  You may answer.
6  BY MR. HERBERT:
7        Q.   I can rephrase the question.  It wasn't
8  probably not all that clear, and I apologize.
9             My question is if I represented to you
10 that you -- you did take a -- a video survey
11 administered by the -- by the Vivint sales rep --
12       A.   I don't remember a video.  I definitely do
13 not remember a video.  Now, I -- I could have, but I
14 don't remember no video.
15       Q.   Right.  And you might have only seen a
16 tablet and -- and have been -- been asked questions that
17 you responded to.  You might not have seen the video
18 camera or seen yourself on video, but you were asked
19 questions at the time of your interaction with the
20 Vivint sales rep presented and you answered several of
21 those questions and what I -- what I -- we can -- we can
22 play a clip from the video here in a minute, but I
23 wanted to say -- ask you does it refresh your
24 recollection if I represent to you that one of the
25 questions in that video survey was whether you

1 understood that Vivint was not affiliated with your
2 previous security company and -- and you answered that,
3 yes, you understood that. So does that refresh your
4 recollection?
5      A. No. The only thing I know is, is whatever
6 he told me in front of my house in front of my door that
7 Vivint was buying out CPI and whatever he said or is
8 written down or whatever, I know what he said. I know
9 what Mr. Curtis said that CPI -- Vivint was buying out
10 CPI.
11      Q. All right. Well, let me -- I'm just going
12 to play a little short clip for you of the video survey.
13 I'm going to share my screen so that should appear. It
14 might be a minute. This is the first time I've used
15 this technology, so be patient with me because I'll wait
16 until Charlie clears out his screen.
17      MR. HERBERT: Do you want to stop sharing
18 your screen, Charlie?
19      MR. EBLEN: Yes, sir.
20 BY MR. HERBERT:
21      Q. Okay. It might start playing right away
22 or it (indiscernible) some time. Let me back up. All
23 right. Ms. Ward, can you -- can you see the screen now.
24 It looks like a blue blank -- like a video player with a
25 little play button at the bottom, do you see that?

Veritext Legal Solutions
800-567-8658     973-410-4098
Case 3:20-cv-00504-FDW-DSC Document 117-12 Filed 01/18/22 Page 8 of 11

1          A.   Yes, sir.
2          Q.   So I'm going to play a video and ask you
3   to -- to look at it and tell me if you -- if you
4   recognize the video.  Okay.  Give me one second.
5               (Video clip is played for the witness.)
6          Q.   So, Ms. Ward, were you able to hear the --
7   the audio component of that video clip?
8          A.   I thought I heard my voice, yes.
9          Q.   All right.  And did you see yourself?
10         A.   No.
11         Q.   Okay.  I'm sorry.  Hold on one second.  I
12  guess I didn't do this right.
13              (Video clip is played for the witness.)
14         Q.   Give me one second.  Let me
15  (indiscernible).
16         A.   Okay.  I see -- I see a picture of me.
17         Q.   All right.  I apologize for that.  I'm
18  going to -- I'm going to start this over and play it
19  again.  Okay.  All right.  So you -- you -- this -- now
20  this is a still frame from the beginning of the clip
21  that I want to play and you -- you can -- do you
22  recognize that as a -- as a still frame of the -- a
23  picture of yourself there?
24         A.   Yes, sir.
25         Q.   All right.  I'm going to play it and let

1  me know if you can hear it, okay?
2              (Video is played for the witness.)
3         Q.   Okay.  So, Ms. Ward, did you -- did that
4    refresh your recollection about some questions that you
5    were asked on -- on the day of the -- you entered into
6    the contract with Vivint?
7         A.   That kind of, sort of, was but you -- I --
8    you're still talking a long time ago, I mean, as far as
9    my -- my memory goes, I mean.
10        Q.   But that was -- that was you in the video,
11   correct?
12        A.   That was me.
13        Q.   All right.  And -- and you understood the
14   question that was asked of you in that video when you
15   answered it yes?
16        A.   Maybe I didn't understand the question
17   because the only thing I know is Mr. Curtis told me
18   Vivint was buying out CPI.  That's the only thing I know
19   --
20        Q.   All right.
21        A.   -- so whatever he -- he -- they -- that --
22   that video you just showed says, it's not what Curtis
23   said.
24        Q.   I -- I understand, but you're not --
25   you're not disputing that you answered the question that

1  was asked in that video clip?
2          A.   I answered the question, but I may have
3  not answered the question knowing what I know now.
4          Q.   Okay.  Hold on one second.  I don't think
5  I -- I don't think I'll have any other questions.  Just
6  give me one little break.  Ms. Ward?
7          A.   Sir?
8          Q.   Yeah.  Just -- just one quick follow-up
9  question.  You recall that your prior contract with CPI
10 was also a contract for 60 months, that the term of the
11 contract was a 60-month or five-year period?
12         A.   Probably.  I -- I don't remember that
13 either but....
14         Q.   Okay.  So if I represented to you that --
15 that the original contract you did sign with CPI back in
16 2015 was a -- was a 60-month contract, you don't have
17 any --
18         A.   Yeah.
19         Q.   -- reason to disagree with me, is that
20 fair enough?
21         A.   I'm -- I'm not disagreeing with you, no.
22         Q.   Okay.
23              MR. HERBERT:  No further -- I think those
24 are all the questions I have subject to I might have
25 some follow-up if Mr. Eblen has any follow-up.  Thank