February 28, 2023

FILED
CHARLOTTE, NC

MAR 0 3 2023

US DISTRICT COURT
WESTERN DISTRICT OF NC

<u>**Via Mail/Email**</u>
Honorable Frank D. Whitney
United States District Court
Western District of North Carolina
401 West Trade Street, Room 1200
Charlotte, NC, 28202

      **Re:**   *CPI Security Systems, Inc. v. Vivint Smart Home, Inc. et al*
          <u>Case No. 3:20-cv-00504-FDW-DSC</u>

Dear Judge Whitney,

      I am a journalist for IPVM, a publication which provides rigorous and unbiased news, research, product testing and analysis regarding the global surveillance technology industry.[1] I am submitting this letter motion as a member of the press and public and as an interested party in the above-captioned case. I would like permission to obtain immediate access to a copy of the transcript of the closing argument in the trial, held Feb. 16, 2023 in your court.

## Background

      As Your Honor is aware, the above-referenced case is a dispute between two major home security providers, CPI and Vivint. After an approximately two-week trial in February, a jury awarded a substantial verdict to CPI. The trial was held in open court.

      IPVM is based in Bethlehem, Pennsylvania. I work remotely for the company and am based in New York City. I was unable to attend the trial. Given the significant interest our audience has in the outcome of this case and the ongoing issues it pertains to,[2] we determined that I should obtain trial transcripts so that I could write a detailed analysis and summary. Because we provide a news product which informs our readership about current events and controversies, time is of the essence.

## Transcript Request Effort

---

[1] See "The Tech Site That Took On China's Surveillance State," *The Atlantic*, Sept. 29, 2022. https://www.theatlantic.com/international/archive/2022/09/ipvm-journalism-research-chinese-surveillance-technology/671593/
[2] See "17 Alarm Company Lawsuits Against Competitors Faking Them," *IPVM*, Oct. 6, 2020. https://ipvm.com/reports/alarm-faking-suits

Prior to my coming to IPVM in late 2022, I accumulated ample experience as a journalist covering litigation in federal courts. Over the past 14 years, I have covered well over 100 legal cases as a reporter and editor for Law360.com, as a journalist for Bloomberg News, as an editor for the Insurance Insider, and as the editor-in-chief of a news website called The Business of Business.

I have requested and obtained dozens of federal court transcripts, often on the same day as or just a few days after the proceedings were held in court. While I have been advised by federal court reporters that such transcripts may be "uncertified" and therefore were not "official" court records, this factor has never prevented or delayed my access to the transcripts. I also have never been told I needed to make a motion in order to obtain transcripts to public proceedings, regardless whether they have been "certified" or filed in the court docket.

I believed I was familiar with federal court procedures regarding transcript access, so I requested trial transcripts for CPI v. Vivint from the court reporter in the case, Jillian Turner. I had no reason to suspect that I would not be permitted to have them, as there was no indication in the public court docket that proceedings had been closed to the public, or that the transcripts contained confidential information or were otherwise under seal. I was surprised when she told me I would need to make a motion, and further surprised when the law clerk assigned to the case, Lauren Boone, informed me that I could not have transcripts until "certified" transcripts were filed in the docket, a process which may take at least 90 days.

I have been unable to find any publicly posted federal court policy that forbids the distribution of transcripts to the media or to the public before they are "certified" or before they are filed in the docket. I contacted a public information representative for the Administrative Office of the U.S. Courts, Jaculine Koszczuk, who informed me that the Judicial Conference specifies transcripts should not be distributed publicly until "certified" in order to reduce the possibility of errors or misinterpretations.

However, my past experiences strongly suggest that this policy does not have the same force of law as legal precedents governing public access and is not uniformly followed. Even in instances where the policy is fully observed, the "presiding judge" may determine that the uncertified transcripts may be released, according to Ms. Koszczuk.

**Argument**

There is a default presumption of broad press and public access to court proceedings and filings under common law. *See Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988).* The First Amendment of the U.S. Constitution provides a right of access to a

narrower range of materials but is more "rigorous" than the common law standard. *See In re Washington Post Co., 807 F.2d 383, 390 (4th Cir. 1986).*

The public's right of access includes both documents submitted during the trial and trial transcripts. *See In re Time Inc., 182 F.3d 270, 271 (4th Cir. 1999).* The public right of access to trial exhibits attaches when the exhibit is published to the jury, and district courts should make trial exhibits available to the public as soon as practically possible, but no later than the day after the exhibit is published to the jury. *See In re Associated Press, 172 F. App'x 1 (4th Cir. 2006).*

In an unpublished decision, the Fourth Circuit indicated that the public's right of access extends to the transcript of a judicial proceeding and the original audio recording of a proceeding. *See United States v. Davis, 648 F. App'x 295, 297 (4th Cir. 2016) (per curiam).*

Public access to court materials is not absolute. If parties make a showing to the judge that confidentiality outweighs the public's right of access, a judge may seal proceedings, documents or transcripts. However, regardless of whether the presumption arises from the common law or the First Amendment, the public's right of access may only be abrogated in "unusual circumstances." *See Va. Dep't of State Police v. Wash. Post, 386 F.3d 567, 576 (4th Cir. 2004).*

The interest to be protected through closure must be concrete and particular to the proceeding at issue; generalized, unsubstantiated and speculative concerns are insufficient to overcome either a common law or a First Amendment right of access. *See Doe v. Pub. Citizen, 749 F.3d 246, 270 (4th Cir. 2014).*

In the above-captioned case, an interest of confidentiality does not apply. There is a protective order pertaining to confidential information during the trial. However, there has been no showing made by either of the parties to seal trial transcripts because of confidential information. Moreover, the trial was open to the public. The confidentiality interest especially does not apply to the narrow subset of transcripts we have requested: the closing arguments, which were delivered in open court citing evidence that was previously published to the jury.

While it is not addressed in public access precedents, the interest of preventing errors or misinterpretations in "uncertified" transcripts is not without merit. However, that risk is no greater than the risk of errors or misrepresentations that is present when members of the press attend and report on trials in open court. As a media organization which is dedicated to rigorous research and accurate reporting, IPVM is well-positioned to minimize the risk of errors or misinterpretations being reproduced from "uncertified" transcripts. Moreover the interest of preventing errors and misinterpretations is substantially outweighed by the interest of public access.

Additionally, the Judicial Conference in federal court reporter policies available to the public on the website www.uscourts.gov, specifies the following:[3]

*The Judicial Conference approved a policy regarding the availability of transcripts of court proceedings filed with the clerk of court in electronic format. A transcript provided to a court by a court reporter or transcriber will be available at the office of the clerk of court for inspection only, for a period of 90 days (unless extended by the court) after it is delivered to the clerk. During the 90-day period:*

- **a copy of the transcript may be obtained from the court reporter or transcriber at the rate established by the Judicial Conference; [emphasis added]**

- *the transcript will be available within the court for internal use; and*

- *an attorney who obtains the transcript from the court reporter or transcriber may obtain remote electronic access to the transcript through the court's Case Management/ Electronic Case Files (CM/ECF) system for purposes of creating hyperlinks to the transcript in court filings and for other purposes.*

*During the 90-day period (which may be extended by the court), access to the transcript in CM/ECF is restricted to court staff, public terminal users, attorneys of record or parties who have purchased the transcript from the court reporter/transcriber, and other persons as directed by the court (e.g., appellate attorneys). Also, during this time, parties may redact personal identifiers. After the 90-day period has ended, the filed transcript will be available for inspection and copying in the clerk's office and for download from the court's CM/ECF system through the judiciary's PACER system.*

Nothing in this policy prohibits the release of transcripts to the press or the public before the end of the 90-day period. The policy only requires that a copy be obtained from the official court reporter during that period. The court reporter is also required under this policy to file a "certified" electronic copy to the clerk of court, but may deliver an "original transcript to the ordering party."

## Conclusion

We request in light of the facts and arguments presented above that Your Honor rule immediately to allow IPVM to access uncertified transcripts of closing arguments for the trial in

---

[3] https://www.uscourts.gov/services-forms/federal-court-reporting-program

CPI v. Vivint.


Respectfully,

Christie Smythe
Pro Se/Interested Party
102 Bradhurst Ave, Apt. 409
New York, NY 10039


IPVM
3713 Linden St., Suite B
Bethlehem, PA 18020



Cc: Attorneys for the parties CPI and Vivint via email

## **Request for verification of receipt**

Please verify that this document has been received. Please print your name and title and sign as indicated below, and send this form back in the provided self-addressed stamped envelope.

Thank you!

RECIPIENT NAME (PRINT)

_____

RECIPIENT TITLE (PRINT)

_____

SIGNATURE

_____

DATE

_____