UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-CV-00504-FDW-DSC

| | |
|---|---|
| CPI SECURITY SYSTEMS, INC. <br><br> Plaintiff, <br><br> v. <br><br> VIVINT SMART HOME, INC. f/k/a MOSAIC ACQUISITION CORP.; LEGACY VIVINT SMART HOME, INC. f/k/a VIVINT SMART HOME, INC. <br><br> Defendants. | **PLAINTIFF CPI SECURITY SYSTEMS, INC.'S MOTION FOR ATTORNEYS' FEES** |

Counsel for CPI secured a sizable but just verdict for CPI, utilizing a small trial team, working efficiently to provide top-tier representation to CPI. In light of the complexity of the legal issues, the number of discovery and evidentiary disputes, and the length of the trial, among other factors, CPI's request for fees pursuant to the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") and the Lanham Act is reasonable. CPI therefore moves the Court to award $3,072,340.50 in attorneys' fees.

## FACTS

CPI filed the Complaint to initiate this matter on September 11, 2020. [Dkt. 1.] During the course of the litigation, a number of discovery issues arose, some of which required intervention by this Court. [*See e.g.* unnumbered docket entries from 5/11/2021, 6/1/2021, 9/1/2021, 12/16/2021.] The preparation of the pre-trial submission was also fraught with myriad objections from Vivint. Vivint objected to

nearly every exhibit and deposition designation proposed by CPI, despite numerous efforts to meet and confer. [*See e.g.* Dkt. 81.]

The parties attended mediation in August 2021, but Defendants never made any settlement offer at that mediation. *See* Affidavit of Charles C. Eblen at ¶ 25 (**Ex. 1**) ("Eblen Aff."). Rather than discuss a settlement, Vivint's proposal was for both sides to dismiss their claims (at that time Vivint had a counterclaim that it later voluntarily dismissed) and agree to a future dispute resolution process if Vivint's behavior continued. *Id.*

Prior to the June 2022 trial date, which was continued days before trial because of an emergency, counsel for CPI conveyed a revised settlement demand to Vivint that Vivint never responded to at any time, including once trial in this case commenced. *Id.* at ¶ 26. The first settlement offer of any kind from Vivint was conveyed verbally late the first week of trial or early the second week of trial. *Id* at ¶ 27.

On February 17, 2023, judgment was entered in favor of CPI in accordance with the jury's February 17, 2023 verdict. [Dkt. 148, 149.] The total amount of the judgment was $189,700,000. [Dkt. 148.] The settlement offer made by Vivint late in trial was a miniscule fraction of the total amount of the judgment. *See* Eblen Aff. ¶ 28.

## LEGAL STANDARDS

The determination of reasonable attorneys' fees under the NCUDTPA and the Lanham Act is a matter of discretion with the Court. *Irwin Indus. Tool Co. v.*

2

*Worthington Cylinders Wisconsin, LLC*, 747 F. Supp. 2d 568, 589 (W.D.N.C. 2010); *see also USA Trouser, S.A. de C.V. v. Int'l Legwear Grp., Inc.*, No. 1:11-CV-00244-MR-DLH, 2014 WL 1230507, at *10 (W.D.N.C. Mar. 25, 2014); *Verisign, Inc. v. XYZ.COM LLC*, 891 F.3d 481, 484 (4th Cir. 2018) (Lanham Act fees).

## ARGUMENT

### I. CPI IS ENTITLED TO ATTORNEYS' FEES UNDER BOTH THE NCUDTPA AND THE LANHAM ACT.

#### A. CPI Is Entitled to Attorneys' Fees under the NCUDTPA for Vivint's Willful Deceptive Conduct and Unwarranted Refusal to Settle.

Under the NCUDTPA, "a prevailing plaintiff may recover attorneys' fees where (1) the defendant willfully engaged in the unfair or deceptive trade practice and (2) the defendant made an unwarranted refusal to settle the matter." *Irwin Indus. Tool Co., LLC*, 747 F. Supp. 2d at 589 (citing N.C. Gen. Stat. § 75–16.1). To be the prevailing party under the NCUDTPA, a plaintiff most prove that the defendant violated the NCUDTPA and that the plaintiff suffered an actual injury because of the violation. *Id.* "An award of $1.00 in damages is sufficient to establish an 'actual injury.'" *Id.*

Here, CPI is undoubtedly the prevailing party. The jury found Vivint liable under the UDTPA and awarded CPI $29.3 million under the UDTPA claim and $49.7 million in total compensatory damages; this certainly far surpasses the $1.00 damage threshold.

Further, it is clear that the jury found Vivint's violation of the NCUDTPA to be willful based on its punitive damage award. Indeed, $140 million in punitive

3

damages illustrates that the jury thought Vivint's conduct was no accident.

Finally, Vivint made an unwarranted refusal to settle. This Court has found that offering to settle at trial after both parties have expended substantial resources on preparations is not a reasonable offer to settle. *See Clark Material Handling Co. v. Toyota Material Handling U.S.A., Inc.*, No. 3:12-CV-00510-MOC, 2015 WL 3514339, at *7 (W.D.N.C. June 4, 2015).

In this case, Vivint did not make any settlement offer until well into trial. *See* Eblen Aff. ¶ 27. This is unreasonable under North Carolina law, especially in the context of a case like this where CPI was then required to disrupt the lives of dozens of non-party witnesses—who had already been victimized by Vivint—to put on its case. Many of these witnesses had to miss work and reschedule other obligations to appear, many were elderly, and still others were disabled. All of these challenges were multiplied given the number of times the case was continued to a new trial date.

Finally, the punitive damages awarded to CPI do not preclude CPI from collecting attorneys' fees. "Since recovering attorney's fees and punitive damages is not inconsistent, that aspect of the doctrine of election of remedies that precludes inconsistent remedies does not prevent plaintiff from recovering both." *United Lab'ys, Inc. v. Kuykendall*, 437 S.E.2d 374, 379 (N.C. 1993). Accordingly, the $140,000,000 in punitive damages awarded to CPI has no bearing on whether this Court should award CPI attorneys' fees.

### B. CPI Is Entitled to Attorneys' Fees under the Lanham Act because This Is an Exceptional Case.

"The legislative history of the Lanham Act shows that fees were intended to be provided in cases involving '[d]eliberate and flagrant infringement.'" *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 441 (4th Cir. 2011). Under 15 U.S.C. § 1117(a), the "court in exceptional cases may award reasonable attorney fees to the prevailing party." *Verisign, Inc.*, 891 F.3d at 483. "There is no 'precise rule or formula for' determining whether a case is 'exceptional.'" *Citi Trends, Inc. v. Coach, Inc.*, 780 F. App'x 74, 80 (4th Cir. 2019). A court may find a case exceptional when "(1) there is an unusual discrepancy in the merits of the positions taken by the parties, based on the non-prevailing party's position as either frivolous or objectively unreasonable; (2) the non-prevailing party has litigated the case in an unreasonable manner; or (3) there is otherwise the need in particular circumstances to advance considerations of compensation and deterrence." *Georgia-Pac. Consumer Prod. LP v. von Drehle Corp.,* 781 F.3d 710, 721 (4th Cir. 2015), as amended.

In this case, there was an unusual discrepancy between the merits of CPI's position and the merits of Vivint's position, and there is a particular need for deterrence.

First, Vivint's position on liability in the case was meritless. Attorneys' fees may be appropriate where there is a "failure to continually assess the substantive strength of [a party's] litigation position, particularly by the conclusion of discovery." *Design Res., Inc. v. Leather Indus. of Am.*, No. 1:10CV157, 2016 WL 5477611, at *6 (M.D.N.C. Sept. 29, 2016). Here, CPI presented a mountain of liability evidence in

5

discovery and at trial showing that Vivint knowingly and intentionally violated the Lanham Act. By contrast, despite denying liability in their Answer and throughout this litigation, Vivint provided essentially no rebuttal evidence on liability. Rather Vivint's case focused on 1) that CPI's CEO is allegedly a racist and 2) that CPI could allegedly not prove its damages. This unusual discrepancy warrants attorneys' fees under the Lanham Act.

Second, deterrence of Vivint's conduct is warranted. Vivint's conduct has persisted for nearly two decades in spite of sixteen attorney general actions and the involvement of the Department of Justice. As the evidence showed at trial, upper level managers were aware of and condoned the misconduct. The need for deterrence is particularly strong in a case like this, which required CPI to round up dozens of non-party witnesses to prove its case. Indeed, it seems that the difficulty of proof for a plaintiff in this type of case is precisely why Vivint's conduct has persisted for so many years.

## II.  CPI'S REQUESTED FEES ARE REASONABLE.

The lodestar method for determining attorneys' fees awards is used in the Fourth Circuit for both NCUDTPA claims and Lanham Act claims. *See e.g. Irwin Indus. Tool Co.*, 747 F. Supp. 2d at 590-91; *USA Trouser, S.A. de C.V.*, No. 1:11-CV-00244-MR-DLH, 2014 WL 1230507, at *10; *Clark Material Handling Co*, No. 3:12-CV-00510-MOC, 2015 WL 3514339, at *7; *Design Res., Inc.*, No. 1:10CV157, 2016 WL 5477611, at *7; *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 551 (2010). Under the lodestar method, the Court multiplies the number of reasonable hours by a

6

Case 3:20-cv-00504-FDW-DSC   Document 173   Filed 04/03/23   Page 6 of 14

reasonable hourly fee. *Irwin Indus. Tool Co.*, 747 F. Supp. 2d at 591. In this case, the itemized spreadsheet setting forth each attorney's hourly rate and hours spent on this case yields a total of $3,072,340.50. *See* Ex. A to Eblen Aff.

To determine a reasonable number of hours and a reasonable rate, the Fourth Circuit has directed district courts to be guided by twelve factors (each addressed below). *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009). The court may find that some of the factors are inapplicable. *See E.E.O.C. v. Service News Co.*, 898 F.2d 958, 965 (4th Cir.1990*)*. But "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006).

CPI retained expert Douglas Ey, Jr., a former partner at McGuireWoods LLP to opine on reasonable attorneys' fees in this matter, and Mr. Ey has executed an affidavit to support this Motion. *See* Affidavit of Douglas Ey, Jr. (Ey Aff.) (attached hereto as **Ex. 2**.) Together, the affidavits of Mr. Ey and Mr. Eblen establish that the fee award sought by CPI is reasonable, both with respect to the number of hours billed and the rates charged. The following factors support this conclusion.

**A. Time and Labor Expended.**

The time and labor expended by CPI was reasonable. Counsel for CPI has been working on this matter since August 19, 2020. Eblen Aff. ¶ 12. Counsel for CPI spent hundreds of hours investigating the facts, reviewing documents, talking to witnesses, conducting research, pursuing discovery, reviewing and analyzing legal research, defending against Defendant's dispositive motions, prosecuting and defending

various motions, working with experts, taking and defending depositions, preparing for trial, and trying the case. *Id*. Counsel for CPI leanly staffed the matter, and most work was completed by CPI's three lead trial attorneys, resulting in significant efficiency. *Id*. ¶¶ 18, 19.

Additionally, discovery issues were heavily contested at every turn, and virtually all evidentiary issues were opposed at trial—including many basic and normally noncontroversial foundational issues. *Id*. at ¶ 9. As this Court is aware, Vivint objected to nearly all of CPI's exhibits and designated deposition testimony in the pretrial submissions to this Court. *Id*. at ¶ 10. That created a situation where— even heading into trial—counsel for CPI had to be prepared to confront and respond to even the most basic evidentiary objections to every exhibit and nearly every line of testimony from depositions played at trial. *Id*.

Finally, the number of times this case was set for trial and then continued (sometimes within days or weeks of the trial date) also supports the reasonableness of the fees incurred. Each time CPI had to ramp up for trial, CPI had to redo work to re-familiarize with critical issues and prepare witnesses. As noted above, CPI had designated approximately 50 potential customer witnesses for trial in addition to CPI's company, expert, and other fact witnesses for each trial date. CPI's attorneys were required to liaise with dozens of witnesses to work through scheduling and other preparation issues.

CPI's expert also opines that CPI's attorneys' fees are reasonable. Ey Aff. ¶ 11.

B. **Novelty and Difficulty of the Questions Raised.**

As the Court experienced, this case was complex and involved numerous novel and difficult legal issues. This case was assigned to the complex case management track. [Dkt. 35.] Given the time limitations imposed at trial, CPI had to present evidence concerning numerous instances of misconduct impacting thousands of CPI customers in eighteen hours of trial time—which required a significant amount of pre-trial planning and continuous efforts to re-work CPI's case to streamline its proof (including extensive deposition designations). As was evident from the number of evidentiary disputes at trial and the length of time spent arguing jury instructions, this case also involved a number of novel legal issues requiring significant and time-consuming research and analysis.

Furthermore, CPI's expert opines that this case was "a complex commercial litigation matter of at least regional, if not national, importance in the home security industry." Ey Aff. ¶ 9. The complexity of the case is also confirmed by the caliber and number of attorneys engaged by Vivint.

C. **Skill Required to Properly Perform the Legal Services Rendered.**

The complexity of this case required highly skilled attorneys to represent CPI's interests. Further, as CPI's expert opined, "significant effort was required by the team of Shook lawyers for the plaintiffs to overcome the aggressive defense and opposition mounted by defendant." *Id*.

9

**D. The Attorney's Opportunity Cost In Pressing the Instant Litigation.**

The opportunity cost of taking on this case was substantial for Counsel for CPI. Counsel for CPI ultimately took this case as a contingency matter, meaning they will not receive compensation from CPI until CPI collects a judgment or settlement. *See* Eblen Aff. ¶ 14. The time Counsel for CPI has spent on this matter could have otherwise been spent performing billable work for which Counsel for CPI would have been paid monthly.

**E. The Customary Fee for Like Work.**

The fees charged by Counsel for CPI are reasonable and customary for the work performed. CPI's expert opines that the hourly rates charged by Counsel for CPI are well within—in many cases *below*—the range of prevailing market rates for complex commercial litigation like the case at bar. Ey Aff. ¶ 11.

**F. The Attorney's Expectations at the Outset of the Litigation.**

Because this was an action asserting claims under both the Lanham Act and the NCUDTPA, CPI and its counsel expected to be awarded attorneys' fees pursuant to N.C. Gen. Stat. § 75–16.1 and 15 U.S.C. § 1117(a) and therefore, sought such relief in the Complaint.

**G. Time Limitations Imposed by the Client or Circumstances.**

The circumstances imposed time limitations in this matter that required CPI to move quickly. Vivint's misconduct was ongoing and was causing CPI significant damages. Further, the discovery in this case was commenced and completed in a relatively compressed timeframe during a national pandemic, with extensive written

and document discovery and dozens of depositions. The case was filed on September 11, 2020 and set to be tried just over one year later in November 2021, before it was continued several times due to the pandemic and other court conflicts.

**H. Amount in Controversy and Results Obtained.**

As noted above, the most critical factor governing the reasonableness of a fee award is the degree of success obtained. *Doe*, 435 F.3d at 506. Here**,** counsel for CPI obtained a significant verdict for CPI commensurate with the damages CPI suffered and was successful on all claims put before the jury. Counsel also obtained a significant award of punitive damages that will go a long way towards deterring similar acts of misconduct by Vivint in the future. At the time of the filing of the Complaint, CPI alleged compensatory damages of no less than ten million dollars and punitive damages in an undetermined amount. [Dkt. 1 at 17.] Due in part to the work of CPI's counsel, the jury ultimately returned a verdict of $189,700,000, including compensatory and punitive damages. [Dkt. 148.]

**I. Experience, Reputation, and Ability of the Attorney.**

Counsel for CPI is highly experienced, well-qualified, and skilled. Lead counsel for CPI, Charlie Eblen, is an accomplished trial lawyer with numerous accolades. He is a Fellow in the American College of Trial Lawyers, the International Academy of Trial Lawyers, and the American Board of Trial Advocates. Eblen Aff. ¶ 16(a). The other members of CPI's trial team have also worked on numerous trials, and their specific credentials and accolades are set forth in granular detail in Exhibit 1.

### J. Nature and Length of the Professional Relationship between Attorney and Client.

This was the first matter in which the undersigned counsel represented CPI. *Id.* at ¶ 6. The representation began in August 2020. *Id.* at ¶ 12. As such, while counsel has handled cases similar to this one on behalf of other security companies, counsel was required to devote significant time to becoming familiar with CPI's record keeping and the processes and procedures used by CPI to service its customer base. *Id.* at ¶ 13. Counsel also incurred risk by taking this case on a contingency fee rather than as a billable matter. *Id.* at ¶ 14.

### K. Attorneys' Fees Awards in Similar Cases.

The fees requested by Counsel for CPI are appropriate in light of other attorneys' fee awards in similar cases. For example, in 2005, nearly 20 years ago, the North Carolina Court of Appeals affirmed a trial court's decision to grant $1,200,000 in attorney's fees on a $5,000,000 NCUDTPA verdict, which was trebled to $15,000,000. *See Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*, 620 S.E.2d 222, 224, n.1 (2005).

Upon balancing the factors set forth above, it is clear that the fees requested by Counsel for CPI are reasonable and commensurate with the work performed, and their rates are well within the market range.

### CONCLUSION

Accordingly, CPI's Motion for Attorneys' Fees should be granted. CPI also preserves its right to supplement its fee claim once all post-trial briefing is complete to reflect the final figure incurred before this Court.

Dated: April 3, 2023               Respectfully submitted,

                                    **SHOOK, HARDY & BACON L.L.P.**

By: s/ *Caroline M. Gieser*
Caroline M. Gieser
North Carolina Bar No. 51610
cgieser@shb.com
1230 Peachtree Street, Suite 1200
Atlanta, Georgia 30309
(470) 867-6013

    -and-

s/ *Charlie C. Eblen*
Charles C. Eblen (Admitted *Pro Hac Vice*)
Missouri Bar No. 55166
ceblen@shb.com
2555 Grand Blvd.
Kansas City, Missouri 64108-2613
(816) 474-6550

    -and-

s/ *Eric J. Hobbs*
Eric J. Hobbs (Admitted *Pro Hac Vice*))
Colorado Bar No. 46813
ehobbs@shb.com
Daniel E. Rohner (Admitted *Pro Hac Vice*)
Colorado Bar No. 27469
drohner@shb.com
1660 17th Street, Suite 450
Denver, Colorado 80202
(303) 285-5300

*Counsel for Plaintiff CPI Security Systems, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on the 3rd day of April, 2023, I served the foregoing document by ECF on all counsel of record.

/s/ *Caroline M. Gieser*
Caroline M. Gieser

***Attorney for Plaintiff CPI Security Systems, Inc.***