UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-CV-00504-FDW-DSC

| | |
|---|---|
| CPI SECURITY SYSTEMS, INC.<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>VIVINT SMART HOME, INC.<br>f/k/a MOSAIC ACQUISITION CORP.;<br>LEGACY VIVINT SMART HOME, INC.<br>f/k/a VIVINT SMART HOME, INC.<br><br>　　　　　　　　Defendants. | **PLAINTIFF CPI SECURITY SYSTEMS, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES** |

　　　　Noticeably absent from Vivint's Opposition is any attempt to contradict clear law entitling CPI to attorneys' fees under the NCUDTPA and the Lanham Act. The silence is compelling: Vivint acknowledges CPI is entitled to its fees in the circumstances of this case, which are a small fraction of the significant recovery CPI's counsel secured for its client in this matter. Instead, Vivint quibbles about the amount to which CPI is entitled, citing inapposite law and making half-baked arguments in favor of a discount Vivint does not deserve. Vivint's attempts to whittle down the fee claim are unsupported—and in many cases ironic—in light of Vivint's significantly larger defense team, composed of multiple prominent law firms, which chose to oppose virtually every piece of evidence and testimony CPI sought to introduce. The Court should grant CPI's Motion and award the full amount of fees CPI prays for under the lodestar.

1

# ARGUMENT

## I. CPI IS ENTITLED TO ATTORNEYS' FEES UNDER THE NCUDTPA AND THE LANHAM ACT.

Vivint concedes that CPI is entitled to an award of fees under the NCUDTPA and the Lanham Act.

As to CPI's NCUDTPA claim, Vivint does not provide a single citation to rebut CPI's argument that Vivint "willfully engaged in [an] unfair or deceptive trade practice and . . . [that Vivint] made an unwarranted refusal to settle the matter." *See Irwin Indus. Tool Co. v. Worthington Cylinders Wisconsin, LLC*, 747 F. Supp. 2d 568, 589 (W.D.N.C. 2010). Furthermore, Vivint has failed to provide any authority suggesting that waiting until at least halfway through trial to make its first settlement offer is anything other than an unwarranted refusal to settle under the NCUDTPA. Indeed, this Court has already found that approach supports a fee award under the statute. *See Clark Material Handling Co. v. Toyota Material Handling U.S.A., Inc.*, No. 3:12-CV-00510-MOC, 2015 WL 3514339, at *7 (W.D.N.C. June 4, 2015).

Vivint has also failed to rebut CPI's argument that this is an exceptional case where attorneys' fees are warranted under the Lanham Act because Vivint's position on liability in the case was meritless, and Vivint failed to "continually assess the substantive strength of [its] litigation position, particularly by the conclusion of discovery." *See Design Res., Inc. v. Leather Indus. of Am.*, No. 1:10CV157, 2016 WL 5477611, at *6 (M.D.N.C. Sept. 29, 2016). Despite denying liability in their Answer

and throughout this litigation, Vivint provided essentially no rebuttal evidence on liability at trial.

Without any legitimate opposition from Vivint, CPI is entitled to attorneys' fees under both the NCUDTPA and the Lanham Act.

## II. ALL ATTORNEYS' FEES CPI SEEKS ARE RELEVANT TO ITS NCUDTPA AND LANHAM ACT CLAIMS.

All the work CPI performed in the workup of this case and at trial is relevant to its NCUDTPA and Lanham Act claims. Thus, Vivint's argument that CPI has failed to adequately distinguish its recoverable fees from its non-recoverable fees is a red herring. Dkt. 175 at 3. It is also baffling because CPI won on all claims, which Vivint itself has argued are all inter-related. *See generally* Dkt. 161 at 3-9.

Vivint relies on *Parlier v. Casteen* for the proposition that CPI's request for fees should be denied in its entirety because CPI has failed to distinguish between recoverable fees and unrecoverable fees. *Id*. But *Parlier* is readily distinguishable. There the defendant made counterclaims against a plaintiff for (1) claim and delivery; (2) breach of contract; (3) implied contract/*quantum meruit*/unjust enrichment; (4) conversion; (5) possession of personal property; (6) fraud; (7) unfair and deceptive trade practices; (8) punitive damages; (9) battery; (10) assault; (11) false imprisonment; and (12) intentional infliction of emotional distress. *Parlier v. Casteen*, No. 514CV00085RLVDCK, 2016 WL 3032692, at *3 (W.D.N.C. May 26, 2016). The defendant sought to collect attorneys' fees only on the unfair and deceptive trade practices claim and not the other drastically different claims like assault,

3

battery, false imprisonment, and intentional infliction of emotional distress. *See id*. at *8.

Here, even if CPI had gone to trial only on the NCUDTPA and Lanham Act claims, the required workup of the case and the length of the trial would have been the same as what actually occurred because the evidence of intent and the scope and breadth of the deceptive conduct was relevant to all of CPI's claims, as was the evidence of various types of damages incurred by CPI like lost profits and damage to CPI's goodwill and business reputation. In particular, the workup regarding and evidence demonstrating that Vivint the corporation, not just rogue sales actors, trained or condoned the behavior occupied a major part of the discovery workup and trial time. All claims supported recovery of similar damages, as is apparent from the final jury instructions.

In *Parlier*, on the other hand, the claims were drastically different from one another. Whereas there is overlap between evidence of common law unfair competition, tortious interference with contracts, violations of the NCUDTPA, and violations of the Lanham Act, there is not overlap between evidence of a violation of the NCUDTPA and evidence of battery, assault, false imprisonment, and intentional infliction of emotional distress. Thus, *Parlier* in no way supports Vivint's argument.

Vivint makes no effort to show how or why CPI's fees would be lower had CPI only prosecuted the NCUDTPA and Lanham Act claims and not also its common law unfair competition and tortious interference claims – on which the jury found for CPI

4

and against Vivint. In fact, Vivint has (wrongly) argued elsewhere that CPI's claims overlap allegedly requiring an election of remedies. Dkt 161 at 3-9.

### III. CPI STAFFED THIS CASE EFFICIENTLY WITH SKILLED ATTORNEYS CHARGING REASONABLE RATES.

CPI's staffing model was eminently reasonable and efficient—especially in comparison to Vivint's. CPI employed one law firm – Shook, Hardy & Bacon LLP – which charged rates commensurate with or *below* the market rate in the Western District of North Carolina. *See* Dkt. 173-2 at ¶¶ 9-11. Nevertheless, Vivint criticizes CPI for allegedly overusing partner-level attorneys and for attorney Charlie Eblen's billable rate. *See* Dkt. 175 at 10-11. Yet, Vivint fails to identify what tasks performed by Shook's partner-level attorneys should have been more appropriately performed by Shook's associate-level attorneys instead. Moreover, these allegations are startlingly ironic in light of Vivint's four-partner-per-deposition staffing model, Vivint's massive trial team, and the rates Vivint's own lawyers charge in commercial litigation matters.

### A. Vivint Failed to Identify What Tasks Performed by Shook's Partner-Level Attorneys Are "Tasks Generally Delegated to More Junior Attorneys."

Vivint's criticism of CPI's staffing model is vague at best. Citing *Kreuze v. VCA Animal Hosps., Inc.,* Vivint makes the bare assertion that Shook overused partners by failing to delegate "tasks generally delegated to more junior attorneys." No. CV PJM-17-1169, 2019 WL 2107263, at *5 (D. Md. May 14, 2019). Vivint puts forth no effort to specifically delineate which tasks Shook's partner-level attorneys should have delegated to associate-level attorneys, rendering this criticism meaningless for

5

the Court's analysis of the reasonableness of CPI's attorneys' fee claim. Moreover, as this Court may have observed, CPI submits that it was prudent trial strategy to have CPI's lead trial lawyers intimately familiar with the case theory, themes, evidence, and legal issues throughout the case and at trial in particular. Additionally, the rate charged by some of Shook's partner-level attorneys, including Eric Hobbs, is more akin to associate-level rates within large Charlotte firms. Dkt. 173-2 at ¶ 11(c).

And despite Vivint's criticism of CPI's overuse of partners, there was no associate on Vivint's trial team. Shook's associate attorney examined several witnesses, many of whom were direct or cross-examined by Vivint's much more expensive and experienced counsel.

### B. CPI's Legal Staffing Model Was Drastically More Efficient Than Vivint's.

CPI has consistently maintained a lean legal team of three main attorneys – Charlie Eblen, Eric Hobbs, and Caroline Gieser – while using other lawyers at Shook for isolated projects. Shook is the only law firm that has appeared for CPI in this matter. On the other hand, Vivint has *five* law firms representing it in this matter, three of which appeared at the depositions, pre-trial hearings, and trial in this matter, and one of which is one of the top 5 largest law firms in the country.

There are countless examples juxtaposing CPI's efficient staffing and Vivint's approach. As but one, at the deposition of Vivint 30(b)(6) designee Joshua Crittenden (who testified to critical training and sales issues), CPI had one attorney, Charlie Eblen, in attendance. *See* Excerpt from Dep. of Joshua Crittenden, attached hereto as **Ex**. **1**. Vivint, on the other hand, had **five** attorneys, Matthew Steward, Gregory

6

Herbert, Steven Epstein, Andrew Erteschik, Kent Hansen (in-house counsel), and one paralegal, Paula Castro, in attendance. *Id*.

At the deposition of John Shocknesse, one of CPI's 30(b)(6) witnesses, CPI had only its two lead attorneys, Charlie Eblen and Eric Hobbs, in attendance. *See* Excerpt from Dep. of John Shocknesse, attached hereto as **Ex**. **2**. By contrast, Vivint had **four** attorneys, Gregory Herbert, Steve Anderson, Michael Kreitzer, and Andrew Erteschik, along with one paralegal, Paula Castro, in attendance. *Id*. All attending attorneys for Vivint are partners.

At the deposition of Eric Schachner, another one of CPI's 30(b)(6) witnesses, CPI had two attorneys, Charlie Eblen and Eric Hobbs, in attendance. *See* Excerpt from Dep. of Eric Schachner, attached hereto as **Ex**. **3**. By contrast, Vivint had **three** attorneys, Gregory Herbert, Steve Anderson, and Michael Kreitzer (all partners), along with one paralegal, Paula Castro, in attendance. *Id*.

At the deposition of Jorge Millares, a non-party witness, CPI had one attorney, Charlie Eblen, in attendance. *See* Excerpt from Dep. of Jorge Millares, attached hereto as **Ex**. **4**. Vivint had **three** lawyers, Gregory Herbert, Matthew Steward, and Kent Hansen (in-house counsel), in attendance. *Id*.

And at the trial of this matter, CPI had two partner attorneys, Charlie Eblen and Eric Hobbs, and one associate attorney, Caroline Gieser, at counsel table to present evidence and examine witnesses. Vivint had a minimum of three partner attorneys, Michael Kreitzer, Matthew Steward, and Andrew Erteschik at counsel table each day, with a fourth partner attorney, Joshua Brown, making frequent

7

appearances at counsel table in the latter part of the trial, and a fifth partner, J.M. Durnovich, sitting in the gallery of the courtroom each day.

In light of these examples, it is clear that CPI's legal staffing was efficient and reasonable.

### C. CPI's Staffing of Local Counsel Was Cost Effective.

CPI opted for a substantially more cost effective approach for local counsel than Vivint did. Vivint retained two partners at Poyner Spruill, LLP, Andrew Erteschik and J.M. Durnovich, to serve as local counsel. Rather than adding more law firms or more partner-level attorneys to its legal team, CPI selected Caroline Gieser, a North Carolina licensed Shook associate attorney, to serve as local counsel. This is yet another example that belies Vivint's theory that CPI relied too heavily on partner-level attorneys for associate-level work.

### D. Charlie Eblen's Billable Rate is Appropriate in the Market and Commensurate to the Rates Vivint's Lawyers Charge in Commercial Cases.

Charlie Eblen's rate of $805 is reasonable in this matter, commensurate with prevailing rates in the market, and also commensurate with rates Vivint's own lawyers charge in commercial cases. It is indeed puzzling to see Vivint's lawyers criticize Mr. Eblen's rate when they seek to be compensated at similar rates when the shoe is on the other foot.

For example, on March 30, 2022, Vivint lawyers Gregory Herbert and Joshua Brown sought to be compensated at rates of $795 per hour and $725 per hour respectively in a motion for attorneys' fees in a case under the Copyright Act,

8

captioned *Caracol Television, S.A. v. Telemundo Television Studios, LLC et al.* *See* **Ex. 5** at 7.

In the case at bar, unlike Charlie Eblen, who was CPI's lead counsel, Mr. Herbert only performed depositions and did not come to trial. Mr. Brown performed the direct examination of Brian Buss and the cross examination of Russell Winer.

On April 11, 2023, just days before filing Vivint's Opposition, Michael Kreitzer, lead counsel for Vivint, represented that his hourly rate is **$1,075 an hour**, and he sought to be compensated at a blended rate of $750 per hour in a motion for attorneys' fees in a commercial case that commenced nearly a decade ago, captioned *84 Shopping Plaza Corporation v. Bru's Room Bird Road, LLC et al.* The motion noted that "Mr. Kreitzer's hourly rate was substantially <u>discounted</u> from his typical rate of $1,075." *See* **Ex. 6** at 6 (emphasis in the original).

Prior to his tenure at Greenberg Traurig, Mr. Kreitzer worked at a much smaller law firm, and even six years ago, Mr. Kreitzer was still commanding $715 per hour in commercial litigation cases. *See* **Ex. 7** at 5.

Of course, the Fourth Circuit holds that "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006). The jury left little doubt that the CPI team was successful against Vivint, which supports that a rate of $805 per hour is reasonable for lead counsel in a case of this magnitude and complexity.

Mr. Eblen's rate of $805 per hour is reasonable, and this Court should not reduce it to Vivint's proposed $626 per hour.

## IV. ALL WORK DONE IN PREPARATION FOR THE JUNE 2022 TRIAL WAS USED AT THE FEBRUARY 2023 TRIAL.

CPI does not dispute that it had begun preparation for the June 2022 trial that was ultimately continued due to a family health emergency. However, in the interest of efficiency and knowing that the trial would be rescheduled, counsel for CPI was careful to preserve work product to ensure that it would not need to be recreated for the new trial date. For example, digital copies of exhibits, witness outlines, notes for opening statements, demonstratives, and PowerPoint slides were all preserved and ultimately used in the trial of this matter and did not have to be recreated due to the careful steps CPI's counsel took to preserve these items. This is not a basis to give Vivint a discount.

## V. SHOOK'S BILLING ENTRIES ARE ADEQUATELY DETAILED AND APPROPRIATELY REDACTED.

Shook's billing entries are adequately detailed to allow the Court to award attorneys' fees and minimally redacted to protect work product and attorney client privilege.

Vivint spills much ink complaining about the form of Shook's billing entries[1], particularly the fact that "CPI's fee chart abounds with block billed entries." Dkt. 175 at 6. Yet, "[b]lock billing would only be inappropriate if one or more tasks

---

[1] Without any citation to authority, Vivint criticizes a handful of billing entries for travel time. Dkt. 175 at 13. "Courts around the country differ widely in their treatment of travel time in calculating the lodestar amount." *Larsen v. AR Res., Inc.*, 453 F. Supp. 3d 849, 853 (E.D. Va. 2020). Other courts within the 4th Circuit have allowed attorneys to recover fees for time spent traveling but in some cases have reduced the billable rate. *See id*. This Court should allow CPI to recover fees for travel time for its counsel, even if at a reduced rate.

performed by an individual attorney was not recoverable such that the Court could not discern the actual time charged for recoverable tasks." *Rossum v. Baltimore Cnty., Maryland*, No. GJH-14-0115, 2017 WL 4270435, at *3 (D. Md. Sept. 26, 2017). It is clear from the contents of the limited block-billed entries that Vivint cites in its Opposition that the work performed was in furtherance of CPI's Lanham Act and NCUDTPA claims. The handful of entries excerpted in Vivint's opposition specifically mention customer depositions, direct examination of customers witnesses, preparation with Dr. Winer, and responding to Vivint's discovery requests. Dkt. 175 at 7. From those descriptions, this Court can easily see a nexus between the work performed and CPI's Lanham Act and NCUDTPA claims.

Vivint also takes issue with the fact that CPI made appropriate privilege-based redactions to a minuscule fraction of Shook's billing entries – only 150 out of 3,692 entries contained any redactions. *See generally* Dkt. 173-1 at 16-117. Yet, Vivint fails to cite to a single authority that supports the notion than CPI's attorneys' fees award should be reduced because it asserted work product and/or attorney client privilege over some portions of its billing entries.[2] Were Vivint legitimately concerned about the contents of the redacted entries, Vivint could have requested *in camera* review of the billing entries. Instead, Vivint opted to ask CPI for a privilege log five days before Vivint's response was due, and CPI provided same less than 48 hours after the request. In reality, and as explained between counsel for the parties on

---

[2] Shook has other pending matters against Vivint for other clients necessitating protection of certain work product and privileged information like that redacted in the Shook bills.

11

phone calls, the minor redactions were clear attorney work product—such as legal research on theories that were not pursued and/or potential fact and expert witnesses who counsel interviewed when investigating its case. There is no factual or legal basis to reduce CPI's fee award because CPI validly claimed privilege over a fraction of its billing entries.

## VI. VIVINT DOES NOT PROVIDE ITS OWN RATES OR BILLS.

If there were merit to Vivint's various contentions, there is nothing preventing Vivint from submitting information about its own fee rates and bills to argue how or why CPI's are not reasonable or not provided with sufficient detail. Vivint failed to do so. Indeed, one is left to wonder exactly what fees Vivint itself was paying the numerous prominent law firms it engaged, especially in light of the publicly-available information confirming rates higher than some of those sought by CPI here. There would probably be a few block-billed entries in Vivint's counsel's billing entries, too.

## CONCLUSION

Vivint all but admits CPI is entitled to its attorneys' fees. Vivint's efforts to receive a court-imposed discount should be rejected, and CPI should be awarded the full fee supported by the lodestar.

Dated: April 20, 2023    Respectfully submitted,

**SHOOK, HARDY & BACON L.L.P.**

By: s/ *Caroline M. Gieser*
Caroline M. Gieser
North Carolina Bar No. 51610

12

cgieser@shb.com
1230 Peachtree Street, Suite 1200
Atlanta, Georgia 30309
(470) 867-6013

-and-

s/ *Charlie C. Eblen*
Charles C. Eblen (Admitted *Pro Hac Vice*)
Missouri Bar No. 55166
ceblen@shb.com
2555 Grand Blvd.
Kansas City, Missouri 64108-2613
(816) 474-6550

-and-

s/ *Eric J. Hobbs*
Eric J. Hobbs (Admitted *Pro Hac Vice*)
Colorado Bar No. 46813
ehobbs@shb.com
Daniel E. Rohner (Admitted *Pro Hac Vice*)
Colorado Bar No. 27469
drohner@shb.com
1660 17th Street, Suite 450
Denver, Colorado 80202
(303) 285-5300

***Counsel for Plaintiff CPI Security Systems, Inc.***

13

## CERTIFICATE OF SERVICE

I certify that on the 20th day of April, 2023, I served the foregoing document by ECF on all counsel of record.

/s/ *Caroline M. Gieser*
Caroline M. Gieser

***Attorney for Plaintiff CPI Security Systems, Inc.***