UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-504-MOC

| | | |
|---|---|---|
| CPI SECURITY SYSTEMS, INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| VIVANT SMART HOME, INC., et al., | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

     **THIS MATTER** is before the court on Defendants' Motion to Alter Judgment, Motion for New Trial, Motion for Judgment NOV, Motion for Judgment as a Matter of Law. (Doc. No. 160). Having considered Defendant's motion and reviewed the pleadings, the Court enters the following Order.

### I.    Background

     CPI Security Systems, Inc. ("Plaintiff" or "CPI") is the largest privately held security provider in the Southeast. CPI provides security, automation, and smart-home services and equipment to its customers, including 24-hour monitoring and emergency response services that relay critical information to first responders in real time. Defendants Vivint Smart Home, Inc. and Legacy Vivint Smart Home, Inc. (collectively, "Defendants" or "Vivint") are a competing security provider that operates in most states, including North Carolina.

     Plaintiff filed this action on September 11, 2020. (Doc. No. 1). Plaintiff filed an Amended Complaint on November 12, 2020. (Doc. No. 29). In its Amended Complaint, Plaintiff asserted four claims against Defendants: (1) Unfair Competition in Violation of the Lanham Act (15 U.S.C. § 1125(a)(1)(A)); (2) Common Law Unfair Competition; (3) Violation of the North

1

Carolina Unfair and Deceptive Trade Practices Act (UDTPA); and (4) Tortious Interference with Business Relationships. (Doc. No. 29). The crux of CPI's claims against Defendants are its allegations that Vivint's sales representatives deceptively induced Plaintiff's customers to switch from CPI to Vivint. Plaintiff contends that Vivint representatives deceived CPI's customers by falsely telling customers they were affiliated with CPI; that Vivint was purchasing or had purchased CPI; that Vivint was "taking over" the CPI customer accounts; that Vivint manufactures CPI's equipment and that Vivint needed to upgrade CPI's system; and that Vivint was acting on CPI's behalf. After customers signed expenses contracts with Vivint under the false pretense of Vivint's scams, Plaintiff contends that Vivint made it difficult for customers to cancel their contracts, leading many CPI customers being frustrated with both Vivint and CPI.

On September 9, 2021, Vivint filed a motion for partial summary judgment against CPI's UDTPA claim. (Doc. No. 58). The Court granted the motion to the extent that Plaintiff's UDTPA claim relied <u>solely</u> on Defendants' misrepresentations to CPI customers. (Doc. No. 77). To the extent that Plaintiff's UDTPA claim is based on its Lanham Act and tortious interference claims, the Court denied Defendant's motion for summary judgment. (<u>Id.</u>).

Trial commenced on February 6, 2023. At the close of the evidence on February 17, the jury entered a verdict in favor of CPI. The jury found for CPI on its Lanham Act, common law unfair competition, tortious interference with contract, and UDPTA claims. The jury further awarded punitive damages. (Doc. Nos. 148, 149). The total damages award of $189,700,000 breaks down as follows: (1) Lanham Act: $5,400,000; (2) Common Law Unfair Competition: $13,500,000; (3) Tortious Interference with Contracts: $1,500,000; UDTPA: $29,300,000; Punitive Damages: $140,000,000. CPI elected to keep all $49,700,000 in compensatory damages and accept the jury's punitive damages award instead of trebling its UDPTA damages.

2

Defendant Vivint filed the instant motion on March 17, 2023. CPI responded, and Defendant replied. (Doc. Nos. 160, 172, 74). The matter is now ripe for disposition.

Vivint seeks the following relief under Fed. R. Civ. P. 50 and 59:

(1) That the Court alter or amend the judgment or, alternatively, remit CPI's damages or order a new trial based on its argument that limits on double recovery and on non-compensatory damages restrict CPI's recovery to a subset of the damages awards on the verdict sheet.

(2) That the Court grant judgment as a matter of law for Vivint on CPI's UDTPA claim because CPI failed to prove that it relied on Vivint's alleged misrepresentations.

(3) That the Court grant judgment as a matter of law for Vivint on damages, grant remittitur on CPI's damages, or order a new trial, because (a) the jury's awards were caused by the erroneous admission of inflammatory evidence, and (b) CPI failed to introduce sufficient admissible evidence to support the jury's damages awards.

## II.    Legal Standard

Rule 50(b) requires judgment for defendant if the trial evidence did not provide a legally sufficient basis for a reasonable jury to find for the plaintiff. See Fry v. Rand Constr. Corp., 964 F.3d 239, 244 (4th Cir. 2020). A scintilla of evidence is insufficient to support a verdict. Pracht & Greenwood Motor Lines, Inc., No. 3:13-CV-529-RJC-DCK, 2016 WL 3032691, at *2 (W.D.N.C. May 26, 2016). Speculation and conjecture are likewise insufficient. Fry, 964 F.3d at 244.

Under Rule 59(a), the Court may award a new trial on some or all issues when a verdict (1) is against the clear weight of the evidence, (2) is based on false evidence, or (3) will cause a miscarriage of justice. EEOC v. Consol Energy, Inc., 860 F.3d 131, 145 (4th Cir. 2017). The Court may grant a new trial even if substantial evidence supports the verdict. Poynter v. Ratcliff,

3

874 F.2d 219, 223 (4th Cir. 1989). The Court may weigh the evidence and evaluate witness credibility when evaluating a Rule 59 motion. Id.

Rule 59(a) also authorizes the Court to order remittitur on an excessive damages award. Sloane v. Equifax Info. Servs., LLC, 510 F.3d 495, 502 (4th Cir. 2007); Eschert v. City of Charlotte, No. 3:16-CV-295-FDW-DCK, 2017 WL 3633275, at **7–9 (W.D.N.C. Aug. 23, 2017). If an award is excessive, "it is the court's duty" to order a new trial unless the plaintiff accepts a reduced award. Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 593 (4th Cir. 1996). Both compensatory and punitive damages are subject to remittitur. Id.

Under Rule 59(e), the Court has discretion to alter or amend a judgment to avoid excessive awards and prevent double recovery. Gilliam v. Allen, 62 F.4th 829 (2023); Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993). Denial of remittitur "rests with the sound discretion of the trial judge and will not be reversed absent an abuse of discretion." Stamathis v. Flying J, Inc., 389 F.3d 429, 436 (4th Cir. 2004). A jury verdict should stand unless the verdict is against the clear weight of the evidence, is based on false evidence, or will result in a miscarriage of justice. Id.

## III. Discussion

### A. Vivint's Contention that the Damages Award Amounted to a Double Recovery for CPI

Vivint first asks that the Court alter or amend the judgment, require remittitur, or order a new trial. Vivint argues that limits on double recovery and non-compensatory damages restrict CPI's recovery to a subset of the damages awards on the verdict sheet. The Court rejects Vivint's argument for the following reasons.

At Vivint's request, the Court instructed the jury to award additional damages for each

4

claim <u>only</u> if the jury found unique conduct supported additional damages for each claim on the verdict form that were not duplicative:

> Issues 2.c, 3.c, and 4.c, on the verdict form read "What amount of damages, if any, is CPI entitled to receive from Vivint" as to Issues 2, 3, and 4, respectively? If you awarded damages to CPI on Issue 1.c, you must not award duplicative damages for the same conduct on Issue 2.c, Issue 3.c, or 4.c. However, if you find that CPI suffered damages on Issue 2.c, Issue 3.c, or Issue 4.c, that are separate and distinct from, or in addition to, any damages awarded to CPI on Issue 1.c, you may award additional damages so long as they do not constitute a double recovery for the same conduct. Also, you may award damages on Issue 2.c, Issue 3.c, or Issue 4.c, even if you did not award damages on Issue 1.c.

Jury Instructions at 22. During deliberations, the jury asked the following question:

> Re: Damage amounts, <u>do we need to break the total into separate amounts</u> for Section 1.C, 2.C, 3.C, 4.C? We seem to recall hearing the same total should appear in each of those spots, but we're not sure. Please clarify, thank you.

Jury Question 1 (emphasis added). In response, Vivint asked the Court to simply read back the above-cited jury instruction because it answered the jury's question. (<u>See</u> Trial Tr., 2-17-23, at 3). Thus, Vivint agreed the jury could award different, additional damages for each claim if they were not based on the same conduct. It is clear from Vivint's exchange with the Court that it understood the jury had the right to award distinct damages across claims. (<u>Id.</u> at 9).

"A jury is presumed to follow the instructions of the court." <u>Stamathis v. Flying J, Inc.</u>, 389 F.3d 429, 442 (4th Cir. 2004). "[A]bsent some specific 'reason to doubt that the jury. . . adhered to the district court's directive,'" the Court assumes the jury followed its instructions. <u>United States v. Runyon</u>, 707 F.3d 475, 497 (4th Cir. 2013). Because the Court's instructions here preclude any risk of "double recovery," and because no evidence suggests that the jury did not understand that directive, the law does not require CPI to elect among its compensatory damages. <u>See</u> <u>United States v. Kuykendall</u>, 335 N.C. 183 (1993). Indeed, the jury's indication that it would "break the total into separate amounts" and specifically allocate different amounts

5

to individual claims confirms that the jury understood the Court's instruction.

Moreover, the Court finds the jury had sufficient evidence to award nonduplicative damages for each count. The jury received proof of thousands of discrete instances of misconduct spanning several years, many of which gave rise to liability under one claim but not another. See, e.g., Exhibit P at 90 (Vivint spreadsheet detailing 13,000 separate entries of various and differing complaints it reportedly received from potential CPI customers). Vivint's misconduct included misrepresenting an affiliation with CPI; stating that CPI had gone out of business; falsifying customer surveys; lying about whether Vivint would buy out CPI customer contracts; and so on. The jury easily could have concluded that some of this conduct (such as the affiliation misrepresentations) violated the Lanham Act, while other such conduct (such as falsifying consumer surveys or telling consumers that CPI had gone out of business) constituted unfair competition, tortious interference with contract, or violation of the UDTPA.

Vivint has not shown that there was a "double redress for a single wrong" requiring CPI to elect among compensatory damages. Kuykendall, 335 N.C. at 191.[1] In fact, double recovery was impossible: the jury was instructed not to allow duplicative damages, and the Court must presume that the jury followed these instructions.[2] This case did not involve a single wrong. The

---

[1] See also Yarmouth Sea Prods. Ltd. v. Scully, 131 F.3d 389, 399 n.7 (4th Cir. 1997) ("We agree with the district court that the burden was on [the defendant] to establish, if he could, that an award of the entire cost of repair constituted a double recovery."); Matrix Grp. Ltd., Inc. v. Rawlings Sporting Goods Co., 477 F.3d 583, 592 (8th Cir. 2007) ("Because a reviewing court's role under the Seventh Amendment 'is to reconcile and preserve whenever possible' a jury verdict, we must start with a presumption that the damages awarded were not duplicative." (quoting Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 497 (2d Cir. 1995)).

[2] The jury directive not to award duplicative damages distinguishes this case from others in which duplicative jury instructions for different claims effectively solicited duplicative damages. (Mot. 4, 6). In Eschert v. City of Charlotte, for example, the instructions for different claims were "identical," so the jury's award was "obviously duplicative." 2017 WL 3655275, at *8 (W.D.N.C. Aug. 23, 2017); see also Marshall v. Miller, 268 S.E.2d 97, 103 (N.C. App. 1980),

multiple forms of misconduct proved at trial support different causes of action and different resulting injuries. See, e.g., Britt v. Jones, 472 S.E.2d 199, 201–02 (N.C. App. 1996) (no "double recovery" under UDTPA and usury statute when "plaintiff's claim for unfair trade practices was not based solely on defendant's usurious conduct"). The jury properly awarded different damages for those distinct injuries under each claim.

The jury found that Vivint's several discrete courses of (mis)conduct caused several discrete injuries. Vivint's multifarious means of hoodwinking CPI customers distinguishes this case from the "same course of conduct" cases upon which Vivint relies, such as X-It Prods. LLC v. Walter Kiddle Portable Equip., Inc., 227 F. Supp. 2d 494, 523–24 (E.D. Va. 2002). X-It addressed a very different scenario "[w]here multiple causes of action result in the same damages and are based on the same facts." Id. at 522 (emphasis added).[3] That court examined each award alongside the applicable evidence presented at trial and concluded that the jury awarded duplicative damages. Id. at 542–43. Indeed, the X-It jury verdict duplicated the exact damages amount proposed by X-It's expert across several different claims. Id. at 502.[4] Here, by contrast, there was ample evidence for the jury to award distinct damages based on distinct conduct

_____

aff'd as modified, 276 S.E.2d 397 (N.C. 1981) (overlapping instructions on breach of lease and UDTPA claims resulted in the jury assessing damages "twice for the same default"). The Court's careful jury instruction—delivered at Defendant's request—forecloses the relief Defendant seeks here.

[3] See also Transamerica Occidental Life Ins. Co. v. Sanders, 91 F.3d 134 (1995) (unpublished table decision) (finding fraud and UDTPA claims were based on "the same conduct" relating to a misrepresentation on an insurance application); Eschert, 2017 WL 3633275, at *8 (finding no separate conduct to support each claim, resulting in "inextricably intertwined" damages awards); Volumetrics Med. Imaging, Inc. v. ATL Ultrasound, Inc., 2003 WL 21650004, at *3 (M.D.N.C. July 10, 2003) ("it is apparent that the conduct which forms the basis for both the fraud claim and the UDTPA claim is the same").

[4] Accord Eschert, 2017 WL 3633275, at *1 (jury awarded same amount for counts one and two and same amount for counts three and four); Trantham, 745 S.E.2d at 331 (jury awarded "identical sums" for six claims).

7

specific to each claim. The jury did precisely that.

Even if Vivint could articulate an "election of remedies" argument, that argument would be barred under the doctrine of invited error. If Vivint genuinely believed the law permitted only one award on a single claim, Vivint's advocacy (particularly with respect to the jury instructions and verdict form) should have reflected that belief. Instead, Vivint not only advocated for the instructions and verdict form that the jury followed, but subsequently requested that the Court double down on the critical instruction allowing the jury to divide the total compensatory award among the four claims. Vivint's attempt to assign error to the very form and instructions it requested is prohibited under the doctrine of invited error. See, e.g., Project Control Servs., Inc. v. Westinghouse Savannah River Co., 35 F. Appx. 359, 2002 WL 1020695, at **5–6 (4th Cir. May 21, 2002) (where the jury verdict form tendered by appellant required the jury to both answer special interrogatories on discrete issues and resolve several substantive causes of action for damages, and where the jury answered the special interrogatories in appellant's favor but rejected appellant's damages claims, finding that the appellant invited error when it later attacked the verdict as inconsistent).[5]

In Westinghouse, the jury verdict form tendered by appellant required the jury to both answer special interrogatories on discrete issues and resolve damages for several substantive causes of action. The jury answered the special interrogatories in appellant's favor but rejected appellant's damages claims. Afterwards, the appellant attacked the verdict as inconsistent. The

---

[5] For similar reasons, Vivint's failure to tender more specific special interrogatories in its verdict form waived its right to complain when the Court used that form. See Fed. R. Civ. P. 49; Smith v. Jacko, 2019 WL 4162376, at *9 (D.S.C. Sept. 3, 2019) (failure to object to or tender special interrogatories on damages constitutes waiver to complain about jury award).

district court denied appellant's request for post-trial relief, and the Fourth Circuit affirmed under the doctrine of invited error. The Circuit explained that

> [u]nder the "invited error" doctrine, a party is prevented from inducing the court to take an erroneous step and later seeking redress for the error. United States v. Jackson, 124 F.3d 607, 617 (4th Cir. 1997) ("invited error doctrine recognizes that a court cannot be asked by counsel to take a step in a case and later be convicted of error, because it has complied with such request") (internal quotation marks omitted).

Id. at *5. Such an "assignment of error in this regard strikes [the Court] as [appellant] wanting to have its cake and eat it too." Id. at *6.

As in Westinghouse, Vivint insisted that the jury be admonished against awarding duplicative damages and requested that the Court re-read that same instruction in response to a jury question. Now that the jury reached a verdict Vivint dislikes, Vivint complains that its own verdict form and the Court's instructions require something totally different (i.e., reducing the award to only one of the four claims).

Vivint also challenges the jury's punitive damages verdict, insisting that § 1D-25 caps that verdict at three times the compensatory damages award for each separate claim. (Mot. 7–9). However, North Carolina's cap allows punitive damages up to triple the total compensatory damages award. Because the jury's $140 million punitive damages award is less than three times the jury's total compensatory damages award of $49,700,000, the verdict is already consistent with North Carolina law and comports with constitutional limits.

Vivint contends that CPI must elect a fraction of the jury's punitive damages award limited to three times only one of the compensatory damages awards. However, the North Carolina Court of Appeals has rejected this argument, explaining that "[a]ll compensatory damages awarded to a party must therefore be totaled to one number for consideration of the

9

cap." <u>Rhyne v. K-Mart Corp.</u>, 562 S.E.2d 82, 92 (N.C. App. 2002), <u>aff'd</u>, 594 S.E.2d 1 (N.C. 2004). In <u>Rhyne</u>, the court considered a defendant's contention that § 1D-25 restricts punitive damages to a claim-by-claim approach to compensatory damages. Relying on the plain meaning of § 1D-25(a),[6] the Court of Appeals found that "[a]s to compensatory damages, 'the amount of compensation for all other damages' clearly speaks of <u>one amount for the combination of those damages</u>." <u>Id.</u> at 93 ("[T]here is one total for compensatory damages to be applied to one number for punitive damages."). The Court of Appeals also relied on Section 1D-25(a)'s reference to a single award of punitive damages—not an individual punitive damages award tied to distinct claims, stating that "[t]he phrases 'an award' and 'the amount of punitive damages' both speak to a single award for each plaintiff." <u>Id.</u> The statute then compares that single punitive damages award to "[a]ll compensatory damages . . . totaled to one number." <u>Id.</u> at 92.

Here, the total compensatory award was $49.7 million, and the jury's $140 million punitive damages award does "not exceed three times the amount of compensatory damages," or $149.1 million. Vivint attempts to exclude the compensatory damages associated with the Lanham Act and UDTPA claims from the "totaled" compensatory award for cap purposes. (Mot.

---

[6] Section 1D-25 provides in relevant part:

> (a) In all actions seeking an award of punitive damages, the trier of fact shall determine the amount of punitive damages separately from the amount of compensation for all other damages.
> (b) Punitive damages awarded against a defendant shall not exceed three times the amount of compensatory damages or two hundred fifty thousand dollars ($250,000), whichever is greater. If a trier of fact returns a verdict for punitive damages in excess of the maximum amount specified under this subsection, the trial court shall reduce the award and enter judgment for punitive damages in the maximum amount.

10

8.).[7] That result would ignore the plain text of § 1D-25, which counts compensatory damages regardless of their associated cause of action. It is thus irrelevant under § 1D-25 whether those claims standing alone would authorize punitive damages.

> 2. At a minimum, CPI can recover punitive damages equal to three times the compensatory damages under the state-law claims.

Vivint also contends that the UDTPA does not support punitive damages because punitive damages are available for untrebled compensatory damages under the UDTPA. As noted, rather than electing trebled UDTPA damages, CPI has elected a judgment of $49.7 million in total compensatory damages and the punitive damages award in the amount of $132.9 million. The North Carolina punitive damages statute "applies to every claim for punitive damages, regardless of whether the claim for relief is based on a statutory or a common law right of action or based in equity." N.C. GEN. STAT. § 1D-10. This includes untrebled UDTPA damages. Kuykendall, 335 N.C. at 194 n.6 (stating that there is "no reason why a plaintiff in an unfair practices claim may not waive the right to recover treble damages and elect instead, for reasons satisfactory to the plaintiff, to recover untrebled compensatory damages"); see SouthWood v. Credit Card Sol., No. 7:09cv81, 2016 WL 8710985, at *40 (E.D.N.C. Feb. 26, 2016) (report & recommendation) ("Punitive damages are also available for UDTPA claims if the plaintiff chooses not to recover trebled damages") (citing Kuykendall, 335 N.C. at 189–95), adopted,

---

[7] Vivint also misreads "the verdict sheet and the jury instructions" as "allow[ing] the jury to award punitive damages only on CPI's unfair-competition and tortious interference claims." (Mot. 8). Neither the instructions nor the verdict form includes any such restriction. Both simply provide that the jury can only consider awarding punitive damages if it first found Vivint liable on at least one of those two listed tort claims—which it did. More importantly, the instructions and verdict form are irrelevant to the legal question of which awarded compensatory damages are used to determine compliance with the statutory cap.

11

2016 WL 1389596 (E.D.N.C. Apr. 7, 2016), aff'd sub nom. Taylor v. Bettis, 693 F. App'x 190 (4th Cir. 2017)).

Vivint also argues that the punitive damages award violates "federal due-process principles." (Mot. 9). The Court disagrees and finds that the less than 3:1 punitive to compensatory damages ratio does not come "close" to presenting a constitutional concern. See State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003) ("[A]n award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety.") (emphasis added). Courts have unanimously rejected similar due process challenges to punitive damages awarded under § 1D-25. See, e.g., Ben Artis v. Murphy-Brown, LLC, 2019 WL 1103406, at *7 (E.D.N.C. Mar. 8, 2019) (relying on State Farm in finding that punitive damages award comporting with § 1D-25 did "not offend due process").

Vivint also suggests that the punitive damages award violates due process because the award is many times greater than CPI's annual net income and because it punishes Vivint for acts independent of those for which they were found liable. (Mot. 9). Vivint provides no authority, however, to support the contention that CPI's annual net income is relevant to due process limits on punitive damages—which are designed to punish and deter the wrongdoer. And here, the punitive damages were awarded to punish and deter precisely the Vivint conduct at issue—deceptive sales practices against CPI's customers that were condoned by Vivint's leadership.

**B.      Vivint's contention that the Court should grant judgment as a matter of law for Vivint on CPI's claim under the North Carolina Unfair and Deceptive Trade Practices Act (UDTPA), because CPI failed to prove that it relied on Vivint's alleged misrepresentations.**

12

Next, Vivint argues that CPI cannot recover under the UDTPA because CPI itself did not rely on any of Vivint's misrepresentations. (See Mot. 10–15). In denying Vivint's partial motion for summary judgment, the Court already rejected that argument, stating that "a viable, distinct cause of action that has been recognized as, or may constitute, an unfair or deceptive trade practice and is not solely reliant on a defendant's misrepresentations . . . may serve as the basis for a UDTPA claim without requiring the plaintiff show plaintiff's reliance on a misrepresentation to establish proximate cause." (Doc. 77 at 6–7: MSJ Order). The Court thus held that either unfair competition or tortious interference "may serve as a viable and independent basis for [CPI's] UDTPA claim" without proof of CPI's own reliance. Id. at 7.

Since the Court rejected Vivint's reliance argument, CPI has now proven its Lanham Act and common law unfair competition and tortious interference claims to the jury. CPI presented ample evidence for the jury to find Lanham Act and common law unfair competition based on "a misappropriation of benefits which flow from the quality of a competitor's product." Id. at 8. CPI also presented ample evidence of tortious interference and that its violations proximately caused various injuries to CPI.

Vivint insists that first-party reliance is the only way to prove proximate cause in a UDTPA claim. (Mot. 15). But the first-party reliance requirement pertains only to scenarios claims that are "solely reliant on a defendant's misrepresentations." (MSJ Order 6–7 (emphasis added)). Where, as here, another established tort independently establishes a UDTPA violation, and the alleged misrepresentations merely form part of a broader claim that the defendant engaged in multiple unfair and deceptive behaviors, first-party reliance is not required, as this Court already held on the motion for summary judgment.

In short, because CPI has proven underlying tort claims that are not solely based on

13

misrepresentations, CPI need not prove first-party reliance. Thus, the Court denies the motion to amend or new trial as to the UDTPA claim.

**C. Vivint's contention that the Court should grant judgment as a matter of law for Vivint on damages or, alternatively, remit CPI's damages or order a new trial, because (a) the jury's inflated awards resulted from the erroneous admission of inflammatory evidence, and (b) CPI failed to introduce sufficient admissible evidence to support the jury's damages awards.**

Vivint next asks that the Court grant judgment as a matter of law for Vivint on damages or, alternatively, remit CPI's damages or order a new trial, because (a) the jury's inflated awards resulted from the erroneous admission of inflammatory evidence, and (b) CPI failed to introduce sufficient admissible evidence to support the jury's damages awards. Rehashing arguments rejected by this Court both before and during trial, Vivint complains that the jury's verdict was the product of "inflammatory evidence." (Mot. 18). The Court repeatedly and correctly rejected these arguments at trial.

Vivint identifies two categories of alleged "inflammatory" evidence that it says should have been excluded: (1) evidence of other proceedings and regulatory actions against Vivint; and (2) customer complaints about Vivint to third parties. (Mot 16).

Citing <u>Gillis v. Murphy-Brown, LLC</u>, No. 7:14cv185, 2018 WL 5831994 (E.D.N.C. Nov. 7, 2018), Vivint first argues (as it did before and during trial) that both categories of evidence should have been excluded under Rule 404(b). (Mot. 19). Vivint complains that CPI should not use the issue of "notice" to bootstrap admission of prior acts. <u>Id.</u> Vivint's argument is without merit. First, the relevance of the prior act evidence at issue was not limited to notice; it was also relevant to Vivint's intent, knowledge, and the lack of mistake or accident. FED. R. EVID.

14

404(b)(2). Second, <u>Gillis</u> is distinguishable. There, the plaintiff claimed that the smell of a hog farm in North Carolina was a nuisance and sought to introduce evidence of a prior proceeding concerning a different hog farm in Missouri. <u>Gillis</u>, 2018 WL 5831994, at *2. The Court excluded the evidence, holding that whether hog farming operations caused an odor problem in Missouri was not relevant to the issue of notice for operation of a different farm in North Carolina. <u>Id.</u> In contrast, the prior act evidence here concerns the same Vivint sales force, trained and guided by the same Vivint management, engaging in the same deceptive practices.

Vivint next argues (as it did before and during trial) that the evidence should have been precluded under Rule 403. (Mot. 19). But "Rule 403 exclusion should be invoked rarely, because the general policy of the Federal Rules is that all relevant material should be laid before the jury." <u>United States v. Cooper</u>, 482 F.3d 658, 663 (4th Cir. 2007). Throughout trial, this Court repeatedly weighed the probative and prejudicial value of disputed evidence and in many cases—over CPI's objections—excluded certain prior act evidence CPI sought to introduce. As for the specific evidence about which Vivint now complains, however, this Court properly determined that the probative value of the evidence (e.g., evidence of Vivint's intent, notice, knowledge, and lack of mistake) was not outweighed by any alleged prejudice. The Court's decision to admit such evidence was legally supported and well within its discretion.

Finally, Vivint argues (as it did before and during trial) that these two categories of prior act evidence are inadmissible hearsay. (Mot. 20). As addressed in the parties' pretrial in limine briefings, the bulk of the evidence now at issue are statements by a party opponent and therefore not hearsay. FED. R. EVID. 801(2). Other documents, such as the consent decrees, are documents of independent legal significance that are not being offered for the truth of the matter asserted— again not hearsay. FED. R. EVID. 801(c)(2); <u>see, e.g.</u>, <u>Lorraine v. Markel Am. Ins. Co.</u>, 241

15

F.R.D. 534, 565 (D. Md. 2007) (stating that when a statement's "significance . . . lies solely in the fact that it was made" and it is not "offered to prove its substantive truth" but rather "for some other purpose," it is not hearsay). Finally, the sworn testimony of customers in other Vivint cases satisfied the FED. R. EVID. 804(b)(1) exception for former testimony by "unavailable" witnesses. FED. R. EVID. 804(b)(1). In sum, Vivint offers nothing to persuade this Court to revisit its proper and well-reasoned evidentiary rulings, let alone any basis for relief from judgment.

Vivint also revisits its rejected bifurcation motion in arguing that the punitive damages award was based on inflammatory and prejudicial evidence. (Mot. 20–21). Whether to bifurcate trial is within the Court's broad discretion. See FED. R. CIV. P. 42(b); see also Cent. Transport Int'l, Inc. v. General Elec. Co., No. 3:08cv136, 2008 WL 4457707, at **2–3 (W.D.N.C. Sept. 30, 2008). Here, the Court did not err in denying Vivint's motion to bifurcate.

Vivint also contends that the damages amounts were incorrect. Each component of damages about which Vivint now complains was specifically addressed throughout discovery. Vivint's current complaints were addressed over a year ago in briefing and oral arguments on Vivint's multiple motions in limine, including Vivint's complaints about the use of a multiplier to calculate lost profit and disgorgement damages. (See 3/25/2022 Motions Hr'g. Tr. (discussing 20x multiplier)). Vivint made the same arguments then as it does now about CPI's goodwill damages.

Vivint also contends that CPI should not have been permitted to argue that any computation of its lost profits or Vivint's disgorgement of profits should include a multiplier to account for noncomplaining customers. (Mot. 24–25). According to Vivint, the multiplier should have been the subject of expert testimony, and the two Vivint documents showing its use of a 20x multiplier should have been excluded.

16

First, CPI <u>did</u> present expert testimony on the use of a multiplier. While Dr. Winer gave

no opinion on the exact multiplier number to use, he testified, without objection, that: (1)

Vivint's conduct was not limited to just those customers who actually lodge a complaint, (2) it is

well accepted, and academic literature supports, that most affected customers do not lodge a

complaint; (3) the pyramid diagram in Vivint's 2014 slide (Ex. P623) showing a 5% (1 in 20)

complaint rate is a typical finding in the academic literature; (4) that he is aware of studies

showing a 4% (1 in 25) complaint rate; (5) Vivint's admissions in its 2012 legal brief (Ex. P616)

confirm that more people are affected than complain; and (6) that the studies identified in

Vivint's 2012 legal brief are the same or similar to the studies cited by Dr. Winer in in this case.[8]

As for the documents themselves (Vivint's 2014 slide deck (Ex. P623) and its 2012 legal

brief (Ex. P616)), Vivint cites two cases for the proposition that CPI should not be permitted to

avoid the requirements of Rule 703 by presenting evidence of a multiplier through documents.

Neither case stands for the proposition Vivint is promoting, nor does either case address

admission of statements by a party-opponent. The first, <u>BlackRock Engineers, Inc. v. Duke</u>

<u>Energy Progress, LLC</u>, 2019 WL 4267863 (E.D.N.C. Sept. 9, 2019), concerns a lay witness

attempting to opine (without personal knowledge) on business losses by relying on the report of

an external accountant. <u>Id.</u> at *5. The witness's lack of personal knowledge made that testimony

---

[8] Vivint also contends that Mr. Groner improperly opined about the use of a 20x multiplier. He provided no such opinion. He testified that he did not personally have a number, but that he reviewed Vivint's 30(b)(6) testimony confirming Vivint's prior claim that "for every one complaint that's filed, 20 were not filed." (Trial Tr., 2-9-23 at 137). Vivint objected, the Court held a sidebar, and the Court gave a curative instruction sought by Vivint. (<u>Id.</u>). When Mr. Groner returned to the stand, he gave no further testimony on a specific multiplier number. To the extent Mr. Groner's one comment about Vivint's own 20x multiplier was objectionable, it was harmless, was not an opinion, and in any event was cured by this Court's instruction.

inadmissible. The second, <u>Gunkel v. Robbinsville Custom Molding, Inc.</u>, No. 2:11cv07, 2013 WL 139736 (W.D.N.C. Jan. 10, 2013), involves the admission of lay opinion testimony based on external reports. The plaintiff in a construction defect case sought to admit the affidavit of an architect but attached to the affidavit were external reports about which he had no personal knowledge. The court excluded the testimony based on reports outside his personal knowledge. Neither case cited by Vivint addressed the admissibility of a party's own statements.

Federal courts have addressed the interaction between the party-opponent rule and other evidentiary provisions similar to Rule 702. Courts have specifically exempted statements under Rule 801(d)(2)(A) from the personal-knowledge requirement for testimony. <u>See, e.g.</u>, <u>United States v. Ammar</u>, 714 F.2d 238, 254 (3d Cir. 1983) ("[I]t is clear from the Advisory Committee Notes that the drafters intended that the personal knowledge foundation requirement of [F.R.E.] 602 should . . . not [apply] to admissions . . . admissible under [F.R.E.] 801(d)(2)."), <u>cert. denied</u>, 464 U.S. 936 (1983); <u>see also</u> <u>Mahlandt v. Wild Canid Survival & Research Ctr., Inc.</u>, 588 F.2d 626, 630–31 (8th Cir. 1978) (holding that personal knowledge requirement does not apply to F.R.E. 801(d)(2)); <u>see also</u> <u>Donlin v. Aramark Corp.</u>, 162 F.R.D. 149, 150 (D. Utah 1995) ("[T]he fact that the statement is speculative or in opinion form is not of consequence. Personal knowledge of the witness is not required in a party admission circumstance.").

Other courts have held that party-opponent statements are not subject to trustworthiness considerations under Rule 801(d)(2)(A). <u>See, e.g.</u>, <u>Jewell v. CSX Transp., Inc.</u>, 135 F.3d 361, 365 (6th Cir. 1998). "The admissibility of statements of a party-opponent is grounded not in the presumed trustworthiness of the statements, but. . . on 'a kind of estoppel or waiver theory, that a party should be entitled to rely on his opponent's statements.'" <u>Id.</u> (quoting <u>United States v. DiDomenico</u>, 78 F.3d 294, 303 (7th Cir. 1996)). This is consistent with 4 Wigmore on Evidence

18

§ 1053 (Chadbourn rev. 1972):

> A primary use and effect of [a party] admission is to discredit a party's claim by exhibiting his inconsistent other utterances. It is therefore immaterial whether these other utterances would have been independently receivable as the testimony of a qualified witness....

(citations omitted).

The rationale explained in Wigmore applies here. CPI used Vivint's documents, including Vivint's own words, to discredit any notion that CPI's damages were limited to just those customers who actually complained. Vivint's documents not only confirm that more people are affected than complain, Vivint even put a number (20x) on the greater impact. The jury was entitled to know that what Vivint said in its internal documents and in lawsuits it filed was different, in fact dramatically different, than what it was telling the jury in this case.

Vivint also challenges Dr. Winer's testimony on corrective advertising damages. (Mot. 28–29). Vivint argues that his testimony is inadmissible because (1) he did not "[apply] the scientific method," (2) his testimony on customer confusion supplanted the role of the jury, and (3) his damages figures (the costs to do a corrective advertising campaign) was not tied to reliable data. Id. "Evidence rules generally favor the admissibility of expert testimony: 'the rejection of expert testimony is the exception rather than the rule.'" Browder v. State Farm Fire & Cas. Co., No. 1:20cv26, 2021 WL 2517681, at *3 (W.D.N.C. June 18, 2021). Dr. Winer's testimony was properly admitted, and each of Vivint's complaints at most go to weight, not admissibility.

First, as to Vivint's arguments regarding using the scientific method," an expert's failure to use the "scientific method" to reach his conclusions in a particular case does not mean his inferences or assertions do not constitute "scientific knowledge." As this Court noted, Dr.

19

Winer's testimony "clearly satisfies the requirements of Rule 702" because he "derives his opinions by generally accepted marketing principles and abundant peer reviewed academic literature." This Court made a similar comment when Vivint sought to limit Dr. Winer's testimony at trial, explaining that "[s]cientific method is to develop knowledge of kind of theoretical things, . . . [w]hile here [Dr. Winer is] testifying to a methodology and [] whether that methodology has been peer reviewed."

Next, Dr. Winer did not supplant the jury when he testified that his review of call transcripts confirmed "customer confusion." Dr. Winer's testimony simply explained how and why Vivint's conduct harms CPI's brand equity, requiring corrective messaging and what specific course of conduct would be required to attempt to restore it. "An opinion is not objectionable just because it embraces an ultimate issue." FED. R. EVID. 704. The jury was free to decide (as it did) whether Vivint was legally liable, and if so, what damages to award. Dr. Winer's expertise simply aided the jury; it did not supplant it.

Finally, Vivint again complains that Dr. Winer's corrective marketing campaign results in CPI customers who were never approached or misled by Vivint also receiving a remedial message. (Mot. 34). As Dr. Winer testified, however, it is incidental to any corrective advertising campaign that some individuals who may have never received or become confused by the initial miscommunication may also receive the corrective messaging. Further, where the tortfeasor's conduct makes it difficult to pinpoint or prove the scope of damage, that difficulty is construed against the wrongdoer—not the victim—and does not preclude recovery. See, e.g., Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563 (1931).

Dr. Winer's corrective marketing damages are tied directly to Vivint's misconduct based on the data made available by Vivint. The campaign is broad because it is the only way to reach

20

all affected customers, especially in light of Vivint's failure or inability to identify the CPI customers it actually visited or who complained.

The Court has rejected Vivint's criticism of CPI's evidence of damages as not being reasonably certain. Even if "reasonable certainty" is the right standard for assessing CPI's damages estimate, CPI's evidence satisfies that standard here.

First, Vivint's "reasonable certainty" requirement is not applicable here. As the Supreme Court has explained, "when, from the nature of the case, the amount of the damages cannot be estimated with certainty, or only a part of them can be so estimated, we can see no objection to placing before the jury all the facts and circumstances of the case, having any tendency to show damages, or their probable amount; so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit." Story Parchment Co., 282 U.S. at 559. Here, given the widespread nature of Vivint's misconduct—and the difficulties in assessing precisely how much of CPI's business was lost due to, among other things questions about Vivint's recordkeeping—it was appropriate for CPI to place all the "facts and circumstances" before the jury and enable it to make a "probable estimate" of damages. In any event, courts have made clear that, even where an estimate of damages with "reasonable certainty" is theoretically possible, that standard does not require "mathematical precision," and a plaintiff need only provide a "reasonable estimate" of damages. Progress Solar Sols., LLC v. Fire Prot., Inc., No. 5:17cv152, 5:19cv5, 2022 WL 4537903, at *2 (E.D.N.C. Aug. 30, 2022).

Vivint also contends that CPI did not present sufficient evidence on lost and profits and disgorgement damages. The Court disagrees. As to lost profits, Mr. Groner's testimony established a per-customer profit margin and deducted the customer expenses (clearly analogous to transportation costs) associated with servicing customer accounts. Moreover, Mr. Groner was

21

cross-examined on this issue and Vivint's expert presented his own lost-profits analysis to the jury that included other CPI expenses. Viewing the totality of the circumstances, the jury heard and viewed sufficient evidence of both CPI's and Vivint's profits and any relevant expenses to decide the amount CPI was entitled to be awarded for the lost profits and disgorgement.

Vivint also contend that CPI did not present sufficient evidence to prove its loss of goodwill damages. The Court again disagrees. "In measuring harm to goodwill, a jury may consider a plaintiff's expenditures in building its reputation in order to estimate the harm to its reputation after a defendant's bad acts." Skydive Arizona, Inc. v. Quattrocchi, 673 F.3d 1105, 1112 (9th Cir. 2012). That is exactly what CPI did here, in line with the final jury instruction agreed to by the parties on this issue.

Vivint also contends that the tortious interference damages should have been limited to the value of the contracts. This is incorrect. The jury instructions (to which Vivint agreed) allowed the jury to award multiple categories of damages for Vivint's tortious interference, including lost profits, lost goodwill, and corrective advertising. See (Final Jury Instructions at 23). Vivint's request to cap the tortious interference award at $24,343.20 misstates the law.

Finally, contrary to Vivint's argument, jury instructions did not require that a UDTPA award be equal to or less than the combined amounts of the other compensatory damage awards. Vivint requested and received an instruction directing the jury not to award duplicative damages for multiple claims, and instead, only award damages that were in addition to and separate from other awarded damages. The jury's question while deliberating confirms that they followed that instruction. Thus, there is simply no correlation between the amounts awarded for violating the UDTPA and the amounts awarded for other claims.

**IV.      Conclusion**

22

In sum, the Court finds that Defendant has not presented grounds for altering judgment or for ordering a new trial in this matter. Defendant's motion will therefore be denied.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Alter Judgment, Motion for New Trial, Motion for Judgment NOV, Motion for Judgment as a Matter of Law, (Doc. No. 160), is **DENIED**.

Signed: January 8, 2024

Max O. Cogburn Jr.
United States District Judge